

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

STEVES AND SONS, INC.,

     Plaintiff,

v.                           Civil Action No. 3:16cv545

JELD-WEN, INC.,

     Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on DEFENDANT/COUNTER-PLAINTIFF JELD-WEN, INC.'S MOTION TO VOLUNTARILY DISMISS COUNTERCLAIMS WITHOUT PREJUDICE (ECF No. 457). For the reasons set forth below, the motion was denied.

**BACKGROUND**

This action was filed on June 29, 2016 after the failure of a contractually mandated mediation process. Complaint (ECF No. 5) (Under Seal). Steves and Sons, Inc. ("Steves") alleged several claims against JELD-WEN, Inc. ("JELD-WEN"). In COUNT ONE, Steves alleged a violation of the Clayton Act, Section 7, 15 U.S.C. § 18. In COUNT TWO, Steves alleged a breach of contract arising out of a 2012 long-term doorskin supply agreement between Steves and JELD-WEN ("the Supply Agreement"). In COUNT THREE, Steves alleged a breach of warranty, both express and implied. In COUNT FOUR, Steves sought a declaratory

judgment as to certain rights under the Supply Agreement and the putative termination of that contract. Id. ¶¶ 175-92.

JELD-WEN filed a motion to dismiss COUNT ONE, which was denied and, on August 5, 2016, JELD-WEN filed its Answer to the Complaint. ECF Nos. 30 (Under Seal), 64. At a pretrial conference on October 19, 2016, the matter was set for trial to begin on June 12, 2017, and a detailed schedule for the conduct of pretrial proceedings was thereafter implemented. ECF No. 65. Pursuant to that schedule, the parties engaged in extensive discovery.

On March 27, 2017, JELD-WEN sought leave to amend its Answer and to add counterclaims against Steves, which were asserted "to address JELD-WEN's recent discovery of Steves' theft of JELD-WEN trade secrets and confidential information," the alleged theft of which had been discovered by virtue of documents produced during litigation. ECF No. 101 at 1-2. The counterclaims were predicated upon the assertion that Steves— through its principal officers, Edward Steves and Sam Steves II ("the Steves Brothers")—along with two former JELD-WEN employees, John Pierce ("Pierce") and John Ambruz ("Ambruz"), had engaged in a conspiracy and had stolen trade secrets from JELD-WEN respecting how to build and operate a doorskin plant that could produce products of the type that Steves was buying from JELD-WEN under the Supply Agreement.

2

JELD-WEN asserted the following proposed counterclaims under federal and Texas law: FIRST COUNTERCLAIM FOR RELIEF, Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836; SECOND COUNTERCLAIM FOR RELIEF, Conspiracy to Violate Defend Trade Secrets Act, 18 U.S.C. § 1832(a)(5); THIRD COUNTERCLAIM FOR RELIEF, Violation of the Texas Uniform Trade Secret Act, Texas Civil Practice & Remedies Code Annotated §§ 134A.001 – 134A.008; FOURTH COUNTERCLAIM FOR RELIEF, Tortious Interference with Contract Under Texas Common Law; FIFTH COUNTERCLAIM FOR RELIEF, Tortious Interference with Contract Under Texas Common Law; SIXTH COUNTERCLAIM FOR RELIEF, Breach of the Implied Covenant of Good Faith and Fair Dealing Under Delaware Law; and SEVENTH COUNTERCLAIM FOR RELIEF, Breach of Contract. Proposed Counterclaims (ECF No. 106) (Under Seal) ¶¶ 41-78.

Steves vigorously opposed the addition of the counterclaims, arguing that the putative counterclaims should be brought in San Antonio, Texas where Steves, Pierce, and Ambruz could be sued. PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT JELD-WEN, INC.'S MOTION FOR LEAVE TO AMEND ANSWER (ECF No. 117) at 14. At oral argument on the motion for leave to add the counterclaims, Steves continued to argue that the counterclaims should be pursued in Texas, not in this case. JELD-WEN continued to advocate zealously for prosecution of the counterclaims in this action.

