IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

STEVES AND SONS, INC.,

    Plaintiff,

v.                                    Civil Action No. 3:16cv545

JELD-WEN, INC.,

    Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on DEFENDANT JELD-WEN, INC.'S MOTION *IN LIMINE* NO. 9: TO EXCLUDE LAY WITNESS TESTIMONY CONCERNING STEVES' FUTURE VIABILITY (ECF No. 553). For the reasons set forth below, the motion will be denied in part and denied in part subject to renewal at trial, depending on the precise questions and the foundational evidence.

**BACKGROUND**

Steves & Sons, Inc. ("Steves") alleged that JELD-WEN, Inc. ("JELD-WEN") violated Section 7 of the Clayton Act when it acquired CraftMaster Manufacturing, Inc. ("CMI") in 2012. Compl. (ECF No. 5) (Under Seal) ¶¶ 175-78. To prevail on that claim, Steves must show that "the effect of such acquisition may be substantially to lessen competition." 15 U.S.C. § 18. Among other remedies, Steves seeks damages for future lost profits as

a result of the CMI acquisition, based on evidence that JELD-WEN has given notice that it will not renew the parties' 2012 long-term doorskin supply agreement ("the Supply Agreement") when that contract expires in September 2021, leaving Steves without a stable supply of doorskins.

Steves asserts that its witnesses will testify to the following five topics relevant to those issues:

1) "the critical importance of interior molded doorskins to Steves' ability to manufacture interior molded doors;

2) the significance of Steves' interior molded door business to Steves' business overall;

3) the witnesses' efforts to secure alternative sources of doorskin supply for the period following termination of Steves' Supply Agreement with JELD-WEN and the results of those efforts;

4) the witnesses' expectations as to whether Steves will be able to obtain a stable, reliable supply of interior molded doorskins and the bases for these expectations; and

5) the harm that uncertainty regarding Steves' ongoing ability to access a stable, reliable supply of interior molded doorskins has caused and will continue to cause Steves' business."

Pl. Opp. (ECF No. 618) (Under Seal) at 1-2. In addition, Steves states that it "will present evidence from non-party witnesses that will confirm that Steves will not have a commercially viable source of interior molded doorskins" when the Supply Agreement expires in 2021. Id. at 3. JELD-WEN moves to exclude at trial any opinions or testimony speculating that Steves will

not remain a viable business after the completion of the Supply Agreement in September 2021, or that Steves will liquidate or go out of business at that time.

**DISCUSSION**

JELD-WEN's primary argument is that the evidence it seeks to exclude is lay witness opinion testimony that is inadmissible under Federal Rules of Evidence 602 and 701. Rule 602 allows a witness to testify about a particular issue "only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Similarly, under Rule 701, lay opinion testimony must be "rationally based on the witness's perception" and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

"The modern trend favors the admission of opinion testimony [under Rule 701], provided that it is well founded on personal knowledge as distinguished from hypothetical facts," and the opinion is offered "on the basis of relevant historical or narrative facts that the witness has perceived." MCI Telecomms. Corp. v. Wanzer, 897 F.2d 703, 706 (4th Cir. 1990) (internal quotations omitted). As a result, "company officials may estimate future profits or losses as a lay witness if the estimates are based on personal experience." Sprint Nextel Corp. v. Simple Cell Inc., 248 F. Supp. 3d 663, 675 (D. Md. 2017) (citing, inter alia, Lord & Taylor, LLC v. White Flint, L.P.,

3

849 F.3d 567, 575 (4th Cir. 2017)); accord Von der Ruhr v. Immtech Int'l, Inc., 570 F.3d 858, 862 (7th Cir. 2009) ("In the realm of lost profits, lay opinion testimony is allowed . . . where the witness bases his opinion on particularized knowledge he possesses due to his position within the company."); Nat'l Hispanic Circus, Inc. v. Rex Trucking, Inc., 414 F.3d 546, 551-52 (5th Cir. 2005) ("Rule 701 does not exclude testimony by corporate officers or business owners on matters that relate to their business affairs, such as industry practices and pricing."); see also Fed. R. Evid. 701, Committee Notes on Rules—2000 Amendment ("[M]ost courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an . . . expert." (citing Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1175-76 (3d Cir. 1993))). Under that line of authority, courts generally require that "future projections of a business or operation come from someone who has intimate and thorough knowledge of the business gathered from either a lengthy tenure or a position of authority." Donlin v. Philips Lighting N. Am. Corp., 581 F.3d 73, 81 (3d Cir. 2009).

