UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| STEVES AND SONS, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JELD-WEN, INC., )<br>)<br>Defendant. )<br>) | Civil Action No. 3:16-cv-545-REP |

**PLAINTIFF STEVES AND SONS, INC.'S RESPONSE
TO THE COURT'S JANUARY 9, 2018, ORDER**

On January 9, 2018, the Court ordered the parties to address "the appropriate date for measuring the anticompetitive effects of an acquisition for purposes of antitrust liability, damages, and injunctive relief." (ECF No. 782). Plaintiff Steves & Sons, Inc. ("Steves") respectfully submits the following response.

**I.      Introduction**

Section 7 of the Clayton Act prohibits mergers if "the effect of such acquisition ***may be*** substantially to lessen competition." 15 U.S.C. § 18 (emphasis added). Section 7 was designed to "arrest the creation of monopolies 'in their incipiency.'" *United States v. Gen. Dynamics Corp.*, 415 U.S. 486, 505 n.13 (1974). To achieve this goal, Congress enacted "a relatively expansive definition of antitrust liability: To show that a merger is unlawful, a plaintiff need only prove that its effect 'may be substantially to lessen competition.'" *California v. Am. Stores Co.*, 495 U.S. 271, 284 (1990). "Congress used [these] words . . . to indicate that its concern was with probabilities, not certainties." *Brown Shoe Co. v. United States*, 370 U.S. 294, 323 (1962).

Section 4 of the Clayton Act provides that a party "who shall be injured in his business or property" as a result of a violation of Section 7 may sue for damages.  15 U.S.C. § 15.  Section 16 of the Clayton Act provides that a party is "entitled to sue for and have injunctive relief . . . against threatened loss or damage" by a violation of Section 7.  15 U.S.C. § 26.

These basic principles have informed the Supreme Court's handling of the issues raised by this Court's January 9 order.

## II.     When Anticompetitive Effects Are Measured for Purposes of Liability

The test for a violation of Section 7 of the Clayton Act is whether, *at the time of trial*, there is a reasonable probability that the merger will substantially lessen competition or tend to create a monopoly.  *See United States v. E.I. du Pont de Nemours & Co.*, 353 U.S. 586, 607 (1957) ("[T]he test of a violation of § 7 is whether, at the time of suit, there is a reasonable probability that the acquisition is likely to result in the condemned restraints."); *see also United States v. Penn-Olin Chem. Co.*, 378 U.S. 158, 168 (1964) ("Penn-Olin was engaged in commerce at the time of suit and the economic effects of an acquisition are to be measured at that point rather than at the time of acquisition.").  This rule applies to both consummated and unconsummated mergers.  *See du Pont*, 353 U.S. 586 (challenge to a consummated merger); *United States v. El Paso Natural Gas Co.*, 376 U.S. 651, 655 (1964) (same).  Where a merger has already been consummated, a plaintiff may satisfy this burden in either of two different ways.

First, by showing that the merger has *already* substantially lessened competition by the time of trial, a plaintiff may establish that anticompetitive effects are not merely probable, but have already occurred.  This would be the case where, for example, a merger had already resulted in increases in price, reductions in quality, or coordinated effects.  *See* Horizontal Merger Guidelines § 2.1.1 ("Evidence of observed post-merger price increases or other changes

adverse to customers . . . **can be dispositive.**") (emphasis added). In such instances, antitrust liability is established with no further inquiry required.[1] *See Gen. Dynamics*, 415 U.S. at 505 n.13 ("[P]ost-merger evidence showing a lessening of competition may constitute an 'incipiency' on which to base a divestiture suit."); *El Paso Natural Gas*, 376 U.S. at 652 ("The ultimate issue revolves around the question whether the acquisition substantially lessened competition in the sale of natural gas in California."); *see also* Horizontal Merger Guidelines § 2.1.1 ("When evaluating a consummated merger, the ultimate issue is not only whether adverse competitive effects have already resulted from the merger, but also whether such effects are likely to arise in the future.").[2]

Second, a plaintiff may establish a violation by showing, at the time of trial, that the merger is likely to harm competition in the future. *See Gen. Dynamics*, 415 U.S. at 505 (observing that a violation exists if "the probability of such future impact exists at the time of trial."). "Section 7 does not require proof that a merger or other acquisition has caused higher prices in the affected market. All that is necessary is that the merger creates an appreciable danger of such consequences in the future." *Hospital Corp. of Am. v. FTC*, 807 F.2d 1381, 1389

---

[1] For example, where a merger has already had anticompetitive effects, the possibility of future new entry in the relevant market is irrelevant. "The prospect of entry into the relevant market will alleviate concerns about adverse competitive effects only if such entry will deter or counteract any competitive effects of concern so the merger will not substantially harm customers." Horizontal Merger Guidelines § 9. This cannot occur where the anticompetitive effects have already occurred.

[2] This is true even if, judged at the time of the merger, it is not clear that a Clayton Act violation would have been established. *See Ricchetti v. Meister Brau, Inc.*, 431 F.2d 1211, 1214 (9th Cir. 1970) ("subsequent anticompetitive activities may bring an otherwise valid acquisition of corporate stock or assets within the proscriptive scope of Section 7" (citing *du Pont*, 353 U.S. 586)); *see also Midwestern Mach. Co. v. Nw. Airlines, Inc.*, 392 F.3d 265, 272-73 (8th Cir. 2004).

