UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| STEVES AND SONS, INC., )<br>)<br>        Plaintiff, )<br>)<br>v. )<br>)<br>JELD-WEN, INC., )<br>)<br>        Defendant. )<br>) | Civil Action No. 3:16-CV-00545-REP |

**DEFENDANT JELD-WEN, INC.'S RESPONSE TO THE COURT'S JANUARY 9, 2018, ORDER**

On January 9, 2018, the Court asked the parties to brief "the appropriate date for measuring the anticompetitive effects of an acquisition for purposes of antitrust liability, damages, and injunctive relief." Doc. No. 782. Two of those questions have easy answers, and JELD-WEN and Steves appear to agree in principle on them. Steves and Sons' Response to the Court's Jan. 9, 2018 Order ("Steves' Resp."), Doc. No. 814. A claim for damages under Section 4 of the Clayton Act can only be evaluated at the time of trial, looking backwards toward alleged past damages and both forwards and backwards in assessing alleged future damages (backwards to establish the injury from which those damages allegedly will flow, and forward toward the damages themselves). Similarly, whether to award injunctive relief is always evaluated by the court at the time the court is considering injunctive relief, looking forward.

As Steves recognizes, there is more controversy about the third question – whether abstract liability under Section 7 (the question of whether the effect of an acquisition "may be substantially to lessen competition") should be evaluated as of the time of the merger or as of the time of trial. Several of the leading cases suggest that it should be assessed at the time of trial,

including the Supreme Court's decisions in *U.S. v. Gen. Dynamics, Corp.*, 415 U.S. 486, 505 (1974), *and U.S. v. E.I. du Pont de Nemours & Co.*, 353 U.S. 586, 607 (1957). In the circumstances of this case, JELD-WEN agrees with Steves that the jury as trier of fact should look at liability as of the time of trial.

Steves misunderstands the consequences of those abstract principles for the trial of this case, however. Steves continues to press its misconception that "future lost profits" may be recovered as damages even though the injury supposedly causing those damages (Steves' predicted inability to obtain doorskins, and subsequent demise as a business) has not occurred and may never occur. And in this filing and recent hearings, Steves has suggested that its allegations concerning *past* effects of the merger will establish liability "with no further inquiry required," Steves Resp. at 3, and somehow permit this Court to exclude all evidence concerning the plans of foreign suppliers, and Steves itself, to enter these markets in the future. *Id*. at n.1.

Those suggestions are clearly wrong and would lead this Court into serious error, for several reasons. First, Steves' position that a showing of past anticompetitive effects is enough to establish Section 7 liability for a consummated merger with "with no further inquiry required" is contrary to established precedent. The jury must evaluate whether procompetitive effects or post-acquisition efficiencies outweigh any anticompetitive effects, and the impact of the inability of the target to offer effective competition, before Section 7 liability can be established. Second, evidence of potential or contemplated entry into the doorskin market, by Steves and others, is obviously relevant to the theories of liability and damages based on predicted *future* harms that Steves continues to pursue, as demonstrated in its proposed jury instructions. Third, that evidence also is probative of the existence of barriers to entry in the doorskin market in 2012, which is an important question for the jury to consider when evaluating Steves' claims of *past*

harm. Finally, these questions are quintessentially considerations for the jury, and there is no way procedurally to remove these considerations from the jury before trial.

I. **THE JURY MUST ASSESS STEVES' ENTITLEMENT TO DAMAGES AS OF THE TIME OF TRIAL—BUT STEVES CONTINUES TO MISSTATE THE SUBSTANTIVE REQUIREMENTS FOR RECOVERING DAMAGES**

JELD-WEN agrees with Steves that the time of trial is the right standpoint for the jury to evaluate whether Steves is entitled to money damages. But Steves' filing continues to betray important misunderstandings about what the substantive requirements for showing injury and damages are.

