# ATTACHMENT A – REDACTED FILED PUBLICALLY

## I.   JELD-WEN, INC.'S PROPOSED JURY INSTRUCTIONS

### JELD-WEN'S PROPOSED JURY INSTRUCTION NO. 1

### OVERVIEW OF CLAIMS

In Count 1 of its complaint, Plaintiff Steves & Sons asserts that Defendant JELD-WEN's acquisition of a different company, Craftmaster Manufacturing, violated Section 7 of the Clayton Antitrust Act.  Section 7 prohibits corporate mergers or acquisitions that are likely to substantially lessen competition or tend to create a monopoly in any relevant market.  JELD-WEN denies that its acquisition of Craftmater violated Section 7.  At the end of the trial, I will give you more detail about Section 7, and it will be your job to apply that law to the facts of this case.

In Count 2 of its complaint, Steves asserts that JELD-WEN breached a contract for the supply of doorskins, which we will refer to as the "Supply Agreement."  JELD-WEN denies that it breached this contract.

In Count 3 of its complaint, Steves asserts that JELD-WEN breached a warranty it made to Steves as part of the Supply Agreement.  JELD-WEN denies that it breached any such warranty.

## JELD-WEN'S PROPOSED JURY INSTRUCTION NO. 2

## ANTITRUST: CLAYTON ACT, SECTION 7

Section 7 of the Clayton Act provides that no corporation engaged in commerce shall acquire the whole or any part of the assets of another corporation also engaged in commerce where the effect of such acquisition may be to substantially lessen competition or to tend to create a monopoly.

Section 7 is directed toward the preservation of competition.  To find for Steves, you will have to determine by a preponderance of the evidence that JELD-WEN's acquisition of CMI in 2012 either has already created a reasonable probability that competition in the market for door skins has lessened substantially, or that within a reasonable time in the future, there may be a substantial lessening of competition.  If the acquisition does not pose a reasonably probable threat of a substantial lessening of competition, then Section 7 is not violated.

In order to assess whether JELD-WEN's acquisition of CMI may substantially lessen competition, or has already substantially lessened competition, you must first determine the "relevant market" in which to assess competition.  A relevant market has two aspects: (1) the product market and (2) the geographic market.  It is Steves' burden to prove the existence of a relevant market.

Authority:      15 U.S.C. § 18 (2018); *U.S. v. General Dynamics*, 415 U.S. 486, 506-08 (1974).

**JELD-WEN'S PROPOSED JURY INSTRUCTION NO. 3\***

**ANTITRUST: THE RELEVANT PRODUCT MARKET**

The basic idea of a relevant product market is that the products within it are reasonable substitutes for each other from the buyer's point of view; that is, the products compete with each other. In other words, the relevant product market includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes for each other. This is a practical test with reference to the actual behavior of buyers and marketing efforts of sellers. Products need not be identical or precisely interchangeable as long as they are reasonable substitutes. Thus, for example, if consumers seeking to cover leftover food for storage considered certain types of flexible wrapping material—such as aluminum foil, cellophane, or even plastic containers—to be reasonable alternatives, then all of those products would be in the same relevant product market.

To determine whether products are reasonable substitutes for each other, you must consider whether a small but significant and non-transitory increase in the price of one product would result in enough customers switching from that product to another product, such that the price increase would not be profitable. In other words, will customers accept the price increase or will so many switch to alternative products that the price increase will be withdrawn? Generally speaking, a small but significant and non-transitory increase in price is approximately a 5 percent increase in price not due to cost factors. If you find that customers would switch and that the price increase would not be profitable, then you must conclude that the products are in the product market. If, on the other hand, you find that customers would not switch, then you must conclude that the products are not in the product market.

