# EXHIBIT D

## EXHIBIT D

## JELD-WEN'S REVISED PROPOSED JURY INSTRUCTIONS

JELD-WEN requests that the Court give the following instruction in place of Steves' Revised Proposed Jury Instruction No. 14.

## JELD-WEN'S REVISED PROPOSED JURY INSTRUCTION NO. 14

### IMPEACHMENT BY PRIOR SWORN STATEMENT

A deposition is a sworn statement made out of court but under oath.  The testimony of a witness can be discredited or impeached by showing that a witness made statements earlier which are different or are inconsistent with what the witness testified to in Court.  Imagine I came to Court and testified that a traffic light was red, and at some earlier time I was deposed or wrote a letter, and I said the light was green.  You can consider my previous statement that the light was green in evaluating whether you accept my testimony here in Court that the light was red.

Authority: Jury Instructions of the Court, *Samsung Electronics Co., Ltd. v. NVIDIA Corp.*, No. 3:14-cv-00757-REP-DJN (E.D. Va. April 15, 2016) (Payne, J.), ECF No. 791.

JELD-WEN requests that the Court give the following Instruction in place of Steves' Revised Proposed Jury Instruction No. 20.

### JELD-WEN'S REVISED PROPOSED JURY INSTRUCTION NO. 20

### CLAIMS

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations. You must decide the following main issues:

(1) Whether Steves has proved by a preponderance of the evidence that JELD-WEN's 2012 acquisition of CMI may substantially lessen competition, or has already substantially lessened competition, in the relevant market.

(2) Whether Steves has proved by a preponderance of the evidence that JELD-WEN's 2012 acquisition of CMI has injured Steves in its business and property.

(3) The amount of damages that JELD-WEN caused to Steves as a result of JELD-WEN's 2012 acquisition of CMI if you find that Steves has proved both of these elements by a preponderance of the evidence.

(4) Whether Steves has proved by a preponderance of the evidence that JELD-WEN breached the 2012 Supply Agreement between the parties by overcharging Steves for the price of doorskins that JELD-WEN sold to Steves.

(5) Whether Steves has proved by a preponderance of the evidence that JELD-WEN breached the 2012 Supply Agreement between the parties by refusing to sell Madison and Monroe doorskins to Steves at the prices that the Agreement requires, if any.

(6) Whether Steves has proved by a preponderance of the evidence that JELD-WEN breached the 2012 Supply Agreement between the parties by selling defective doorskins and failing to reimburse Steves for those defective doorskins.

(7)  Whether Steves has proved by a preponderance of the evidence that JELD-WEN breached the 2012 Supply Agreement between the parties by failing to reimburse Steves for the full cost of doors incorporating defective JELD-WEN doorskins that Steves sold and that were returned by customers.

(8)  Whether Steves has proved by a preponderance of the evidence that JELD-WEN breached the implied warranty of merchantability present in the 2012 Supply Agreement by selling defective doorskins and refusing to reimburse for those doorskins and the doors in which they were incorporated.

(9)  The amount of damages owing to Steves, if any, if you find that it has proved any or all of its contract and warranty claims by a preponderance of the evidence.

Authority: Jury Instructions of the Court, *Samsung Electronics Co., Ltd. v. NVIDIA Corp.*, No. 3:14-cv-00757-REP-DJN (E.D.Va. April 15, 2016) (Payne, J.), ECF No. 791.

JELD-WEN requests that the Court give the following Instruction in place of Steves' Revised Proposed Jury Instruction No. 21.

## JELD-WEN'S REVISED PROPOSED JURY INSTRUCTION NO. 21

### BURDEN OF PROOF

This is a civil case. The plaintiff has the burden of proving his case by what is called the preponderance of the evidence. That means the plaintiff has to produce evidence which, considered in the light of all the facts, leads you to believe that what the plaintiff claims is more likely true than not. To put it differently, if you were to put the plaintiff's and the defendant's evidence on opposite sides of the scales, the plaintiff would have to make the scales tip somewhat on his side. If the plaintiff fails to meet this burden, the verdict must be for the defendant.

Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt. That requirement does not apply to a civil case; therefore, you should put it out of your mind.

Authority: Benchbook Comm., Fed. Judicial Ctr., Benchbook for U.S. District Judges § 6.06, at 216 (6th ed. 2013).

