JURY INSTRUCTION NO. 1

MEMBERS OF THE JURY:

NOW THAT YOU HAVE HEARD THE EVIDENCE AND THE ARGUMENT, IT BECOMES MY DUTY TO GIVE YOU THE INSTRUCTIONS OF THE COURT AS TO THE LAW APPLICABLE TO THIS CASE.

IT IS YOUR DUTY AS JURORS TO FOLLOW THE LAW AS STATED IN THE INSTRUCTIONS OF THE COURT, AND TO APPLY THE RULES OF LAW SO GIVEN TO THE FACTS AS YOU FIND THEM FROM THE EVIDENCE IN THE CASE.

COUNSEL HAVE QUITE PROPERLY REFERRED TO SOME OF THE GOVERNING RULES OF LAW IN THEIR ARGUMENTS. IF, HOWEVER, ANY DIFFERENCE APPEARS TO YOU BETWEEN THE LAW AS STATED BY COUNSEL AND THAT STATED BY THE COURT IN THESE INSTRUCTIONS, YOU OF COURSE ARE TO BE GOVERNED BY THE INSTRUCTIONS. REMEMBER, HOWEVER, THAT YOU ARE NOT TO SINGLE OUT ONE INSTRUCTION ALONE AS STATING THE LAW, BUT MUST CONSIDER THE INSTRUCTIONS AS A WHOLE.

NEITHER ARE YOU TO BE CONCERNED WITH THE WISDOM OF ANY RULES OF LAW STATED BY THE COURT. REGARDLESS OF ANY OPINION YOU MAY HAVE AS TO WHAT THE LAW OUGHT TO BE, IT WOULD BE A VIOLATION OF YOUR SWORN DUTY TO BASE A VERDICT UPON ANY OTHER VIEW OF THE LAW THAN THAT GIVEN IN THE INSTRUCTIONS OF THE COURT; JUST AS IT WOULD BE A VIOLATION OF YOUR SWORN DUTY, AS JUDGES OF THE FACTS,

TO BASE A VERDICT UPON ANYTHING BUT THE EVIDENCE IN THE CASE.

JUSTICE THROUGH TRIAL BY JURY MUST ALWAYS DEPEND UPON THE WILLINGNESS OF EACH INDIVIDUAL JUROR TO SEEK THE TRUTH AS TO THE FACTS FROM THE SAME EVIDENCE PRESENTED TO ALL THE JURORS; AND TO ARRIVE AT A VERDICT BY APPLYING THE SAME RULES OF LAW, AS GIVEN IN THE INSTRUCTIONS OF THE COURT.

JURY INSTRUCTION NO. 2

YOU ARE TO PERFORM THIS DUTY WITHOUT BIAS OR PREJUDICE AS TO ANY PARTY. THE LAW DOES NOT PERMIT JURORS TO BE GOVERNED BY SYMPATHY, PREJUDICE, OR PUBLIC OPINION. THE PARTIES AND THE PUBLIC EXPECT THAT YOU WILL CAREFULLY AND IMPARTIALLY CONSIDER ALL THE EVIDENCE IN THE CASE, FOLLOW THE LAW AS STATED BY THE COURT AND REACH A JUST VERDICT, REGARDLESS OF THE CONSEQUENCES.

JURY INSTRUCTION NO. 3

THIS CASE SHOULD BE CONSIDERED AND DECIDED BY YOU AS AN ACTION BETWEEN PERSONS OF EQUAL STANDING IN THE COMMUNITY, OF EQUAL WORTH, AND HOLDING THE SAME OR SIMILAR STATIONS OF LIFE. A CORPORATION IS ENTITLED TO THE SAME FAIR TRIAL AT YOUR HANDS AS A PRIVATE INDIVIDUAL. ALL PERSONS, INCLUDING CORPORATIONS, STAND EQUAL BEFORE THE LAW, AND ARE TO BE DEALT WITH AS EQUALS IN A COURT OF JUSTICE.

JURY INSTRUCTION NO. 4

THERE IS NOTHING PARTICULARLY DIFFERENT IN THE WAY THAT A JUROR SHOULD CONSIDER THE EVIDENCE IN A TRIAL FROM THAT IN WHICH ANY REASONABLE AND CAREFUL PERSON WOULD TREAT ANY VERY IMPORTANT QUESTION THAT MUST BE RESOLVED BY EXAMINING FACTS, OPINIONS, AND EVIDENCE. YOU ARE EXPECTED TO USE YOUR GOOD SENSE IN CONSIDERING AND EVALUATING THE EVIDENCE IN THE CASE FOR ONLY THOSE PURPOSES FOR WHICH IT HAS BEEN RECEIVED AND TO GIVE SUCH EVIDENCE A REASONABLE AND FAIR CONSTRUCTION IN THE LIGHT OF YOUR COMMON KNOWLEDGE OF THE NATURAL TENDENCIES AND INCLINATIONS OF HUMAN BEINGS.

JURY INSTRUCTION NO. 5

IT IS THE SWORN DUTY OF THE ATTORNEY ON EACH SIDE OF A CASE TO OBJECT WHEN THE OTHER SIDE OFFERS TESTIMONY OR EXHIBITS WHICH THAT ATTORNEY BELIEVES IS NOT PROPERLY ADMISSIBLE. ONLY BY RAISING AN OBJECTION CAN A LAWYER REQUEST AND OBTAIN A RULING FROM THE COURT ON THE ADMISSIBILITY OF THE EVIDENCE BEING OFFERED BY THE OTHER SIDE. YOU SHOULD NOT BE INFLUENCED AGAINST AN ATTORNEY OR HIS OR HER CLIENT BECAUSE THE ATTORNEY HAS MADE OBJECTIONS.

DO NOT ATTEMPT, MOREOVER, TO INTERPRET MY RULINGS ON OBJECTIONS AS SOMEHOW INDICATING TO YOU WHAT I BELIEVE THE OUTCOME OF THE CASE SHOULD BE.

JURY INSTRUCTION NO. 6

IT IS THE DUTY OF THE COURT TO ADMONISH AN ATTORNEY WHO, OUT OF ZEAL FOR HIS OR HER CAUSE, DOES SOMETHING WHICH THE COURT FEELS IS NOT IN KEEPING WITH THE RULES OF EVIDENCE OR PROCEDURE.

YOU ARE TO DRAW ABSOLUTELY NO INFERENCE AGAINST THE SIDE TO WHOM AN ADMONITION OF THE COURT MAY HAVE BEEN ADDRESSED DURING THE TRIAL OF THIS CASE.

JURY INSTRUCTION NO. 7

DURING THE COURSE OF A TRIAL, I HAVE OCCASIONALLY ASKED QUESTIONS OF A WITNESS. DO NOT ASSUME THAT I HOLD ANY OPINION ON THE MATTERS TO WHICH MY QUESTIONS RELATED. THE COURT MAY ASK A QUESTION SIMPLY TO CLARIFY A MATTER - NOT TO HELP ONE SIDE OF THE CASE OR HURT ANOTHER SIDE.

JURY INSTRUCTION NO. 8

THE EVIDENCE IN THE CASE CONSISTS OF THE SWORN TESTIMONY OF THE WITNESSES, REGARDLESS OF WHO MAY HAVE CALLED THEM; AND ALL EXHIBITS RECEIVED IN EVIDENCE, REGARDLESS OF WHO MAY HAVE PRODUCED THEM; AND ALL FACTS WHICH HAVE BEEN ADMITTED OR STIPULATED.

WHEN THE ATTORNEYS ON BOTH SIDES STIPULATE OR AGREE AS TO THE EXISTENCE OF A FACT, HOWEVER, YOU MUST, UNLESS OTHERWISE INSTRUCTED, ACCEPT THE STIPULATION AS EVIDENCE, AND REGARD THAT FACT AS PROVED.

STATEMENTS, ARGUMENTS, QUESTIONS AND OBJECTIONS OF COUNSEL ARE NOT EVIDENCE IN THE CASE. ANY EVIDENCE AS TO WHICH AN OBJECTION WAS SUSTAINED BY THE COURT, AND ANY EVIDENCE ORDERED STRICKEN BY THE COURT, MUST BE ENTIRELY DISREGARDED.

ANYTHING YOU MAY HAVE SEEN OR HEARD OUTSIDE THE COURTROOM IS NOT EVIDENCE, AND MUST BE ENTIRELY DISREGARDED.

