# EXHIBIT A

## JELD-WEN'S FACTUAL CONTENTIONS

JELD-WEN, Inc. ("JELD-WEN") alleges that Steves and Sons, Inc. ("Steves") violated both the federal Defend Trade Secrets Act and the Texas Uniform Trade Secrets Act by misappropriating JELD-WEN's trade secrets.

*First,* JELD-WEN alleges that the process and financial-related information at issue in this case constitutes trade secrets. JELD-WEN owns the information in question (the "trade secrets") and took reasonable measures to protect the trade secrets. The trade secrets have independent economic value, actual or potential, from not being generally known to, or readily ascertainable by proper means by, another person who can obtain economic value from the disclosure or use of the information.

*Second,* JELD-WEN claims that Steves acquired JELD-WEN's trade secrets through improper means. Steves acquired the trade secrets through former JELD-WEN employees, John Pierce and John Ambruz. While employed at JELD-WEN, both Mr. Pierce and Mr. Ambruz signed confidentiality agreements in which they promised not to reveal JELD-WEN's confidential information to any outside party during and after their JELD-WEN employment. JELD-WEN claims that Steves knew, or had reason to know, that the information it obtained from them was confidential to JELD-WEN and subject to non-disclosure agreements. Steves also improperly acquired JELD-WEN's trade secret information in violation of the parties' Protective Order by viewing JELD-WEN documents marked Highly Confidential.

*Third,* Steves also used and disclosed the JELD-WEN trade secrets that it improperly acquired through Mr. Pierce and Mr. Ambruz. As part of its efforts to build its own molded doorskin plant and to secure alternative foreign supply of doorskins, Steves has used, and continues to use, JELD-WEN's process-related and financial-related trade secrets. Steves' use extends well beyond the assessment of whether to build a plant to its plans to actually build a plant. Those plans

include, but are not limited to: hiring consultants; laying out the critical phases of building the plant and providing financial incentives for its consultants to complete them; corresponding with multiple potential manufacturing partners; and informing its customers about its plans to build a molded doorskin plant. Its plans remain in place and are based on the JELD-WEN trade secret information that Mr. Pierce and Mr. Ambruz provided to Steves. In addition, Steves used JELD-WEN's financial trade secrets to obtain leverage in negotiations with both JELD-WEN and other suppliers.

*Fourth,* Steves' misappropriation was willful and malicious. Steves knowingly solicited former employees of JELD-WEN to provide confidential JELD-WEN-specific information. Steves continued to do so, even after it was on notice that its conduct was improper In doing so, Steves acted with reckless disregard for JELD-WEN's rights.

*Fifth,* the trade secrets at issue relate to JELD-WEN's manufacture of door skins, which are bought and sold across state lines and therefore are used in interstate commerce.

*Sixth,* under the DTSA and the TUTSA, JELD-WEN is entitled to compensatory damages for Steves' trade secret misappropriation, as well as exemplary damages, because Steves' misappropriation was willful and malicious.

## JELD-WEN'S TRIABLE ISSUES

1. Whether the trade secrets JELD-WEN listed in its Statement of Misappropriated Trade Secrets Asserted at Trial (Dkt. No. 1218) are owned by JELD-WEN and derive economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

2. Whether JELD-WEN took reasonable measures to protect its trade secrets.

3. Whether Steves acquired JELD-WEN's trade secrets through improper means.

4. Whether Steves used or disclosed JELD-WEN's trade secrets.

5. Whether Steves' misappropriation of JELD-WEN's trade secrets was willful and malicious.

6. By what amount Steves has been unjustly enriched as a result of its misappropriation of JELD-WEN's trade secrets.

7. What amount constitutes a reasonable royalty that Steves owes JELD-WEN because of Steves' misappropriation of JELD-WEN's trade secrets.

8. What constitutes a reasonable amount of exemplary damages, not more than two times the amount awarded for compensatory damages, to deter the type of behavior engaged in by Steves.

9. Whether John Pierce spoliated relevant evidence when he had a duty to preserve evidence because he reasonably expected future litigation.