

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

STEVES AND SONS, INC.,

    Plaintiff,

v.                       Civil Action No. 3:16-cv-545

JELD-WEN, INC.,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on DEFENDANT AND
COUNTERCLAIMANT JELD-WEN, INC.'S MOTION *IN LIMINE* FOR SANCTIONS
AS TO JOHN PIERCE FOR THE SPOLIATION OF EVIDENCE (ECF No. 1085).
For the reasons set forth below, the motion was denied. See ECF
No. 1536.

## BACKGROUND

The factual and procedural background underlying this
dispute is described at length in the Court's recent opinion
denying summary judgment on JELD-WEN, Inc.'s ("JELD-WEN")
federal and state claims for trade secret misappropriation. See
Summary Judgment Op. (ECF No. 1424) at 2-7. However, the facts
relevant to this motion are provided here for context.

In or around March 2015, Steves and Sons, Inc. ("Steves")
hired John Pierce ("Pierce")—a former JELD-WEN employee—as a
consultant to help develop a doorskin manufacturing plant for

Steves and to verify the accuracy of JELD-WEN's key input costs for doorskins that it manufactured (which Steves purchased). Some evidence indicates that Steves paid Pierce to obtain information covertly from JELD-WEN in furtherance of these goals. Pierce allegedly did so by traveling to several JELD-WEN doorskin plants and speaking with employees there. Id. at 3-5.

At some point, Pierce realized that JELD-WEN might seek to interfere with his relationship with Steves given his confidentiality obligations to JELD-WEN. On April 7, 2015, he sent two e-mails to Steves' principal officers, Edward Steves and Sam Steves II (collectively, "the Steves Brothers"), regarding this possibility. In the first, he stated that he was "interested in talking with you some more about the chance that J[ELD-WEN] might try to make trouble for us if they find out I'm assisting you. . . . [W]ould it be time well spent to speak with your attorney about that?" ECF No. 1086-2 (Under Seal). Then, later that day, he sent another e-mail ("the April 7 E-mail") outlining his "thoughts about potential J[ELD-WEN] retaliation." Although Pierce pointed out that he was "not an attorney" and did not "know much of anything about these things," he explained that he had testified in another proceeding in which JELD-WEN had sued a former plant manager for trade secret misappropriation when he left to work with a foreign competitor. Pierce asserted that any misappropriation claim against him

2

would be hard to prove since he left JELD-WEN several years ago, and that "[t]here really are very few if any trade secrets to the manufacturing process," but acknowledged that "some of the financial information that I've passed to you might cause us trouble." Consequently, Pierce said, "[e]ven if J[ELD-WEN] could not win any damages, they might distract the three of us with a suit." ECF No. 1086-1 (Under Seal).

Pierce further noted that, "[i]f J[ELD-WEN] did file a suit, the first things we would see would probably be an order to send to them copies of all correspondence that we have exchanged, and all reports that I have provided." Accordingly, he asked the Steves Brothers whether it would "be wise for us to take precautions to be sure that we are not forced to send them anything that would give them even the most remote basis to continue with proceedings." He proposed the following steps:

- "Delet[ing] from all of our email servers, programs, and folders all copies of every email and document we have exchanged to this point, including every copy that is in the 'SENT' email folder";

- "Delet[ing] all meeting notes";

- "Hav[ing] me re-compose all of the information that I've sent you to remove indications that any of it is verified current information"; and

- "[S]end[ing] you re-drafted versions of all the information that I have provided so far—to eliminate any references that indicate that current informa[ti]on was passed to me by current [JELD-WEN] employees."

3

Taking these "inexpensive precautions . . . before a discovery order is received" would allow Pierce and the Steves Brothers to "comply with any such request with reasonable documents that might not be incriminating to anyone." Pierce concluded by saying, "We can't unring a bell, but perhaps we can replace the bell with one that's more attractive to Steves . . ., and less attractive to J[ELD-WEN]." Id.

Edward Steves called Pierce later that evening, but the substance of their conversation is unknown. Based on a later e-mail from Pierce to Edward Steves, it appears that Edward Steves may have requested—either during that call or some other call—that they communicate only by telephone. See ECF No. 1087-3 (Under Seal). However, because Pierce's e-mail followed a detailed e-mail from Pierce to Sam Steves about molded doorskin manufacturing, it is far from certain that Pierce and Edward Steves ever agreed to change their communications in that way.

In any event, on June 29, 2016, Steves filed its antitrust and breach of contract claims against JELD-WEN. Summary Judgment Op. at 7-8. JELD-WEN subsequently served a subpoena on Pierce in connection with that action on or around January 12, 2017. See Subpoena Response (ECF No. 1087-5) (Under Seal) at 3.[1] Pierce initially produced only thirty-five documents in response to the

---

[1] These page numbers refer to those assigned by ECF.

