```
IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
          Richmond Division
```

STEVES AND SONS, INC.,

    Plaintiff,

v.                                              Civil Action No. 3:16-cv-545

JELD-WEN, INC.,

    Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on COUNTERCLAIM DEFENDANTS STEVES AND SONS, INC., EDWARD STEVES, AND SAM STEVES' MOTION IN LIMINE TO EXCLUDE TESTIMONY OF JELD-WEN DAMAGES EXPERT JOHN JAROSZ (ECF No. 1052). For the reasons set forth below, the motion was denied. See ECF No. 1536.

**BACKGROUND**

JELD-WEN, Inc. ("JELD-WEN") has asserted two counterclaims against Steves and Sons, Inc. ("Steves")[1] based on Steves' alleged misappropriation of JELD-WEN's trade secrets related to two general categories: (1) the manufacturing process for molded doorskins, and (2) financial data concerning JELD-WEN's manufacturing procedures and doorskin sales. The factual

---

[1] Steves filed this motion jointly with Sam Steves and Edward Steves, so the term "Steves" as used in this memorandum refers to all three parties for the sake of simplicity.

background underlying those claims is described at length in the Court's recent opinion denying summary judgment on certain aspects of those claims. See Summary Judgment Op. (ECF No. 1424) at 2-7.

To prevail on its misappropriation claims, JELD-WEN must establish, inter alia, that it suffered damages. Id. at 18. JELD-WEN seeks damages in the form of Steves' unjust enrichment from the misappropriation or, alternatively, a reasonable royalty. Damages Summary Judgment Op. (ECF No. 1581) at 6; see also 18 U.S.C. § 1836(b)(3)(B)(i)-(ii); Tex. Civ. Prac. & Rem. Code § 134A.004(a). Consequently, JELD-WEN retained a damages expert, John Jarosz ("Jarosz"), who analyzed JELD-WEN's damages under three different scenarios. The substance of those scenarios is discussed in more detail in the Court's opinion denying summary judgment on JELD-WEN's misappropriation damages claims. See Damages Summary Judgment Op. at 8-11. Briefly restated here, Jarosz's theories are as follows: (1) that Steves can use certain process-related trade secrets to achieve reduced costs for each doorskin that it produces in the event that it builds a doorskin manufacturing plant ("Scenario One"); (2) that Steves has used, and will continue to use, certain financial trade secrets in negotiations for lower doorskin prices with JELD-WEN or other doorskin suppliers ("Scenario Two"); and (3) that JELD-WEN is entitled to a reasonable royalty based on the

combination of two quantitative methods, the incremental benefits approach and the licensing comparables approach ("Scenario Three").

Steves moves to exclude Jarosz's testimony on two general grounds. First, relying on Fed. R. Evid. 702 and <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), Steves argues that all three scenarios are unreliable because they conflict with the jury's finding in the antitrust case that Steves will not be able to continue its business past September 2021. Second, Steves contends that Jarosz should not be permitted to testify about several issues under Fed. R. Civ. P. 37(c)(1) because he failed to disclose certain opinions in his opening report.

**DISCUSSION**

I. **Rule 702**

A. **Legal Standard**

The admissibility of expert testimony is governed by Rule 702. Under that rule, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if" all of the following conditions are met:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

3

>     (b)  the testimony is based on sufficient facts or data;
>
>     (c)  the testimony is the product of reliable principles and methods; and
>
>     (d)  the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

These four factors reflect the two separate components of the Daubert inquiry: whether the proposed testimony is relevant and whether it is reliable. See Nease v. Ford Motor Co., 848 F.3d 219, 229 (4th Cir. 2017) (citing Daubert, 509 U.S. at 597); see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999). The proponent of the testimony must satisfy both elements by a preponderance of the evidence, Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001), and the Court must fulfill its special "gatekeeping obligation" to ensure that the proponent has done so, Kumho Tire, 526 U.S. at 147. However, courts have "broad discretion under Rule 702." United States v. Gastiaburo, 16 F.3d 582, 589 (4th Cir. 1994).

Steves' motion concerns only the reliability prong of Daubert. When assessing reliability, courts "must ensure that the proffered expert opinion is based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid

4

methods." Nease, 848 F.3d at 229 (emphasis in original) (internal quotations omitted). Accordingly, "[a]n expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record." Tyger Const. Co. Inc. v. Pensacola Const. Co., 29 F.3d 137, 142 (4th Cir. 1994).

