IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

STEVES AND SONS, INC.,

    Plaintiff,

v.                              Civil Action No. 3:16-cv-545

JELD-WEN, INC.,

    Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on COUNTERCLAIM DEFENDANT STEVES & SON'S INC., AND SAM STEVES AND EDWARD STEVES' MOTION FOR SANCTIONS UNDER RULE 37, INCLUDING A CONTINUANCE (ECF No. 1306). For the reasons set forth below, the motion was denied. See ECF No. 1469.

**BACKGROUND**

The Court has described the factual background underlying this dispute at length in its recent opinion denying summary judgment on JELD-WEN, Inc.'s ("JELD-WEN") federal and state counterclaims for trade secret misappropriation. See Summary Judgment Op. (ECF No. 1424) at 2-7. However, procedural details relevant to this motion are provided here for context.

On April 19, 2017, the Court ordered JELD-WEN to "identify the specific trade secrets that it proposes will be the subject of its counter claim and identify the witnesses it will use to

support those claims" ("the April 19 Order"). ECF No. 143 at 1-2. On April 26, JELD-WEN responded by filing: (1) a statement of misappropriated trade secrets, ECF No. 185 (Under Seal); and (2) a list of eleven witnesses who might "testify about facts that relate to JELD-WEN's trade secrets counterclaims": Sam Steves, Edward Steves, John Ambruz, Gregory Wysock, John Pierce, Robert Merrill, Brooks Mallard ("Mallard"), Kirk Hachigian, John Jarosz, Jay Borrell ("Borrell"), and James Edward Reed ("Reed"), ECF No. 182-2.

After Steves and Sons, Inc. ("Steves")[1] raised concerns about the vagueness of the descriptions in JELD-WEN's initial trade secrets statement, the Court noted that the trade secrets needed to be "specifically identified." Aug. 9, 2017 Transcript (ECF No. 350) at 131:17. JELD-WEN subsequently served Steves with an updated trade secrets statement in response to Steves' interrogatories. See ECF No. 357-2 (Under Seal). Steves then moved to strike portions of the updated statement that were imprecise, and the Court granted that motion in part on October 6. ECF No. 424. The Court also urged JELD-WEN to "err . . . on

---

[1] Steves filed this motion jointly with Sam Steves and Edward Steves ("the Steves Brothers"). The Steves Brothers were only permitted to intervene as counter-defendants on January 18, 2018, see ECF No. 832, so it is unclear how they could have been affected much, if at all, by JELD-WEN's failure to comply with orders that long preceded that date. Nevertheless, for the sake of simplicity, the term "Steves" as used in this memorandum refers to all three parties.

2

the side of making [the statement] so crystal clear and so precise that there can be no room for contention that you are being vague and leaving the door open." Oct. 3, 2017 Transcript (ECF No. 420) at 22:6-8. Following those instructions, JELD-WEN filed an amended statement of misappropriated trade secrets on October 9 ("the Amended Statement"). ECF No. 428 (Under Seal). The Amended Statement contained a number of rows of trade secrets, but some rows included more than one paragraph of information.

Steves then relied on the Amended Statement to conduct its Rule 30(b)(6) depositions of JELD-WEN through JELD-WEN's two corporate designees, Reed and Mallard. During those depositions, Steves' counsel asked the witnesses whether they understood certain rows to contain a single combination trade secret or multiple trade secrets. Testifying about different rows in the Amended Statement, Reed and Mallard both responded that JELD-WEN considers each individual item in the row to be confidential and a trade secret, and that the cumulative information in the whole row is also confidential and a trade secret. Reed also explained that JELD-WEN does not keep a list of trade secrets, considers all its information confidential, and does not separate that information into items or groups.

