IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

STEVES AND SONS, INC.,

    Plaintiff,

v.                                                  Civil Action No. 3:16-cv-545

JELD-WEN, INC.,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on JELD-WEN, INC.'S MOTION FOR A NEW TRIAL (ECF No. 1823). Having considered the motion, the supporting, opposing, and reply memoranda, JELD-WEN, INC.'S MOTION FOR A NEW TRIAL (ECF No. 1823) will be denied.

## BACKGROUND

Under Fed. R. Civ. P. 59(a)(1)(A), a court can set aside the verdict and "grant a party's motion for a new trial if the verdict is contrary to the clear weight of the evidence, rests upon false evidence, or will cause a miscarriage of justice." Huskey v. Ethicon, Inc., 848 F.3d 151, 158 (4th Cir. 2017); see also Minter v. Wells Fargo Bank, N.A., 762 F.3d 339, 346 (4th Cir. 2014).

I. **The Bifurcation of the Trial of Steves' Breach of Contract and Antitrust Claims from the Trial of JELD-WEN's Misappropriation of Trade Secrets Claims**

The reason for the bifurcation of the trial of Steves' antitrust claims and breach of contract claims from JELD-WEN's misappropriation of trade secrets claims was set forth fully in

the MEMORANDUM OPINION entered on May 17, 2017 (ECF No. 239). Those reasons will not be repeated here, but the reasoning underlying the bifurcation decision is incorporated here in full.

As explained in that MEMORANDUM OPINION, the high risk of jury confusion presented by having a jury sort through the very different, but complex claims, was the driving factor in ordering bifurcation. Id. at 28. Having presided over the trial of the antitrust and breach of contract claims presented by Steves in the first trial, and the misappropriation of trade secrets claims presented by JELD-WEN in the second trial, the Court is confident in saying that bifurcation was clearly the right decision. Bifurcation allowed both parties to fully present the evidence pertaining to their respective claims and foreclosed evidence that was being offered by JELD-WEN, (the misappropriation of trade secrets) in the antitrust/breach of contract trial for the purpose of prejudicing the jury against Steves and attempting to win the antitrust/breach of contract case by painting Steves as a thief. Both parties received fair trials on their respective claims from separate juries, each of which considered relevant evidence from each side.

Nor did the bifurcation decision prejudice JELD-WEN in the presentation of its "barriers-to-entry" defense to Steves' antitrust claims. In fact, JELD-WEN introduced evidence to support that defense, and JELD-WEN argued it to the jury. As explained in

the MEMORANDUM OPINION (ECF No. 239), evidence that Steves allegedly misappropriated JELD-WEN's trade secrets was not relevant to the barriers-to-entry defense. Id. at 19-21. Even if the Court is considered to have erred on that point, the alleged misappropriation would have marginal relevance to that defense, and the risk of prejudice and confusion substantially outweighed any conceivable relevance. On that point, all of the papers filed by JELD-WEN in opposition to bifurcation, including the papers in support of this motion, show that JELD-WEN's purpose was to distract the jury's attention from the antitrust and breach of contract issues by trying to prove Steves' misconduct. The evidence involved in Steves' antitrust and breach of contract claims was complicated, and it would have been fundamentally unfair to have allowed JELD-WEN to pursue that strategy.

Contrary to the assertion of JELD-WEN, the Court did not order separate trials on the basis that unclean hands was not a permissible defense under Fourth Circuit precedent. As explained above, the decision to sever was based on concerns of prejudice in the trial of the antitrust and breach of contract claims if the confusing evidence about the misappropriation of trade secrets was admitted in the same trial. However, it is appropriate to note that the Fourth Circuit has established that "unclean hands is no bar to antitrust recovery." Burlington Indus. v. Milliken & Co., 690 F.2d 380, 388 (4th Cir. 1982). The MEMORANDUM OPINION (ECF

3

No. 239) fully discusses that issue. And, it is incorporated by reference here.

**II. Dismissal of JELD-WEN's Contract Counterclaims**

JELD-WEN argues in conclusory fashion, with no citation of authority, that somehow the dismissal of JELD-WEN's breach of contract counterclaims in the Court's MEMORANDUM OPINION (ECF No. 353) prejudiced its ability to defend against Steves' breach of contract claims. The argument made by JELD-WEN is unfathomable, and, in any event, it is irrelevant. Whether JELD-WEN had valid contract claims under Delaware law was decided as a matter of law. JELD-WEN has cited no authority that, under that circumstance, the Court should have allowed evidence in about those legally insufficient and dismissed claims. Nor has JELD-WEN explained how it was prejudiced in defending Steves' breach of contract claims by the dismissal of JELD-WEN's contract claims.

