UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

STEVES AND SONS, INC.,

    Plaintiff,

v.                          Civil Action No. 3:16cv545

JELD-WEN, INC.,

    Defendant.

**AMENDED FINAL JUDGMENT ORDER**

This is the final order entering judgment: (1) on the Jury Verdict (ECF No. 1022) in favor of STEVES AND SONS, INC. ("STEVES") against JELD-WEN, INC. ("JELD-WEN") on STEVES' antitrust and breach of contract claims; (2) on the MEMORANDUM OPINIONS (ECF Nos. 1759 and 1784) addressing STEVES' request for equitable remedies on STEVES antitrust claims; (3) on the Jury Verdict (ECF No. 1609) in favor of JELD-WEN against STEVES on JELD-WEN's trade secret counterclaims; (4) on the MEMORANDUM OPINION (ECF No. 1773) addressing JELD-WEN's motion for judgment on certain of STEVES' breach of contract claims; (5) on the MEMORANDUM OPINION (ECF No. 1811) addressing JELD-WEN's motion seeking injunctive relief on its trade secret counterclaims; (6) on Steve's request for declaratory relief as set out in the Complaint but modified in PLAINTIFF STEVES AND SONS, INC.'S MEMORANDUM IN SUPPORT OF DECLARATORY RELIEF (ECF No. 1793); (7) on the MEMORANDUM OPINION (ECF No. 1779) and ORDER (ECF No. 1780) addressing Edward Steves,

Sam Steves, and John Pierce's motions for judgment as a matter of law on JELD-WEN's trade secret counterclaims; and (8) to extend the terms of the Supply Agreement for one year beyond the conclusion of any appeal if this case remains on appeal until September 10, 2021. On the basis of those Jury Verdicts and for the reasons set forth in the applicable MEMORANDUM OPINIONS and herein, judgment is hereby entered as set forth below.

## I. Final Judgment on STEVES Antitrust Claims

### A. Final Judgment on STEVES' Past Antitrust Damages

It is hereby ORDERED that judgment is entered on STEVES' claim for past antitrust damages against JELD-WEN in the amount of $36,455,619.00 in accord with the Jury Verdict, paragraphs (3)(a)(1)-(4), with post-judgment interest thereon from December 14, 2018 at the federal judgment interest rate of 2.69% per annum until paid in full.

### B. Final Judgment of Divestiture and Related Conduct Remedies

For the reasons set forth in the MEMORANDUM OPINION (ECF No. 1784), the Court finds that:

(A) Without the equitable remedies of divestiture, and the related conduct remedies herein provided, it is not possible to restore the substantially lessened competition in the market for interior molded doorskins that the jury found was the consequence of the acquisition of Craftmaster International, Inc. ("CMI") by

2

JELD-WEN (the "Merger") in October 2012, which violated the Section 7 Clayton Act (15 U.S.C. § 18); and

(B) STEVES sustained antitrust injury as found by the jury as a consequence of the violation of the Clayton Act found by the jury, and STEVES has no adequate remedy at law for the antitrust injury found by the jury; and

(C) Without the divestiture and the related conduct remedies herein provided, STEVES will suffer irreparable injury in the form of the loss of its business; and

(D) As a result of the divestiture and the related conduct remedies herein provided, JELD-WEN will sustain certain hardships as identified in the Memorandum Opinion (ECF No. 1784); and

(E) The hardships that STEVES will suffer if the divestiture and the related conduct remedies herein provided are not granted substantially outweigh the hardships to JELD-WEN if the divestiture and the related conduct remedies herein provided are granted, so the balance of hardships tips decidedly in favor of STEVES; and

(F) The public interest is best served by ordering divestiture and the related conduct remedies herein provided; and

THEREFORE, it is ORDERED that:

(1) JELD-WEN shall divest itself of:

    (a) All tangible and intangible assets that were acquired by JELD-WEN when it acquired CMI on

October 24, 2012, that are used by JELD-WEN to operate and/or manage its Towanda, Pennsylvania facility (the "Towanda Facility") (manage or management shall include sales of doorskins made at the Towanda facility); and

(b) All inventory, materials, supplies, office furniture, computer systems, and other tangible property used in the operation or management of the Towanda facility; and