On May 17, 2017, the Court allowed JELD-WEN to proceed with the counterclaims in this forum.[1] At the same time, however, the Court ordered that the trade secrets counterclaims be tried separately from the antitrust claims. ECF Nos. 239-240. The parties subsequently continued with discovery and were asked to comment about the sequencing of Steves' antitrust and contract claims and JELD-WEN's counterclaims. Trial for the counterclaims was set to begin on February 12, 2018. ECF Nos. 259-261.

Then, after briefing and argument on the topic, on September 13, 2017, Steves' motion to dismiss the Second, Sixth, and Seventh Counterclaims was granted. Those counterclaims were dismissed with prejudice. ECF Nos. 353-354.

Shortly thereafter, counsel for Steves and counsel for JELD-WEN asked the Court to move the trial in the trade secrets case to April 2018 based on representations that the same lawyers would be involved extensively in the trial of the antitrust claims in January 2018, and could not adequately prepare for trial of the trade secrets counterclaims beginning on February 12, 2018. ECF No. 352. Because of these entreaties, and only because of these entreaties, the Court moved the trial of JELD-WEN's counterclaims to April 9, 2018. ECF No. 374.

---

[1] Shortly thereafter, JELD-WEN filed its Amended Answer and Counterclaims, which contained identical counterclaims to those asserted in the proposed counterclaims. See Counterclaims (ECF No. 252) (Under Seal) ¶¶ 41-78.

On September 26, 2017, JELD-WEN filed an action in Texas state court wherein it asserted its trade secret claims and certain related claims against the Steves Brothers and Pierce. That complaint contained the following claims under Texas law: COUNT ONE, Violation of the Texas Uniform Trade Secrets Act, CPRC § 134A, against all defendants; COUNT TWO, Conspiracy to Violate Texas Uniform Trade Secrets Act, CPRC § 134A, against all defendants; COUNT THREE, Breach of Contract, against Pierce; COUNT FOUR, Tortious Interference with Contract, against the Steves Brothers; COUNT FIVE, Tortious Interference, against Pierce; COUNT SIX, Breach of Fiduciary Duty, against Pierce; and COUNT SEVEN, Aiding and Abetting Breach of Fiduciary Duty, against the Steves Brothers. Texas Petition (ECF No. 403-1) ¶¶ 53-70.

Then, on October 23, 2017, JELD-WEN voluntarily moved to dismiss its counterclaims in this case. ECF No. 457. After briefing on that motion had been completed, JELD-WEN filed an amended complaint in the Texas case that removed several claims from the original complaint: namely, Count One, Count Two, and Count Four. Amended Texas Petition (ECF No. 607-1) ¶¶ 53-58.

DISCUSSION

JELD-WEN's motion is brought pursuant to Fed. R. Civ. P. 41(a)(2), which allows a plaintiff, with approval of the Court, voluntarily to dismiss an action without prejudice. "The focus

5

of district courts when considering a motion to dismiss without prejudice is 'primarily on protecting the interests of the defendant.'" Teck Gen. P'ship v. Crown Cent. Petroleum Corp., 28 F. Supp. 2d 989, 991 (E.D. Va. 1998) (quoting Davis v. USX Corp., 819 F.2d 1270, 1272 (4th Cir. 1987)). The factors to be considered in making the necessary assessment are:

> "(1) the opposing party's effort and expense in preparing for trial;
>
> (2) excessive delay or lack of diligence on behalf of the movant;
>
> (3) insufficient explanation of the need for dismissal; and
>
> (4) the present state of litigation, i.e., whether a motion for summary judgment is pending."

Id. (quoting Gross v. Spies, 133 F.3d 914, 1998 WL 8006, at *5 (4th Cir. 1998)); see also Howard v. Inova Health Care Servs., 302 F. App'x 166, 178-79 (4th Cir. 2008).