JELD-WEN also argues that the evidence in question is inadmissible under Rule 403. Under that provision, a court "may exclude relevant evidence if its probative value is

4

substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## I. Rule 701

JELD-WEN concedes that the first three categories of testimony specified above could be admitted as lay witness testimony. However, it argues that the other two categories—as well as the evidence that will, as Steves claims, "confirm that Steves will not have a commercially viable source of interior molded doorskins" when the Supply Agreement expires in 2021—must be excluded because that testimony necessarily requires the witnesses to make predictions about the state of the doorskin market or Steves' ability to obtain doorskins from other suppliers in 2021. Thus, says JELD-WEN, the witnesses would lack the personal knowledge needed to admit that testimony because they would have to speculate about events that had not yet occurred.

In response, Steves contends that its witnesses can all testify on the issues noted because they have personal knowledge about Steves' operation, its finances, and the importance of interior molded door sales to its financial wellbeing. They are also familiar with JELD-WEN's and Masonite's recent actions, which have threatened Steves' ability to obtain a steady supply

of doorskins and which have made these witnesses concerned about Steves' long-term future. Moreover, Steves says that its witnesses will not testify on speculative topics, such as whether Teverpan—a Turkish supplier—will be selling doorskins in the United States in 2021, or whether Masonite will decide to offer long-term doorskin supply agreements to customers.

There is no dispute that the first three categories of testimony are admissible under Rules 602 and 701. The first two groups—the importance of interior molded doorskins to Steves' interior molded door manufacturing, and the value of Steves' interior molded door business to its overall business—are precisely the sort of "industry practices" that a witness like Sam Steves II has personal knowledge of given his extensive experience with Steves' "business affairs" while running the company. Nat'l Hispanic Circus, 414 F.3d at 552. Likewise, the third category—efforts to secure alternative sources of doorskin supply—includes no opinions, only testimony about events in which the witnesses were personally involved. See Fed. R. Evid. 602. JELD-WEN's motion will therefore be denied to the extent that it seeks to exclude this testimony.

The fourth and fifth categories, however, are defined in a broad manner that invites speculative testimony. The distinguishing factor between cases that permitted and excluded testimony or evidence that involved future projection, such as

6

future profits estimates, is the grounds on which the witness's extrapolation is based. In cases allowing such evidence, witnesses based their testimony primarily on "historical or narrative facts that the[y] . . . ha[d] perceived"—that is, events that had already occurred. MCI Telecomms. Corp., 897 F.2d at 706 (bookkeeper's testimony about company's likely profits admissible because it was based on company records within her control and her "personal knowledge and perception" as an accountant); see also Lord & Taylor, 849 F.3d at 575-76 (testimony projecting store construction costs admissible where witness drew estimate from "on-the-job experience," including "the more than 50 redesign projects he ha[d] overseen"); Lightning Lube, 4 F.3d at 1175-77 (company's owner could testify about future lost profits and harm to value of company, despite need for some predictions about business's performance, given his past experience with business's contracts, operating costs, and competition); Sprint Nextel, 248 F. Supp. 3d at 675 (investigator for cell phone company could estimate future damages resulting from fraud where he simply multiplied company's expected revenue per phone by number of phones affected by fraud). In contrast, testimony has been excluded where it "would have involved predictions of future events, not estimates of amounts that had already accrued before trial." Jones v. Colonial Life & Accident Ins. Co., 178 F.3d 1284, 1999

7

WL 261858, at *2 (4th Cir. May 3, 1999); see also Von der Ruhr, 570 F.3d at 863 (lost profits estimates excluded where witness "intended to testify to his expectation of millions of dollars in profits from a brand new drug, which had not been approved by the FDA, which still needed a corporate partner, and for which no competitive market analysis had been conducted").