(7th Cir. 1986).  According to the Supreme Court, the rationale for this rule is "obvious."  *Gen. Dynamics*, 415 U.S. at 504.  "If a demonstration that no anticompetitive effects had occurred at the time of trial or of judgment constituted a permissible defense to a § 7 divestiture suit, violators could stave off such actions merely by refraining from aggressive or anticompetitive behavior when such a suit was threatened or pending."  *Id.* at 504-05.

Based on these precedents, Steves submits that the relevant point of analysis for adjudicating a Section 7 claim is the time of trial,[3] though earlier evidence, including evidence from the time of the merger, certainly may be relevant and highly probative.[4]  Regardless, however, in this case, the evidence at trial will show both that JELD-WEN's acquisition of Craftmaster has *already* substantially lessened competition, and also that it is likely to continue to do so in the future, whether judged based on current evidence or market conditions as they existed in 2012 at the time of the merger.

---

[3] The only authority counsel for Steves has located suggesting otherwise—*i.e.*, that the relevant point of analysis is the time of the acquisition, not the time of trial—is Areeda & Hovenkamp, Antitrust Law:  An Analysis of Antitrust Principles and Their Application ¶ 1205 (3d & 4th eds., 2010-2017), which posits that "acquisitions should be judged on the basis of evidence of the situation existing at the time of the acquisition," although Areeda and Hovenkamp acknowledge that even under their view "[l]ater evidence existing at the time of trial will nevertheless" sometimes be relevant.  *Id.* ¶ 1205a.  Areeda and Hovenkamp's theory is an interesting one, but it does not appear to be well supported in the case law, and it contradicts holdings of the Supreme Court, *see supra* at 2.

[4] As explained in briefing elsewhere, Steves can establish its *prima facie* case that anticompetitive effects are likely to occur by relying on calculations of the pre- and post-merger market concentration statistics known as "HHIs."  These HHIs remain relevant predictors of anticompetitive effects even when the merger was consummated long before trial.  *See Gen. Dynamics*, 415 U.S. at 501-02 (observing the relevance of market concentration statistics in a challenge brought post-consummation, while holding that the presumption that arises is not conclusive and may be rebutted).  Steves will present these figures and additional evidence of probable future competitive effects at trial.

**III.   When Anticompetitive Effects Are Measured for Purposes of Antitrust Damages**

In addition to establishing antitrust liability, a plaintiff seeking antitrust damages under Section 4 of the Clayton Act (except, as noted below, with respect to future lost profits) must show that, at the time of trial, it has suffered antitrust injury and damages as a result of the anticompetitive effects of the merger. *See Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990); *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 122 (1986); ABA Model Jury Instructions in Civil Antitrust Cases (2016), at 300-04.  A plaintiff seeking future lost profits damages need not show that, at the time of trial, it has already suffered such damages, but must show that it "predictably" will suffer such damages in the future, "after trial," as a result of the anticompetitive effects of the merger. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 339 (1971); *see* ABA Model Jury Instructions in Civil Antitrust Cases (2016), at 317-18.

**IV.   When Anticompetitive Effects Are Measured for Purposes of Injunctive Relief**

Anticompetitive effects also are measured at the time of trial for purposes of injunctive relief.  *See du Pont*, 353 U.S. at 607. To obtain injunctive relief, a plaintiff need only establish that a "violation" of Section 7 has occurred, and that as a result of the anticompetitive effects of this violation, the plaintiff faces "threatened loss or damage."  15 U.S.C. § 26; *accord Am. Stores Co.*, 495 U.S. at 296.  Beyond that, to determine whether to order injunctive relief, including divestiture, "courts should … exercis[e] sound discretion according to the exigencies of the particular situation before them"—in other words, courts should use their "traditional equitable discretion" based on the evidence presented.  *Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*, 754 F.2d 404, 417 (1st Cir. 1985); *accord du Pont*, 353 U.S. at 607-08.

Steves looks forward to establishing its case before the jury and the Court.

Dated: January 12, 2018

        Respectfully submitted,

        **STEVES AND SONS, INC.**

        By:   /s/Lewis F. Powell III
        Lewis F. Powell III (VSB No. 18266)
        John S. Martin (VSB No. 34618)
        Maya M. Eckstein (VSB No. 41413)
        Alexandra L. Klein (VSB No. 87711)
        HUNTON & WILLIAMS LLP
        Riverfront Plaza, East Tower
        951 East Byrd Street
        Richmond, Virginia 23219-4074
        Telephone: (804) 788-8200
        Facsimile: (804) 788-8218
        lpowell@hunton.com
        martinj@hunton.com
        meckstein@hunton.com
        aklein@hunton.com

        Glenn D. Pomerantz (pro hac vice)
        Ted Dane (pro hac vice)
        Kyle W. Mach (pro hac vice)
        Emily C. Curran-Huberty (pro hac vice)
        MUNGER, TOLLES & OLSON LLP
        355 S. Grand Avenue, 35th Floor
        Los Angeles, CA 90071
        Telephone: (213) 683-9132
        Facsimile: (213) 683-5161

        *Attorneys for Plaintiff*

        Marvin G. Pipkin
        Kortney Kloppe-Orton
        PIPKIN LAW
        10001 Reunion Place, Suite 6400
        San Antonio, TX 78216
        Telephone: (210) 731-6495
        Facsimile: (210) 293-2139

        *Of Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 12, 2018, I caused a copy of the foregoing to be electronically filed using the CM/ECF system, which will send notification to counsel of record of such filing by operation of the Court's electronic system. Parties may access this filing via the Court's electronic system.

By /s/Lewis F. Powell III
Lewis F. Powell III