Steves once again revisits the notion that it can recover future damages for injuries it has not yet suffered. *See* Steves' Resp. at 5 ("A plaintiff seeking future lost profits damages need not show that, at the time of trial, it has already suffered such damages, but must show that it predictably will suffer such damages in the future, after trial, as a result of the anticompetitive effects of the merger.") (citations and internal quotations omitted). As the parties have extensively briefed, that is simply not the law. Steves would not be entitled to recover future damages based merely on a jury finding that the acquisition violates Section 7 because it is likely to cause future anticompetitive effects. In order to prove that it is entitled to future lost profits, Steves must show that anticompetitive effects have already occurred and that those effects have already caused it injury that will result in damages in the future. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 339 (1971) ("[I]f a plaintiff feels the adverse impact of an antitrust conspiracy on a particular date, a cause of action immediately accrues to him to recover all damages incurred by that date and all provable damages that will flow in the future *from the acts of the conspirators on that date*.") (emphasis added); *see also Transnor (Bermuda) Ltd v. BP N. Am. Petroleum*, 736 F. Supp. 511, 516 (S.D.N.Y. 1990) (holding that a plaintiff could not collect damages for an injury that had not yet happened); *SureShot Golf Ventures, Inc.*

3

*v. Topgolf, Int'l, Inc.*, No. H-17-127, 2017 U.S. Dist. LEXIS 135796 (S.D. Tex. Aug. 24, 2017) (dismissing as unripe plaintiff's claim for future damages stemming from an acquisition allegedly in violation of Section 7 of the Clayton Act because plaintiff had not yet suffered any injury that would give rise to those damages).

II. **TO OBTAIN INJUNCTIVE RELIEF UNDER SECTION 16 OF THE CLAYTON ACT, STEVES MUST ESTABLISH FUTURE ANTICOMPETITIVE EFFECTS**

Steves concedes that in order to obtain equitable relief such as divestiture, it must show future "threatened loss or damage" as measured from the time of trial. Steves' Resp. at 5. Of course that is correct. Indeed, *American Stores* allows divestiture only to prevent prospective anticompetitive effects that may cause loss or damage to the plaintiff in the future. *F.T.C. v. Mylan Laboratories*, 62 F. Supp. 2d 25, 41 (D.D.C. 1999) ("The divestiture order in *American Stores* was quintessentially forward-looking[.]"). Forward-looking equitable relief would not be warranted if future anticompetitive effects are unlikely, such as (for example) if the possibility of entry into these markets by Steves or others will restrain any anticompetitive effects going forward. Therefore, the evidence of efforts by Steves and others to sell doorskins to U.S. customers is directly relevant to Steves' ongoing claim that future anticompetitive effects are likely and would justify injunctive relief.

III. **LIABILITY SHOULD BE ASSESSED AT THE TIME OF TRIAL, BUT STEVES MISUNDERSTANDS WHAT PROOF OF LIABILITY UNDER SECTION 7 REQUIRES AND THE EVIDENCE THAT JELD-WEN WILL BE ENTITLED TO PRESENT**

JELD-WEN agrees that in this case, the jury must assess liability for a violation of Section 7 as of the time of trial. *Gen. Dynamics*, 415 U.S. 486. But Steves' Response includes two astonishing further claims: first, Steves argues that if it can make a showing that the acquisition resulted in past anticompetitive effects, such as an anticompetitive price increase, "antitrust liability is established with no further inquiry required." Steves' Resp. at 3. Second,

4

Steves appears to believe that if it can establish any past anticompetitive effects resulting from the acquisition, evidence of current and future attempts to enter the doorskin market by Steves and other suppliers are irrelevant in this case. *Id.* at n.1. Steves is wrong on both counts.

### A.  Past Anticompetitive Effects Alone Are Not Sufficient To Establish Section 7 Liability

Steves' assertion that past anticompetitive effects are determinative of liability is incorrect, for two reasons. First, it is not enough for Steves to show that the acquisition caused some adverse effect to itself—anticompetitive effects must be substantial, sustained, and market-wide rather than unique to the plaintiff's circumstances. *See, e.g., U.S. v. Atl. Richfield Co.*, 297 F. Supp. 1061, 1066 (S.D.N.Y. 1969) ("[T]here is no per se proscription against corporate mergers. The Statute is concerned only with those mergers which may have demonstrable and substantial anti-competitive effects.").

Second, no court has ever held Section 7 to be a strict liability statute pursuant to which liability can be established merely by a showing of an anticompetitive price increase. *See id*. Rather, before Section 7 liability can be established, the jury must evaluate the acquisition and the market holistically, including the procompetitive effects of the acquisition, post-acquisition efficiencies, and whether the target firm would have had the ability to remain an effective competitor absent the merger. *Federal Trade Commission (FTC) v. Univ. Health, Inc.*, 938 F.2d 1206, 1222 (11th Cir. 1991) ("evidence that a proposed acquisition would create significant efficiencies benefiting consumers is useful in evaluating the ultimate issue—the acquisition's overall effect on competition."); U.S. Dep't of Justice & Federal Trade Commission (FTC), *Horizontal Merger Guidelines*, §10 (Aug. 19, 2010), https://www.justice.gov/atr/horizontal-merger-guidelines-08192010#9 (last visited Jan. 15, 2018) (explaining that the government considers whether the efficiencies of an acquisition reduce the anticompetitive effects of the