**In evaluating whether various products are reasonably interchangeable or reasonable substitutes for each other under the price increase test I have just given you, you may also consider:**

- **Consumers' views on whether the products are interchangeable;**

- **The relationship between the price of one product and sales of another;**

- **The presence or absence of specialized vendors;**

- **The perceptions of either industry or the public as to whether the products are in separate markets;**

- **The views of Steves and JELD-WEN regarding who their respective competitors are; and**

- **The existence or absence of different customer groups or distribution channels.**

In this case, Steves contends that the relevant product market is "interior molded doorskins." JELD-WEN contends that Steves has failed to describe a proper relevant product market. JELD-WEN contends that Steves' proposed relevant product market is too narrow because Steves' product market definition is limited to the exact bundle of doorskin designs that Steves purchases from JELD-WEN, without reference to other doorskin designs from JELD-WEN or other suppliers that customers other than Steves can and do purchase. JELD-WEN also contends that Steves' definition of the relevant product market is too broad because it assumes that every doorskin design in JELD-WEN's line is interchangeable with every other design.


Authority:    *Model Jury Instructions in Civil Antitrust Cases*, 108-09 (Am. Bar Ass'n 2016).

\* Bolded language taken from model instructions except that it includes the names of the parties and other case-specific information from this action.

4

## JELD-WEN'S PROPOSED JURY INSTRUCTION NO. 4*

## ANTITRUST: THE RELEVANT GEOGRAPHIC MARKET

**The relevant geographic market is the area in which JELD-WEN faces competition from other firms that compete in the relevant product market and to which customers like Steves can reasonably turn for purchases.  When analyzing the relevant geographic markets, you should consider whether changes in prices or product offerings in one geographic area have substantial effects on prices or sales in another geographic area, which would tend to show that both areas are in the same relevant geographic market.  The geographic market may be as large as global or nationwide, or as small as a single town or neighborhood**.

**Steves has the burden of proving the relevant geographic market by a preponderance of the evidence.**  In this case Steves contends that the relevant geographic market is the United States.  JELD-WEN contends that Steves has not proposed a proper relevant geographic market, and that Steves' proposed geographic market is too narrow, because it does not take into account the full range of sources of supply of doorskins sold or capable of being sold in the United States if the supplier is located outside the United States.


Authority:        *Model Jury Instructions in Civil Antitrust Cases*, 113-14 (Am. Bar Ass'n 2016).

* Bolded language taken from model instructions except that it includes the names of the parties and other case-specific information from this action.

### JELD-WEN'S PROPOSED JURY INSTRUCTION NO. 5

### ANTITRUST: FACTORS TO CONSIDER IN DETERMINING LEGALITY OF ACQUISITION

In considering whether JELD-WEN's acquisition of CMI may substantially lessen competition or has already substantially lessened competition in the relevant market, your determination must be made in light of several factors.

First, market concentration is one indicator of likely competitive effects of an acquisition. The concentration in a market refers to the number of companies selling a product and their respective percentages of sales.  In evaluating market concentration, it is important to consider both the level of market concentration after the acquisition as well as the change in concentration that resulted from the acquisition.

However, market concentration alone is not determinative of the legality of an acquisition, and it may not fully reflect the competitive significance of firms in the market or the impact of an acquisition.  Accordingly, even if you find that the acquisition has resulted in a significant increase in concentration in the relevant market, the acquisition may still not violate the antitrust laws if you find that real-world evidence indicates that the market share statistics do not give a completely accurate account of the acquisition's probable effects on competition.   Such evidence of the "structure, history and probable future" of the doorskin industry includes:

(1) the ability of existing or new domestic or foreign competitors to timely and sufficiently enter or expand their presence in the doorskins market in order to deter or counteract any anticompetitive effects of the merger; and

(2) that the market has not experienced any actual anticompetitive effects caused by the acquisition, such as increased prices, reduced output or reduced quality; and

(3) the efficiencies or benefits that will or have resulted from the acquisition. Such efficiencies include increased incentives and abilities to compete, which may result in lower prices, improved quality, enhanced products or services or the development of new products. However, you should only consider those efficiencies that are likely to be accomplished, or that have been accomplished because of the acquisition, and you should disregard efficiencies that could be accomplished or that have been accomplished irrespective of the acquisition.