JELD-WEN requests that the Court give the following Instruction in place of Steves' Revised Proposed Jury Instruction No. 22.

### JELD-WEN'S REVISED PROPOSED JURY INSTRUCTION NO. 22

### ANTITRUST: CLAYTON ACT, SECTION 7

Section 7 of the Clayton Act provides that no corporation engaged in commerce shall acquire the whole or any part of the assets of another corporation also engaged in commerce where the effect of such acquisition may be to substantially lessen competition or to tend to create a monopoly.

Section 7 is directed toward the preservation of competition.  To find for Steves, you will have to determine by a preponderance of the evidence that JELD-WEN's acquisition of CMI in 2012 either has already created a reasonable probability that competition in the market for door skins has lessened substantially, or that within a reasonable time in the future, there may be a substantial lessening of competition.  If the acquisition does not pose a reasonably probable threat of a substantial lessening of competition, then Section 7 is not violated.

In order to assess whether JELD-WEN's acquisition of CMI may substantially lessen competition, or has already substantially lessened competition, you must first determine the "relevant market" in which to assess competition.  A relevant market has two aspects: (1) the product market and (2) the geographic market.  It is Steves' burden to prove the existence of a relevant market.

Authority:      15 U.S.C. § 18 (2018); *U.S. v. General Dynamics*, 415 U.S. 486, 506-08 (1974).

JELD-WEN requests that the Court give the following Instruction, along with JELD-WEN's Revised Proposed Jury Instruction No. 24, in place of Steves' Revised Proposed Jury Instruction No. 23.

### JELD-WEN'S REVISED PROPOSED JURY INSTRUCTION NO. 23*

### ANTITRUST: THE RELEVANT PRODUCT MARKET

The basic idea of a relevant product market is that the products within it are reasonable substitutes for each other from the buyer's point of view; that is, the products compete with each other. In other words, the relevant product market includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes for each other. This is a practical test with reference to the actual behavior of buyers and marketing efforts of sellers. Products need not be identical or precisely interchangeable as long as they are reasonable substitutes. Thus, for example, if consumers seeking to cover leftover food for storage considered certain types of flexible wrapping material—such as aluminum foil, cellophane, or even plastic containers—to be reasonable alternatives, then all of those products would be in the same relevant product market.

To determine whether products are reasonable substitutes for each other, you must consider whether a small but significant and non-transitory increase in the price of one product would result in enough customers switching from that product to another product, such that the price increase would not be profitable. In other words, will customers accept the price increase or will so many switch to alternative products that the price increase will be withdrawn? Generally speaking, a small but significant and non-transitory increase in price is approximately a 5 percent increase in price not due to cost factors. If you find that customers would switch and that the price increase would not be profitable, then you must conclude that the products are in the product market. If, on the other hand, you find that

customers would not switch, then you must conclude that the products are not in the product market.

In evaluating whether various products are reasonably interchangeable or reasonable substitutes for each other under the price increase test I have just given you, you may also consider:

- Consumers' views on whether the products are interchangeable;

- The relationship between the price of one product and sales of another;

- The presence or absence of specialized vendors;

- The perceptions of either industry or the public as to whether the products are in separate markets;

- The views of Steves and JELD-WEN regarding who their respective competitors are; and

- The existence or absence of different customer groups or distribution channels.

In this case, Steves contends that the relevant product market is "interior molded doorskins." JELD-WEN contends that Steves has failed to describe a proper relevant product market. JELD-WEN contends that Steves' proposed relevant product market is too narrow because Steves' product market definition is limited to the exact bundle of doorskin designs that Steves purchases from JELD-WEN, without reference to other doorskin designs from JELD-WEN or other suppliers that customers other than Steves can and do purchase. JELD-WEN also contends that Steves' definition of the relevant product market is too broad because it assumes that every doorskin design in JELD-WEN's line is interchangeable with every other design.

Authority:     *Model Jury Instructions in Civil Antitrust Cases*, 108-09 (Am. Bar Ass'n 2016).

\* Bolded language taken from model instructions except that it includes the names of the parties and other case-specific information from this action.

JELD-WEN requests that the Court give the following Instruction, along with JELD-WEN's Revised Proposed Jury Instruction No. 23, in place of Steves' Revised Proposed Jury Instruction No. 23.