YOU ARE TO CONSIDER ONLY THE EVIDENCE IN THE CASE. BUT IN YOUR CONSIDERATION OF THE EVIDENCE, YOU ARE NOT LIMITED TO THE BALD STATEMENTS OF THE WITNESSES. IN OTHER WORDS, YOU ARE NOT LIMITED SOLELY TO WHAT YOU SEE AND HEAR AS THE WITNESSES TESTIFY. YOU ARE PERMITTED TO DRAW, FROM FACTS WHICH YOU FIND HAVE BEEN PROVED, SUCH REASONABLE INFERENCES AS YOU FEEL ARE JUSTIFIED IN THE LIGHT OF EXPERIENCE.

JURY INSTRUCTION NO. 9

INFERENCES ARE SIMPLY DEDUCTIONS OR CONCLUSIONS WHICH REASON AND COMMON SENSE LEAD YOU TO DRAW FROM THE EVIDENCE RECEIVED IN THE CASE.

## JURY INSTRUCTION NO. 10

DURING THE TRIAL, CERTAIN TESTIMONY HAS BEEN PRESENTED BY WAY OF DEPOSITION. THE DEPOSITION CONSISTED OF SWORN, RECORDED ANSWERS TO QUESTIONS ASKED OF THE WITNESS IN ADVANCE OF THE TRIAL BY ATTORNEYS FOR THE PARTIES TO THE CASE. THE TESTIMONY OF A WITNESS WHO IS NOT PRESENT TO TESTIFY FROM THE WITNESS STAND MAY BE PRESENTED IN WRITING UNDER OATH OR ON A VIDEOTAPE. SUCH TESTIMONY IS ENTITLED TO THE SAME CONSIDERATION AND IS TO BE JUDGED AS TO CREDIBILITY, AND WEIGHED, AND OTHERWISE CONSIDERED BY YOU, INSOFAR AS POSSIBLE, IN THE SAME WAY AS IF THE WITNESS HAD BEEN PRESENT AND HAD TESTIFIED FROM THE WITNESS STAND.

JURY INSTRUCTION NO. 11

THERE ARE TWO TYPES OF EVIDENCE FROM WHICH YOU MAY FIND THE TRUTH AS TO THE FACTS OF A CASE - DIRECT AND CIRCUMSTANTIAL EVIDENCE. DIRECT EVIDENCE IS THE TESTIMONY OF ONE WHO ASSERTS ACTUAL KNOWLEDGE OF A FACT, SUCH AS AN EYEWITNESS; CIRCUMSTANTIAL EVIDENCE IS PROOF OF A CHAIN OF FACTS AND CIRCUMSTANCES INDICATING A FACT. THE LAW MAKES NO DISTINCTION BETWEEN THE WEIGHT TO BE GIVEN TO EITHER DIRECT OR CIRCUMSTANTIAL EVIDENCE. NOR IS A GREATER DEGREE OF CERTAINTY REQUIRED OF CIRCUMSTANTIAL EVIDENCE IN THE CASE.

JURY INSTRUCTION NO. 12

SOMETIMES EVIDENCE MAY BE ADMITTED CONCERNING ONLY A PARTICULAR PURPOSE AND NOT GENERALLY FOR ALL PURPOSES. FOR THE LIMITED PURPOSE FOR WHICH THIS EVIDENCE HAS BEEN RECEIVED YOU MAY GIVE IT SUCH WEIGHT AS YOU FEEL IT DESERVES. YOU MAY NOT, HOWEVER, USE THIS EVIDENCE FOR ANY OTHER PURPOSE NOT SPECIFICALLY MENTIONED.

JURY INSTRUCTION NO. 12-A

YOU HAVE HEARD TESTIMONY, BOTH LIVE AND THROUGH VIDEO DEPOSITIONS, REGARDING CERTAIN MOLDED DOORSKIN SUPPLIERS' INTEREST IN SELLING DOORSKINS TO STEVES AND THE TERMS BY WHICH THOSE PARTIES MIGHT SELL THOSE DOORSKINS. YOU MAY CONSIDER THE TESTIMONY OF MASONITE CEO FRED LYNCH ON THOSE TOPICS FOR THE TRUTH OF THE MATTERS ASSERTED BY HIM, ALTHOUGH AS WITH ALL TESTIMONY IT IS ULTIMATELY UP TO YOU TO DECIDE WHETHER AND TO WHAT EXTENT TO CREDIT HIS TESTIMONY. TO THE EXTENT MR. HEINTEL, MR. WYSOCK, MR. AMBRUZ, MR. SAM STEVES OR MR. EDWARD STEVES TESTIFIED REGARDING INFORMATION PROVIDED TO STEVES BY ANY THIRD PARTIES ON THESE ISSUES, YOU MAY ONLY CONSIDER THAT INFORMATION FOR THE FACT THAT IT WAS PROVIDED TO STEVES AND ANY EFFECT IT HAD ON STEVES.

YOU HAVE ALSO HEARD TESTIMONY, BOTH LIVE AND THROUGH VIDEO DEPOSITIONS, REGARDING CERTAIN EQUIPMENT SUPPLIERS AND POTENTIAL PARTNERS' UNDERSTANDING OF THE COSTS AND TIME NECESSARY TO BUILD A MOLDED DOORSKIN PLANT. YOU MAY CONSIDER THE TESTIMONY OF COLE MARTIN OF DIEFFENBACHER FOR THE TRUTH OF THE MATTERS ASSERTED BY HIM, ALTHOUGH IT AGAIN IS ULTIMATELY UP TO YOU TO DECIDE WHETHER AND TO WHAT EXTENT TO CREDIT HIS TESTIMONY. TO THE EXTENT MR. HEINTEL, MR. WYSOCK, MR. AMBRUZ, MR. SAM STEVES OR MR. EDWARD STEVES TESTIFIED REGARDING INFORMATION PROVIDED TO STEVES BY

THIRD PARTIES REGARDING THE COSTS AND TIME NECESSARY TO BUILD A MOLDED DOORSKIN PLANT, YOU MAY ONLY CONSIDER THAT INFORMATION FOR THE FACT THAT IT WAS PROVIDED TO STEVES AND THE EFFECT THAT INFORMATION HAD ON STEVES.

JURY INSTRUCTION NO. 13

WHEN A CORPORATION IS INVOLVED, OF COURSE, IT MAY ACT ONLY THROUGH NATURAL PERSONS AS ITS AGENTS OR EMPLOYEES, AND, IN GENERAL, ANY AGENT OR EMPLOYEE OF A CORPORATION MAY BIND THE CORPORATION BY HIS ACTS AND DECLARATIONS MADE WHILE ACTING WITHIN THE SCOPE OF HIS AUTHORITY DELEGATED TO HIM BY THE CORPORATION, OR WITHIN THE SCOPE OF HIS DUTIES AS AN EMPLOYEE OF THE CORPORATION.

JURY INSTRUCTION NO. 14

IF ANY REFERENCE BY THE COURT OR BY COUNSEL TO MATTERS OF EVIDENCE DOES NOT COINCIDE WITH YOUR OWN RECOLLECTION, IT IS YOUR RECOLLECTION WHICH SHOULD CONTROL DURING YOUR DELIBERATIONS.

JURY INSTRUCTION NO. 15

YOU, AS JURORS, ARE THE SOLE JUDGES OF THE CREDIBILITY OF THE WITNESSES AND THE WEIGHT THEIR TESTIMONY DESERVES.

YOU SHOULD CAREFULLY SCRUTINIZE ALL THE TESTIMONY GIVEN, THE CIRCUMSTANCES UNDER WHICH EACH WITNESS HAS TESTIFIED, AND EVERY MATTER IN EVIDENCE WHICH TENDS TO SHOW WHETHER A WITNESS IS WORTHY OF BELIEF. CONSIDER EACH WITNESS'S INTELLIGENCE, MOTIVE AND STATE OF MIND, AND DEMEANOR AND MANNER WHILE ON THE STAND. CONSIDER THE WITNESS'S ABILITY TO OBSERVE THE MATTERS AS TO WHICH HE OR SHE HAS TESTIFIED, AND WHETHER THE WITNESS IMPRESSES YOU AS HAVING AN ACCURATE RECOLLECTION OF THESE MATTERS. CONSIDER ALSO ANY RELATION EACH WITNESS MAY BEAR TO EITHER SIDE OF THE CASE; THE MANNER IN WHICH EACH WITNESS MIGHT BE AFFECTED BY THE VERDICT; AND THE EXTENT TO WHICH, IF AT ALL, EACH WITNESS IS EITHER SUPPORTED OR CONTRADICTED BY OTHER EVIDENCE IN THE CASE.