Subpoena. He indicated that he had not retained any "analysis, recommendations, communications, and reports" that he prepared for Steves or sent to the Steves Brothers, mostly for security reasons. Pierce also explained that the only responsive documents were on his personal computer, and that

> it was my policy to delete all such copies under my control within a couple of weeks after sending them to Edward Steves or Sam Steves. . . . There were never any follow-up questions and all copies of such documents within my control or possession were deleted from my personal computer within no more than 30 days of sending to Edward Steves or Sam Steves. . . . I never received any substantial email or physical mail communications from Edward Steves, or Sam Steves on any matter, and I never received any email or other electronic or any paper communication from any other party mentioned anywhere in this subpoena. In the course of my normal practice of keeping my personal email "INBOX" folder clean, the few insignificant emails that I did receive from Edward Steves or Sam Steves were also deleted soon after receipt.[2]

Id. at 3-4. Pierce's document retention approach notwithstanding, most or all communications between him and the Steves Brothers appear to have been obtained through discovery from Steves. Nonetheless, at his deposition on May 1, Pierce

---

[2] This response is consistent with Pierce's earlier statement, in a voicemail to Edward Steves, that he "had a strict policy not to keep copies . . . of any of our communication[s]" or any sent e-mails for security purposes. Accordingly, "if J[ELD-WEN] is after documents I wouldn't be able to provide them with much of anything." ECF No. 1087-4 (Under Seal) at 8.

produced another sixteen pages of documents, including notes reflecting Pierce's conversations with JELD-WEN employees and summarizing issues to discuss with the Steves Brothers.

Shortly thereafter, the Court allowed JELD-WEN to amend its Answer to add counterclaims against Steves for, inter alia, misappropriation of JELD-WEN's trade secrets. Although those claims were based in part on Pierce's conduct, only Steves was named as a counter-defendant. The Court later granted separate motions to intervene as counter-defendants by Pierce and the Steves Brothers, and, as a result, Pierce is an intervenor-counter-defendant to both misappropriation claims. Summary Judgment Op. at 8-10. However, JELD-WEN declined to amend its counterclaims to add Pierce as an actual counter-defendant.

Based on Pierce's failure to retain documents after he sent the April 7 E-mail, JELD-WEN now seeks as a spoliation sanction a jury instruction: (1) that Pierce deleted or failed to retain relevant documents, which the jury may infer that Pierce did because the documents were unfavorable to Pierce; and (2) that the jury may consider Pierce's actions when assessing his intent and knowledge.[3]

---

[3] JELD-WEN also sought an order compelling Pierce to produce the results of a recent forensic examination of his computer in relation to JELD-WEN's claims against Pierce in Texas state court ("the Texas Litigation"), see JELD-WEN Reply (ECF No. 1255) (Under Seal) at 19, which was the subject of the parties'

## DISCUSSION

### I. Legal Standard

The parties quibble over the applicable spoliation standard and JELD-WEN's burden of proof, so both issues require some clarification at the outset.

Spoliation is "the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Silvestri v. Gen. Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001). A court's power to sanction spoliation derives from two sources: (1) Fed. R. Civ. P. 37(e); and (2) its "inherent power . . . to redress conduct 'which abuses the judicial process.'" Id. (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991)); see also Jenkins v. Woody, No. 3:15CV355, 2017 WL 362475, at *12 (E.D. Va. Jan. 21, 2017); CAT3, LLC v. Black Lineage, Inc., 164 F. Supp. 3d 488, 498 (S.D.N.Y. 2016). Courts have broad discretion when deciding whether to impose spoliation sanctions. Turner v. United States, 736 F.3d 274, 281 (4th Cir. 2013). However, "the applicable sanction should be molded to serve the prophylactic, punitive, and remedial

_____

supplemental briefing on this motion, see ECF No. 1401. That proposed sanction is now moot because JELD-WEN has already received the forensic examination. ECF No. 1476. Nonetheless, JELD-WEN still asks that the Court consider the forensic examination in evaluating the need for an adverse inference instruction. That request is addressed in more detail below.

rationales underlying the spoliation doctrine." <u>Silvestri</u>, 271 F.3d at 590 (internal quotations omitted). Appropriate purposes include: "'(1) deter[ring] parties from engaging in spoliation; (2) plac[ing] the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restor[ing] the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.'" <u>Eshelman v. Puma Biotechnology, Inc.</u>, No. 7:16-CV-18-D, 2017 WL 2483800, at *4 (E.D.N.C. June 7, 2017) (quoting <u>West v. Goodyear Tire & Rubber Co.</u>, 167 F.3d 776, 779 (2d Cir. 1999)); <u>see also</u> <u>Vodusek v. Bayliner Marine Corp.</u>, 71 F.3d 148, 156 (4th Cir. 1995) (describing similar goals).