**B. Analysis**

Steves contends that Jarosz's three scenarios are unreliable because they are based on assumptions about Steves' future conduct that are precluded by the jury verdict for Steves' antitrust and breach of contract claims against JELD-WEN. Those claims pertained to JELD-WEN's 2012 acquisition of another doorskin supplier and JELD-WEN's subsequent breaches of its long-term doorskin supply agreement with Steves ("the Supply Agreement"). Summary Judgment Op. at 7-8. In reaching a verdict in Steves' favor on its antitrust claim, the jury necessarily determined that JELD-WEN committed an antitrust violation that caused some injury to Steves. See Verdict Form (ECF No. 1022) ¶¶ 1-2. The jury then awarded Steves future lost profits damages, id. ¶ 3(b), which it could only have done after deciding that Steves would be "unable to maintain a viable interior molded doorskin manufacturing business when the [Supply Agreement] terminates on September 10, 2021, and w[ould] therefore be unable to exist as a company." Jury Instructions

5

(ECF No. 1025), Instruction No. 35. To reach that conclusion, Steves says, the jury must have also rejected JELD-WEN's arguments that Steves <u>could not</u> succeed with certain steps to remain in business when the Supply Agreement terminates, such as obtaining doorskins from JELD-WEN or other suppliers or building its own doorskin manufacturing plant. Consequently, Steves now contends that Jarosz cannot posit damages scenarios that would require the jury in this case to find that Steves <u>will</u> successfully build a doorskin plant or negotiate with doorskin suppliers after 2021. Nonetheless, Scenarios One and Two clearly depend on one of those things taking place, and Scenario Three relies on both occurrences for its incremental benefits approach. Thus, under Steves' logic, all three scenarios require the realization of circumstances that the antitrust jury determined could never occur.

Even though Steves' interpretation of the Verdict Form and Jury Instructions appears to be correct (despite the absence of any special interrogatories about particular factual issues, <u>see</u> Verdict Form ¶¶ 1-3), its argument fails here. Setting aside JELD-WEN's several procedural contentions,[2] Steves cannot show

---

[2] JELD-WEN asserts that: (1) motions <u>in limine</u> are improper if they raise dispositive issues that are better suited for summary judgment motions, <u>see</u> <u>Louzon v. Ford Motor Co.</u>, 718 F.3d 556, 562-63 (6th Cir. 2013); (2) Steves' argument ignores the Court's opinion bifurcating the trials in this case and the antitrust

6

that any of Jarosz's scenarios would lead to inconsistent verdicts. For verdicts to be inconsistent, two juries must consider the <u>same facts</u> and reach different results. The jury in the antitrust case did not know that Steves had acquired information from JELD-WEN that could help Steves build a doorskin plant or negotiate with doorskin suppliers for more favorable prices, as the Court precluded the admission of evidence relating to trade secret misappropriation in the antitrust trial. <u>See</u> ECF No. 776. In contrast, the jury in this case—having viewed the full contents of JELD-WEN's statement of misappropriated trade secrets, and learned of Steves' motivations in acquiring that information—may conclude that the information will enable Steves to take certain future actions that the antitrust jury found that Steves could not. Seen this way, the potentially differing results are intuitive, not

---

case, which was predicated on the lack of common factual issues between the two cases, see ECF No. 239 at 27-30; and (3) Steves is judicially estopped from taking its current position because it previously represented to the Court that it would not assert <u>res judicata</u> arguments in this case based on the results of the antitrust case. With respect to the first point, Steves had the chance to address the inconsistent verdict issue in its summary judgment papers, but for some reason declined the Court's invitation to seek leave to do so. As to the second point, there is no basis to conclude that the bifurcation decision was erroneous when issued or now. And, notwithstanding the need for bifurcation, there is some evidence that is pertinent to both cases. But, that does not mean that the antitrust verdict, based on same of the overlapping evidence, forecloses assumptions made by Jarosz in assessing damages.

inconsistent. And, the record permits Jarosz to assume the possibility that Steves will take certain steps in the future, and his having done so does not render his theories unreliable.