On November 2, JELD-WEN filed an updated statement of misappropriated trade secrets to be asserted at trial ("the

Trial Statement"). ECF No. 468 (Under Seal). The Trial Statement was filed in accordance with an earlier scheduling order, which set a date by which JELD-WEN had to eliminate trade secrets that it would not assert at trial. See ECF No. 374 at 2. Shortly thereafter, JELD-WEN moved for leave to add several trade secrets to the Trial Statement based on the declarations of two individuals, including JELD-WEN's industry expert James Morrison ("Morrison"), about other misappropriated trade secrets that those individuals discovered while reviewing documents produced by Steves. The Court granted the motion on November 27, ECF No. 581, and JELD-WEN filed an amended statement of misappropriated trade secrets for trial ("the Amended Trial Statement") on November 29. ECF No. 588 (Under Seal).

At his subsequent deposition, Morrison testified about the information in the Amended Trial Statement, having been retained by JELD-WEN to express his expert opinion on whether that information was confidential, protected, and valuable to JELD-WEN. When asked whether certain information was an individual trade secret, Morrison said that it was a trade secret "[s]eparately and in combination." Morrison Dep. (ECF No. 884-5) (Under Seal) at 95:1-2. Morrison avoided answering that line of questioning by responding that JELD-WEN had not retained him to give an opinion on whether particular information constituted a

trade secret. Id. at 96:4-13.[2] Morrison then numbered the rows in the Amended Trial Statement, showing that the document contained 28 rows of trade secrets. See Morrison Annotated Trial Statement (ECF No. 884-6) (Under Seal).

After expert discovery was completed, Steves moved for summary judgment on January 24, 2018, ECF No. 885, and the motion became ripe on March 5, ECF No. 1124. Shortly thereafter, on March 15, after JELD-WEN's counsel advised that JELD-WEN would assert only one combination trade secret at trial, the Court ordered JELD-WEN to submit an updated trade secrets statement that delineated each trade secret and explained the source of the trade secret in more detail than in the Amended Trial Statement.[3] ECF No. 1199. In response, JELD-WEN filed an updated statement ("the Second Amended Trial Statement") on March 21. ECF No. 1218 (Under Seal). That statement removed generalized information from several rows in the Amended Trial Statement and removed entirely the information constituting several trade secrets.

---

[2] JELD-WEN's lay witnesses also avoided similar questions upon instruction from JELD-WEN's counsel that those witnesses could not opine whether something was or was not a trade secret.

[3] JELD-WEN had filed another trade secrets statement on February 28, 2018 in connection with a motion in limine. See ECF No. 1081 (Under Seal). That statement removed one row of information that JELD-WEN had decided to not claim as a trade secret at trial, but was otherwise identical to the Amended Trial Statement.

At oral argument on Steves' summary judgment motion, Steves again expressed concern about the specificity of certain trade secrets in the Second Amended Trial Statement and Steves' inability to examine the information therein as part of its summary judgment motion. Sharing Steves' frustration with the vague testimony of JELD-WEN's witnesses, the Court said:

> I've never ever seen a situation where there had been as flagrant a situation as here where the experts and the lay witnesses say it's both under the law without saying which one is. It's okay to say there are six parts and all six of them are individually and all six of them are in combination, but there are combinations within separate trade secrets here that are alleged, and it's nothing but the fault of people who have not obeyed the Court orders to do what they were told to do. . . .
>
> [T]he lawyers could simply have told Mallard, Reed, and Morrison you can't testify that way except as to these, and these are the right ones, because they've dropped the combination ones now. So they obviously didn't have a combination claim for all of them. And that could have been done months ago.

Mar. 26, 2018 Transcript (ECF No. 1295) at 52:2-19. The Court restated its criticism of JELD-WEN's approach later in the hearing, stating that,

> once you get a court order that tells you to specify and identify the trade secret, put the witness opposite, which is exactly what the [April 19] [O]rder did, opposite who was going to testify about the trade secret, and then as we went on and on through giving you chance after chance after chance to do it,

6

>            to obdurately maintain, as your witnesses
>            did and your papers did until the telephone
>            call the other day, that you are proceeding
>            both as combinations and individuals, it's
>            impossible for [Steves] to know what
>            actually they are ready to defend.

Id. at 75:10-20.