**III. The Evidentiary Rulings**

**A. Evidence Respecting Trade Secrets Misappropriation**

JELD-WEN erroneously argues that the Court excluded wholesale evidence of Steves' theft of JELD-WEN's trade secrets. That simply is incorrect. The argument appears to be a challenge to the ORDER entered on January 9, 2018 (ECF No. 776). JELD-WEN's argument entirely mischaracterizes the ruling in that ORDER. The ORDER reflected the decision on PLAINTIFF STEVES AND SONS, INC.'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO THE PURPORTED

4

MISAPPROPRIATION OF JELD-WEN'S ALLEGED TRADE SECRETS BY STEVES (ECF No. 513), wherein Steves asked the Court to exclude all evidence or argument respecting Steves' alleged misappropriation of JELD-WEN's alleged trade secrets. The Court did not grant that motion. Instead, the Court simply held that JELD-WEN could not "introduce evidence respecting how the information used by the plaintiff was obtained." ORDER (ECF No. 776), at 1. Contrary to JELD-WEN's argument, the ORDER does not provide that JELD-WEN would be precluded from proving what information Steves possessed about the manufacture of doorskins, and, at the Final Pretrial Conference, the Court made clear that JELD-WEN could introduce evidence about the information available to Steves regarding doorskins plant. And, in fact, JELD-WEN introduced evidence on those points.[1]

JELD-WEN now argues that "[i]f the jury had heard that Steves had in fact stolen the trade secrets that it needed to build a new doorskin plant, it would have had a wholly different view of whether Steves was likely to enter the market." However, JELD-WEN expressly represented to the Court that it was "not attempting to prove that Steves misappropriated JELD-WEN's information" as part of its barriers-to-entry defense. DEFENDANT JELD-WEN, INC.'S

---

[1] If, in this argument, JELD-WEN is attempting to revisit whether it could present an affirmative defense of unclean hands during the antitrust trial, that issue has been addressed previously. See supra at 3.

MEMORANDUM IN OPPOSITION TO PLAINTIFF STEVES AND SON'S, INC.'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO THE PURPORTED MISAPPROPRIATION OF JELD-WEN'S ALLEGED TRADE SECRETS BY STEVES (ECF No. 646) at 1-2. That representation forecloses this argument in support of a new trial. Nor has JELD-WEN explained how evidence that Steves misappropriated information would have bolstered the evidence that JELD-WEN did present in support of its barriers-to-entry into the doorskins market. On the other hand, for reasons outlined above, that evidence would have caused unfair prejudice and confusion.

### B. Evidence that CMI was in Severe Financial Distress

The admissibility of evidence on the issue of CMI's financial condition was thoroughly dealt with in the MEMORANDUM OPINION entered on February 6, 2018 (ECF No. 955), and JELD-WEN makes no argument here that would require the Court to reconsider that opinion. The reasoning in that MEMORANDUM OPINION is incorporated here by reference.

As explained in that MEMORANDUM OPINION, JELD-WEN did not assert a "failing firm" defense, see (ECF No. 955) at 9-11, and, clearly, the record would not have supported one. Nor did JELD-WEN assert the "weakened competitor defense," sometimes called "the Hail-Mary pass of presumptively doomed mergers." ProMedica Health Sys., Inc. v. F.T.C., 749 F.3d 559, 572 (6th Cir. 2014). As explained in the MEMORANDUM OPINION, JELD-WEN did not have

evidence sufficient to allow that issue to go to the jury. And, JELD-WEN has offered no suggestion that a weakened competitor defense was presented at trial. Indeed, it was not.