(c) All licenses, permits, and authorizations issued by any governmental organization relating to the operation of the Towanda facility; and

(d) All contracts, agreements, leases, commitments, certifications, and understandings relating to the operation and management of the Towanda facility, including supply agreements as well as all customer lists, accounts, and credit records; and

(e) All repair and performance records and all other records relating to the Towanda facility; and

(f) All intangible assets used in the operation or management of the Towanda facility, including, but not limited to, all patents; licenses and sublicenses; intellectual property; copyrights; trademarks; trade names; service marks; service

names; technical information; computer software and related documentation; computer hardware and related documentation; know-how; trade secrets; other intellectual property rights reasonably necessary for the operation or management of the Towanda facility in the same general manner that it is operated and managed as of this date; drawings; blueprints; designs; design protocols; specifications for materials; specifications for parts and devices; safety procedures for the handling of materials and substances; research data concerning historic and current research and development efforts relating to the Towanda facility assets, including, but not limited to, designs of experiments, and results of successful and unsuccessful designs and experiments; quality assurance and control procedures; design tools and simulation capability; and manuals and technical information that JELD-WEN provides to its own employees, customers, suppliers, agents, or licensees, ; and

(g) All tangible and intangible assets, as described above, that were or are acquired, developed, or produced for use in the operation and management of

5

the Towanda facility between October 2012 and the date of the divestiture herein provided; and

(2) The Court will appoint a Special Master pursuant to Fed. R. Civ. P. 53, first, to arrange the divestiture to an acquiring company that demonstrates the ability to competitively manufacture and sell molded interior doorskins in the United States and, second, to assure that, until the divestiture is complete, the Towanda facility is preserved, operated, and maintained in good operating condition and in accord with applicable law. The fees of the Special Master will be paid by JELD-WEN. The parties will be afforded the opportunity to participate in the preparation of a detailed order setting out the duties of the Special Master and the administration of the process of divestiture over which the Special Master will preside; and

(3) JELD-WEN and the entity that acquires Towanda (the "Acquiring Company") shall enter into a Transition Services Agreement that reflects JELD-WEN's obligation and agreement to provide, for no more than two years, all reasonably necessary transition services and support to enable the Acquiring Company to fully use the divested assets and to compete effectively in the market for doorskins in the United States as of the date that the divestiture takes place. The Special Master shall facilitate the negotiation of the Transition Services Agreement, which shall, inter alia, provide reasonable compensation to JELD-WEN and the

Transition Services Agreement shall not take effect until approved by the Court; and

(4) The Acquiring Company and STEVES shall enter into an agreement, which will assure STEVES a supply of molded interior doorskins of the kind and in the volume reflected in the current Supply Agreement with JELD-WEN for three years after September 10, 2021 at prices and terms to be negotiated between the Acquiring Company and STEVES; and

(5) The Acquiring Company and JELD-WEN shall enter into an agreement that reflects the Acquiring Company's obligation and agreement to supply, for at least a period of two years after the divestiture, doorskins to JELD-WEN at prices and terms to be negotiated between JELD-WEN and the Acquiring Company; and, for any contract with JELD-WEN for the supply of doorskins to JELD-WEN during five years after that two-year period, the Acquiring Company shall fully satisfy the requirements of any independent door manufacturers with which the Acquiring Company has contracted to supply doorskins before supplying JELD-WEN with doorskins; and

(6) The Special Master shall facilitate negotiation of the agreements called for in Paragraphs (4) and (5) above, and those agreements shall not take effect until approved by the Court; and

(7) The Acquiring Company shall be afforded a reasonable opportunity to retain the services of current Towanda employees, and JELD-WEN shall be prohibited from rehiring any employees who

elect to be employed by the Acquiring Company for two years after they are hired by the Acquiring Company; and

(8) Other independent door manufacturers shall be afforded an opportunity to terminate, without penalty, any contract with JELD-WEN for the purchase of doorskins, and the Acquiring Company shall be allowed to negotiate new agreements with those companies for the purchase of doorskins made at the Towanda facility; and