It is no understatement to say that the jurisprudence in this circuit "on the issue of what constitutes sufficient prejudice to a non-movant to support denial of a motion for voluntary dismissal under Rule 41(a)(2) is not free from ambiguity." Howard, 302 F. App'x at 179. Nonetheless, it is settled that "'prejudice to the defendant does not result from the prospect of a second lawsuit'" or "'the possibility that the plaintiff will gain a tactical advantage over the defendant in

6

future litigation.'" Id. (quoting Davis, 819 F.2d at 1274-75).
On the other hand, while the mere filing of a motion for summary
judgment does not meet the prejudice standard, the Fourth
Circuit has found "on multiple occasions that a district court
does not abuse its discretion in denying a motion for voluntary
dismissal if the case has advanced to the summary judgment stage
and the parties have incurred substantial costs in discovery."
Id. (citing Miller v. Terramite Corp., 114 F. App'x 536, 540
(4th Cir. 2004); Francis v. Ingles, 1 F. App'x 152, 154 (4th
Cir. 2001); Skinner v. First Am. Bank of Va., 64 F.3d 659, 1995
WL 507624, at *2-3 (4th Cir. 1995); Sullivan v. Westinghouse
Elec. Corp., 848 F.2d 186, 1988 WL 54059, at *2 (4th Cir.
1988)).

Applying the general factors here leads to the conclusion
that JELD-WEN's motion should be denied.

## 1. The Opposing Party's Effort and Expense in Preparing for Trial

Steves has demonstrated that it has incurred considerable
expense and effort in preparing for trial—which, until recently,
was anticipated to begin on February 12, 2018. Several rounds of
document production have been completed, and, likewise, the
analysis of documents is complete, all depositions have been
taken, paper discovery responses and supplements have been
filed, and fact discovery has closed. JELD-WEN has also

specified the trade secrets that are to be asserted at trial. ECF No. 465. The expert disclosures of JELD-WEN were filed on November 3, 2017; Steves' expert disclosures were filed on December 8, 2017; and rebuttal expert disclosures are due on December 22, 2017. Expert discovery will conclude on January 12, 2018. Motions for summary judgment are to be filed on January 24, 2018. ECF Nos. 374, 583. Moreover, there is a detailed schedule established for every pretrial event necessary to prepare the case for trial on April 9, 2018.[2] ECF No. 374.

Although it is true that JELD-WEN has agreed that whatever discovery has been taken in this action can be used in the Texas case, that proposition seems to be one of limited utility. Indeed, JELD-WEN's counsel in the Texas case has already sought to again depose the Steves Brothers (who have been deposed more than once in this action), thereby creating serious doubt that the commitment to using discovery from this case will prevent discovery from being expanded in the Texas action. If JELD-WEN's conduct so far in that case is any indication, its promise here is a hollow one.

---

[2] Interestingly, JELD-WEN filed its suit in Texas only 12 days after asking the Court to enter this revised schedule setting the trade secrets trial for April 2018, instead of February 2018.

## 2. **Excessive Delay or Lack of Diligence by the Movant**

Delay and diligence cannot be measured in a vacuum. Instead, they must be viewed in the context of the trial schedules, the schedules followed in readying a case for trial, and the knowledge of the parties.

It became clear in the spring of 2017 that the Court was going to sever JELD-WEN's trade secrets counterclaims and would not try them with Steves' antitrust claims. In May 2017, the Court entered an order separating the antitrust trial and the trade secrets trial. Nonetheless, JELD-WEN sat by idly and did nothing to initiate the Texas case until September 2017, after it had suffered a number of adverse rulings and after almost all the discovery for the trade secrets counterclaims had been completed. And, shortly before JELD-WEN filed the Texas case on September 25, 2017, it was well aware that the trial date in this Court for its trade secrets and related Texas law counterclaims was February 12, 2018. With all this knowledge, and without disclosing to the Court its intention to move to dismiss its counterclaims, JELD-WEN asked the Court to change the trial date on the premise that the lawyers working the antitrust case and trade secrets case were the same, and that it would be too much of a task to expect them to go to trial on the scheduled February 12, 2018 date.

9

In sum, JELD-WEN waited practically the whole summer before filing its Rule 41 motion here. Thus, the delay has been one of several months. That delay is inexcusable given the argument that Steves made at the outset of the proceedings involving the counterclaims: that all of the counterclaims should have been brought against Steves, its officers, and Pierce in Texas state court, a proposition that was roundly rejected by JELD-WEN at the time.