The intended testimony in the fourth category appears on its face to be based on Steves' previous interactions with third-party interior molded doorskin suppliers, and, if the testimony is thusly confined it will be admissible to the extent that it is based on facts known to date. However, if the witnesses speculate about future events in the doorskin industry that affect their expectations, the testimony will be speculative. Jones involved a remarkably similar situation. There, the district court had allowed a witness to testify about his past earnings and to "estimate[], based on his past experience, the rate at which policy renewals decline over time." 1999 WL 261858, at *2. The Fourth Circuit, however, affirmed the district court's exclusion of testimony about the witness's "personal expectation or perception of his renewals in the future, given the present state of the situation." Id. It expressly distinguished that testimony from permitted testimony about the witness's "<u>past</u> income and <u>past</u> experience with renewals." Id. (emphasis added).

8

Here, the witnesses' expectations are said to be based on their current knowledge of the success (or lack thereof) of Steves' past negotiations with doorskin suppliers like Teverpan and Masonite. However, to the extent that testimony about present expectations requires those witnesses to predict the results of Steves' future interaction with those suppliers and other foreign suppliers, which are "hypothetical facts" of which the witnesses lack personal knowledge, the testimony would be speculative. MCI Telecomms. Corp., 879 F.2d at 706. Whether speculation will be offered must depend on the specific question and the foundation laid for it. That must be decided at trial.

The fifth category of proposed testimony raises similar concerns. Testimony concerning the harm that uncertainty about Steves' ability to access a stable doorskin supply has caused is admissible under Rule 701 because it involves a straightforward accounting of financial harm based on events that have already occurred, as in the cases detailed above. See Sprint Nextel, 248 F. Supp. 3d at 675. On the other hand, testimony about the harm that uncertainty will cause in the future requires witnesses to speculate about the possible occurrence of events that might affect Steves' ability to obtain an adequate doorskin supply from companies besides JELD-WEN after 2021. And, unlike the witnesses testifying about future profits based on their business experience, Steves' witnesses here would be applying

9

their knowledge of the interior molded doorskin industry to an untested situation involving potential factors—like increased foreign doorskin supply—not accounted for in the past doorskin market. See Von der Ruhr, 570 F.3d at 862-63. Consequently, testimony about future harm would involve too much speculation to satisfy Rule 701. But here, too, the Court's decision must await the question presented at trial.

Finally, the evidence that Steves will not have a commercially viable source of interior molded doorskins when the Supply Agreement expires in 2021 is speculative if that is to be the question. Steves' access to a commercially viable source of interior molded doorskins in 2021 appears to involve the very "predictions of future events" that have undermined other excludable evidence. Jones, 1999 WL 261858, at *2. However, that topic also must await foundation and a specific question.

## II. Rule 403

JELD-WEN argues that the evidence that implicates future events—the fourth and fifth categories of testimony, and the evidence of Steves' inability to access a viable doorskin supply in 2021—should also be excluded under Rule 403 because introducing such evidence invites the jury to speculate about events that might never occur. Steves does not explicitly address this argument.

JELD-WEN might well be correct. It may be true, as Steves argues, that testimony and evidence on all the specified issues is relevant to both the broader Section 7 claim for liability and Steves' related claim for future lost profits damages, because that evidence bears on the anticompetitive effects of the CMI acquisition and the specific effect on Steves' financial condition. See Fed. R. Evid. 401. At the same time, the probative value of speculative evidence is non-existent, or at best, minimal. So if a witness is asked to speculate about future events that might not happen, Rule 403 will foreclose it. It is up to counsel to frame questions that are not based on speculation. That will be measured at trial.

**CONCLUSION**

For the foregoing reasons, DEFENDANT JELD-WEN, INC.'S MOTION IN LIMINE NO. 9: TO EXCLUDE LAY WITNESS TESTIMONY CONCERNING STEVES' FUTURE VIABILITY (ECF No. 553) will be denied in part and denied in part subject to renewal at trial.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: January 10, 2018