acquisition and whether the acquisition would result in procompetitive benefits like increased innovation); *Gen. Dynamics*, 415 U.S. at 508 (affirming district court's finding of no Section 7 violation where target firm lacked sufficient reserves to compete effectively in the future). Steves' apparent belief that it can curtail this holistic review, and effectively take the case away from the jury, by establishing past anticompetitive effects (a belief repeated in its proposed jury instructions, *see, e.g.*, Steves' Proposed Jury Instructions, Doc. No. 801 at Instruction No. 41) is a clear invitation to reversible error.

### B. Evidence Of Potential Entry Is Relevant To Liability In This Case, Whether the Alleged Anticompetitive Effects Are Located In The Past Or In The Future

JELD-WEN and Steves also agree that in this case, the jury must assess liability for a violation of Section 7 as of the time of trial. *Gen. Dynamics*, 415 U.S. 486. But Steves appears to misunderstand what that means as a practical matter in a jury trial. Here, the jury must look both backwards and forwards from the point of trial in order to determine liability—and JELD-WEN's evidence concerning the ability of other companies to enter and serve this market is directly relevant both to Steves' forward-looking and backward-looking claims of harm to itself and to competition.

#### 1. Evidence Of Future Entry Is Relevant To Steves' Future Claims

First, and most obviously, Steves' highly-disputed claim that the merger has already inflicted damage upon it cannot render irrelevant evidence about what may happen in the future, including the prospects for new entry into this market, when Steves is still pursuing, both in addition and in the alternative, arguments that would base Section 7 liability on predicted effects in the future. Its own proposed jury instructions make this clear:

6

> In order to prevail on its Clayton Act Section 7 claim, Steves bears the burden of establishing *either* (1) that JELD-WEN's acquisition of Craftmaster has already substantially lessened competition in the relevant market, *or* (2) that it is likely to do so in the future. Steves need not establish both of these things, although it may do so. Section 7 prohibits mergers that have already substantially lessened competition at the time of the lawsuit, but it also prohibits mergers that are *likely* to do so in the future. *This requires you, the jury, to make a prediction, based on the evidence presented in this case, about what is likely to happen in the future*.

Doc. No. 801 at Instruction 36 (emphasis added and in original). Indeed, at this writing, the Court has not yet dismissed Steves' speculative claims for *damages* stemming from predicted anticompetitive effects in 2021 and beyond (though it should do so, under the controlling law). It is absurd, and invites a violation of due process, for Steves to argue that JELD-WEN should be limited entirely to backward-looking evidence when Steves and its experts clearly intend to offer evidence and predictions about the future themselves.

### 2. Evidence Of Future Entry Is Relevant To Steves' Allegations Of Past Anticompetitive Effects

Evidence of Steves' and other companies' current efforts to sell doorskins in the U.S. is also relevant to the issue of whether the acquisition was likely to cause anticompetitive effects in the years following the merger. This is because the appropriate question is not "did anyone enter?" but rather "could anyone have entered in response to supracompetitive prices following the merger?" *See, e.g.*, *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 119 n.15 (1986) (when evaluating a Section 7 claim, courts should consider barriers to entry during a period of supracompetitive profitability). Steves consistently ignores the requirement that entry is evaluated relative to a triggering event of meaningful supracompetitive pricing. It is not the case that entry is measured with a stopwatch from the time of the merger, without first having proved the existence of a period of supracompetitive pricing. *Id.* JELD-WEN will show at trial that, whatever Steves believes about alleged price increases after the merger, there were no supracompetitive price increases in this market, which was just beginning to recover from an

historic recession.  If there were no barriers to entry sufficient to prevent potential new entrants from entering the market at the time of the acquisition, then the acquisition could not be anticompetitive.  *Id.*; *U.S. v. Baker Hughes Inc.*, 908 F.2d 981, 987 ("In the absence of significant barriers, a company probably cannot maintain supracompetitive pricing for any length of time."); *Emigra Grp., LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP*, 612 F. Supp. 2d. 330, 362 (S.D.N.Y. 2009) ("Market power can persist only when entry barriers . . . block rivals' entry or expansion[]"); *see also U.S. v. Syufy Enters.*, 903 F.2d 659, 664 ("If there are no significant barriers to entry, however, eliminating competitors will not enable the survivors to reap a monopoly profit; any attempt to raise prices above the competitive level will lure into the market new competitors able and willing to offer their commercial goods or personal services for less.").  As the Second Circuit has noted in rejecting a claim of market power, "[w]e cannot be blinded by market share figures and ignore marketplace realities, such as the relative ease of competitive entry." *Tops Mkts, Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 99 (2d Cir. 1990).