A mere possibility that JELD-WEN's acquisition of CMI might result in a substantial lessening of competition is not sufficient. Steves must prove that there is a reasonable probability that JELD-WEN's acquisition of CMI will cause or has caused a substantial lessening of competition. This concept of reasonable probability requires you to consider both how likely it is that the acquisition will lessen or has already substantially lessened competition.

If you find that the preponderance of the evidence is sufficient to prove that the acquisition may result or has resulted in a substantial lessening of competition, then you must find for Steves and against JELD-WEN on this claim. If you find that the evidence is insufficient to prove that the acquisition may result or has resulted in a substantial lessening of competition, then you must find for JELD-WEN and against Steves on this claim.

Authority:   *U.S. v. General Dynamics*, 415 U.S. 486, 506-08 (1974); *U.S. v. Syufy Enters.*, 903 F.2d 659, 656-66 (9th Cir. 1990); *NBO Indus. Treadway Cos. v. Brunswick Corp.*, 523 F.2d 262 (3d Cir. 1975), *vacated on other grounds, Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977)

**JELD-WEN'S PROPOSED JURY INSTRUCTION NO. 6\***

**ANTITRUST: PROOF OF INJURY AND CAUSATION**

If you find that JELD-WEN's 2012 acquisition of CMI violated Section 7 of the Clayton Act, then you must decide if Steves is entitled to recover damages from JELD-WEN.

Steves is entitled to recover damages for an injury to its business of property if it can establish three elements of injury and causation:

(1) Steves was in fact injured as a result of JELD-WEN's 2012 acquisition of CMI;

(2) JELD-WEN's 2012 acquisition of CMI was a material cause of Steves' injury; and

(3) Steves' injury is an injury of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact" or "fact of damage." For Steves to establish that it is entitled to recover damages, it must prove that as a result of JELD-WEN's 2012 acquisition of CMI, it paid higher prices than it would have paid, or received lower quality doorskins than it would have received, had that acquisition not taken place. **Proving the fact of damage does not require Steves to prove the dollar values of its injury. It requires only that Steves prove that it was in fact injured by the alleged antitrust violation. If you find that Steves has established that it was in fact injured, you may then consider the amount of Steves' damages. It is important to understand, however, that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded that Steves has established that it was in fact injured** because it paid a price higher than it would have paid, or received doorskins of lower quality that it would have received, if JELD-WEN had not acquired CMI .

8

Steves must also offer evidence that establishes by a preponderance of the evidence that JELD-WEN's 2012 acquisition of CMI was a material cause of Steves' injury.  This means that Steves must have proved that some damage occurred to it as a result of the alleged antitrust violation, and not some other cause.  Steves is not required to prove that the alleged antitrust violation was the sole cause of its injury; nor need Steves eliminate all other possible causes of injury.  It is enough if it has proved that JELD-WEN's 2012 acquisition of CMI was a material cause of its injury.

Finally, Steves must establish that its injury is the type of injury that the antitrust laws were intended to prevent.  This is sometimes referred to as "antitrust injury." To be antitrust injury, a financial loss must coincide with and reflect a broader harm to the public and the market of the sort that the antitrust laws were enacted to prevent.  A breach of purely private obligations, such as those created by a contract between the parties, does not by itself establish an antitrust injury.

You should bear in mind that businesses may incur losses for many reasons that the antitrust laws are not designed to prohibit or protect against—such as where a competitor offers better products or services, or where a competitor is more efficient and can charge lower prices and still earn a profit.  The antitrust laws do not permit a plaintiff to recover damages for losses that were caused by the competitive process or conduct that benefits consumers.