## JELD-WEN'S REVISED PROPOSED JURY INSTRUCTION NO. 24*

### ANTITRUST: THE RELEVANT GEOGRAPHIC MARKET

**The relevant geographic market is the area in which JELD-WEN faces competition from other firms that compete in the relevant product market and to which customers like Steves can reasonably turn for purchases. When analyzing the relevant geographic markets, you should consider whether changes in prices or product offerings in one geographic area have substantial effects on prices or sales in another geographic area, which would tend to show that both areas are in the same relevant geographic market. The geographic market may be as large as global or nationwide, or as small as a single town or neighborhood.**

**Steves has the burden of proving the relevant geographic market by a preponderance of the evidence.** In this case Steves contends that the relevant geographic market is the United States. JELD-WEN contends that Steves has not proposed a proper relevant geographic market, and that Steves' proposed geographic market is too narrow, because it does not take into account the full range of sources of supply of doorskins sold or capable of being sold in the United States if the supplier is located outside the United States.

Authority:     *Model Jury Instructions in Civil Antitrust Cases*, 113-14 (Am. Bar Ass'n 2016).

* Bolded language taken from model instructions except that it includes the names of the parties and other case-specific information from this action.

JELD-WEN requests that the Court give the following Instruction in place of Steves' Revised Proposed Jury Instruction Nos. 24-26.

### JELD-WEN'S REVISED PROPOSED JURY INSTRUCTION NO. 25

**ANTITRUST: FACTORS TO CONSIDER IN DETERMINING LEGALITY OF ACQUISITION**

In considering whether JELD-WEN's acquisition of CMI may substantially lessen competition or has already substantially lessened competition in the relevant market, your determination must be made in light of several factors.

First, market concentration is one indicator of likely competitive effects of an acquisition. The concentration in a market refers to the number of companies selling a product and their respective percentages of sales. In evaluating market concentration, it is important to consider both the level of market concentration after the acquisition as well as the change in concentration that resulted from the acquisition.

However, market concentration alone is not determinative of the legality of an acquisition, and it may not fully reflect the competitive significance of firms in the market or the impact of an acquisition. Accordingly, even if you find that the acquisition has resulted in a significant increase in concentration in the relevant market, the acquisition may still not violate the antitrust laws if you find that real-world evidence indicates that the market share statistics do not give a completely accurate account of the acquisition's probable effects on competition. Such evidence of the "structure, history and probable future" of the doorskin industry includes:

(1) the ability of existing or new domestic or foreign competitors to timely and sufficiently enter or expand their presence in the doorskins market in order to deter or counteract any anticompetitive effects of the merger; and

(2) that the market has not experienced any actual anticompetitive effects caused by the acquisition, such as increased prices, reduced output or reduced quality; and

(3) the efficiencies or benefits that will or have resulted from the acquisition. Such efficiencies include increased incentives and abilities to compete, which may result in lower prices, improved quality, enhanced products or services or the development of new products. However, you should only consider those efficiencies that are likely to be accomplished, or that have been accomplished because of the acquisition, and you should disregard efficiencies that could be accomplished or that have been accomplished irrespective of the acquisition.

A mere possibility that JELD-WEN's acquisition of CMI might result in a substantial lessening of competition is not sufficient. Steves must prove that there is a reasonable probability that JELD-WEN's acquisition of CMI will cause or has caused a substantial lessening of competition. This concept of reasonable probability requires you to consider both how likely it is that the acquisition will lessen or has already substantially lessened competition.

If you find that the preponderance of the evidence is sufficient to prove that the acquisition may result or has resulted in a substantial lessening of competition, then you must find for Steves and against JELD-WEN on this claim. If you find that the evidence is insufficient to prove that the acquisition may result or has resulted in a substantial lessening of competition, then you must find for JELD-WEN and against Steves on this claim.

Authority:     *U.S. v. General Dynamics*, 415 U.S. 486, 506-08 (1974); *U.S. v. Syufy Enters.*, 903 F.2d 659, 656-66 (9th Cir. 1990); *NBO Indus. Treadway Cos. v. Brunswick Corp.*, 523 F.2d 262 (3d Cir. 1975), *vacated on other grounds, Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977)

JELD-WEN requests that the Court give the following Instruction in place of Steves' Revised Proposed Jury Instruction No. 27.