INCONSISTENCIES OR DISCREPANCIES IN THE TESTIMONY OF A WITNESS, OR BETWEEN THE TESTIMONY OF DIFFERENT WITNESSES, MAY OR MAY NOT CAUSE THE JURY TO DISCREDIT SUCH TESTIMONY. TWO OR MORE PERSONS WITNESSING AN INCIDENT OR A TRANSACTION MAY SEE OR HEAR IT DIFFERENTLY; AND INNOCENT MISRECOLLECTION, LIKE FAILURE OF RECOLLECTION, IS NOT AN UNCOMMON EXPERIENCE. IN WEIGHING THE EFFECT OF A DISCREPANCY, ALWAYS CONSIDER WHETHER IT PERTAINS TO

A MATTER OF IMPORTANCE OR AN UNIMPORTANT DETAIL, AND WHETHER THE DISCREPANCY RESULTS FROM INNOCENT ERROR OR INTENTIONAL FALSEHOOD.

AFTER MAKING YOUR OWN JUDGMENT, YOU WILL GIVE THE TESTIMONY OF EACH WITNESS SUCH CREDIBILITY, IF ANY, AS YOU MAY THINK IT DESERVES.

JURY INSTRUCTION NO. 16

THE TESTIMONY OF A WITNESS MAY BE DISCREDITED OR, AS WE SOMETIMES SAY, IMPEACHED BY SHOWING THAT HE OR SHE PREVIOUSLY MADE STATEMENTS WHICH ARE DIFFERENT THAN OR INCONSISTENT WITH HIS OR HER TESTIMONY HERE IN COURT. THE EARLIER INCONSISTENT OR CONTRADICTORY STATEMENTS OF A WITNESS NOT A PARTY TO THE ACTION ARE ADMISSIBLE ONLY TO DISCREDIT OR IMPEACH THE CREDIBILITY OF THE WITNESS AND NOT TO ESTABLISH THE TRUTH OF THESE EARLIER STATEMENTS MADE SOMEWHERE OTHER THAN HERE DURING THIS TRIAL. IT IS THE PROVINCE OF THE JURY TO DETERMINE THE CREDIBILITY, IF ANY, TO BE GIVEN THE TESTIMONY OF A WITNESS WHO HAS MADE PRIOR INCONSISTENT OR CONTRADICTORY STATEMENTS.

WHERE, HOWEVER, THE WITNESS IS A PARTY TO THE CASE, AND BY SUCH STATEMENT, OR OTHER CONDUCT, ADMITS SOME FACT OR FACTS, THEN SUCH STATEMENT OR OTHER CONDUCT, IF KNOWINGLY MADE OR DONE, MAY BE CONSIDERED AS EVIDENCE OF THE TRUTH OF THE FACT OR FACTS SO ADMITTED BY SUCH PARTY, AS WELL AS FOR THE PURPOSE OF JUDGING THE CREDIBILITY OF THE PARTY AS A WITNESS.

## JURY INSTRUCTION NO. 17

THE RULES OF EVIDENCE ORDINARILY DO NOT PERMIT WITNESSES TO TESTIFY AS TO THEIR OWN OPINIONS OR THEIR OWN CONCLUSIONS ABOUT ISSUES IN THE CASE. AN EXCEPTION TO THIS RULE EXISTS AS TO THOSE WITNESSES WHO ARE DESCRIBED AS "EXPERT WITNESSES." AN EXPERT WITNESS IS SOMEONE WHO, BY EDUCATION OR BY EXPERIENCE, MAY HAVE BECOME KNOWLEDGEABLE IN SOME TECHNICAL, SCIENTIFIC, OR VERY SPECIALIZED AREA. IF SUCH KNOWLEDGE OR EXPERIENCE MAY BE OF ASSISTANCE TO YOU IN UNDERSTANDING SOME OF THE EVIDENCE OR IN DETERMINING A FACT, AN EXPERT WITNESS IN THAT AREA MAY STATE AN OPINION AS TO RELEVANT AND MATERIAL MATTER IN WHICH HE OR SHE CLAIMS TO BE AN EXPERT.

YOU SHOULD CONSIDER EACH EXPERT OPINION RECEIVED IN EVIDENCE IN THIS CASE AND GIVE IT SUCH WEIGHT AS YOU MAY THINK IT DESERVES. YOU SHOULD CONSIDER THE TESTIMONY OF EXPERT WITNESSES JUST AS YOU CONSIDER OTHER EVIDENCE IN THIS CASE. IF YOU SHOULD DECIDE THAT THE OPINION OF AN EXPERT WITNESS IS NOT BASED UPON SUFFICIENT EDUCATION OR EXPERIENCE, OR IF YOU SHOULD CONCLUDE THAT THE REASONS GIVEN IN SUPPORT OF THE OPINION ARE NOT SOUND, OR IF YOU SHOULD CONCLUDE THAT THE OPINION IS OUTWEIGHED BY OTHER EVIDENCE, INCLUDING THAT OF OTHER EXPERT WITNESSES, YOU MAY DISREGARD THE OPINION IN PART OR IN ITS ENTIRETY. AS I HAVE TOLD YOU SEVERAL TIMES, YOU – THE JURY - ARE THE SOLE JUDGES OF THE FACTS OF THIS CASE.

## JURY INSTRUCTION NO. 19

CHARTS AND SUMMARIES HAVE BEEN SHOWN TO YOU IN ORDER TO HELP EXPLAIN FACTS DISCLOSED BY BOOKS, RECORDS, AND OTHER DOCUMENTS IN EVIDENCE IN THE CASE. THESE CHARTS OR SUMMARIES ARE NOT THEMSELVES EVIDENCE OR PROOF OF ANY FACTS. IF THE CHARTS OR SUMMARIES DO NOT CORRECTLY REFLECT FACTS OR FIGURES SHOWN BY THE EVIDENCE IN THE CASE, YOU SHOULD DISREGARD THEM.

THE CHARTS AND SUMMARIES ARE USED ONLY AS A MATTER OF CONVENIENCE. TO THE EXTENT THAT YOU FIND THEY ARE NOT TRUTHFUL SUMMARIES OF FACTS OR FIGURES SHOWN BY THE EVIDENCE IN THE CASE, YOU ARE TO DISREGARD THEM ENTIRELY.

THE SAME INSTRUCTION APPLIES FOR DEMONSTRATIVE EXHIBITS USED TO AID TESTIMONY EVIDENCE.

JURY INSTRUCTION NO. 20

PLAINTIFF STEVES AND SONS, WHICH I WILL CALL STEVES, HAS THE BURDEN IN A CIVIL ACTION, SUCH AS THIS, TO PROVE EVERY ESSENTIAL ELEMENT OF ITS CLAIMS BY A PREPONDERANCE OF THE EVIDENCE.

"ESTABLISH BY A PREPONDERANCE OF THE EVIDENCE" MEANS EVIDENCE, WHICH AS A WHOLE, SHOWS THAT THE FACT SOUGHT TO BE PROVED IS MORE PROBABLE THAN NOT. IN OTHER WORDS, A PREPONDERANCE OF THE EVIDENCE MEANS SUCH EVIDENCE AS, WHEN CONSIDERED AND COMPARED WITH THE EVIDENCE OPPOSED TO IT, HAS MORE CONVINCING FORCE, AND PRODUCES IN YOUR MINDS BELIEF THAT WHAT IS SOUGHT TO BE PROVED IS MORE LIKELY TRUE THAN NOT TRUE. THIS STANDARD DOES NOT REQUIRE PROOF TO AN ABSOLUTE CERTAINTY, SINCE PROOF TO AN ABSOLUTE CERTAINTY IS SELDOM POSSIBLE IN ANY CASE.

IN DETERMINING WHETHER ANY FACT IN ISSUE HAS BEEN PROVED BY A PREPONDERANCE OF THE EVIDENCE, UNLESS OTHERWISE INSTRUCTED YOU MAY CONSIDER THE TESTIMONY OF ALL WITNESSES, REGARDLESS OF WHO MAY HAVE CALLED THEM, AND ALL EXHIBITS RECEIVED IN EVIDENCE, REGARDLESS OF WHO MAY HAVE PRODUCED THEM.

JURY INSTRUCTION NO. 21

STEVES HAS ALLEGED SEVERAL CLAIMS IN THIS LAWSUIT. YOU MUST CONSIDER EACH CLAIM SEPARATELY BASED ON THE EVIDENCE AND THE INSTRUCTIONS THAT I GIVE YOU ON EACH CLAIM.