Rule 37(e) governs the spoliation analysis for electronically stored information ("ESI"). That rule provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

(A) presume that the lost information was unfavorable to the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). Thus, a movant must satisfy four threshold requirements before a court decides if any spoliation sanction is appropriate: (1) ESI should have been preserved; (2) ESI was lost; (3) the loss was due to a party's failure to take reasonable steps to preserve the ESI; and (4) the ESI cannot be restored or replaced through additional discovery. Eshelman, 2017 WL 2483800, at *4.[4]

---

[4] Some courts have asserted that Rule 37(e) "'significantly limits a court's discretion to impose sanctions for the loss or destruction of ESI.'" Eshelman, 2017 WL 2483800, at *4 (quoting Jenkins, 2017 WL 362475, at *12). The basis for that conclusion is unclear, but it presumably relies on the Advisory Committee's statement that the rule is intended to "foreclose reliance on inherent authority or state law to determine when certain measures should be used." Fed. R. Civ. P. 37, Comm. Notes on Rules—2015 Amendment. Yet the effect of that statement is an open question. It is well settled that "a court could not rely on one of those other sources of authority to dismiss a case as a sanction for merely negligent destruction of evidence." CAT3, 164 F. Supp. 3d at 497. At the same time, "'the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct.'" Id. at 498 (quoting Chambers, 501 U.S. at 49). Consequently, even if the Court's discretion is limited as to the sanctions noted in Rule 37(e)(2), the Court may well retain its full discretion to impose lesser sanctions even if a party cannot establish all the Rule 37 prerequisites.

However, by its plain terms, Rule 37(e) does not apply to every situation where spoliation occurs, including where the evidence lost or destroyed is not ESI. In those situations, a court must determine the sanctions available under its inherent authority. See Federico v. Lincoln Military Hous., LLC, No. 2:12-CV-80, 2014 WL 7447937, at *10 (E.D. Va. Dec. 31, 2014); see also Coale v. Metro-N. R.R. Co., No. 3:08-CV-01307, 2016 WL 1441790, at *4 n.7 (D. Conn. Apr. 11, 2016). For a court to impose a sanction under its inherent power, the party seeking sanctions must show: "'(1) [t]he party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) [t]he destruction or loss was accompanied by a culpable state of mind; and (3) [t]he evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought the discovery.'" Federico, 2014 WL 7447937, at *6 (quoting Goodman v. Praxair Servs., Inc., 632 F. Supp. 2d 494, 509 (D. Md. 2009)). This analysis is similar to the Rule 37(e) framework, as it asks whether the responsible party had a duty to preserve, and breached that duty by failing to take reasonable steps to preserve. See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 803 F. Supp. 2d 469, 496 (E.D. Va. 2011). Spoliation must involve more than the "'negligent loss or destruction of evidence,'" as "the alleged destroyer must have known that the evidence was relevant to some

10

issue in the anticipated case, and thereafter willfully engaged in conduct resulting in the evidence's loss or destruction." Turner, 736 F.3d at 282 (quoting Vodusek, 71 F.3d at 156). However, bad faith need not be shown. Id.

The burden of proof on a motion for spoliation sanctions is unsettled. Jenkins, 2017 WL 362475, at *12. Some courts have applied a preponderance of the evidence standard. See McIntosh v. United States, No. 14-cv-7889, 2016 WL 1274585, at *33 (S.D.N.Y. Mar. 31, 2016) (citing Dilworth v. Goldberg, 3 F. Supp. 3d 198, 200 (S.D.N.Y. 2014)). However, the general approach of courts in the Fourth Circuit has been to apply the clear and convincing evidence standard, especially where a relatively harsh sanction like an adverse inference is sought. See Jenkins, 2017 WL 362475, at *12; CAT3, 164 F. Supp. 3d at 499; Glynn v. EDO Corp., No. JFM-07-01660, 2010 WL 3294347, at *2 (D. Md. Aug. 20, 2010); Samsung Elecs. Co. v. Rambus, Inc., 440 F. Supp. 2d 495, 497 (E.D. Va. 2006). Given that pattern, and considering the minimal difference in result reached by applying each standard in this case, the Court will impose a clear and convincing evidence standard here.