## II. Rule 37(c)(1)

### A. Legal Standard

Under Rule 26(a), for any expert witness that may be used at trial, a party must serve a written report, which must contain, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). If a party fails to provide this information, it cannot rely on that evidence at trial "unless the failure was substantially justified or is harmless." Id. 37(c)(1). Courts consider five factors in exercising their "broad discretion" to determine whether a nondisclosure is substantially justified or harmless: "'(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.'" Wilkins v. Montgomery, 751 F.3d 214, 222 (4th Cir. 2014) (quoting S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003)).

If Rule 37(c)(1) has been violated, "[i]n addition to or instead of" excluding the nondisclosed information at trial, courts: "(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions." Fed. R. Civ. P. 37(c)(1). Courts must consider four factors when deciding on an appropriate sanction: "'(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective.'" Law Enf't All. of Am., Inc. v. USA Direct, Inc., 61 F. App'x 822, 830 (4th Cir. 2003) (quoting Anderson v. Found. for Advancement, Educ. and Emp't of Am. Indians, 155 F.3d 500, 504 (4th Cir. 1998)).

**B. Analysis**

Steves points to three opinions expressed by Jarosz that, Steves contends, were not in his initial report ("the Jarosz Report"). See ECF No. 1124-2 (Under Seal). First, even though the Report stated that Scenarios One and Two were "alternative" theories that relied on different events, id. ¶ 4, Jarosz stated during his deposition that the jury could apportion damages between those two scenarios based on its determination about the probability that each scenario would occur. Second, according to

9

Steves, Jarosz reconstructed Scenario Two in his report responding to the report of Steves' damages expert, Michael Wallace ("Wallace") ("the Jarosz Rebuttal Report"). See ECF No. 1124-3 (Under Seal). In doing so, Jarosz allegedly accounted for different misappropriated trade secrets after he learned that the trade secrets supporting Scenario Two in the Report were not misappropriated. Finally, Steves claims that Jarosz did not consider Steves' avoided costs in analyzing Scenarios One or Two, and as such, those theories do not reflect any unjust enrichment damages.

The first and third arguments are easily disposed of because they have already been raised, and rejected, in Steves' summary judgment briefing. As to the first assertion, Steves is right that Scenarios One and Two are mostly, in Jarosz's words, "flip sides of the same coin." Jarosz Dep. (ECF No. 1124-1) (Under Seal) at 48:1. The former accounts for damages if Steves builds a plant, and the latter calculates damages if Steves foregoes plant construction and instead buys doorskins from other suppliers. However, determining the probabilities of different damages scenarios and apportioning damages accordingly are tasks that the jury can perform, and there would have been no reason for Jarosz to calculate every possible percentage allocation in his Report. See Damages Summary Judgment Op. at 29-30. And, as to the third assertion, Steves is wrong to claim

that Jarosz did not incorporate Steves' avoided costs into his Scenario One and Two calculations. Indeed, the Report contains an entire section on those avoided costs, Jarosz Report ¶¶ 122-53, and the Court has found that those costs influenced or were explicitly represented in the scenarios, see Damages Summary Judgment Op. at 18-19, 40-42. Furthermore, to the extent that Jarosz discussed the proper interpretation of his Report as to these issues—damages allocation and avoided costs—at his deposition, that approach is acceptable. See Krakauer v. Dish Network L.L.C., No. 1:14-CV-333, 2017 WL 2455095, at *11 (M.D.N.C. June 6, 2017) ("Rule 26(a)(2)(B) 'contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report.'" (quoting Thompson v. Doane Pet Care Co., 470 F.3d 1201, 1203 (6th Cir. 2006))); Marsal v. E. Carolina Univ., No. 4:09-CV-126-FL, 2011 WL 13233801, at *3 (E.D.N.C. Apr. 15, 2011) ("[A] party need not supplement an expert report based on expert deposition testimony that simply explains and expands upon the opinions included in the report."). As a result, Jarosz's testimony on these issues should not be excluded because Steves cannot show that JELD-WEN violated Rule 26(a)(2)(B)(i) as to either topic.