Nonetheless, JELD-WEN's counsel reiterated at oral argument that JELD-WEN would pursue at trial only one combination trade secret. Based on those assurances, and recognizing the improvements in the Second Amended Trial Statement, the Court declined to grant summary judgment for Steves on the grounds that JELD-WEN had not identified its trade secrets with appropriate specificity. See Summary Judgment Op. at 27-29. However, the Court permitted Steves to move for sanctions under Fed. R. Civ. P. 37 based on JELD-WEN's purported failure to comply with the Court's earlier orders to define the trade secrets with specificity. ECF No. 1290.[4] Steves filed this motion several days later, seeking sanctions exclusively under Rule 37(b)(2)(A). ECF No. 1306.

Finally, at oral argument on this motion, JELD-WEN's counsel represented to the Court that it would rely only on the testimony of Borrell, Mallard, and Reed at trial to establish

---

[4] The Court also allowed Steves to separately seek a continuance of the trial given JELD-WEN's modifications in the Second Amended Trial Statement. See ECF No. 1290. However, Steves never filed a continuance motion by the specified date, apparently deciding to seek a continuance solely as a Rule 37 sanction.

7

the existence of its trade secrets.[5] Apr. 13, 2018 Transcript (ECF No. 1423) at 23:14-20. JELD-WEN had already disclosed all three witnesses in response to the April 19 Order. See ECF No. 182-2. JELD-WEN committed to this position again in its sur-reply to Steves' motion. See JELD-WEN Sur-Reply at 2.

## DISCUSSION

### I. Legal Standard

Rule 37(b) permits courts to issue any "just orders" "[i]f a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) . . . —fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). Those orders may include: (1) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action; (2) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (3) striking pleadings in whole or in part; (4) staying further

---

[5] JELD-WEN also stated that it would rely on Morrison to testify about his discovery of a small number of misappropriated trade secrets in November 2017, which led to JELD-WEN's filing of the Amended Trial Statement. JELD-WEN Sur-Reply (ECF No. 1405) (Under Seal) at 2 n.1. JELD-WEN can hardly be faulted for failing to disclose Morrison as a supporting witness in the April 19 Order given that it did not discover the misappropriation of the particular trade secrets about which Morrison will testify until more than six months later. Therefore, to the extent that Steves' motion seeks exclusion of Morrison's fact testimony at trial, see Steves Reply (ECF No. 1366) (Under Seal) at 18, that sanction is not appropriate.

proceedings until the order is obeyed; (5) dismissing the action or proceeding in whole or in part; (6) rendering a default judgment against the disobedient party; or (7) treating the failure to obey as contempt of court. Id. 37(b)(2)(A)(i)-(vii).

For a court to impose any of these sanctions, of course, the movant must demonstrate that the party against which the sanctions are sought has violated a discovery order. See id. 37(b)(2)(A); see also Felman Prod., Inc. v. Indus. Risk Insurers, No. CIV.A. 3:09-0481, 2011 WL 4547012, at *14 (S.D.W. Va. Sept. 29, 2011) ("[I]n order to issue sanctions pursuant to Rule 37(b), a court must determine that a party has violated a court order to provide or permit discovery."). If the movant can do so, the court's determination of the proper sanctions depends on four factors: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians, 155 F.3d 500, 504 (4th Cir. 1998).

The exact discovery order or orders that JELD-WEN has violated was not addressed in Steves' opening brief, and remains

unclear even in its reply brief.[6] See Steves Reply at 3-4 (claiming that JELD-WEN "has not complied with multiple discovery orders," but explicitly referring to only the April 19 Order). Nonetheless, Steves appears to stake its motion on JELD-WEN's alleged violations of the April 19 Order. Steves seeks several sanctions for JELD-WEN's purported noncompliance with that order: (1) an order striking Morrison's proposed expert testimony; (2) leave for Steves to amend its summary judgment motion to address the particular trade secrets in the Second Amended Trial Statement; (3) a continuance of the trial to allow for full briefing on Steves' amended summary judgment motion and to give Steves time to prepare with the Second Amended Trial Statement in mind; (4) an order limiting JELD-WEN at trial to testimony from witnesses disclosed in response to the April 19 Order for purposes of establishing that the information in the Second Amended Trial Statement constitutes trade secrets; and (5) a jury instruction that effectively "binds" JELD-WEN to the