Given that the evidence about CMI's financial condition would not support a weakened competitor defense or a failing firm defense, and that JELD-WEN stated that it was not asserting such defenses, it would have been prejudicial to allow evidence of CMI's financial condition because it would have been impossible to instruct the jury on how it could consider such evidence. In fact, JELD-WEN offered no argument or instruction respecting how such evidence could be considered absent the failing firm or weakened competitor defenses. Now, in this motion, JELD-WEN asserts that, even wholly apart from those defenses (which it acknowledges that it did not assert), it could have relied on evidence of CMI's financial condition to attack Professor Shapiro's analysis. This is a new argument, and JELD-WEN does not explain why evidence about CMI's financial condition would have impeached Professor Shapiro's testimony. JELD-WEN, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A NEW TRIAL (ECF No. 1824) shows that JELD-WEN, in reality, was attempting to demonstrate that, "even in the absence of the merger, Steves may well have had only two choices" for doorskins. That is the argument that JELD-WEN was foreclosed from making when it expressly disavowed the failing firm and weakened competitor defenses. Given its pre-trial disavowals respecting those

defenses, JELD-WEN cannot now be heard to say that it wanted evidence of CMI's financial condition to support those specifically disavowed defenses.

Finally, as previously held, given JELD-WEN's disavowal of a failing firm or weakened competitor defense, evidence of CMI's financial condition presented a high risk of jury confusion that substantially outweighed whatever minimal probative value it might have had. That is particularly so given that JELD-WEN has identified no element of any claim or defense to which such evidence would have been pertinent.

### C. Evidence About the Department of Justice Investigation

This issue was previously fully aired, briefed, and argued, and the Court decided in favor of Steves' in a previous ORDER (ECF No. 775). JELD-WEN has cited no new authority that would support allowing this evidence in. JELD-WEN cites the same cases it did previously—<u>Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO, Local Lodge No. 1821 v. Verso Paper Corp.</u>, 80 F. Supp. 3d 247, 281 (D. Me. 2015); <u>Antoine L. Garabet, M.D., Inc. v. Autonomous Techs. Corp.</u>, 116 F. Supp. 2d 1159, 1173 n.13 (C.D. Cal. 2000); and <u>Ginsburg v. InBev NV/AB</u>, 623 F.3d 1229, 1234-35 (8th Cir. 2010)—and they do not support admission of this evidence in a jury trial.

This is an instance where, under Fed. R. Evid. 403, the limited probative value was substantially outweighed by substantial prejudice. That is especially true where, as here,

the DOJ did not have the benefit of the extensive and persuasive evidence presented to the jury: evidence that showed a substantial lessening of competition and that proved that JELD-WEN had entered long-term contracts with its doorskin customers to keep them from opposing the merger so that JELD-WEN then could force customers to renegotiate the terms of those pre-merger contracts or agree to increased prices after the merger. JELD-WEN began its price increase/contract renegotiation strategy once it thought the DOJ would not intervene.

JELD-WEN asserts that any prejudice to Steves could have been overcome by Professor Shapiro's testimony about the Justice Department's review process. But that argument further explains why the investigation evidence would have been substantially prejudicial because the proposed "curative" explanation compounded the risk of confusion and prejudice.

D. **Evidence About the Doors Market**

JELD-WEN makes several arguments about evidence relating to the doors market that are quite difficult to understand. First, JELD-WEN argues that it was not permitted to present evidence about Steves' recent performance in the doors market to rebut the alleged injury suffered by Steves. However, evidence about Steves' profitability and market share in the doors market after the acquisition at issue is irrelevant to whether Steves proved injury and damages caused by the merger. See Hanover Shoe, Inc. v. United

9

Shoe Mach. Corp., 392 U.S. 481, 493-94 (1968); see also Shoppin' Bag of Pueblo, Inc. v. Dillon Companies, Inc., 783 F.2d 159, 165 (10th Cir. 1986) (upholding a district court's exclusion of similar evidence about profitability and market share under Rule 403 as irrelevant because the presentation would have been time consuming and confused the issues); In re Cathode Ray Tube (CRT) Antitrust Litig., No. MDL 1917, 2016 WL 7800819, at *8 (N.D. Cal. Nov. 15, 2016) ("If the evidence is irrelevant or prohibited by Hanover Shoe, it should be excluded."); Columbus Drywall & Insulation, Inc. v. Masco Corp., No. 1:04-cv-3066, 2012 WL 12540321, at *1 (N.D. Ga. July 17, 2012) (stating that using an antitrust plaintiff's financial information and other downstream data when a defendant is not asserting a pass-on defense would be "an impermissible end-run around the rule announced in Hanover Shoe").