(9) Pursuant to the Supreme Court's decision in Brown Shoe Co. v. United States, 370 U.S. 294 (1962), this Final Judgment Order is an appealable decision. See id. at 308 & n.15 (finding that a divestiture order in a Clayton Act case was sufficiently final to trigger appellate review even though the details of the divestiture had not been determined and that the public interest favored prompt appellate review of divestiture orders); and

(10) JELD-WEN has represented that it intends to appeal this Final Judgment Order, and pending appeal:

    (a) JELD-WEN shall continue to maintain and operate the Towanda facility during the pendency of the appeal unless otherwise ordered by the Court; and

    (b) JELD-WEN shall not take any steps during the pendency of the appeal that would in any way reduce the value of the Towanda facility to a potential Acquiring Company or would make it more difficult or costly for the Acquiring Company to supply

        doorskins to STEVES of the type, and in the quantity, that JELD-WEN supplies to STEVES as of the date of the entry of this Order; and

(c) The appointment of a Special Master shall go forward as described herein so that the Special Master can monitor JELD-WEN's compliance with the obligations set out in this Order, pending appeal. The Special Master will also be able to become knowledgeable about the doorskin marketplace and the parties' roles in that marketplace. The Special Master will have access to the materials described in this Order, as well as the cooperation of JELD-WEN described in this Order; and

(11) JELD-WEN may not reacquire any part of the assets to be divested for five years after the divestiture without prior approval of the Court; and

(12) The Court retains jurisdiction to enable any party to this Order to apply at any time for further orders and directions as may be necessary and appropriate to carry out or construe this Order, to modify any of its provisions, to enforce compliance, to punish violations of its provisions, and to assure that the provisions of this Final Judgment Order are fully satisfied.

### C. Alternative Final Judgment on the Antitrust Damages Verdict for Future Lost Profits (ECF No. 1022, ¶ 3)

In order to assure that JELD-WEN can appeal: (1) the jury's findings that JELD-WEN violated the antitrust laws (ECF No. 1022, ¶¶ 1 and 2) and (2) all of the antitrust damages assessed by the jury (ECF No. 1022, ¶¶ 3(a) and (b)), and to assure that the appeal thereof can be heard in the same appeal as the divestiture judgment set out in Part I.B. above, the following judgment is alternatively entered to be effective if the Final Judgment Order set out in Part I.B. is not implemented for any reason.

Alternatively to the Final Judgment of Divestiture and Related Conduct Remedies (Part I.A. above), it is hereby ORDERED that, if part I.B. of this Final Judgment Order is set aside on appeal, judgment is entered on STEVES' antitrust lost profits claim against JELD-WEN in the amount of $139,441,743.00 in accord with the Jury Verdict, paragraph 3(b), with post-judgment interest thereon from December 14, 2018 at the federal judgment interest rate of 2.69% until paid in full.

### II. Alternative Final Judgment on the Breach of Contract Verdict (ECF No. 1022, ¶¶ 4, 5, 6, and 7)

In order to assure that JELD-WEN can appeal: (1) the jury's findings that JELD-WEN breached the contract at issue and (2) all of the breach of contract damages (ECF No. 1022, ¶¶ 4, 5, 6, and 7); and to assure that the appeal thereof can be heard in the same appeal as the divestiture judgment set out in Part I.B. above and

the alternative judgment on antitrust damages set out in Part I.B. above, the following judgments are alternatively entered to be effective only if the Final Judgment Order set out in Part I.C. is set aside on appeal.

(1) Alternatively, it is hereby ORDERED that, if the Final Judgment Order set out in Part I.C. is set aside on appeal, judgment is entered on STEVES' breach of contract damages in the amount of $9,933,602.00 in favor of STEVES and against JELD-WEN (ECF No. 1022, ¶¶ 4, 5, 6, and 7) together with prejudgment interest thereon at the rate of 7% per annum from February 15, 2018 to December 14, 2018 and with post-judgment interest thereon at the rate of 2.69% per annum from December 14, 2018 until paid in full.