## 3. Explanation of the Need for Dismissal

JELD-WEN's explanation of the need for dismissal is disingenuous given its earlier arguments in the case, when it rejected Steves' invitation to have the counterclaims brought separately in Texas. For instance, JELD-WEN contends that the Texas state law claims are somehow unique. But they are not. The Court is capable of deciding JELD-WEN's state law counterclaims, as well as any claims from the Texas case that may be added—breach of contract, tortious interference, and breach of fiduciary duty—here. The law respecting those causes of action is straightforward, and does not require any particular expertise in Texas law to adjudicate.

Moreover, the claims in the Texas case are similar to the pending counterclaims here so any concern about introducing new issues at this stage of the litigation is minimal. Although the breach of contract and tortious interference claims against

10

Pierce and the breach of fiduciary duty claims against all defendants in the Texas case have no counterparts in JELD-WEN's counterclaims here, there is likely substantial overlap between the evidence relevant to those Texas claims and the documents already produced during discovery on the counterclaims in this case. The parties should therefore need little, if any, additional discovery for the new claims.

The other principal reason offered by JELD-WEN for dismissing the counterclaims and trying them in Texas is that JELD-WEN cannot secure jurisdiction over the Steves Brothers or Pierce in this forum. Of course, that is the very point that Steves made when it opposed the filing of the counterclaims and urged JELD-WEN to proceed in Texas. Nonetheless, both the Steves Brothers and Pierce have agreed to be added as counter-defendants in this action. Consequently, the need to move the case to Texas is insubstantial.[3]

In addition to these problems with JELD-WEN's arguments, it is well-settled that a party cannot seek a voluntary dismissal with the hope of avoiding rulings that have been adverse to it in a pending case. Teck Gen. P'ship, 28 F. Supp. 2d at 992; see

---

[3] As JELD-WEN pointed out at oral argument, the proper method for joining a party into a case is to file a motion under Fed. R. Civ. P. 24, which the Steves Brothers and Pierce have done. ECF Nos. 591, 606. Accordingly, the principal—indeed the only legitimate—reason for JELD-WEN's request for voluntary dismissal has disappeared.

also Francis, 1 F. App'x at 154. That constitutes prejudice to the party who prevailed on those motions. JELD-WEN argues that it is not seeking to revisit any of the rulings made by the Court. But, it has already started the process of trying to do so. For example, the parties recently completed here a Court-approved fact discovery period in which all depositions were to be taken and full examination was to be had. JELD-WEN's counsel in Texas has restarted that process by seeking once again to depose the Steves Brothers. That, by any measure, represents an effort to avoid the consequences of the pretrial rulings made by the Court about the discovery schedule in the case. In light of that conduct, the Court can take no comfort in JELD-WEN's assurance that it will not seek to revisit other issues as to which it has received unfavorable rulings.

## 4.    Present Stage of Litigation

The present stage of litigation has been outlined above. Fact discovery is complete; expert discovery is underway with an impending completion date; there is a schedule for summary judgment proceedings; and all of the necessary pretrial events and the Final Pretrial Conference have been scheduled. A trial date was set, and then moved to accommodate counsels' request for adequate trial preparation time. The trade secrets case will go to trial in early April 2018. It is undisputed that the counterclaims would likely not go to trial in Texas until the

12

fall of 2018 at the earliest, and very likely not even then. That delay will be prejudicial to Steves, which needs to have this litigation resolved as promptly as possible so that it can staunch the flow of legal fees and get about its business with all the issues presented here resolved. One would think that the delay would likewise be prejudicial to JELD-WEN for similar reasons.

### CONCLUSION

For the foregoing reasons, DEFENDANT/COUNTER-PLAINTIFF JELD-WEN, INC.'S MOTION TO VOLUNTARILY DISMISS COUNTERCLAIMS WITHOUT PREJUDICE (ECF No. 457) was denied.

It is so ORDERED.

/s/　　　R E V

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date:  December _18_, 2017

13