In addition to showing that there has not been any period of supracompetitive pricing in the first place, JELD-WEN will show that entry was feasible in the years immediately following the acquisition, in part by demonstrating that entry is feasible now.  That evidence is relevant to the jury's evaluation of past anticompetitive effects because nothing has changed in the market since the acquisition except that demand for doorskins has improved—both because the housing market has recovered from an unprecedented recession and because Steves, the largest independent doorskin consumer in the U.S., is now actively sponsoring entry by offering its previously committed volume to other doorskin manufacturers and planning to build its own doorskin manufacturing plant.

The evidence that entry is possible, and presently under active consideration by other competitors and Steves itself, is powerfully relevant to whether any injury Steves claims to have suffered in the past was genuinely attributable to any harm to *competition* traceable to the merger. Steves agrees that evidence of recent efforts to enter the doorskin market is relevant to the jury's consideration of its claims. In its Proposed Jury Instructions, Steves asks the Court to instruct the jury that "Recent examples of entry, whether successful or unsuccessful . . . can be informative regarding the scale necessary for an entrant to be successful, the presence or absence of entry barriers, the factors that influence the timing of entry, the costs and risk associated with entry, and the sales opportunities realistically available to entrants." Doc. No. 801 at No. 46. Given the lack of change in general market structure, recent examples of entry are just as relevant to whether barriers to entry existed from 2012-2015 as they are to whether such barriers will exist in the future. Thus, even if the Court grants JELD-WEN's motion for summary judgment on lost profits (or Steves drops its forward looking claim) so that the case presented to the jury is backwards-looking only, the jury must still consider evidence of current entry.

### 3. Evidence Of Future Entry Must Be Evaluated By The Jury

Steves' request that the Court simply preclude evidence about its own and other suppliers' entry efforts also simply ignores the procedural posture of the case, and asks for the impossible. The questions about whether or not the CMI acquisition resulted in any anticompetitive effects, or is likely to do so in the future, are quintessentially questions for the jury. Steves will argue to the jury that JELD-WEN's behavior under the parties' mutual Supply Agreement reflects an effect on market-wide competition sufficient to violate Section 7. JELD-WEN will explain that in fact the CMI acquisition *aided* competitive conditions in the marketplace, that there were no supracompetitive price increases, and that its later contractual disputes with Steves had nothing to do with broader competitive conditions. As described above,

9

JELD-WEN will also show that Steves has always had access to other sources of supply, and that there were no meaningful barriers to entry that would have prevented other competitors from taking advantage of any sustained supracompetitive price increases by entering the market and defeating that increase. Of course Steves will disagree. But that is the heart of the dispute we are convening a jury to resolve.

It would be procedurally improper to prejudge that dispute or to take it away from the jury by excluding evidence of potential entry. This Court has already recognized that Rule 56 does not permit partial "summary judgment" by way of simply declaring discrete non-dispositive facts to be established. Nov. 21, 2017 Order, Doc. No. 575. Here, Steves contends that a proven past Section 7 violation renders any inquiry into future conditions irrelevant. As discussed above, that is not the law. But in any event, Steves' argument wrongly presumes that its own view of the facts has already been adjudicated and established. Whether there have actually been any past anticompetitive effects is hotly contested, and there will be no finding that any past anticompetitive effects have actually occurred until the jury renders its verdict. Therefore, the legal and factual predicate for Steves' argument that evidence of future entry is irrelevant could not be established at any point before the very conclusion of the trial, if ever. To exclude the substantial evidence of potential entry into the doorskin market because of Steves' *evidence* of past alleged anticompetitive effects would be tantamount to the type of summary judgment ruling that this Court has already rejected – and without even an assertion, much less a proper demonstration, that the facts are undisputed. The Court should not be led into reversible error by excluding evidence of current and future entry from the trial.

Dated: January 15, 2018

Respectfully submitted,

JELD-WEN, Inc.