In summary, if Steves can establish that it was in fact injured by JELD-WEN's 2012 acquisition of CMI, that the 2012 acquisition of CMI was a material cause of Steves' injury, and that Steves' injury was the type that the antitrust laws were intended to prevent, then Steves is entitled to recover damages for the injury to its business or property.

9

Authorities:   *Model Jury Instructions in Civil Antitrust Cases*, 300-02 (Am. Bar Ass'n 2016) (modified instruction); Phillip E. Areeda (late) & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application*, ¶337 (3rd & 4th eds. 2010-2017).

\* Bolded language taken from model instructions except that it includes the names of the parties and other case-specific information from this action.

**JELD-WEN'S PROPOSED JURY INSTRUCTION NO. 7***

**ANTITRUST DAMAGES – INTRODUCTION AND PURPOSE**

**If you find that JELD-WEN's 2012 acquisition of CMI violated the antitrust laws and that this violation caused injury to Steves, then you must determine the amount of damages, if any, Steves is entitled to recover.  The fact that I am giving you instructions concerning the issue of Steves' damages does not mean that I believe that Steves should, or should not, prevail in this case.  If you reach a verdict for JELD-WEN on the issue of liability, you should not consider the issue of damages, and you may disregard the damages instructions that I am about to give.**

**The law provides that Steves should be fairly compensated for all damages to its business or property that were a direct result or likely consequence of the conduct that you have found to be unlawful.**

**Antitrust damages are only compensatory, meaning their purpose is to put an injured plaintiff as near as possible in the position in which it would have been if the alleged antitrust violation had not occurred.  The law does not permit you to award damages to punish a wrongdoer—what we sometimes refer to as punitive damages—or to deter particular conduct in the future.  Furthermore, you are not permitted to award to Steves an amount for attorneys' fees or the costs of maintaining this lawsuit.**

Authority:     *Model Jury Instructions in Civil Antitrust Cases*, 304-05 (Am. Bar Ass'n 2016).

\* Bolded language taken from model instructions except that it includes the names of the parties and other case-specific information from this action.

11

## JELD-WEN'S PROPOSED JURY INSTRUCTION NO. 8*

### ANTITRUST DAMAGES – BASIS FOR CALCULATING DAMAGES

**You are permitted to make just and reasonable estimates in calculating damages. You are not required to calculate damages with mathematical certainty or precision. However, the amount of damages must have a reasonable basis in the evidence and must be based on reasonable, non-speculative assumptions and estimates.  Damages may not be based on guesswork or speculation.  Steves must prove the reasonableness of each of the assumptions upon which the damages calculation is based.**

**If you find that Steves has provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence**.

**If you find that Steves has failed to carry its burden of providing a reasonable basis for determining damages, then you may not award damages, or you may award nominal damages, not to exceed one dollar**.

Authority:     *Model Jury Instructions in Civil Antitrust Cases*, 307-09 (Am. Bar Ass'n 2016).

* Bolded language taken from model instructions except that it includes the names of the parties and other case-specific information from this action.

## JELD-WEN'S PROPOSED JURY INSTRUCTION NO. 9*

### ANTITRUST: FUTURE LOST PROFITS[1]

Steves claims that it may be harmed in the future because JELD-WEN's alleged antitrust

violation ███████████████████████████████████████████████████████████████

█████████████████   In asserting this claim for damages, Steves contends that when the parties' ██████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████   **. If you find that JELD-WEN committed an antitrust violation and that this**

**violation caused injury to Steves,** you may consider now this claim for future profits, if any, that

Steves lost as a result of the alleged antitrust violations.