**JELD-WEN'S REVISED PROPOSED JURY INSTRUCTION NO. 26\***

**ANTITRUST: PROOF OF INJURY AND CAUSATION**

If you find that JELD-WEN's 2012 acquisition of CMI violated Section 7 of the Clayton Act, then you must decide if Steves is entitled to recover damages from JELD-WEN.

Steves is entitled to recover damages for an injury to its business of property if it can establish three elements of injury and causation:

(1) Steves was in fact injured as a result of JELD-WEN's 2012 acquisition of CMI;

(2) JELD-WEN's 2012 acquisition of CMI was a material cause of Steves' injury; and

(3) Steves' injury is an injury of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact" or "fact of damage." For Steves to establish that it is entitled to recover damages, it must prove that as a result of JELD-WEN's 2012 acquisition of CMI, it paid higher prices than it would have paid, or received lower quality doorskins than it would have received, had that acquisition not taken place. **Proving the fact of damage does not require Steves to prove the dollar values of its injury. It requires only that Steves prove that it was in fact injured by the alleged antitrust violation. If you find that Steves has established that it was in fact injured, you may then consider the amount of Steves' damages. It is important to understand, however, that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded that Steves has established that it was in fact injured** because it paid a price higher than it would have paid, or received doorskins of lower quality that it would have received, if JELD-WEN had not acquired CMI .

12

Steves must also offer evidence that establishes by a preponderance of the evidence that JELD-WEN's 2012 acquisition of CMI was a material cause of Steves' injury. This means that Steves must have proved that some damage occurred to it as a result of the alleged antitrust violation, and not some other cause. Steves is not required to prove that the alleged antitrust violation was the sole cause of its injury; nor need Steves eliminate all other possible causes of injury. It is enough if it has proved that JELD-WEN's 2012 acquisition of CMI was a material cause of its injury.

Finally, Steves must establish that its injury is the type of injury that the antitrust laws were intended to prevent. This is sometimes referred to as "antitrust injury." To be antitrust injury, a financial loss must coincide with and reflect a broader harm to the public and the market of the sort that the antitrust laws were enacted to prevent. A breach of purely private obligations, such as those created by a contract between the parties, does not by itself establish an antitrust injury.

You should bear in mind that businesses may incur losses for many reasons that the antitrust laws are not designed to prohibit or protect against—such as where a competitor offers better products or services, or where a competitor is more efficient and can charge lower prices and still earn a profit. The antitrust laws do not permit a plaintiff to recover damages for losses that were caused by the competitive process or conduct that benefits consumers.

In summary, if Steves can establish that it was in fact injured by JELD-WEN's 2012 acquisition of CMI, that the 2012 acquisition of CMI was a material cause of Steves' injury, and that Steves' injury was the type that the antitrust laws were intended to prevent, then Steves is entitled to recover damages for the injury to its business or property.

13

Authorities:   *Model Jury Instructions in Civil Antitrust Cases*, 300-02 (Am. Bar Ass'n 2016) (modified instruction); Phillip E. Areeda (late) & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application*, ¶337 (3rd & 4th eds. 2010-2017).

\* Bolded language taken from model instructions except that it includes the names of the parties and other case-specific information from this action.

14

JELD-WEN requests that the Court give the following jury instruction, along with JELD-WEN's Revised Proposed Jury Instruction No. 28, in place of Steves' Revised Proposed Jury Instruction No. 28.

## JELD-WEN'S REVISED PROPOSED JURY INSTRUCTION NO. 27*

### ANTITRUST DAMAGES – INTRODUCTION AND PURPOSE

If you find that JELD-WEN's 2012 acquisition of CMI violated the antitrust laws and that this violation caused injury to Steves, then you must determine the amount of damages, if any, Steves is entitled to recover.  The fact that I am giving you instructions concerning the issue of Steves' damages does not mean that I believe that Steves should, or should not, prevail in this case.  If you reach a verdict for JELD-WEN on the issue of liability, you should not consider the issue of damages, and you may disregard the damages instructions that I am about to give.

The law provides that Steves should be fairly compensated for all damages to its business or property that were a direct result or likely consequence of the conduct that you have found to be unlawful.