JURY INSTRUCTION NO. 22

IN COUNT ONE OF THE COMPLAINT, STEVES ALLEGES THAT JELD-WEN'S ACQUISITION OF A DIFFERENT COMPANY, CRAFTMASTER MANUFACTURING INC. – WHICH I WILL CALL "CMI" – VIOLATED SECTION 7 OF THE CLAYTON ANTITRUST ACT – WHICH I WILL CALL THE "CLAYTON ACT."

JURY INSTRUCTION NO. 23

THE PERTINENT PROVISIONS OF THE CLAYTON ACT ARE SECTION 4 AND SECTION 7.

SECTION 4 PROVIDES:

> [A]NY PERSON WHO SHALL BE INJURED IN HIS BUSINESS OR PROPERTY BY REASON OF ANYTHING FORBIDDEN IN THE ANTITRUST LAWS MAY SUE THEREFOR IN ANY DISTRICT COURT OF THE UNITED STATES [FOR DAMAGES] . . . .

SECTION 7 PROVIDES:

> [N]O [CORPORATION] . . . SHALL ACQUIRE THE WHOLE OR ANY PART OF THE ASSETS OF ANOTHER CORPORATION ENGAGED ALSO IN COMMERCE . . ., WHERE IN ANY LINE OF COMMERCE . . . IN ANY SECTION OF THE COUNTRY, THE EFFECT OF SUCH ACQUISITION MAY BE SUBSTANTIALLY TO LESSEN COMPETITION . . . .

JURY INSTRUCTION NO. 24

THIS IS A CIVIL ACTION FOR THE RECOVERY OF MONEY DAMAGES FOR AN ALLEGED VIOLATION OF THE CLAYTON ACT. IN ORDER TO RECOVER SUCH DAMAGES ON THE ACQUISITION PHASE OF THE CASE, STEVES MUST PROVE FOUR ELEMENTS BY A PREPONDERANCE OF THE EVIDENCE:

FIRST:     JELD-WEN VIOLATED SECTION 7 OF THE CLAYTON ACT;

SECOND:    STEVES HAS BEEN INJURED IN ITS BUSINESS OR PROPERTY;

THIRD:     THE ANTITRUST VIOLATION CAUSED THE INJURY TO STEVES' BUSINESS OR PROPERTY; AND

FOURTH:    STEVES HAS BEEN DAMAGED IN AN AMOUNT THAT IS REASONABLY ASCERTAINABLE IN DOLLARS AND CENTS.

JURY INSTRUCTION NO. 25

THERE ARE THREE ELEMENTS INVOLVED IN DETERMINING WHETHER JELD-WEN VIOLATED SECTION 7 OF THE CLAYTON ACT:

(1) DETERMINATION OF THE RELEVANT LINE OR LINES OF COMMERCE — THE PRODUCT MARKET;

(2) DETERMINATION OF THE RELEVANT GEOGRAPHIC MARKET; AND

(3) DETERMINATION OF THE LIKELY EFFECTS OF THE ACQUISITION OF CMI BY JELD-WEN ON COMPETITION IN THE RELEVANT PRODUCT AND GEOGRAPHIC MARKETS.

JURY INSTRUCTION NO. 26

THE RELEVANT PRODUCT MARKET INCLUDES THE PRODUCTS THAT A CONSUMER BELIEVES ARE REASONABLY INTERCHANGEABLE OR REASONABLE SUBSTITUTES FOR EACH OTHER. PRODUCTS NEED NOT BE IDENTICAL OR PRECISELY INTERCHANGEABLE AS LONG AS THEY ARE REASONABLE SUBSTITUTES. THUS, FOR EXAMPLE, IF CONSUMERS SEEKING TO COVER LEFTOVER FOOD FOR STORAGE CONSIDERED CERTAIN TYPES OF FLEXIBLE WRAPPING MATERIAL - SUCH AS ALUMINUM FOIL, CELLOPHANE, OR EVEN PLASTIC CONTAINERS - TO BE REASONABLE ALTERNATIVES, THEN ALL THOSE PRODUCTS MAY BE IN THE SAME RELEVANT PRODUCT MARKET.

TO DETERMINE WHETHER PRODUCTS ARE REASONABLE SUBSTITUTES FOR EACH OTHER, YOU MUST CONSIDER WHETHER A MEANINGFUL, NON-TEMPORARY INCREASE IN THE PRICE OF ONE PRODUCT WOULD RESULT IN ENOUGH CUSTOMERS SWITCHING FROM THAT PRODUCT TO ANOTHER PRODUCT SUCH THAT THE PRICE INCREASE WOULD NOT BE PROFITABLE. IN OTHER WORDS, WILL CUSTOMERS ACCEPT THE PRICE INCREASE OR WILL SO MANY SWITCH TO ALTERNATIVE PRODUCTS THAT THE PRICE INCREASE WILL BE WITHDRAWN?

IN EVALUATING WHETHER VARIOUS PRODUCTS ARE REASONABLY INTERCHANGEABLE OR REASONABLE SUBSTITUTES FOR EACH OTHER UNDER THIS PRICE INCREASE TEST, YOU MAY ALSO CONSIDER:

- CONSUMERS' VIEWS ON WHETHER THE PRODUCTS ARE INTERCHANGEABLE;

- THE RELATIONSHIP BETWEEN THE PRICE OF ONE PRODUCT AND SALES OF ANOTHER;

- THE PERCEPTIONS OF EITHER INDUSTRY OR THE PUBLIC AS TO WHETHER THE PRODUCTS ARE IN SEPARATE MARKETS;

- THE VIEWS OF STEVES AND JELD-WEN REGARDING WHO THEIR RESPECTIVE COMPETITORS ARE; AND

- THE EXISTENCE OR ABSENCE OF DIFFERENT CUSTOMER GROUPS OR DISTRIBUTION CHANNELS.

IN THIS CASE, STEVES CONTENDS THAT THE RELEVANT PRODUCT MARKET IS "INTERIOR MOLDED DOORSKINS." JELD-WEN CONTENDS THAT STEVES HAS NOT PROVEN THAT INTERIOR MOLDED DOORSKINS IS THE RELEVANT PRODUCT MARKET.

JURY INSTRUCTION NO. 27

THE RELEVANT GEOGRAPHIC MARKET IS THE AREA IN WHICH JELD-WEN FACES COMPETITION FROM OTHER FIRMS THAT COMPETE IN THE RELEVANT PRODUCT MARKET AND THAT CUSTOMERS CAN REASONABLY TURN TO FOR PURCHASES. WHEN ANALYZING THE RELEVANT GEOGRAPHIC MARKET, YOU SHOULD CONSIDER WHETHER CHANGES IN PRICES OR PRODUCT OFFERINGS IN ONE GEOGRAPHIC AREA HAVE SUBSTANTIAL EFFECTS ON PRICES OR SALES IN ANOTHER GEOGRAPHIC AREA, WHICH WOULD TEND TO SHOW THAT BOTH AREAS ARE IN THE SAME RELEVANT GEOGRAPHIC MARKET. THE GEOGRAPHIC MARKET MAY BE AS LARGE AS GLOBAL OR NATIONWIDE, OR AS SMALL AS A SINGLE TOWN OR NEIGHBORHOOD.

IN THIS CASE, STEVES CLAIMS THAT THE RELEVANT GEOGRAPHIC MARKET IS INTERIOR MOLDED DOORSKINS USED IN THE UNITED STATES. JELD-WEN CONTENDS THAT STEVES HAS NOT PROVEN THAT INTERIOR MOLDED DOORSKINS USED IN THE UNITED STATES IS THE RELEVANT MARKET.

JURY INSTRUCTION NO. 28

YOU MUST DECIDE WHETHER THE EFFECT OF THE ACQUISITION OF CMI BY JELD-WEN MAY BE SUBSTANTIALLY TO LESSEN COMPETITION IN THE RELEVANT PRODUCT AND GEOGRAPHIC MARKETS. STEVES MAY SATISFY THIS ELEMENT EITHER BY SHOWING A REASONABLE PROBABILITY OF A SUBSTANTIAL LESSENING OF COMPETITION IN THE FUTURE OR BY SHOWING A SUBSTANTIAL LESSENING OF COMPETITION THAT HAS ALREADY OCCURRED.