## II. Rule 37(e)

Pierce asserts initially that the Court cannot evaluate any of the Rule 37(e) factors because JELD-WEN has not provided sufficient information about the nature of the lost or destroyed

11

evidence. This argument is mistaken. Almost all of the cases cited by Pierce in support of this proposition discuss the effect of limited information about the contents of spoliated documents in analyzing the individual factors comprising the Rule 37(e) framework. See Linlor v. Polson, No. 1:17CV0013, 2017 WL 7310076, at *2 (E.D. Va. Dec. 6, 2017), report and recommendation adopted, 2018 WL 661486 (E.D. Va. Feb. 1, 2018) ("[T]here is no evidence that other recordings of the incident actually existed and were not preserved or that any additional recordings would provide significant new information. Therefore plaintiff's motion also fails to establish any significant prejudice from the loss of any other video recordings . . . ." (emphasis added)); Eshelman, 2017 WL 2483800, at *5 ("[T]he court must have some evidence regarding the particular nature of the missing ESI in order to evaluate the prejudice it is being requested to mitigate." (emphasis added)); Thomas v. Butkiewicus, No. 3:13-CV-747, 2016 WL 1718368, at *12 (D. Conn. Apr. 29, 2016) (evidence about contents of spoliated documents bears on relevance of documents to litigation, which affects whether party breached duty to preserve); Kolon Indus., 803 F. Supp. 2d at 498 (same).

A party's inability to describe the nature and contents of the spoliated evidence with some particularity might be a problem if, for instance, there was no showing that any

documents ever existed that could have been lost or destroyed. See, e.g., Barnett v. Deere & Co., No. 2:15-CV-2-KS-MTP, 2016 WL 4544052, at *5 (S.D. Miss. Aug. 31, 2016) (spoliation factors impossible to apply because plaintiff provided no evidence that defendant "generated any documents as a result of [certain] testing" (emphasis added)). Here, however, Pierce clearly created documents as a consultant for Steves and then destroyed them because of his document deletion policy. As a result, the information (or lack thereof) about the spoliated documents is pertinent, if at all, to the relevance and prejudice factors.

## A. Pierce's Duty to Preserve

JELD-WEN must show that Pierce, as the "alleged spoliator," "had a duty to preserve material evidence." Turner, 736 F.3d at 282; see also Kolon Indus., 803 F. Supp. 2d at 496 ("[T]he movant must show that the adverse party had a duty to preserve documents or materials that may be relevant to the litigation or pending litigation."). This inquiry has two components: (1) whether Pierce should have reasonably anticipated litigation related to his alleged trade secret misappropriation; and (2) whether he should reasonably have known that the evidence he deleted might be relevant to such litigation. See Jenkins, 2017 WL 362475, at *14.

As an initial matter, it is clear that the purportedly lost information constitutes ESI. See Title Capital Mgmt., LLC v.

_Progress Residential, LLC_, No. 16-21882-CV, 2017 WL 5953428, at
*3-4 (S.D. Fla. Sept. 29, 2017). JELD-WEN's motion primarily
concerns documents that were stored on Pierce's computer and
then deleted in accordance with his security policy. Although
JELD-WEN hints at the existence of other notes taken by Pierce
that were not produced, as discussed below, there is little
evidence that Pierce ever took any handwritten notes or kept any
other tangible evidence. Indeed, besides a few receipts and
printed papers, Pierce's document productions consisted entirely
of electronic communications with the Steves Brothers or
electronic documents prepared for Steves. Thus, ESI is plainly
at issue here.

### 1. Reasonable Anticipation of Litigation

"Generally, it is the filing of a lawsuit that triggers the
duty to preserve evidence." _Turner_, 736 F.3d at 282. However,
that duty "arises 'not only during litigation but also extends
to that period before the litigation when a party reasonably
should know that the evidence may be relevant to anticipated
litigation.'" _Id._ (quoting _Silvestri_, 271 F.3d at 591). "The
mere existence of a dispute does not necessarily mean that
parties should reasonably anticipate litigation." _Goodman_, 632
F. Supp. 2d at 510; _see also_ _Cache La Poudre Feeds, LLC v. Land
O'Lakes, Inc._, 244 F.R.D. 614, 623 (D. Colo. 2007) (demand
letter preserving "possibility of . . . non-litigious

14

resolution" and "equivocal statement of discontent" were insufficient to implicate duty to preserve). Instead, the duty seems to begin "somewhere between knowledge of the dispute and direct, specific threats of litigation." Huggins v. Prince George's Cty., 750 F. Supp. 2d 549, 560 (D. Md. 2010). Thus, courts in the Fourth Circuit have found that the receipt of a demand letter, a request for evidence preservation, a threat of litigation, or a decision to pursue a claim will all trigger the duty to preserve evidence. In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig., 299 F.R.D. 502, 512 (S.D.W. Va. 2014). Of course, the absence of these things "does not vitiate the independent obligation of an adverse party to preserve . . . information if th[at] party knows or should know of impending litigation." Victor Stanley, Inc. v. Creative Pipe, Inc., 269 F.R.D. 497, 522 (D. Md. 2010) (internal quotations omitted). In those situations, the specific occurrences that should notify a party of future litigation are "highly case specific and fact dependent." In re Ethicon, 299 F.R.D. at 512.