Steves' second contention requires closer examination. To calculate Scenario Two in the Report, Jarosz relied on certain financial trade secrets claimed by JELD-WEN that Jarosz

11

concluded had already given Steves negotiating leverage in dealing with doorskin suppliers, and would continue to do so in likely future negotiations. Access to JELD-WEN's per-plant doorskin input costs therefore might allow Steves to achieve a $0.26 cost reduction for each doorskin. See Jarosz Report ¶¶ 174-77. However, Wallace indicated in his report that Steves did not obtain the information upon which that specific reduction relied. In response, Jarosz noted in the Rebuttal Report that "it appears that Steves was not explicitly given the document I cited in my analysis of the financial Trade Secrets." However, he pointed out, in the same sentence, that "the Trade Secret information Steves did have is sufficient to calculate plant-specific costs." Jarosz Rebuttal Report ¶ 74. Jarosz then explained that Steves still could have obtained a $0.20 cost reduction in negotiations based on the per-plant input cost information that was actually misappropriated. See id.

Steves' assertion that the Rebuttal Report somehow "reveal[s] a new theory" for Scenario Two, Steves Br. (ECF No. 1054) (Under Seal) at 12, and is therefore excludable because it was not disclosed earlier, is mistaken. As the above description illustrates, in response to Wallace's criticism, Jarosz simply pointed to different documents that led to the exact same conclusion he reached in the Report: that the financial trade secrets misappropriated by Steves contain per-plant input cost

12

information that has led or will lead to cost reductions in Steves' negotiations with doorskin suppliers. Providing additional evidence in support of a calculation or changing a damages figure slightly in a rebuttal report to account for evidence identified by an opposing expert is acceptable where the overarching framework remains unchanged. See Snider-Jefferson v. Amigo Mobility Int'l, Inc., No. 2:15-CV-406, 2016 WL 4424954, at *4 (E.D. Va. Aug. 17, 2016), aff'd, 678 F. App'x 91 (4th Cir. 2017) ("'This is the very purpose of a reply report: to refute a defendant's expert's arguments and to provide further support, rather than abandoning, one's initial opinions.'" (quoting Kleen Prods. LLC v. Int'l Paper, 306 F.R.D. 585, 592 (N.D. Ill. 2015))); Sloan Valve Co. v. Zurn Indus., Inc., No. 10 C 204, 2013 WL 3147349, at *2 (N.D. Ill. June 19, 2013) ("[R]ather than offering a new opinion and changing the basis for the calculation of the collateral unit sales, [the plaintiff's expert] included the [new] calculation . . . to refute [the defendant's expert]'s criticisms."). Just as in Sloan Valve, the different foundations for the calculations in the Report and the Rebuttal Report simply show that the source of the financial trade secrets does not significantly affect the doorskin cost reductions that Steves could obtain in negotiations. See 2013 WL 3147349, at *2. Thus, the different figures in those reports do not point to a Rule 26(a) violation.

Having concluded that JELD-WEN did not violate Rule 26(a) in any of these instances, the Court need not address whether JELD-WEN's failure to disclose opinions in Jarosz's Report was substantially justified or harmless. Nonetheless, briefly addressing the Southern States factors here, any violation appears to be harmless because Steves suffered minimal prejudice. All of the nondisclosures, even if they were not revealed until the Rebuttal Report, are—for the reasons explained above and in the Damages Summary Judgment Opinion—closely related to, or clearly implicated by, opinions contained in the Report. Therefore, any surprise to Steves is practically nonexistent. See Baker v. United States, 645 F. App'x 266, 270 (4th Cir. 2016). Steves could also explore Jarosz's purportedly "new" statements in detail at his deposition, mitigating any harm Steves might have otherwise suffered. See N.O. v. Alembik, No. 1:15-CV-868, 2016 WL 1388777, at *2 (E.D. Va. Jan. 15, 2016). Finally, allowing Jarosz to testify as to these issues at trial would cause no disruption, and his testimony about these questions will be critical to JELD-WEN's damages arguments (particularly as to Scenario Two). Consequently, even if JELD-WEN and Jarosz cannot offer any persuasive explanation for the nondisclosures in Jarosz's initial Report, imposing sanctions under Rule 37(c)(1) would not be appropriate here.

## CONCLUSION

For the foregoing reasons, COUNTERCLAIM DEFENDANTS STEVES AND SONS, INC., EDWARD STEVES, AND SAM STEVES' MOTION IN LIMINE TO EXCLUDE TESTIMONY OF JELD-WEN DAMAGES EXPERT JOHN JAROSZ (ECF No. 1052) was denied.

It is so ORDERED.

/s/ _Rep_
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: May 10, 2018