---

[6] JELD-WEN's counsel conceded at oral argument that an order need not be written for its violation to lead to Rule 37(b) sanctions, Apr. 13, 2018 Transcript at 16:22-17:5, but Steves does not point to any verbal discovery order that JELD-WEN may have violated. Moreover, as discussed further below, Steves does not explain how JELD-WEN violated any of the numerous orders described above concerning JELD-WEN's trade secrets statements, beyond the general assertion that JELD-WEN has repeatedly delayed in differentiating its individual trade secrets from its combination trade secrets.

10

individual and combination trade secrets that JELD-WEN has agreed are contained in the Second Amended Trial Statement.

## II. Discovery Order Violations

As noted, Steves does not describe how exactly JELD-WEN has failed to comply with particular orders. As an initial matter, Steves seems to assume, based on the Court's earlier statements, that the Court has already decided that JELD-WEN did, in fact, violate one or more discovery orders. See Mar. 26, 2018 Transcript at 52:2-19, 75:10-20. This belief is mistaken. To the extent that the Court commented on its previous orders, it could only have done so in the context of whether JELD-WEN had appropriately specified its trade secrets for summary judgment purposes, given the arguments in the parties' briefs to that point. Any statements about the narrower issue of whether JELD-WEN's actions implicated Rule 37(b)(2)(A) would, therefore, have been premature because the Court lacked the record at that hearing to be able to rule on that question. Indeed, the Court admitted as much during oral argument on this motion. See Apr. 13, 2018 Transcript at 35:17-19 ("I have to confess that I don't think I had a basis for saying there's a violation of an order."). The Court also explained that JELD-WEN's (and its witnesses') failure to distinguish between individual and combination trade secrets was a "flagrant violation" of "the spirit of what [the Court] had communicated" in its earlier

11

orders—that is, the need for trade secret specificity in light of problems the Court encountered in previous trade secrets cases. Id. at 35:20-36:2 (emphasis added). But, if that "spirit" was never reduced to an order, then JELD-WEN's failure to comply with it could not justify Rule 37(b) sanctions.

A closer look at JELD-WEN's responses to relevant orders in this case reveals that JELD-WEN has committed no sanctionable violations. The Court's first order, the April 19 Order, required JELD-WEN to "identify the specific trade secrets that it proposes will be the subject of its counter claim and identify the witnesses it will use to support those claims." ECF No. 143 at 1-2. JELD-WEN complied promptly, filing its trade secrets statement and list of witnesses within a week. See ECF Nos. 182-2, 185. Much of the information in that statement corresponds to trade secrets in the Second Amended Trial Statement, although such information was stated in less particularized form given that JELD-WEN's trade secrets case had barely begun. JELD-WEN can be forgiven for not stating its trade secrets with the exact specificity that the Court would later demand, considering that the word "specific" has no uniform meaning and the Court had not provided JELD-WEN with exact instructions in the April 19 Order for stating its trade secrets. Similarly, although Steves makes much of the fact that JELD-WEN's witness list did not connect its witnesses with

specific trade secrets about which they would testify, nothing in the broad language of the April 19 Order required JELD-WEN to do so. Accordingly, JELD-WEN's steps immediately after the April 19 Order did not violate the Court's directive.