In any event, JELD-WEN expressly abandoned this argument by saying it would not assert that Steves' increased profits and market share since the merger "support a conclusion that Steves has not suffered any harm from the acquisition and therefore that the acquisition has not caused injury to its business." See DEFENDANT JELD-WEN'S MEMORANDUM REGARDING INTRODUCTION OF EVIDENCE RELATED TO STEVES' PERFORMANCE IN THE DOORS MARKET (ECF No. 872) at 9 n.2. JELD-WEN cannot resurrect the motion now.

JELD-WEN next argues that evidence about competition in the doors market was necessary to rebut Steves' evidence of

10

coordination between JELD-WEN and Masonite. JELD-WEN does not explain how evidence about Steves' position in the doors market would rebut the evidence that JELD-WEN and Masonite coordinated in the doorskin market. In any event, that theory was rejected at the Final Pretrial Conference. See Final Pretrial Conference Tr. 637:9-649:8 (ECF No. 936). Moreover, although Steves presented evidence of coordination between JELD-WEN and Masonite in the doorskins market, Steves did not present evidence that JELD-WEN and Masonite coordinated in the doors market. Thus, the proposed evidence—that JELD-WEN says it was foreclosed from offering—did not rebut any evidence presented by Steves.

Lastly, JELD-WEN argues that it was not permitted to impeach Edward Steves after he answered a question asked by JELD-WEN's counsel regarding whether Steves prospered because of the merger.[2] However, the entire subject matter of that inquiry was irrelevant. And, JELD-WEN made no motion to strike Edward Steves' testimony or made a request for the jury to be instructed to disregard his answer (which consisted of one word).

---

[2] Edward Steves responded "[n]o" to a question about whether Steves became more profitable after the CMI merger. Trial Tr. 1844:23-1845:1 (ECF No. 1034).

### E. JELD-WEN's Evidence Regarding Entry into the Doorskins Market

#### 1. The Statement from John Ambruz's Report

The Court excluded a single opinion statement from a ninety-seven page document prepared by John Ambruz, a consultant to Steves, that dealt with the feasibility of constructing a doorskin plant. See ORDER dated January 29, 2018 (ECF No. 927) (excluding a particular statement from DX-778). The statement that was excluded was Ambruz's opinion that "it is highly feasible to build and operate" a new plant. JELD-WEN was permitted to offer the entirety of that document other than that single statement. JELD-WEN offered extensive evidence about Steves' perception of the cost and feasibility of building a doorskin plant. In any event, JELD-WEN does not explain how it was prejudiced by the ruling, even if it was erroneous (which it was not). Finally, the Court considered the issue at the Final Pretrial Conference and again in ruling on JELD-WEN's Motion for Reconsideration. Final Pretrial Conference Tr. 175:18-23 (ECF No. 932); ORDER dated January 29, 2018 (ECF No. 927). That reasoning applies with the same force here.

#### 2. Entry into the United States Door Market by Third-Party Suppliers

JELD-WEN argues that the Court erroneously excluded substantial evidence about possible entry into the doorskin market by third-party suppliers. Here, too, JELD-WEN makes an expansive

argument that is not borne out by the record. In fact, only certain specific questions and answers were excluded. And, JELD-WEN was permitted to offer considerable evidence that foreign suppliers had hopes of entering the domestic doorskin market.

To begin, JELD-WEN argues that the Court excluded evidence of third-party suppliers—"Teverpan," "Kronospan," "Kastamonu," and "Yildiz"—that had entered, were interested in entering, or were hoping to enter the doorskin market. The Court made no such ruling. In fact, there is no citation in JELD-WEN's brief respecting exclusion of evidence of Kastamonu or Yildiz. As to Teverpan, the citation shows that the Court excluded a single sentence from an email on the basis of hearsay and Rule 403. And, as to Kronospan, the Court determined that the testimony of Kronospan witnesses should be excluded because the testimony established nothing with respect to entry. Trial Tr. 1777:3-9 (ECF No. 1034); Trial Tr. 2152:18-2155:03 (ECF No. 1035).