### III. Final Judgment on JELD-WEN's Trade Secret Verdict (ECF No. 1609, Section V, ¶ b)

It is hereby ORDERED that Final Judgment is entered on the jury's verdict on JELD-WEN's trade secret counterclaims (ECF No. 1609) and on the jury's award of damages thereon (ECF No. 1609, Section V, ¶ 6) in the amount of $1,200,000.00 with prejudgment interest at the rate of 5.25% per annum from May 11, 2018 until December 14, 2018 and post-judgment interest at the rate of 2.69% thereon from December 14, 2018 until paid in full.

IV. **Final Judgment on JELD-WEN, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW AGAINST STEVES & SONS, INC. (ECF No. 968)**

For the reasons, and to the extent, set forth in the MEMORANDUM OPINION entered on September 28, 2018 (ECF No. 1773) it is hereby ORDERED that JELD-WEN, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW AGAINST STEVES & SONS, INC. (ECF No. 968) is granted and the Jury Verdict (ECF No. 1022) on COUNT TWO, paragraphs 8, 9, 10, and 11, is set aside and vacated.

V. **Final Judgment on COUNTERCLAIMANT JELD-WEN, INC.'S MOTION FOR PERMANENT INJUNCTION AGAINST COUNTERDEFENDANT STEVES & SONS, INC. (ECF No. 1631)**

For the reasons set forth in the MEMORANDUM OPINION entered on November 30, 2018 (ECF No. 1811) it is hereby ORDERED that COUNTERCLAIMANT JELD-WEN, INC.'S MOTION FOR PERMANENT INJUNCTION AGAINST COUNTERDEFENDANT STEVES & SONS, INC. (ECF No. 1631) is denied.

VI. **Final Judgment on STEVES' Request for Declaratory Relief (ECF Nos. 1 and 1793)**

For the reasons set out in the MEMORANDUM OPINION (ECF No. 1813), it is declared that:

(1) The pricing provisions of Section 6 of the Doorskin Product Agreement (the "Supply Agreement") (ECF No. 1793-1) apply to provide for price increases when JELD-WEN's Key Input costs increase and for price decreases when JELD-WEN's Key Input costs decrease; and

(2) JELD-WEN is required to provide STEVES with annual notice by November 30 of each year of the year-over-year percentage change of the Key Input costs in the Supply Agreement, and the resulting doorskin price increase or decrease to be charged for the ensuing year.

VII. **Final Judgment on COUNTERCLAIM DEFENDANTS STEVES AND SONS, INC., AND EDWARD STEVES AND SAM STEVES' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AGAINST JELD-WEN, INC. and INTERVENOR JOHN G. PIERCE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AGAINST JELD-WEN, INC. (ECF Nos. 1627 & 1629)**

For the reasons, and to the extent, set forth in the MEMORANDUM OPINION entered on October 4, 2018 (ECF No. 1779) it is hereby ORDERED that COUNTERCLAIM DEFENDANTS STEVES AND SONS, INC., AND EDWARD STEVES AND SAM STEVES' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AGAINST JELD-WEN, INC. (ECF No. 1627) and INTERVENOR JOHN G. PIERCE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AGAINST JELD-WEN, INC. (ECF No. 1629) is granted in part and denied in part. The remaining requests for declaratory relief are denied and judgment is hereby entered in favor of Edward Steves, Sam Steves, and John G. Pierce and against JELD-WEN on JELD-WEN's trade secret first and third counterclaims.

VIII. **The Supply Agreement's Terms Shall Extend One Year Beyond the Conclusion of the Appeal if This Case Remains on Appeal Until September 10, 2021.**

Considering the time that has passed since entry of the verdict on the antitrust claims (caused by the time for conducting, briefing, and deciding the remedies issues, by the time taken for

13

the trial secrets claims, and by the time taken on the post-trial motions), if, as of September 10, 2021, this case remains on appeal, the term and the terms of the Supply Agreement (PTX-149) shall be extended for one year beyond the conclusion of the appeal to assure that Steves does not suffer the irreparable injury found in the MEMORANDUM OPINION (ECF No. 1811); and

JELD-WEN shall maintain the status quo at the Towanda facility during the pendency of this appeal, and Steves has the right under Federal Rule of Civil Procedure 64(d) to request an injunction pending appeal to lengthen the period of Steves' Supply Agreement with JELD-WEN for a greater period than provided in the above paragraph.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: March 13, 2019