By counsel

/s/Ryan T. Andrews
Ryan T. Andrews (VSB# 90519)
Margaret M. Zwisler *(pro hac vice)*
J. Scott Ballenger *(pro hac vice)*
Allyson M. Maltas *(pro hac vice)*
Latham & Watkins LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C., 20004
(202) 637-2200 – Tel.
(202) 637-2201 – Fax
margaret.zwisler@lw.com
scott.ballenger@lw.com
allyson.maltas@lw.com

Alfred C. Pfeiffer (*pro hac vice*)
Sarah M. Ray (*pro hac vice*)
Latham & Watkins LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600 – Tel.
(415) 395-8095 – Fax
al.pfeiffer@lw.com
sarah.ray@lw.com

Lawrence E. Buterman *(pro hac vice)*
Latham & Watkins LLP
885 Third Avenue
New York, NY 10022
(212) 906-1200 – Tel.
(212) 751-4864 – Fax
lawrence.buterman@lw.com

Michael W. Smith (VSB #01125)
Craig T. Merritt (VSB #20281)
Harrison M. Gates (VSB #80385)
R. Braxton Hill, IV (VSB # 41539)
Christian & Barton, L.L.P.
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
(804) 697-4100 –  Tel.

11

(804) 697-4112 – Fax
msmith@cblaw.com
cmerritt@cblaw.com
hgates@cblaw.com
bhill@cblaw.com

CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of January, 2018, I will electronically file a copy of the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the registered participants as identified on the NEF to receive electronic service, including:

>Lewis F. Powell III
>John S. Martin
>Alexandra L. Klein
>Maya M. Eckstein
>Paul T. Nyffeler
>Douglas M. Garron
>R. Dennis Fairbanks, Jr.
>Hunton & Williams LLP
>Riverfront Plaza, East Tower
>951 East Byrd Street
>Richmond, VA 23219
>(804) 788-8200 – Tel.
>(804) 788-8218 – Fax
>lpowell@hunton.com
>martinj@hunton.com
>aklein@hunton.com
>meckstein@hunton.com
>pnyffeler@hunton.com
>dgarrou@hunton.com
>dfairbanks@hunton.com
>
>Ted Dane
>Glenn Pomerantz
>Gregory Sergi
>Munger, Tolles & Olson LLP
>350 South Grand Avenue, 50th Floor
>Los Angeles, CA 90071
>(213) 683-9288 – Tel.
>(213) 683-4088 – Fax
>ted.dane@mto.com
>glenn.pomerantz@mto.com
>gregory.sergi@mto.com
>
>Kyle Mach
>Joshua Patashnik
>Emily C. Curran-Huberty

Munger, Tolles & Olson LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
(415) 512-4000 – Tel.
(415) 512-4077 – Fax
kyle.mach@mto.com
josh.patashnik@mto.com
emily.curran-huberty@mto.com

*Attorneys for Plaintiff*

Marvin G. Pipkin
Kortney Kloppe-Orton
Pipkin Law
10001 Reunion Place, Suite 6400
San Antonio, TX 78216
(210) 731-6495 – Tel.
(210) 293-2139 – Fax

*Of Counsel*

/s/Ryan T. Andrews
Ryan T. Andrews (VSB# 90519)
Margaret M. Zwisler *(pro hac vice)*
J. Scott Ballenger *(pro hac vice)*
Allyson M. Maltas *(pro hac vice)*
Latham & Watkins LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C., 20004
(202) 637-2200 – Tel.
(202) 637-2201 – Fax
margaret.zwisler@lw.com
scott.ballenger@lw.com
allyson.maltas@lw.com

Alfred C. Pfeiffer *(pro hac vice)*
Sarah M. Ray *(pro hac vice)*
Latham & Watkins LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600 – Tel.
(415) 395-8095 – Fax
al.pfeiffer@lw.com
sarah.ray@lw.com

Lawrence E. Buterman *(pro hac vice)*
Latham & Watkins LLP
885 Third Avenue
New York, NY 10022
(212) 906-1200 – Tel.
(212) 751-4864 – Fax
lawrence.buterman@lw.com

Michael W. Smith (VSB #01125)
Craig T. Merritt (VSB #20281)
Harrison M. Gates (VSB #80385)
R. Braxton Hill, IV (VSB # 41539)
Christian & Barton, L.L.P.
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
(804) 697-4100 –  Tel.
(804) 697-4112 – Fax
msmith@cblaw.com
cmerritt@cblaw.com
hgates@cblaw.com
bhill@cblaw.com

*Attorneys for Defendant*