**To calculate future lost profits, you must make a reasonable estimate of (1) the**

**amount of profits, if any, that Steves would have earned in the future years, and (2) the length**

**of time for which it would have earned those profits.  In making this calculation, you are not**

**required to calculate future lost profits with absolute mathematical certainty or precision,**

**but you must not engage in guesswork or speculation.  In making this determination, you**

**must consider the various factors that could affect the future success of Steves; business, such**

**as general market or economic conditions**, availability of doorskin supply to Steves from

domestic or foreign suppliers, or Steves' own doorskin manufacturing facility, **lawful competition**

---

[1]      JELD-WEN's inclusion of instructions related to Steves' future lost profits claims is conditioned on the Court' decision on JELD-WEN's request for summary judgment on those claims.

Steves would face in the future, Steves' management or business, changes in technology, or other business conditions, and other factors affecting Steves' future performance.

Your determination of future lost profits must have a reasonable basis in the evidence and cannot be speculative.  If there is no evidence from which you can make a reasonable estimate of lost future profits, you may not award damages for lost future profits.

In calculating future lost profits, you must calculate net profit.  In simple terms, net profit is gross revenues minus all of the costs and expenses that would be necessary to produce those revenues.

If you award damages for future lost profits, you must discount the amount to its present value, using a discount rate of interest that you find reasonable.  This is because the right to receive a certain sum of money at a future date is worth less than the same amount of money in hand today—this is known as the time value of money.  For example, if you had a choice to receive $1000 today or a year from now, you would be better off receiving the money today and earning interest on it for a year—you would then have something more than $1000 in a year from now.  Similarly, if you had a right to $1000 a year from now and you asked for the money today, the person owing you the money a year from now could properly give you a lower amount, reflecting the value that could be earned on that money over the next year.  This lower amount if know as an amount discounted to present value.

Authority:      *Model Jury Instructions in Civil Antitrust Cases*, 317-18 (Am. Bar Ass'n 2016) (modified instruction).

* Bolded language taken from model instructions except that it includes the names of the parties and other case-specific information from this action.

## JELD-WEN'S PROPOSED JURY INSTRUCTION NO. 10*

## ANTITRUST: MITIGATION OF DAMAGES

Steves may not recover damages for any portion of its injuries that it could have avoided through the exercise of reasonable care and prudence.  Steves is not entitled to increase any damages through inaction.  The law requires an injured party to take all reasonable steps it can to avoid further injury and thereby reduce its loss.  If Steves failed to take reasonable steps available to it, and the failure to take those steps resulted in greater harm to Steves than it would have suffered had it taken those steps, then Steves may not recover any damages for that part of the injury it could have avoided.

JELD-WEN has the burden of proof on this issue.  JELD-WEN must prove by a preponderance of the evidence that Steves:

(1) acted unreasonably in failing to take specific steps to minimize or limit its losses;

(2) that the failure to take those steps resulted in its losses being greater than they would have been had it taken such steps; and

(3) the amount by which Steves' loss would have been reduced had Steves taken those steps.

In determining whether Steves failed to take reasonable measures to limit its damages, you must remember that the law does not require Steves to take every conceivable step that might reduce its damages.  The evidence must show that Steves failed to take commercially reasonable measures that were open to it.  Commercially reasonable measures mean those measures that a prudent businessperson in Steves' position would likely have adopted, given the circumstances as they appeared at the time.  Steves should be given wide

**latitude in deciding how to handle the situation, so long as what plaintiff did was not unreasonable in the light of existing circumstances.**

Authority:      *Model Jury Instructions in Civil Antitrust Cases*, 324-25 (Am. Bar Ass'n 2016).

\* Bolded language taken from model instructions except that it includes the names of the parties and other case-specific information from this action.

16

**JELD-WEN'S PROPOSED JURY INSTRUCTION NO. 11\***

**BREACH OF CONTRACT: CONTRACT FORMATION**

A contract is a legally binding agreement between two or more parties.  Each party to the contract must perform according to the agreement's terms.  A party's failure to perform a contractual duty constitutes breach of contract.  If a party breaches the contract and that breach causes injury or loss to another party, then the injured party may claim damages.