Antitrust damages are only compensatory, meaning their purpose is to put an injured plaintiff as near as possible in the position in which it would have been if the alleged antitrust violation had not occurred.  The law does not permit you to award damages to punish a wrongdoer—what we sometimes refer to as punitive damages—or to deter particular conduct in the future.  Furthermore, you are not permitted to award to Steves an amount for attorneys' fees or the costs of maintaining this lawsuit.

Authority:     *Model Jury Instructions in Civil Antitrust Cases*, 304-05 (Am. Bar Ass'n 2016).

\* Bolded language taken from model instructions except that it includes the names of the parties and other case-specific information from this action.

JELD-WEN requests that the Court give the following Instruction, along with JELD-WEN's Revised Proposed Jury Instruction No. 27, in place of Steves' Revised Proposed Jury Instruction No. 28.

## **JELD-WEN'S REVISED PROPOSED JURY INSTRUCTION NO. 28\***

### **ANTITRUST DAMAGES – BASIS FOR CALCULATING DAMAGES**

**You are permitted to make just and reasonable estimates in calculating damages. You are not required to calculate damages with mathematical certainty or precision. However, the amount of damages must have a reasonable basis in the evidence and must be based on reasonable, non-speculative assumptions and estimates.  Damages may not be based on guesswork or speculation.   Steves must prove the reasonableness of each of the assumptions upon which the damages calculation is based.**

**If you find that Steves has provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.**

**If you find that Steves has failed to carry its burden of providing a reasonable basis for determining damages, then you may not award damages, or you may award nominal damages, not to exceed one dollar.**


Authority:      *Model Jury Instructions in Civil Antitrust Cases*, 307-09 (Am. Bar Ass'n 2016).

\* Bolded language taken from model instructions except that it includes the names of the parties and other case-specific information from this action.

JELD-WEN requests that the Court give the following jury instruction in place of Steves' Revised Proposed Jury Instruction No. 29.

## JELD-WEN'S REVISED PROPOSED JURY INSTRUCTION NO. 29

### ANTITRUST: FUTURE LOST PROFITS[1]

Steves claims that it may be harmed in the future because JELD-WEN's alleged antitrust violation may cause it to go out of business, and accordingly lose potential future profits, in September 2021.  In asserting this claim for damages, Steves contends that when the parties' 2012 Supply Agreement expires pursuant to its terms on September 10, 2021, JELD-WEN and Steves might fail to enter into a subsequent Supply Agreement; JELD-WEN might cease supplying doorskins to Steves on commercially viable terms; Steves might be unable to secure any other source of supply; and therefore Steves might immediately go out of business and suffer a substantial loss.  **If you find that JELD-WEN committed an antitrust violation and that this violation caused injury to Steves,** you may consider now this claim for future profits, if any, that Steves lost as a result of the alleged antitrust violations.

**To calculate future lost profits, you must make a reasonable estimate of (1) the amount of profits, if any, that Steves would have earned in the future years, and (2) the length of time for which it would have earned those profits.  In making this calculation, you are not required to calculate future lost profits with absolute mathematical certainty or precision, but you must not engage in guesswork or speculation.  In making this determination, you must consider the various factors that could affect the future success of Steves; business, such as general market or economic conditions,** availability of doorskin supply to Steves from

---

[1]   JELD-WEN's inclusion of instructions related to Steves' future lost profits claims is conditioned on the Court' decision on JELD-WEN's request for summary judgment on those claims.

domestic or foreign suppliers, or Steves' own doorskin manufacturing facility, **lawful competition Steves would face in the future, Steves' management or business, changes in technology, or other business conditions, and other factors affecting Steves' future performance.**

**Your determination of future lost profits must have a reasonable basis in the evidence and cannot be speculative.  If there is no evidence from which you can make a reasonable estimate of lost future profits, you may not award damages for lost future profits.**

**In calculating future lost profits, you must calculate net profit.  In simple terms, net profit is gross revenues minus all of the costs and expenses that would be necessary to produce those revenues.**

**If you award damages for future lost profits, you must discount the amount to its present value, using a discount rate of interest that you find reasonable.  This is because the right to receive a certain sum of money at a future date is worth less than the same amount of money in hand today—this is known as the time value of money.  For example, if you had a choice to receive $1000 today or a year from now, you would be better off receiving the money today and earning interest on it for a year—you would then have something more than $1000 in a year from now.  Similarly, if you had a right to $1000 a year from now and you asked for the money today, the person owing you the money a year from now could properly give you a lower amount, reflecting the value that could be earned on that money over the next year.  This lower amount if know as an amount discounted to present value.**

Authority:    *Model Jury Instructions in Civil Antitrust Cases*, 317-18 (Am. Bar Ass'n 2016) (modified instruction).