YOUR DETERMINATION OF THIS QUESTION MUST BE MADE IN LIGHT OF SEVERAL FACTORS. YOU MUST FIRST CONSIDER THE MARKET SHARE OF THE ACQUIRED AND ACQUIRING COMPANIES, AND THE EXTENT OF CONCENTRATION IN THE INDUSTRY. AN ACQUISITION THAT PRODUCES A FIRM CONTROLLING AN UNDUE PERCENTAGE OF THE RELEVANT MARKET AND RESULTING IN A SIGNIFICANT INCREASE IN CONCENTRATION IS A SIGNIFICANT FACTOR. "CONCENTRATION" REFERS TO THE NUMBER OF COMPANIES SELLING A PRODUCT IN THE RELEVANT MARKET, AND THEIR RESPECTIVE PERCENTAGES OF SALES IN THAT MARKET. IN ADDITION TO THIS STATISTICAL EVIDENCE OF MARKET CONCENTRATION, YOU MUST ALSO CONSIDER EVIDENCE OF THE STRUCTURE, HISTORY, AND PROBABLE FUTURE OF THE RELEVANT MARKET IN DETERMINING THE ANTICOMPETITIVE EFFECTS OF THE MERGER.

YOU SHOULD ALSO CONSIDER OTHER EVIDENCE, WHICH MAY EITHER CONFIRM OR REBUT THE SIGNIFICANCE OF THE EVIDENCE OF MARKET

SHARES AND MARKET CONCENTRATION IN ASSESSING THE EFFECT ON COMPETITION IN THE RELEVANT MARKET. FOR INSTANCE, THIS EVIDENCE MAY (OR MAY NOT) ESTABLISH THE VIGOR OF COMPETITION OR AFFIRMATIVE JUSTIFICATIONS IN SUPPORT OF THE ACQUISITION. SIMILARLY, THE EVIDENCE MAY (OR MAY NOT) SUGGEST THAT THE EVIDENCE OF MARKET SHARES AND MARKET CONCENTRATION DOES NOT ACCURATELY REFLECT THE ACQUISITION'S PROBABLE EFFECTS ON COMPETITION. IN ASSESSING THIS EVIDENCE, YOU MAY CONSIDER SEVERAL FACTORS, INCLUDING:

- THE PRESENCE OR ABSENCE OF ANTICOMPETITIVE EFFECTS SUCH AS INCREASES IN PRICE OR DECREASES IN QUALITY FOLLOWING THE ACQUISITION;

- WHETHER THE ABILITY OF OTHER COMPANIES TO ENTER THE RELEVANT MARKET, OR OF EXISTING SUPPLIERS TO EXPAND THEIR PRESENCE IN THE RELEVANT MARKET, WILL BE TIMELY, LIKELY, AND SUFFICIENT TO DETER OR COUNTERACT ANY SUBSTANTIAL ANTICOMPETITIVE EFFECTS THAT YOU FIND;

- WHETHER ACTIVE PRICE COMPETITION DID OR DID NOT CONTINUE IN THE RELEVANT MARKET AFTER THE ACQUISITION; AND

- THE EFFICIENCIES OR BENEFITS TO THE PURCHASERS OF INTERIOR MOLDED DOORSKINS THAT MAY RESULT OR HAVE RESULTED FROM THE ACQUISITION. HOWEVER, YOU MAY ONLY

CONSIDER EVIDENCE OF SUCH EFFICIENCIES IF YOU FIND THAT ALL OF THE FOLLOWING ARE TRUE: (1) THE EFFICIENCIES ARE OF A CHARACTER AND MAGNITUDE SUCH THAT THE MERGER IS NOT LIKELY TO BE ANTICOMPETITIVE IN THE RELEVANT MARKET; (2) THE EFFICIENCIES COULD NOT HAVE BEEN ACHIEVED WITHOUT THE ACQUISITION; (3) THE EFFICIENCIES ARE VERIFIABLE, AND NOT MERELY SPECULATIVE; AND (4) THE EFFICIENCIES BENEFIT CONSUMERS.

JURY INSTRUCTION NO. 29

IF YOU FIND THAT JELD-WEN HAS VIOLATED SECTION 7 OF THE CLAYTON ACT, THEN YOU MUST DECIDE IF STEVES IS ENTITLED TO RECOVER DAMAGES FROM JELD-WEN.

STEVES IS ENTITLED TO RECOVER DAMAGES FOR AN INJURY TO ITS BUSINESS OR PROPERTY IF IT CAN ESTABLISH THREE ELEMENTS OF INJURY AND CAUSATION:

(1) STEVES WAS IN FACT INJURED AS A RESULT OF JELD-WEN'S ACQUISITION OF CMI;

(2) JELD-WEN'S ACQUISITION OF CMI WAS A MATERIAL CAUSE OF STEVES' INJURY; AND

(3) STEVES' INJURY IS AN INJURY OF THE TYPE THAT THE ANTITRUST LAWS WERE INTENDED TO PREVENT.

JURY INSTRUCTION NO. 30

FOR STEVES TO ESTABLISH THAT IT IS ENTITLED TO RECOVER DAMAGES, IT MUST PROVE THAT IT WAS INJURED AS A RESULT OF JELD-WEN'S ALLEGED VIOLATION OF THE ANTITRUST LAWS. PROVING THE FACT OF DAMAGE DOES NOT REQUIRE STEVES TO PROVE THE DOLLAR VALUE OF ITS INJURY. IT REQUIRES ONLY THAT STEVES PROVE THAT IT WAS IN FACT INJURED BY JELD-WEN'S ALLEGED ANTITRUST VIOLATION.

JURY INSTRUCTION NO. 31

THE REQUIREMENT THAT THE ANTITRUST VIOLATION HAVE BEEN THE "MATERIAL CAUSE" OF STEVES' INJURY MEANS THAT STEVES MUST HAVE PROVED THAT SOME DAMAGE OCCURRED TO IT AS A RESULT OF ANY ANTITRUST VIOLATION YOU HAVE FOUND, AND NOT SOME OTHER CAUSE. STEVES IS NOT REQUIRED TO PROVE THAT JELD-WEN'S ALLEGED ANTITRUST VIOLATION WAS THE SOLE CAUSE OF ITS INJURY, NOR DOES STEVES NEED TO ELIMINATE ALL OTHER POSSIBLE CAUSES OF INJURY. IT IS ENOUGH IF STEVES HAS PROVED THAT JELD-WEN'S ACQUISITION OF CMI WAS A MATERIAL CAUSE OF ITS INJURY.

JURY INSTRUCTION NO. 32

THE REQUIREMENT THAT STEVES' INJURY HAVE BEEN "OF THE TYPE THAT THE ANTITRUST LAWS WERE INTENDED TO PREVENT" IS SOMETIMES REFERRED TO AS THE "ANTITRUST INJURY" ELEMENT. IF STEVES' INJURIES WERE CAUSED BY A REDUCTION IN COMPETITION, ACTS THAT WOULD LEAD TO A REDUCTION IN COMPETITION, OR ACTS THAT WOULD OTHERWISE HARM CONSUMERS, THEN STEVES' INJURIES ARE ANTITRUST INJURIES. ON THE OTHER HAND, IF STEVES' INJURIES WERE CAUSED BY CONDUCT THAT DID NOT HARM COMPETITION, THE COMPETITIVE PROCESS ITSELF, OR BY ACTS THAT WOULD BENEFIT CONSUMERS, THEN STEVES' INJURIES ARE NOT ANTITRUST INJURIES AND IT MAY NOT RECOVER DAMAGES FOR THOSE INJURIES UNDER THE ANTITRUST LAWS.

JURY INSTRUCTION NO. 33

IF YOU FIND THAT JELD-WEN VIOLATED THE ANTITRUST LAWS AND THAT THIS VIOLATION CAUSED INJURY TO STEVES, THEN YOU MUST DETERMINE THE AMOUNT OF DAMAGES, IF ANY, STEVES IS ENTITLED TO RECOVER. THE FACT THAT I AM GIVING YOU INSTRUCTIONS CONCERNING THE ISSUE OF STEVES' DAMAGES DOES NOT MEAN THAT I BELIEVE STEVES SHOULD, OR SHOULD NOT, PREVAIL IN THIS CASE. IF YOU REACH A VERDICT FOR JELD-WEN ON THE ISSUE OF LIABILITY, YOU SHOULD NOT CONSIDER THE ISSUE OF DAMAGES, AND YOU MAY DISREGARD THE DAMAGES INSTRUCTIONS THAT I AM ABOUT TO GIVE.

THE LAW PROVIDES THAT STEVES SHOULD BE FAIRLY COMPENSATED FOR ALL DAMAGES TO ITS BUSINESS OR PROPERTY THAT WERE A DIRECT RESULT OR LIKELY CONSEQUENCE OF THE CONDUCT THAT YOU HAVE FOUND TO BE UNLAWFUL.