All three parties propose different dates by which Pierce should have reasonably anticipated litigation. JELD-WEN claims that the appropriate date is April 7, 2015, when Pierce sent the April 7 E-mail to the Steves Brothers. Pierce, on other hand, claims that he did not have notice of litigation until JELD-WEN initiated the Texas Litigation in September 2017. Finally,

Steves appears to contend that the duty to preserve arose at the earliest on January 12, 2017, when JELD-WEN served Pierce with the Subpoena. If either Steves or Pierce is correct, then JELD-WEN cannot show that any spoliation occurred, as there is no evidence that Pierce deleted or failed to retain relevant documents between January and September 2017.

JELD-WEN's argument hinges entirely on the language used by Pierce in the April 7 E-mail. In that communication, Pierce outlined the procedures that he and the Steves Brothers should take to protect themselves in the event of "potential J[ELD-WEN] retaliation," including deleting e-mails and documents exchanged between the individuals, deleting all meeting notes, and editing documents to obscure the current nature of the information. Pierce based his opinion on his previous testimony in another trade secret misappropriation suit that JELD-WEN brought against a former employee who left to work for a competitor. However, he cautioned that he was not an attorney, so he could not comment with any certainty on the likelihood of litigation.

This e-mail is compelling evidence that Pierce knew or should have known of "impending litigation." Victor Stanley, 269 F.R.D. at 522. Pierce unquestionably thought that JELD-WEN could bring suit against him or the Steves Brothers when it discovered the motive behind Pierce's activities. It is true that "a vague or far-off possibility" of litigation is insufficient to trigger

the duty to preserve, see Samsung Elecs. Co. v. Rambus, Inc., 439 F. Supp. 2d 524, 547 (E.D. Va. 2006), vacated on other grounds, 523 F.3d 1374 (Fed. Cir. 2008), and that Pierce's references to litigation by JELD-WEN were hypothetical, see April 7 E-mail. These ambiguous statements about a "vaguely anticipated litigation potentiality" might not be enough, by themselves, to implicate the duty to preserve, especially where no party had "establish[ed] a discovery database, nor identif[ied] potential venues, nor identif[ied] specific litigation targets, nor select[ed] experts." Samsung Elecs., 439 F. Supp. 2d at 556.

Pierce, however, made those statements after having testified in another misappropriation proceeding. In Jenkins, the defendant sheriff should have anticipated litigation immediately upon the death of an inmate in his custody because he had previously been named as a defendant in a number of inmate death lawsuits, he noted himself that such suits were common, and the facility where the death occurred had a policy of opening official investigations into foul play whenever any inmate died. 2017 WL 362475, at *15. Much like that sheriff, Pierce's familiarity with the predicates for litigation should have caused him to reasonably anticipate that JELD-WEN would eventually bring suit against him, the Steves Brothers, or Steves for the conduct alluded to in the April 7 E-mail. That

JELD-WEN did not actually initiate this litigation against
Steves until March 2017 is immaterial to the reasonableness
analysis, as JELD-WEN did not become aware of Pierce's and
Steves' activities until that time. Consequently, considering
the particular facts of this situation, see In re Ethicon, 299
F.R.D. at 512, the Court assumes for purposes of the remaining
spoliation factors that Pierce had a duty to preserve material
evidence as of April 7, 2015.

### 2. Relevance of Lost ESI

Once a party reasonably anticipates litigation, it must
"preserve what it knows, or reasonably should know, is relevant
in the [anticipated] action, is reasonably calculated to lead to
the discovery of admissible evidence, [or] is reasonably likely
to be requested during discovery." Kolon Indus., 803 F. Supp. 2d
at 496 (internal quotations omitted).

The documents that Pierce failed to retain after April 7,
2015 are undoubtedly those "that should have been preserved in
the anticipation . . . of litigation." Fed. R. Civ. P. 37(e).
The documents that Pierce suggested deleting to hinder any JELD-
WEN lawsuit—"all of our e-mail servers, programs, and folders[;]
all copies of every email and document we have exchanged to this
point"; and "all meeting notes," April 7 E-mail—provide a
thorough roadmap to Steves' alleged misappropriation of JELD-
WEN's trade secrets. Those documents would indicate the intent

behind Pierce's and Steves' actions, the success of his efforts, and quite possibly the content of the misappropriated information. Indeed, Pierce seems to have identified those precise documents in the April 7 E-mail because he knew how relevant they were. Accordingly, Pierce was obligated to preserve the documents that JELD-WEN has identified here.