JELD-WEN's subsequent actions also did not violate the Court's later orders. JELD-WEN served its second trade secrets statement on Steves in response to an interrogatory, not any order. ECF No. 357-2. Then, when Steves moved to strike certain trade secrets in that statement for their lack of specificity and reliance on "expanding references" like "including" and "among other things," ECF No. 355, the Court ordered JELD-WEN to: (1) amend the statement to remove all expanding references; and (2) "file an amended statement of its trade secrets . . . with specificity," which "shall clearly identify what each of those trade secrets are by setting forth explicitly what is the 'know-how,' 'knowledge,' or 'experience' or the like that is claimed to be a trade secret," ECF No. 424 at 1-2. JELD-WEN's subsequent Amended Statement removed the expanding references and, for the particular trade secrets noted in the order, stripped away the general descriptions that Steves had criticized. See ECF No. 468. It is true that the structure of the Amended Statement still made the substance of particular trade secrets hard to ascertain, particularly when read in conjunction with Mallard's and Reed's Rule 30(b)(6) deposition

13

testimony, but JELD-WEN's continued reliance on a somewhat vague organization did not clearly disobey the Court's instructions. JELD-WEN seems to have sincerely believed that it had made all the necessary changes to define its trade secrets "with specificity" and "explicitly," as the Court demanded—given, again, the rather subjective meaning of those terms in this context.[7] JELD-WEN's next two trade secrets statements—the Trial Statement and the Amended Trial Statement—were filed in direct response to separate Court orders which said nothing about a need for clearer differentiation between individual and combination trade secrets. See ECF No. 374 at 2 (scheduling order requiring JELD-WEN to "[i]dentify [t]rade [s]ecrets to be [a]sserted at [t]rial" by November 2, 2017); ECF No. 581 (order granting JELD-WEN's motion for leave to amend the Trial Statement, which directed JELD-WEN to "file an amended statement of misappropriated trade secrets that reflects the changes identified in Exhibit 1 to [JELD-WEN]'s brief in support of the motion (ECF No. 511-1)"). Thus, JELD-WEN clearly did not violate those orders.

---

[7] Moreover, to the extent that the Amended Statement and its later iterations did not satisfy the Court's order, Steves is partly to blame. Had it crystallized the individual versus combination issue in its motion to strike (or in any other filing) before making that topic the centerpiece of its summary judgment motion, this issue might have been resolved long before the eve of trial.

It was not until March 15, 2018 that the Court stated its conclusion that the Amended Trial Statement was "confusing respecting the identification of what is, and what is not, an asserted trade secret and whether, when the trade secret is presented in multiple paragraphs, or clauses, or subparagraphs, it is intended that each component is a trade secret or that the entirety of what is listed is the trade secret." ECF No. 1199 at 1. Based on that finding, the Court ordered JELD-WEN to promptly file an amended trade secrets statement "which shall be presented in the format of ECF No. 1495 in the case of E.I. du Pont de Nemours and Company v. Kolon Industries, Inc., et al., Civil Action No. 3:09cv58 (a redacted copy of which will be supplied to counsel by email) and as instructed by the Court during a telephone conference on March 15." Id. at 2. The Second Amended Trial Statement, which JELD-WEN filed several days later, made those changes and organized the trade secrets in the requested format—that is, separated by individual trade secret rather than by rows with similar categories of information. Compare ECF No. 1218 with ECF No. 588. In other words, once the Court gave JELD-WEN instructions for structuring its trade secrets, it complied immediately. That JELD-WEN did not file the precise trade secrets statement the Court requested until that

point is unfortunate, but is not cause for discovery sanctions.[8] Even if JELD-WEN's execution was somewhat lacking at times, it consistently complied with each of the Court's orders (or at least what JELD-WEN understood the orders to require, based on its reading of their text). See Apr. 13, 2018 Transcript at 36:6-9 ("[P]arsing the record, while I think I let J[ELD]-W[EN] know exactly what they were supposed to be doing, I couldn't find anything that constituted the basis for an order that would warrant the imposition of sanctions.").

Unable to demonstrate how JELD-WEN violated any orders, Steves resorts to arguing that the need for JELD-WEN to file numerous versions of its trade secrets statement somehow shows that it violated the April 19 Order. First, Steves says, "the Court made clear that [JELD-WEN's initial trade secrets statement] did not satisfy the April [19] Order" at the August 9, 2017 hearing, which necessitated JELD-WEN's second trade secrets statement. Steves Reply at 3. In Steves' view, JELD-WEN also violated the April 19 Order by serving that second statement, because that statement "resulted in the Court ordering JELD-WEN to file yet another list of alleged trade

---

[8] It is notable that the trade secrets statement in E.I. du Pont, which the Court provided a redacted excerpt of, was sealed and thus not publicly available. As a result, even if the Court had previously intended to have JELD-WEN use that statement as a model, JELD-WEN had no way to do so before March 15, 2018.