JELD-WEN next complains that some third-party statements were admitted, albeit not for the truth of the matters asserted in the statements. See JURY INSTRUCTIONS 14-15 (ECF No. 1025). Those were out-of-court statements from a broker regarding the purported capabilities of a foreign company where the declarant was not subject to cross examination. The Court held that the statements could not be admitted for the truth of the matter under Rule 802 or under Rule 803(3) for statements of existing intent. At trial,

JELD-WEN offered the evidence of which it now complains to prove the effect on Steves of the statements made in the documents. JELD-WEN did not object to the limiting instruction of which it now complains.

### 3. Expert Testimony About Market Entry

JELD-WEN argues, quite briefly and in conclusory fashion, that the Court "erred in limiting JELD-WEN's presentation of expert evidence" regarding entry, that the evidence was "highly relevant and critical," and that its exclusion "severely" prejudiced JELD-WEN. It is difficult to understand the argument because of the lack of specificity and the conclusory nature of the arguments.

It appears as if the argument is made with respect to Professor Snyder, one of JELD-WEN's expert, who confirmed in his deposition that he was not offering any opinions on the likelihood of entry. And, JELD-WEN's counsel represented specifically that Professor Snyder would not be offering an opinion that foreign or other entry is likely to satisfy Steves needs. Trial Tr. 2058:15-25. On the basis of that record, the Court held that Professor Snyder could not offer opinions when he had disavowed those opinions in his deposition and when JELD-WEN's counsel had said he would not offer such opinions. It is settled that, under Fed. R. Civ. P. 26(a)(2) and 37(c)(1), an expert cannot testify about undisclosed opinions.

It may be that, in making this argument, JELD-WEN refers to the testimony of Mr. Kaplan, who was a damage expert for JELD-WEN. However, it is unclear what ruling JELD-WEN actually challenges. The briefing cites only to an objection made by Steves that was overruled in JELD-WEN's favor.

**F. Evidence About Efficiencies Created by the Merger**

It is JELD-WEN's contention that the Court "specifically prevented JELD-WEN from presenting the jury with evidence of the total gross efficiencies that resulted in the 2012 acquisition." In support of that contention, JELD-WEN cites the trial transcript at 1590:01-1591:05. However, the cited text simply discloses that the Court admonished counsel against asking theoretical and open-ended questions.

More importantly, the record shows that JELD-WEN was asked to identify the efficiencies that it proposed to prove. In response, JELD-WEN identified only two efficiencies, both of which were the subject of evidentiary presentations at trial by JELD-WEN. The record discloses that the Court did not exclude the evidence about efficiencies that JELD-WEN represented it wanted to present.[3]

---

[3] JELD-WEN's memorandum makes the conclusory allegation that the Court excluded other evidence regarding efficiencies. However, JELD-WEN does not explain what evidence was excluded, why the Court erred in any rulings, or how the rulings prejudiced JELD-WEN. Thus, it is not possible to address these points.

## IV. Jury Instructions in the Trade Secrets Trial

### A. Jury Instruction No. 31

JELD-WEN first complains of Jury Instruction No. 31. That instruction was that:

> A trade secret may be comprised of several elements. A trade secret may exist if some, or even all, of its individual elements are public, provided that the trade secret as a whole remains confidential.
>
> One of the alleged trade secrets, No. 23, includes individual components, some or all of which may be in the public domain. For that particular trade secret, the trade secret is alleged to consist of the information considered as a whole, not the individual components. You must determine that JELD-WEN proved trade secret misappropriation with regard to the trade secret as a whole, not as to its individual parts.

See JURY INSTRUCTION 31 (ECF No. 1614).

To begin, it is appropriate to note that the contention relates to so-called combination trade secrets. JELD-WEN identified only one alleged combination trade secret (No. 23). That instruction was appropriate, and JELD-WEN's counsel so acknowledged. In a discussion about that trade secret, JELD-WEN's counsel acknowledged that JELD-WEN had to prove the trade secret status of its alleged non-combination trade secrets in their entirety and failure to do so would be a failure of proof on that trade secret. To support the argument it now makes, JELD-WEN relies on Servo Corp. of America v. General Electric Co., 393 F.2d 551, 554-55 (4th Cir. 1968). Servo Corp. does not stand for the proposition that a non-combination trade secret can remain protected if its portions are not confidential and can be