In this case, Steves alleges that JELD-WEN committed four separate breaches of the 2012 Supply Agreement.  JELD-WEN disputes each claim.

(1) ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

█████████████████████

███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████

    ██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████ Steves alleges that JELD-

WEN breached Section 8 by shipping defective doorskins to Steves, and failing to reimburse

Steves for defective doorskins.  JELD-WEN denies that it breached Section 8 of the Agreement

because it inspected Steves' claims for defective doorskins, reimbursed Steves for verified claims,

and only denied claims for doorskins that were either not defective or the damage to the doorskins

was not caused by JELD-WEN.

    (4) Section 8 of the Agreement also provides that ███████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████.

    To assess Steves' claims, **you must first determine from a preponderance of the
evidence whether a legally binding contract was formed between Steves and JELD-WEN** as
to each of these provisions.

    **For a legally binding contract to exist, there must be:**

18

**(1)  an offer of a contract by one party;**

**(2)  an acceptance of that offer by the other party;**

**(3)  consideration for the offer and acceptance; and**

**(4)  sufficiently specific terms that determine the obligations of each party.**

**A legally binding contract requires that the parties manifest or show mutual assent to the contract's terms.  Mutual assent is not a subjective or personal understanding of the terms by either party.  Rather, mutual assent must be shown by words or acts of the parties in a way that represents a mutually understood intent.**  Without mutual assent, there is no binding contractual obligation.


Authority:      Del. P.J.I. Civ. §§ 19.1-19.2 (2000) (modified instruction).

* Bolded language taken from model instructions except that it includes the names of the parties and other case-specific information from this action.

19

## JELD-WEN'S PROPOSED JURY INSTRUCTION NO. 12*

## BREACH OF CONTRACT: CONSTRUCTION OF AMBIGUOUS TERMS

To assess Steves' claims you may also need to consider the meaning of any relevant contractual terms that appear ambiguous or unclear.  **There are certain rules to consider in interpreting contractual terms that appear ambiguous or unclear.**

First, **if the contract's language is susceptible of two constructions, one of which makes it a fair, customary, and reasonable contract that a prudent person would make, while the second interpretation makes the contract inequitable, unusual, or one that a prudent person would likely not make, the first interpretation must be preferred.**

Second, **to determine the parties' intent when there are ambiguous terms, you must look to the construction given to the terms by the parties as shown through their conduct during the period after the contract allegedly became effective and before the institution of this lawsuit.  The parties' conduct after a contract is made should be given great weight in determining its meaning.**

**Finally, explanatory circumstances existing when the contract was allegedly made may be considered in order to determine the parties' probable intent.**

Authority:      Del. P.J.I. Civ. § 19.15 (2000) (modified instruction).

* Bolded language taken from model instructions except that it includes the names of the parties and other case-specific information from this action.

20

## JELD-WEN'S PROPOSED JURY INSTRUCTION NO. 13*

## BREACH OF CONTRACT: RECOVERY

**If you find that Steves was a party to the contract at issue, Steves would be entitled to recover damages from JELD-WEN for any breach of the contract. To establish that JELD-WEN is liable to Steves for breach of contract, Steves must prove that JELD-WEN has not performed one or more terms of Steves' contract with JELD-WEN and that Steves has sustained damages as a result of JELD-WEN's failure to perform.**

Authority:      Del. P.J.I. Civ. § 19.20 (2000).

* Bolded language taken from model instructions except that it includes the names of the parties and other case-specific information from this action.

21

## JELD-WEN'S PROPOSED JURY INSTRUCTION NO. 14*

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

**In every contract for the sale of goods, there is an implied promise that the goods are merchantable.  In order to be merchantable, the goods must:**

**(1) pass without objection in the trade under the contract description; and**

**(2) be fit for the ordinary purposes for which the goods are used; and**

**(3) be within the variations permitted by the contract, of even kind, quality, and quantity within each unit and among all units involved; and**

**(4) be adequately contained, packaged, and labeled as the contract requires; and**

**(5) conform to the factual promises or affirmations, if any, made on the container or label.**

**If you find that any one of the above elements did not exist for certain of the doorskins sold by JELD-WEN pursuant to the 2012 Supply Agreement, then you must find that JELD-WEN breached its implied promise that the goods would be merchantable.**

Authority:     Del. P.J.I. Civ. § 9.16 (2000).