\* Bolded language taken from model instructions except that it includes the names of the parties and other case-specific information from this action.

JELD-WEN requests that the Court give the following Instruction because JELD-WEN is asserting the affirmative defense that Steves failed to mitigate its damages.   Steves does not agree.

### JELD-WEN'S REVISED PROPOSED JURY INSTRUCTION NO. 30*

### ANTITRUST: MITIGATION OF DAMAGES

**Steves may not recover damages for any portion of its injuries that it could have avoided through the exercise of reasonable care and prudence.  Steves is not entitled to increase any damages through inaction.  The law requires an injured party to take all reasonable steps it can to avoid further injury and thereby reduce its loss.  If Steves failed to take reasonable steps available to it, and the failure to take those steps resulted in greater harm to Steves than it would have suffered had it taken those steps, then Steves may not recover any damages for that part of the injury it could have avoided.**

**JELD-WEN has the burden of proof on this issue.  JELD-WEN must prove by a preponderance of the evidence that Steves:**

**(1) acted unreasonably in failing to take specific steps to minimize or limit its losses;**

**(2) that the failure to take those steps resulted in its losses being greater than they would have been had it taken such steps; and**

**(3) the amount by which Steves' loss would have been reduced had Steves taken those steps.**

**In determining whether Steves failed to take reasonable measures to limit its damages, you must remember that the law does not require Steves to take every conceivable step that might reduce its damages.  The evidence must show that Steves failed to take commercially reasonable measures that were open to it.  Commercially reasonable measures mean those measures that a prudent businessperson in Steves' position would likely have adopted, given the circumstances as they appeared at the time.  Steves should be given wide**

19

**latitude in deciding how to handle the situation, so long as what plaintiff did was not unreasonable in the light of existing circumstances.**

Authority:     *Model Jury Instructions in Civil Antitrust Cases*, 324-25 (Am. Bar Ass'n 2016).

\* Bolded language taken from model instructions except that it includes the names of the parties and other case-specific information from this action.

JELD-WEN requests that the Court give the following Instruction in place of Steves' Revised Proposed Jury Instruction No. 37.

## JELD-WEN'S REVISED PROPOSED JURY INSTRUCTION NO. 37

### BREACH OF CONTRACT: CONTRACT FORMATION

**To assess Steves' claims, you must first determine from a preponderance of the evidence whether a legally binding contract was formed between Steves and JELD-WEN** as to each of these disputed provisions.

**For a legally binding contract to exist, there must be:**

**(1) an offer of a contract by one party;**

**(2) an acceptance of that offer by the other party;**

**(3) consideration for the offer and acceptance; and**

**(4) sufficiently specific terms that determine the obligations of each party.**

**A legally binding contract requires that the parties manifest or show mutual assent to the contract's terms. Mutual assent is not a subjective or personal understanding of the terms by either party. Rather, mutual assent must be shown by words or acts of the parties in a way that represents a mutually understood intent.** Without mutual assent, there is no binding contractual obligation.


<u>Authority</u>:       Del. P.J.I. Civ. §§ 19.1-19.2 (2000) (modified instruction).

\* Bolded language taken from model instructions except that it includes the names of the parties and other case-specific information from this action.

JELD-WEN requests that the Court give the following Instruction in place of Steves' Revised Proposed Jury Instruction No. 39.

<u>**JELD-WEN'S REVISED PROPOSED JURY INSTRUCTION NO. 39***</u>

**BREACH OF CONTRACT: EXPRESS WARRANTY**

**An express warranty is created if JELD-WEN made a promise or factual representation about the product to Steves and that promise or representation became a basis of the parties' bargain. No formal words are necessary to create a warranty.**

Steves has alleged that JELD-WEN made an express warranty that its product was "of a quality satisfactory to Steves, meeting JELD-WEN's specifications, fit for the intended purpose, and subject to JELD-WEN's standard written warranty applicable to the Product (the 'Specifications'). If JELD-WEN ships Product that do not meet JELD-WEN's Specifications (hereinafter 'Defective Product') then JELD-WEN, after notice, inspection and verification of the Defective Product, will be obliged to reimburse STEVES for the price of the Defective Product."