JURY INSTRUCTION NO. 34

YOU ARE PERMITTED TO MAKE JUST AND REASONABLE ESTIMATES IN CALCULATING STEVES' DAMAGES. YOU ARE NOT REQUIRED TO CALCULATE DAMAGES WITH MATHEMATICAL CERTAINTY OR PRECISION. HOWEVER, THE AMOUNT OF DAMAGES MUST HAVE A REASONABLE BASIS IN THE EVIDENCE, MUST BE BASED ON REASONABLE, NON-SPECULATIVE ASSUMPTIONS AND ESTIMATES, AND MUST BE REASONABLY ASCERTAINABLE. DAMAGES MAY NOT BE BASED ON GUESSWORK OR SPECULATION. STEVES MUST PROVE THE REASONABLENESS OF EACH OF THE ASSUMPTIONS UPON WHICH THE DAMAGES CALCULATION IS BASED.

JURY INSTRUCTION NO. 35

STEVES CLAIMS THAT IT WAS HARMED BECAUSE, AS A RESULT OF JELD-WEN'S ALLEGED ANTITRUST VIOLATION, STEVES WILL BE UNABLE TO MAINTAIN A VIABLE INTERIOR MOLDED DOOR MANUFACTURING BUSINESS WHEN THE CONTRACT BETWEEN STEVES AND JELD-WEN TERMINATES ON SEPTEMBER 10, 2021, AND WILL THEREFORE BE UNABLE TO EXIST AS A COMPANY. YOU MAY ONLY CONSIDER DAMAGES FOR THIS HARM IF YOU FIND THAT JELD-WEN COMMITTED AN ANTITRUST VIOLATION AND THAT THIS VIOLATION CAUSED INJURY TO STEVES.

TO CALCULATE FUTURE LOST PROFITS, YOU MUST MAKE A REASONABLE ESTIMATE OF (1) THE AMOUNT OF PROFITS, IF ANY, THAT STEVES WOULD HAVE EARNED IN FUTURE YEARS, AND (2) THE LENGTH OF TIME FOR WHICH IT WOULD HAVE EARNED THOSE PROFITS. IN MAKING THIS CALCULATION, YOU ARE NOT REQUIRED TO CALCULATE FUTURE LOST PROFITS WITH ABSOLUTE MATHEMATICAL CERTAINTY OR PRECISION, BUT YOU MUST NOT ENGAGE IN GUESSWORK OR SPECULATION. YOU MUST CONSIDER ANY FACTORS THAT COULD AFFECT THE FUTURE SUCCESS OF STEVES' BUSINESS AND ANY OTHER FACTORS AFFECTING STEVES' FUTURE PERFORMANCE.

YOUR DETERMINATION OF FUTURE LOST PROFITS MUST HAVE A REASONABLE BASIS IN THE EVIDENCE AND CANNOT BE SPECULATIVE. IF EVIDENCE DOES NOT ALLOW YOU TO MAKE A REASONABLE ESTIMATE OF

LOST FUTURE PROFITS, YOU MAY NOT AWARD DAMAGES FOR FUTURE LOST PROFITS.

IF YOU AWARD DAMAGES FOR FUTURE LOST PROFITS, THE AMOUNT MUST BE DISCOUNTED TO ITS PRESENT VALUE, USING A DISCOUNT RATE OF INTEREST THAT YOU FIND REASONABLE. THIS IS BECAUSE THE RIGHT TO RECEIVE A CERTAIN SUM OF MONEY AT A FUTURE DATE IS WORTH LESS THAN THE SAME AMOUNT OF MONEY IN HAND TODAY - THIS IS KNOWN AS THE TIME VALUE OF MONEY.

JURY INSTRUCTION NO. 36

STEVES MAY NOT RECOVER DAMAGES FOR ANY PORTION OF ITS INJURIES THAT IT COULD HAVE AVOIDED THROUGH THE EXERCISE OF REASONABLE CARE AND PRUDENCE. THE LAW REQUIRES AN INJURED PARTY TO TAKE ALL REASONABLE STEPS IT CAN TO AVOID FURTHER INJURY AND THEREBY REDUCE ITS LOSS. IF STEVES FAILED TO TAKE REASONABLE STEPS AVAILABLE TO IT, AND THE FAILURE TO TAKE THOSE STEPS RESULTED IN GREATER HARM THAN IT WOULD HAVE SUFFERED HAD IT TAKEN THOSE STEPS, THEN STEVES MAY NOT RECOVER ANY DAMAGES FOR THAT PART OF THE INJURY IT COULD HAVE AVOIDED.

JELD-WEN HAS THE BURDEN OF PROOF ON THIS ISSUE. IT MUST PROVE BY A PREPONDERANCE OF THE EVIDENCE:

(1) THAT STEVES ACTED UNREASONABLY IN FAILING TO TAKE SPECIFIC STEPS TO MINIMIZE OR LIMIT ITS LOSSES;

(2) THAT THE FAILURE TO TAKE THOSE SPECIFIC STEPS RESULTED IN STEVES' LOSSES BEING GREATER THAN THEY WOULD HAVE BEEN HAD IT TAKEN SUCH STEPS; AND

(3) THE AMOUNT BY WHICH STEVES' LOSS WOULD HAVE BEEN REDUCED HAD IT TAKEN THOSE STEPS.

IN DETERMINING WHETHER STEVES FAILED TO TAKE REASONABLE MEASURES TO LIMIT ITS DAMAGES, YOU MUST REMEMBER THAT THE LAW DOES NOT REQUIRE STEVES TO TAKE EVERY CONCEIVABLE STEP THAT

MIGHT REDUCE ITS DAMAGES. THE EVIDENCE MUST SHOW THAT STEVES FAILED TO TAKE COMMERCIALLY REASONABLE MEASURES THAT WERE OPEN TO IT. COMMERCIALLY REASONABLE MEASURES MEAN THOSE MEASURES THAT A PRUDENT BUSINESSPERSON IN STEVES' POSITION WOULD LIKELY HAVE ADOPTED, GIVEN THE CIRCUMSTANCES AS THEY APPEARED AT THAT TIME. STEVES SHOULD BE GIVEN WIDE LATITUDE IN DECIDING HOW TO HANDLE THE SITUATION, SO LONG AS WHAT STEVES DID WAS NOT UNREASONABLE IN LIGHT OF THE EXISTING CIRCUMSTANCES.

JURY INSTRUCTION NO. 37

IN COUNT TWO OF THE COMPLAINT, STEVES ALLEGES THAT JELD-WEN BREACHED A CONTRACT FOR THE SUPPLY OF DOORSKINS, WHICH I WILL REFER TO AS THE "SUPPLY AGREEMENT." SPECIFICALLY, STEVES ALLEGES THAT JELD-WEN COMMITTED FOUR SEPARATE BREACHES OF THE SUPPLY AGREEMENT:

(1) SECTION 1 OF THE AGREEMENT PROVIDES THAT THE TERMS OF THE AGREEMENT APPLY TO THE "FULL RANGE OF JELD-WEN MOLDED DOORSKIN PRODUCTS." STEVES ALLEGES THAT THE AGREEMENT REQUIRES JELD-WEN TO SELL ALL OF ITS INTERIOR MOLDED DOORSKIN PRODUCTS (CURRENT AND FUTURE) TO STEVES AT THE PRICES THAT THE AGREEMENT REQUIRES, AND THAT JELD-WEN BREACHED THE AGREEMENT BY REFUSING TO SELL TWO PRODUCTS INTRODUCED AFTER THE SIGNING OF THE AGREEMENT - THE MADISON AND MONROE STYLES - AT THE PRICES THAT THE AGREEMENT REQUIRES. JELD-WEN DENIES THAT IT BREACHED THE AGREEMENT BECAUSE, IT ASSERTS, THE AGREEMENT ONLY APPLIES TO THE FULL RANGE OF DOORSKINS PRODUCTS AVAILABLE AT THE TIME THE PARTIES ENTERED INTO THE AGREEMENT, AND NOT ANY NEW PRODUCTS INTRODUCED SUBSEQUENT TO SIGNING THE AGREEMENT. JELD-WEN FURTHER CONTENDS THAT THERE WAS NO PRICE SPECIFIED IN THE AGREEMENT FOR FUTURE STYLES.

(2) SECTION 6 OF THE AGREEMENT PROVIDES FOR A CALCULATION OF KEY INPUTS TO JELD-WEN'S DOORSKIN MANUFACTURING PROCESS.