**B. Loss of ESI**

Whether any ESI from Pierce's computer has been "lost" is unclear. Information is lost for purposes of Rule 37(e) only if it is irretrievable from another source, including other custodians. See Agility Pub. Warehousing Co. K.S.C. v. Dep't of Def., No. CV 14-1064, 2017 WL 1214424, at *2 (D.D.C. Mar. 30, 2017) (e-mails were only lost if they "were deleted, were not part of [another party's] production, and . . . are now irretrievable"); see also Fed. R. Civ. P. 37, Comm. Notes on Rules—2015 Amendment ("Because [ESI] often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere."). This reading is consistent with the definition of "lost" as being "beyond the possession and custody of its owner and not locatable by diligent search." **Black's Law Dictionary** (10th ed. 2014) (emphasis added).

JELD-WEN has shown that Pierce deleted e-mails and other electronic documents from his computer, but that does not

necessarily result in the loss of that ESI. As Pierce's description of his deletion policy makes clear, and as JELD-WEN itself acknowledges, much of the information that Pierce deleted was still attainable because a copy was within Steves' control. The numerous documents retained by Steves and produced to JELD-WEN are not "lost" in any sense of the word. See Agility Pub. Warehousing, 2017 WL 1214424, at *2 (deleted e-mails were lost only if not turned over to movant by third party); Living Color Enters., Inc. v. New Era Aquaculture, Ltd., No. 14-CV-62216, 2016 WL 1105297, at *5 (S.D. Fla. Mar. 22, 2016) (text messages provided to movant by another party were not lost); CAT3, 164 F. Supp. 3d at 497 (Rule 37(e) does not apply "where, for example, emails are lost when one custodian deletes them from his mailbox but remain available in the records of another custodian"). Therefore, the only documents for which JELD-WEN can seek sanctions are those that Pierce deleted, that JELD-WEN did not receive from Steves, and that are still irretrievable, see Agility Pub. Warehousing, 2017 WL 1214424, at *2—in other words, Pierce's notes or memoranda of the type from his second production, which were never shared with Steves.

JELD-WEN has done little to establish that Pierce's deleted ESI outside of Steves' productions is unrecoverable. As this Court has previously observed, deleted information can, in many cases, still be retrieved before it is "overwritten by new,

active files." Kolon Indus., 803 F. Supp. 3d at 478 (quotation marks omitted). Pointing to this statement, Pierce contends that JELD-WEN cannot show that his documents are irretrievable because it never examined his computer to confirm that conclusion. JELD-WEN seems to be right, though, that it need not seek a forensic examination in order to make the threshold showing that the information on Pierce's computer is lost. See Agility Pub. Warehousing, 2017 WL 1214424, at *3 (missing e-mails were lost where they "d[id] not appear to have been stored elsewhere").[5]

Nonetheless, it is worth noting that spoliation sanctions motions often follow only where extensive ESI recovery efforts have failed, or after forensic review gives the movant a much better idea of the quantity and nature of unproduced, deleted ESI. See, e.g., EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc., No. 3:12-CV-00463, 2018 WL 1542040, at *5 (M.D. Tenn. Mar. 29, 2018); Kolon Indus., 803 F. Supp.2d at 478-95; Victor Stanley, 269 F.R.D. at 502-14. After receiving Pierce's paltry response to the Subpoena, JELD-WEN waited several months to even raise the possibility of a forensic examination with

_____

[5] However, as discussed further below, the lack of a forensic examination is relevant to deciding whether ESI could be restored or replaced. See Title Capital Mgmt., 2017 WL 5953428, at *5. Thus, if JELD-WEN means to suggest that its failure to seek a forensic examination is irrelevant here, it is incorrect.

Pierce's counsel, and then, when that request was denied, never filed a motion to compel such an examination in this litigation. These efforts pale in comparison to the exhaustive steps taken to recover or define lost ESI in those cases. Indeed, JELD-WEN's approach risks an extremely broad application of Rule 37(e), effectively allowing a party to seek spoliation sanctions as long an adverse party deleted some e-mails (perhaps permanently, perhaps not) and was then stubborn in discovery. But, given the apparently low bar for showing loss, the Court concludes that JELD-WEN has satisfied this element of Rule 37(e) for the limited category of ESI defined above.

### C. Reasonableness of Pierce's Preservation Efforts

The duty to preserve is not meant to impose an unreasonable burden on parties anticipating litigation; they need not "'preserve every shred of paper, every e-mail or electronic document, and every backup tape.'" Jenkins, 2017 WL 362475, at *15 (quoting Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 217 (S.D.N.Y. 2003)). However, a party generally "must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." Zubulake, 220 F.R.D. at 218. More or less might be required for preservation in unusual cases, but those principles reflect the standard reasonableness framework. See Victor Stanley, 269 F.R.D. at 524.