16

secrets" following Steves' motion to strike. Id. Under this logic, each subsequent version of the trade secrets statement presumably constituted a violation of the April 19 Order, because none of those statements contained the specificity that the Court had ordered at the outset.

This argument is difficult to parse and, ultimately, unconvincing. For one thing, it is not "clear" that the Court found any violation of the April 19 Order during the August 9 hearing. The Court simply said that it was "sorry [Steves] didn't file a motion to compel, because . . . . I thought I made clear that [the trade secrets] had to be filed with specificity." Aug. 9, 2017 Transcript at 120:13-19. Even though the specificity of JELD-WEN's trade secrets statement left something to be desired, the Court expressly left open the possibility that it had not instructed JELD-WEN clearly on that point. Moreover, if the Court's meaning was as obvious as Steves thinks, it is a mystery why Steves waited more than seven months before seeking sanctions for that purported violation. As for the remaining versions of the trade secrets statement, Steves' rationale in effect punishes JELD-WEN for trying to do exactly what each of the Court's orders required. Nothing in the April 19 Order created an ongoing duty for JELD-WEN—akin to Rule 26's duty of supplementation—to continually update its trade secrets statement in order to achieve some predetermined level of

17

specificity. Rather, JELD-WEN's various statements must be measured in response to the specific orders that prompted them. And, for the reasons discussed above, JELD-WEN complied with those orders.

Consequently, because Steves cannot show that JELD-WEN violated any discovery orders, its motion must be denied.

### III. Sanctions for Violations

Having reached that conclusion, the Court need not address whether the four Anderson factors permit any of the sanctions requested by Steves (or any lesser sanctions). Nonetheless, it is worth briefly noting here that those elements do not appear to support the relatively serious sanctions Steves asks for, like exclusion of fact and expert testimony or a continuance of the trial to allow for amended summary judgment briefing. First, there is little evidence that JELD-WEN ever acted in bad faith. As detailed above, the specificity required by the Court was not susceptible to precise definition, such that JELD-WEN's failure to understand the meaning of Court's orders is somewhat understandable. Thus, JELD-WEN did not "'deliberately disregard[]'" the instructions in any of the Court's orders. Fin. Markets Int'l, Inc. v. Booz Allen Hamilton, Inc., No. 1:11CV1299 TSE/JFA, 2013 WL 5537817, at *3 (E.D. Va. Sept. 16, 2013), report and recommendation adopted, 2013 WL 5538341 (E.D. Va. Oct. 7, 2013) (quoting Rabb v. Amatex Corp., 769 F.2d 996,

1000 (4th Cir. 1985)). Second, given that Steves' industry expert was able to analyze the existence of trade secrets in the Amended Trial Statement without much difficulty, it does not appear that the confusing organization of that document caused much, if any, prejudice to Steves. Finally, JELD-WEN has not exhibited the sort of willful noncompliance that demands significant deterrent sanctions, see Baptiste v. Nat'l R.R. Passenger Corp., No. CV CBD-14-3279, 2015 WL 5714103, at *4 (D. Md. Sept. 28, 2015), and any violation is better remedied by properly instructing the jury about the substance of JELD-WEN's trade secrets than by, for instance, limiting the testimony of certain witnesses. As a result, even if JELD-WEN had violated a discovery order, Steves' sanctions would be inappropriate here.

## CONCLUSION

For the foregoing reasons, COUNTERCLAIM DEFENDANT STEVES & SON'S INC., AND SAM STEVES AND EDWARD STEVES' MOTION FOR SANCTIONS UNDER RULE 37, INCLUDING A CONTINUANCE (ECF No. 1306) was denied.

It is so ORDERED.

/s/ _Rep_
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: June 11, 2018