16

ascertained from innocent sources. See id. at 555 ("The gravamen in a trade secrets case is a breach of confidence, rather than an infringement of a property right; hence, reliance on innocent sources of information involving no breach of duty, is an essential element of the defense that the secrets were previously disclosed."). Additionally, JELD-WEN relies on Microstrategy, Inc. v. Bus. Objects, S.A., 331 F. Supp. 2d 396 (E.D. Va. 2004). But JELD-WEN misapplies Microstrategy; indeed, it omits a critical portion of the text, which, in full, says, "Simply because information is disclosed outside of a company does not result in the loss of trade secret status. 'The secrecy need not be absolute; the owner of a trade secret may, without losing protection, disclose it to a licensee, an employee, or a stranger, if the disclosure is made in confidence, express or implied.'" Id. at 416 (quoting Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc., 299 F. Supp. 2d 565, 574 (E.D. Va. 2004)). Thus, plainly, if the information is public outside of a confidential communication, then the information loses its trade secret status.

Further, even if there were some merit to JELD-WEN's position, in the general sense, it waived any objection to Jury Instruction No. 31 by failing object to it either at the charge conference or after the jury was charged when the Court asked for any objections

to the instructions as given. The failure to timely object to an instruction waives the objection.

### B. The Definition of "Willful" and "Malicious" in the Trade Secret Trial

This argument is exactly the same one that JELD-WEN previously advanced in support of its definition of "willful" and "malicious," which was different than the one that was given.[4] The Court considered that argument and rejected it as erroneous insofar as the current version of the Texas Uniform Trade Secrets Act is concerned. The Court said that "malicious means done with intent to cause injury." TS Trial Tr. 2230:24 (ECF No. 1735). There is no reason to revisit the reasoning given at this time.

### V. The Verdicts on Steves' Antitrust Claims and Breach of Contract Claims

In this argument, JELD-WEN contends that the verdicts in favor of Steves' antitrust and breach of contract claims are not supported by the evidence. In making that argument, JELD-WEN relies on arguments made in JELD-WEN, INC.'S MEMORANDUM IN SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW (ECF No.

---

[4] See ORDER dated April 24, 2018 (ECF No. 1470) (directing parties to submit briefing regarding "meaning of the phrase 'willful and malicious'"); DEFENDANT AND COUNTERCLAIMANT JELD-WEN, INC.'S PRETRIAL BRIEFING REGARDING THE WILLFUL AND MALICIOUS STANDARD UNDER THE TUTSA (ECF No. 1491); COUNTERCLAIM DEFENDANT STEVES AND SONS INC., AND SAM STEVES AND EDWARD STEVES' RESPONSE TO THE COURT'S ORDER DATED APRIL 24, 2018 REGARDING THE MEANING OF THE PHRASE "WILLFUL AND MALICIOUS" UNDER APPLICABLE TRADE SECRET STATUTES (ECF No. 1500); TS Trial Tr. 2229:9-2238:10 (ECF No. 1735).

1822) and does not develop the theory sufficiently to allow for meaningful understanding insofar as it may relate to its motion for a new trial. And, of course, the calculus used in deciding a motion for new trial is quite different than that used in deciding a motion for judgment as a matter of law. Thus, JELD-WEN's agreement on this point is rejected as inadequate and improper.

Moreover, a review of the record shows that the evidence amply supported both the antitrust verdict and the breach of contract verdict. Every element of those claims was proved by a preponderance of the evidence, and the jury rightly returned a verdict in favor of Steves, except as the Court previously has held in setting aside the jury verdict with respect to certain quality related contract damages (Count Two, paragraphs 8 through 11). See JURY VERDICT (ECF No. 1022); MEMORANDUM OPINION (ECF No. 1773).

On that score, JELD-WEN argues that the decision to set aside the jury verdict on those claims also requires setting aside the verdict with respect to the quality related antitrust damages. But JELD-WEN fails to provide any authority for the assertion that a party's failure to prove a breach of contract claim necessarily means that a party fails to prove an antitrust claim where the same evidence is offered to prove antitrust injury and antitrust damages. Even though JELD-WEN did not breach its contract with Steves by reducing the quality of its doors, it can be held

19

accountable under the Clayton Act for reducing the quality to hurt Steves as a competitor. Thus, JELD-WEN's argument is without merit.

## CONCLUSION

For the foregoing reasons, JELD-WEN, INC.'S MOTION FOR A NEW TRIAL (ECF No. 1823) will be denied.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: March 13, 2019