* Bolded language taken from model instructions except that it includes the names of the parties and other case-specific information from this action.

22

## JELD-WEN'S PROPOSED JURY INSTRUCTION NO. 15*

## USE OF PRODUCT AFTER DEFECT IS KNOWN TO PLAINTIFF

If a buyer of a product, after accepting it, discovers a defect that substantially impairs its value, the buyer may seek relief by promptly revoking acceptance of the goods and demanding either a refund of the purchase price or the prompt cure of the defect by replacement or repair. But if the buyer continues to use the product without giving the seller reasonable opportunity to cure the defect or refund the purchase price, then the buyer may not revoke acceptance of the product.

A buyer is permitted, however, to work with a seller in attempting to have the defect repaired but may still revoke acceptance within a reasonable time if there is not a satisfactory cure of the defect. You must determine if acceptance has been revoked within a reasonable time under the circumstances.

If you find that Steves continued to incorporate doorskins into doors that it assembled and sold and did not give JELD-WEN adequate opportunity to repair or replace the doorskins, then you must return a verdict for JELD-WEN. If you find that the defect in doorskins substantially impaired its value to Steves and that Steves gave JELD-WEN reasonable opportunity to repair or replace the doorskins or return the purchase price before Steves continued to use it, then you must return a verdict for Steves.

The value of a product is substantially impaired when a defect substantially interferes with the normal operation or enjoyment of a product or the normal purpose for which it was bought. Mere annoyance over minor defects that do not inhibit the normal, intended use of the product is not a substantial impairment. But the cumulative effect of minor defects, none

23

**of which by itself would substantially impair value, can be sufficient cause to justify revocation of acceptance**.

<u>Authority</u>:        Del. P.J.I. Civ. § 9.23 (2000).

\* Bolded language taken from model instructions except that it includes the names of the parties and other case-specific information from this action.

**JELD-WEN'S PROPOSED JURY INSTRUCTION NO. 16\***

**REQUIREMENT OF NOTIFICATION OF BREACH -- COMMERCIAL SALES**

**To recover for a breach of warranty, Steves must notify JELD-WEN of the breach within a reasonable time after it discovers or should have discovered the breach. A buyer notifies a seller by taking reasonable steps to inform the seller under ordinary circumstances, regardless of whether the seller actually comes to know of the alleged breach. No particular words or forms are required. Notice need not be written. Conversations, conferences, and correspondence that call JELD-WEN's attention to the defect in the product can constitute notice of JELD-WEN's breach**.

Authority:      Del. P.J.I. Civ. § 9.24 (2000).

\* Bolded language taken from model instructions except that it includes the names of the parties and other case-specific information from this action.

25

**<u>JELD-WEN'S PROPOSED JURY INSTRUCTION NO. 17\*</u>**

**BREACH OF CONTRACT - DAMAGES**

**If you find that one party committed a breach of contract, the other party is entitled to compensation in an amount that will place it in the same position it would have been in if the contract had been properly performed.  The measure of damages is the loss actually sustained as a result of the breach of contract.**

**The fact that I have instructed you about the proper measure of damages should not be considered as my suggesting which party is entitled to your verdict in this case. Instructions about the measure of damages are given for your guidance only if you find that a damages award is in order.**

<u>Authority</u>:      Del. P.J.I. Civ. §§ 22.24, 22.28 (2000).

\* Bolded language taken from model instructions except that it includes the names of the parties and other case-specific information from this action.

_____

Robert E. Payne
United States District Judge

26