Steves and Sons has alleged that JELD-WEN did not satisfy the terms of this express warranty. Whether JELD-WEN failed to satisfy the terms of this express warranty is a question for you to decide.

<u>Authority</u>:    Del. P.J.I. Civ. § 9.12 (2000) (modified instruction).

* Bolded language taken from model instructions except that it includes the names of the parties and other case-specific information from this action.

JELD-WEN requests that the Court give the following Instruction in place of Steves' Revised Proposed Jury Instruction No. 41.

### JELD-WEN'S REVISED PROPOSED JURY INSTRUCTION NO. 41*

### USE OF PRODUCT AFTER DEFECT IS KNOWN TO PLAINTIFF

If a buyer of a product, after accepting it, discovers a defect that substantially impairs its value, the buyer may seek relief by promptly revoking acceptance of the goods and demanding either a refund of the purchase price or the prompt cure of the defect by replacement or repair.  But if the buyer continues to use the product without giving the seller reasonable opportunity to cure the defect or refund the purchase price, then the buyer may not revoke acceptance of the product.

A buyer is permitted, however, to work with a seller in attempting to have the defect repaired but may still revoke acceptance within a reasonable time if there is not a satisfactory cure of the defect.  You must determine if acceptance has been revoked within a reasonable time under the circumstances.

If you find that Steves continued to incorporate doorskins into doors that it assembled and sold and did not give JELD-WEN adequate opportunity to repair or replace the doorskins, then you must return a verdict for JELD-WEN.  If you find that the defect in doorskins substantially impaired its value to Steves and that Steves gave JELD-WEN reasonable opportunity to repair or replace the doorskins or return the purchase price before Steves continued to use it, then you must return a verdict for Steves.

The value of a product is substantially impaired when a defect substantially interferes with the normal operation or enjoyment of a product or the normal purpose for which it was bought.  Mere annoyance over minor defects that do not inhibit the normal, intended use of

**the product is not a substantial impairment.  But the cumulative effect of minor defects, none of which by itself would substantially impair value, can be sufficient cause to justify revocation of acceptance**.

<u>Authority</u>:      Del. P.J.I. Civ. § 9.23 (2000).

\* Bolded language taken from model instructions except that it includes the names of the parties and other case-specific information from this action.

JELD-WEN requests that the Court give the following Instruction in place of Steves' Revised Proposed Jury Instruction No. 42.

### JELD-WEN'S REVISED PROPOSED JURY INSTRUCTION NO. 42*

### REQUIREMENT OF NOTIFICATION OF BREACH -- COMMERCIAL SALES

**To recover for a breach of warranty, Steves must notify JELD-WEN of the breach within a reasonable time after it discovers or should have discovered the breach.  A buyer notifies a seller by taking reasonable steps to inform the seller under ordinary circumstances, regardless of whether the seller actually comes to know of the alleged breach.  No particular words or forms are required.  Notice need not be written.  Conversations, conferences, and correspondence that call JELD-WEN's attention to the defect in the product can constitute notice of JELD-WEN's breach.**

Authority:      Del. P.J.I. Civ. § 9.24 (2000).

* Bolded language taken from model instructions except that it includes the names of the parties and other case-specific information from this action.

JELD-WEN requests that the Court give the following jury instruction in place of Steves' Revised Proposed Jury Instruction No. 43.

### JELD-WEN'S REVISED PROPOSED JURY INSTRUCTION NO. 43*

### BREACH OF CONTRACT - DAMAGES

**If you find that one party committed a breach of contract, the other party is entitled to compensation in an amount that will place it in the same position it would have been in if the contract had been properly performed.  The measure of damages is the loss actually sustained as a result of the breach of contract.**

**The fact that I have instructed you about the proper measure of damages should not be considered as my suggesting which party is entitled to your verdict in this case. Instructions about the measure of damages are given for your guidance only if you find that a damages award is in order.**

Authority:      Del. P.J.I. Civ. §§ 22.24, 22.28 (2000).

* Bolded language taken from model instructions except that it includes the names of the parties and other case-specific information from this action.

26