STEVES ALLEGES THAT THE AGREEMENT REQUIRES JELD-WEN TO REDUCE STEVES' PRICES WHEN THE COST OF THOSE KEY INPUTS DECLINED, AND THAT JELD-WEN BREACHED THE AGREEMENT BY FAILING TO DO SO. JELD-WEN DENIES THAT THE AGREEMENT REQUIRES JELD-WEN TO REDUCE STEVES' PRICES WHEN KEY INPUT COSTS DECREASE AND INSTEAD ALLEGES THAT THE AGREEMENT ONLY ALLOWS JELD-WEN TO INCREASE STEVES' PRICES WHEN KEY INPUTS INCREASE.

(3) SECTION 8 OF THE AGREEMENT REQUIRES THAT DOORSKINS SUPPLIED "WILL AT ALL TIMES BE OF A QUALITY SATISFACTORY TO STEVES, MEETING JELD-WEN'S SPECIFICATIONS, FIT FOR THE INTENDED PURPOSE, AND SUBJECT TO JELD-WEN'S STANDARD WARRANTY APPLICABLE TO THE PRODUCT (THE 'SPECIFICATIONS'). IF JELD-WEN SHIPS PRODUCT THAT DO NOT MEET JELD-WEN'S SPECIFICATIONS (HEREINAFTER 'DEFECTIVE PRODUCT'), THEN JELD-WEN, AFTER NOTICE, INSPECTION AND VERIFICATION OF THE DEFECTIVE PRODUCT, WILL BE OBLIGED TO REIMBURSE STEVES FOR THE PRICE OF THE DEFECTIVE PRODUCT." STEVES ALLEGES THAT JELD-WEN BREACHED SECTION 8 BY SHIPPING DEFECTIVE DOORSKINS TO STEVES, AND FAILING TO REIMBURSE STEVES FOR DEFECTIVE DOORSKINS. JELD-WEN DENIES THAT IT BREACHED SECTION 8 BECAUSE, JELD-WEN ALLEGES, IT INSPECTED STEVES' CLAIMS FOR DEFECTIVE DOORSKINS, REIMBURSED STEVES FOR VERIFIED CLAIMS, AND ONLY DENIED CLAIMS FOR DOORSKINS THAT WERE EITHER NOT DEFECTIVE OR THE DAMAGE TO THE DOORSKINS WAS NOT CAUSED BY JELD-WEN.

(4) STEVES ALLEGES THAT JELD-WEN BREACHED SECTION 8 OF THE AGREEMENT BY FAILING TO REIMBURSE STEVES FOR THE FULL COST OF DOORS MANUFACTURED BY STEVES THAT INCORPORATED DEFECTIVE DOORSKINS THAT JELD-WEN SOLD TO STEVES. JELD-WEN DENIES THAT IT BREACHED THE AGREEMENT BECAUSE, JELD-WEN ALLEGES, THE AGREEMENT DOES NOT REQUIRE JELD-WEN TO PAY FOR THE FULL COST OF DOORS, ONLY DEFECTIVE DOORKINS.

JURY INSTRUCTION NO. 38

A CONTRACT IS A LEGALLY BINDING AGREEMENT BETWEEN TWO OR MORE PARTIES. EACH PARTY TO THE CONTRACT MUST PERFORM ACCORDING TO THE AGREEMENT'S TERMS. A PARTY'S FAILURE TO PERFORM A CONTRACTUAL DUTY CONSTITUTES BREACH OF CONTRACT. IF A PARTY BREACHES THE CONTRACT AND THAT BREACH CAUSES INJURY OR LOSS TO ANOTHER PARTY, THEN THE INJURED PARTY MAY CLAIM DAMAGES.

JURY INSTRUCTION NO. 39

TO PREVAIL ON ITS BREACH OF CONTRACT CLAIMS, STEVES MUST
PROVE, BY A PREPONDERANCE OF THE EVIDENCE, THAT:

(1)   AS TO THE ALLEGED BREACH OF SECTION 1 OF THE SUPPLY
      AGREEMENT:

   (a)   THE TERM "FULL RANGE OF JELD-WEN MOLDED DOORSKIN
         PRODUCTS" INCLUDES THE SO-CALLED "MADISON" AND
         "MONROE" STYLES;

   (b)   THE CRAFTSMAN PRICING PROVISIONS IN SCHEDULE 1
         APPLY TO THE MADISON AND MONROE DOORSKINS BECAUSE
         THOSE ARE CRAFTSMAN STYLE DOORSKINS;

   (c)   JELD-WEN DID NOT CHARGE THOSE PRICES, INSTEAD
         SELLING THOSE STYLES TO STEVES ONLY IF STEVES
         PAID THE HIGHER PRICES; AND

   (d)   AS A RESULT, JELD-WEN CAUSED STEVES DAMAGES IN
         THE FORM OF OVERCHARGES.

(2)   AS TO THE ALLEGED BREACH OF SECTION 6:

   (a)   THAT PROVISION REQUIRES THE ADJUSTMENT OF PRICES
         TO BE PAID BY STEVES UPWARD OR DOWNWARD DEPENDING
         ON WHETHER THE SO-CALLED "KEY INPUT COSTS"
         INCREASED OR DECREASED;

(b) JELD-WEN DID NOT APPROPRIATELY ADJUST THE PRICES IT CHARGED STEVES WHEN THE KEY INPUT COSTS DECREASED; AND

(c) JELD-WEN WRONGFULLY OVERCHARGED STEVES IN THE AMOUNTS CLAIMED.

(3) AS TO THE ALLEGED BREACH OF SECTION 8 (RESPECTING DOORSKINS):

(a) JELD-WEN SHIPPED JELD-WEN MOLDED DOORSKIN PRODUCTS TO STEVES (THAT STEVES *DID NOT* INCLUDE IN DOORS) THAT DID NOT MEET JELD-WEN'S SPECIFICATIONS, WERE NOT OF A QUALITY SATISFACTORY TO STEVES, OR WERE NOT FIT FOR THEIR INTENDED PURPOSE;

(b) JELD-WEN DID NOT REIMBURSE STEVES FOR THE PRICE OF THOSE DOORSKINS; AND

(c) JELD-WEN'S FAILURE TO REIMBURSE STEVES FOR THE PRICE OF THOSE DOORSKINS CAUSED THE LOSSES CLAIMED.

(4) AS TO THE ALLEGED BREACH OF SECTION 8 (RESPECTING DOORS):

(a) JELD-WEN SHIPPED JELD-WEN MOLDED DOORSKIN PRODUCTS TO STEVES (THAT STEVES *DID* INCLUDE IN DOORS) THAT DID NOT MEET JELD-WEN'S SPECIFICATIONS, WERE NOT OF A QUALITY

SATISFACTORY TO STEVES, OR WERE NOT FIT FOR THEIR INTENDED PURPOSE;

(b)   STEVES GAVE NOTICE THEREOF TO JELD-WEN AND AN OPPORTUNITY TO INSPECT THOSE DOORS, OR PROVED THAT DOING SO WOULD HAVE BEEN FUTILE;

(c)   JELD-WEN WAS REQUIRED TO, BUT DID NOT, REIMBURSE STEVES FOR THE COST OF DOORS MANUFACTURED BY STEVES THAT INCORPORATED DEFECTIVE DOORSKINS SOLD TO STEVES BY JELD-WEN; AND

(d)   JELD-WEN'S FAILURE TO REIMBURSE STEVES FOR THE PRICE OF THOSE DOORS CAUSED THE LOSSES CLAIMED.

JURY INSTRUCTION NO. 40

AS TO THE ALLEGED BREACHES OF SECTIONS 1, 6, AND 8, STEVES AND JELD-WEN INTERPRET THE TERMS OF THOSE PROVISIONS DIFFERENTLY. IT IS YOUR TASK TO DECIDE WHAT STEVES AND JELD-WEN INTENDED THE DISPUTED TERMS TO MEAN WHEN THEY ENTERED INTO THE SUPPLY AGREEMENT.