It is indisputable that Pierce failed to take reasonable steps to preserve relevant information after his duty to preserve arose on April 7, 2015. In fact, Pierce undertook no preservation efforts whatsoever. Pierce's statements to Edward Steves and in the Subpoena Response indicate that, even though he knew certain documents would be important in any proceeding brought by JELD-WEN, he continued to apply his standard document deletion policy.[6] Suspending that practice would at worst have cluttered Pierce's inbox, which is a reasonable burden to assume given the potential importance of those documents to the anticipated litigation. Thus, JELD-WEN has amply satisfied this part of Rule 37(e).

### D. Restoration or Replacement

Unlike the other Rule 37(e) elements, this requirement is mostly self-explanatory. It presents a straightforward binary: if the lost ESI cannot be restored or replaced by additional discovery, then the inquiry turns to the appropriate sanctions under the subsequent provisions of Rule 37(e); if it can, then

---

[6] JELD-WEN argues that Pierce's actions are better construed as his "initiating a new document destruction policy" after he sent the April 7 E-mail. JELD-WEN Reply at 13. Besides Pierce's suggestive language in the April 7 E-mail, the record provides no support for that contention. Moreover, JELD-WEN has not pointed to any evidence that Pierce affirmatively changed document retention practices that might have preceded that e-mail. The Court cannot accept as true an assertion that JELD-WEN has not met its burden to prove.

the Court should direct the parties to pursue such discovery, provided that the discovery is "proportional to the apparent importance of the lost information to claims or defenses in the litigation." Fed. R. Civ. P. 37, Comm. Notes on Rules—2015 Amendment; see also Title Capital Mgmt., 2017 WL 5953428, at *5.

JELD-WEN has failed to show that Pierce's lost ESI cannot be replaced or restored. This factor does not require that JELD-WEN pursue every possible avenue for replacing or restoring the ESI, but it must show that it made some good-faith attempt to explore its alternatives before pursuing spoliation sanctions. See, e.g., Jenkins, 2017 WL 362475, at *16 (video data could not be restored where court permitted plaintiff to attempt to copy or mirror image hard drive of video surveillance cameras, and that attempt failed); see also Title Capital Mgmt., 2017 WL 5953428, at *5 ("[D]iscovery directed at information stored on [party]'s computer could conceivably unearth far more relevant information . . . . It may turn out that . . . the internal correspondence is truly lost; but the time to make that determination is after an examination of the contents of his computer takes place."); Eshelman, 2017 WL 2483800, at *5 (although internet browser search information was automatically deleted, party had not satisfied restoration factor because "other avenues of discovery are likely to reveal information about the searches performed"). Here, JELD-WEN could have taken

the obvious step of seeking a forensic examination in this litigation of Pierce's several hard drives, which might have confirmed the impossibility of restoration. JELD-WEN's assertion that it did not do so given the Court's earlier refusal to allow forensic examination of the Steves Brothers' devices makes no sense because, even if that statement has some merit, JELD-WEN cannot complain about the hypothetical result of a motion that it never filed.

In addition, assuming certain ESI is unrecoverable, JELD-WEN has sufficiently established as much. The best evidence that JELD-WEN can point to in this regard is the forensic examination of Pierce's computer from the Texas Litigation, which was recently produced to JELD-WEN in this proceeding. JELD-WEN contends that the forensic examination is sufficient by itself to show the permanent irretrievability of documents from Pierce's computer, as Pierce made certain changes to his computer's operating system. But the precise meaning and consequences of the findings in the forensic examination remain unclear without further discovery, or testimony by the forensic examiner. The Court is ill-equipped to decide the restoration question without such evidence, which is unobtainable at this extremely late date in the litigation. Accordingly, the Court cannot rely on the forensic examination to decide or even guide its analysis of this factor. As a result, JELD-WEN has not

provided clear and convincing evidence to satisfy this element, and is therefore not entitled to sanctions under either Rule 37(e)(1) or (2).

### E. Sanctions under Rule 37(e)(1) and (2)

As noted, the Court need not reach the issues raised by these provisions. However, even if the sections applied, JELD-WEN has not shown enough to warrant sanctions under either.

For sanctions under Rule 37(e)(1), JELD-WEN must have suffered prejudice from the loss of ESI that was not produced by Steves, and the sanction must be "no greater than necessary to cure the prejudice." This analysis "necessarily includes an evaluation of the [ESI]'s importance in the litigation." Fed. R. Civ. P. 37, Comm. Notes on Rules—2015 Amendment. Courts assessing prejudice before the most recent amendments to Rule 37(e) have found that prejudice results when the movant "cannot present evidence essential to its underlying claim," such that its "ability to present its case . . . is compromised." Victor Stanley, 269 F.R.D. at 532 (internal quotations omitted). Of course, prejudice "range[s] along a continuum from an inability to prove claims or defenses to little or no impact on the presentation of proof." Id.