IN DETERMINING THE INTENT OF THE PARTIES, YOU MAY CONSIDER:

(1)   THE ACTUAL LANGUAGE USED IN THE SUPPLY AGREEMENT;

(2)   THE CONSTRUCTION ACTUALLY GIVEN TO THE TERMS BY THE PARTIES AS SHOWN THROUGH THEIR CONDUCT DURING THE PERFORMANCE OF THE CONTRACT AFTER THE CONTRACT BECAME EFFECTIVE AND BEFORE THE INSTITUTION OF THIS LAWSUIT. THE PARTIES' CONDUCT AFTER A CONTRACT IS MADE SHOULD BE GIVEN GREAT WEIGHT IN DETERMINING ITS MEANING; AND

(3)   THE HISTORY OF NEGOTIATIONS, EARLIER VERSIONS OF THE CONTRACT, AND CUSTOMS IN THE INDUSTRY. IN CONSIDERING THE HISTORY OF NEGOTIATIONS, YOU SHOULD CONSIDER ONLY EVIDENCE OF WHAT BOTH PARTIES KNEW OR SHOULD HAVE KNOWN.

JURY INSTRUCTION NO. 41

A PARTY THAT IS HARMED BY A BREACH OF CONTRACT IS ENTITLED TO DAMAGES IN AN AMOUNT CALCULATED TO COMPENSATE IT FOR THE HARM CAUSED BY THE BREACH. THE COMPENSATION SHOULD PLACE THE INJURED PARTY IN THE SAME POSITION IT WOULD HAVE BEEN IN IF THE CONTRACT HAD BEEN PERFORMED.

WITH RESPECT TO STEVES' CLAIM THAT JELD-WEN BREACHED SECTION 8 OF THE SUPPLY AGREEMENT BY FAILING TO REIMBURSE STEVES FOR THE FULL COST OF DOORS MANUFACTURED BY STEVES THAT INCORPORATED DEFECTIVE DOORSKINS THAT JELD-WEN SOLD TO STEVES, YOU MUST DECIDE WHETHER STEVES IS ENTITLED TO CONSEQUENTIAL DAMAGES. CONSEQUENTIAL DAMAGES RESULTING FROM THE SELLER'S BREACH INCLUDE ANY LOSS RESULTING FROM GENERAL OR PARTICULAR REQUIREMENTS AND NEEDS OF WHICH JELD-WEN AT THE TIME OF CONTRACTING HAD REASON TO KNOW AND WHICH COULD NOT REASONABLY BE PREVENTED BY STEVES. WHETHER STEVES IS ENTITLED TO CONSEQUENTIAL DAMAGES IS A QUESTION FOR YOU TO DECIDE.

YOU SHOULD AWARD STEVES THE FULL AMOUNT OF DAMAGES NECESSARY TO COMPENSATE IT FOR ANY BREACH OF CONTRACT BY JELD-WEN. IT IS NOT YOUR JOB TO ENSURE THAT STEVES DOES NOT RECEIVE A DOUBLE RECOVERY FOR THE SAME INJURY ON ITS ANTITRUST AND CONTRACT CLAIMS. IT IS MY JOB TO ENSURE THAT THIS DOES NOT OCCUR, BASED ON THE INFORMATION YOU WILL PROVIDE ME.

AS I HAVE PREVIOUSLY INSTRUCTED YOU, DAMAGES MUST BE PROVED WITH REASONABLE ACCURACY.

AND, THE INSTRUCTIONS THAT WERE PREVIOUSLY GIVEN ABOUT MITIGATING DAMAGES APPLY HERE AS WELL.

## JURY INSTRUCTION NO. 42

THE FACT THAT I HAVE INSTRUCTED YOU ABOUT THE PROPER MEASURE OF DAMAGES FOR BREACH OF CONTRACT SHOULD NOT BE CONSIDERED AS MY SUGGESTING WHICH PARTY IS ENTITLED TO YOUR VERDICT IN THIS CASE. INSTRUCTIONS ABOUT THE MEASURE OF DAMAGES ARE GIVEN FOR YOUR GUIDANCE ONLY IF YOU FIND THAT A DAMAGES AWARD IS IN ORDER.

JURY INSTRUCTION NO. 43

UPON RETIRING TO YOUR JURY ROOM TO BEGIN YOUR DELIBERATIONS, YOU WILL ELECT ONE OF YOUR MEMBERS TO ACT AS YOUR FOREPERSON. THE FOREPERSON WILL PRESIDE OVER YOUR DELIBERATIONS AND WILL BE YOUR SPOKESPERSON HERE IN COURT.

YOUR VERDICT MUST REPRESENT THE COLLECTIVE JUDGMENT OF THE JURY. IN ORDER TO RETURN A VERDICT, IT IS NECESSARY THAT EACH JUROR AGREE TO IT. YOUR VERDICT, IN OTHER WORDS, MUST BE UNANIMOUS.

IT IS YOUR DUTY AS JURORS TO CONSULT WITH ONE ANOTHER AND TO DELIBERATE WITH ONE ANOTHER WITH A VIEW TOWARDS REACHING AN AGREEMENT IF YOU CAN DO SO WITHOUT VIOLENCE TO INDIVIDUAL JUDGMENT. EACH OF YOU MUST DECIDE THE CASE FOR HIMSELF OR HERSELF, BUT DO SO ONLY AFTER AN IMPARTIAL CONSIDERATION OF THE EVIDENCE IN THE CASE WITH YOUR FELLOW JURORS. IN THE COURSE OF YOUR DELIBERATIONS, DO NOT HESITATE TO REEXAMINE YOUR OWN VIEWS AND TO CHANGE YOUR OPINION IF CONVINCED IT IS ERRONEOUS. DO NOT SURRENDER YOUR HONEST CONVICTION, HOWEVER, SOLELY BECAUSE OF THE OPINION OF YOUR FELLOW JURORS OR FOR THE MERE PURPOSE OF RETURNING A VERDICT.

REMEMBER AT ALL TIMES THAT YOU ARE NOT PARTISANS. YOU ARE JUDGES - JUDGES OF THE FACTS OF THIS CASE. YOUR SOLE INTEREST IS

TO SEEK THE TRUTH FROM THE EVIDENCE RECEIVED DURING THE TRIAL.

YOUR VERDICT MUST BE BASED SOLELY UPON THE EVIDENCE RECEIVED IN THE CASE. NOTHING YOU HAVE SEEN OR READ OUTSIDE OF COURT MAY BE CONSIDERED. NOTHING THAT I HAVE SAID OR DONE DURING THE COURSE OF THIS TRIAL IS INTENDED IN ANY WAY, TO SOMEHOW SUGGEST TO YOU WHAT I THINK YOUR VERDICT SHOULD BE. NOTHING SAID IN THESE INSTRUCTIONS AND NOTHING IN ANY FORM OF VERDICT PREPARED FOR YOUR CONVENIENCE IS TO SUGGEST OR CONVEY TO YOU IN ANY WAY OR MANNER ANY INTIMATION AS TO WHAT VERDICT I THINK YOU SHOULD RETURN. WHAT THE VERDICT SHALL BE IS THE EXCLUSIVE DUTY AND RESPONSIBILITY OF THE JURY. AS I HAVE TOLD YOU MANY TIMES, YOU ARE THE SOLE JUDGES OF THE FACTS.

A VERDICT FORM HAS BEEN PREPARED FOR YOUR CONVENIENCE.

YOU WILL TAKE THIS FORM TO THE JURY ROOM AND, WHEN YOU HAVE REACHED UNANIMOUS AGREEMENT AS TO YOUR VERDICT, YOU WILL HAVE YOUR FOREPERSON WRITE YOUR VERDICT, DATE AND SIGN THE FORM, AND THEN RETURN WITH YOUR VERDICT TO THE COURTROOM.

IF IT BECOMES NECESSARY DURING YOUR DELIBERATIONS TO COMMUNICATE WITH THE COURT, YOU MAY SEND A NOTE, SIGNED BY YOUR FOREPERSON OR BY ONE OR MORE OF THE JURY, THROUGH THE BAILIFF. NO MEMBER OF THE JURY SHOULD EVER ATTEMPT TO COMMUNICATE WITH THE COURT BY ANY MEANS OTHER THAN A SIGNED WRITING AND THE COURT

WILL NEVER COMMUNICATE WITH ANY MEMBER OF THE JURY ON ANY SUBJECT TOUCHING THE MERITS OF THE CASE OTHER THAN IN WRITING OR ORALLY HERE IN OPEN COURT.

BEAR IN MIND THAT YOU ARE NEVER TO REVEAL TO ANY PERSON - NOT EVEN TO THE COURT - HOW THE JURY STANDS, NUMERICALLY OR OTHERWISE, ON THE QUESTION OF WHETHER OR NOT STEVES HAS SUSTAINED ITS BURDEN OF PROOF UNTIL AFTER YOU HAVE REACHED A UNANIMOUS VERDICT.