In this case, JELD-WEN has amassed considerable evidence showing that Pierce had a working relationship with Steves, that he visited JELD-WEN's plants and spoke with employees there, and

that those conversations may have allowed Pierce to obtain JELD-WEN's trade secrets, which Pierce then passed to Steves. The record here does not indicate that the ESI lost because of Pierce's deletion policy would have significantly improved JELD-WEN's ability to prove trade secret misappropriation, if at all. Indeed, much of the potential prejudice seems to have been avoided by Steves' retention of communications and documents from Pierce. Furthermore, any benefit from ESI beyond that produced by Steves is almost totally speculative, as Pierce has been steadfast in his declarations that he took no notes from conversations with JELD-WEN employees other than those that he supplied to JELD-WEN in his supplemental production.[7] Thus, the lost ESI here has nowhere near the "unique and vital" role of the destroyed videos at issue in Jenkins, 2017 WL 362475, at *18, and its deletion has not had the prejudicial effect found by the Court in Kolon Industries, see 803 F. Supp. 2d at 509. Accordingly, minimal, if any, measures would be appropriate to cure this insignificant prejudice.

The Fourth Circuit has not spoken about the level of intent that a court must find to impose a sanction under Rule 37(e)(2).

---

[7] The same is true of JELD-WEN's assertion that the deleted ESI could contain additional trade secrets. JELD-WEN had the entire discovery period to uncover evidence confirming that speculation, but it has found nothing. At some point, JELD-WEN's statement of trade secrets must, in fact, be a final, trial-ready list: that time is now.

_Jenkins_, 2017 WL 362475, at *17. However, cases preceding the 2015 amendments to Rule 37 indicate that the spoliating party's conduct does not need to be in bad faith to qualify as intentional. See _Buckley v. Mukasey_, 538 F.3d 306, 323 (4th Cir. 2008); _Kolon Indus._, 803 F. Supp. 2d at 497 (collecting cases). JELD-WEN's argument in support of its adverse inference instruction—which is permissible only under this provision, _see_ Fed. R. Civ. P. 37(e)(2)(A)—relies, like many of its other contentions, on the April 7 E-mail. But, as noted above, even if that e-mail expresses Pierce's intent to take a certain action, there is no corroborating evidence that he actually did so. That Pierce made those statements and only thereafter revealed his document deletion policy should "give th[e] Court significant pause." _Jenkins_, 2017 WL 362475, at *17. Ultimately, however, the connection between that policy and Pierce's intent to harm JELD-WEN in some future litigation is hard to draw. An adverse inference instruction would, therefore, not be warranted even if JELD-WEN could satisfy all the threshold Rule 37(e) requirements.

## III. Inherent Authority

Because Rule 37(e) imports many of the same elements of the sanctions inquiry related to the Court's inherent power, the result as to any tangible evidence that Pierce destroyed is the same. Specifically, although Pierce likely had a duty to

28

preserve as of April 7, 2015, Pierce's culpability in failing to suspend his standard document deletion policy was not substantial, and any prejudice to JELD-WEN is limited. Both circumstances indicate that a relatively harsh sanction like an adverse inference instruction is unwarranted here. See Kolon Indus., 803 F. Supp. 2d at 499-500. Moreover, the concern raised in Barnett about speculation as to the existence of documents is particularly acute here. JELD-WEN has pointed to no evidence establishing that Pierce kept notes or other documents created in the course of his work for Steves in tangible form. See Barnett, 2016 WL 4544052, at *5. Pierce is unsure whether he took any notes other than those that he produced, and the notes that he produced were not handwritten. As a result, it is extremely difficult to determine an appropriate sanction for Pierce's failure to retain possibly non-existent documents. For that reason, the Court will not impose any spoliation sanctions using its inherent power.[8]

---

[8] Because JELD-WEN has not met the predicates for sanctions under Rule 37(e) or the Court's inherent authority, the Court need not address the arguments pressed by Pierce and Steves about the collateral effect on Steves of an adverse inference instruction about Pierce's spoliation.

**CONCLUSION**

For the foregoing reasons, DEFENDANT AND COUNTERCLAIMANT JELD-WEN, INC.'S MOTION *IN LIMINE* FOR SANCTIONS AS TO JOHN PIERCE FOR THE SPOLIATION OF EVIDENCE (ECF No. 1085) was denied.

It is so ORDERED.

_____  /s/  *REP*
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: May __*l*__, 2018