UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

|  |  |  |
|---|---|---|
| STEVES AND SONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:16-cv-545-REP |
| | ) | |
| JELD-WEN, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## STEVES AND SONS, INC.'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND EXPENSES

Lewis F. Powell III (VSB No. 18266)
Michael R. Shebelskie (VSB No. 27459)
John S. Martin (VSB No. 34618)
Maya M. Eckstein (VSB No. 41413)
R. Dennis Fairbanks (VSB No. 90435)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
lpowell@HuntonAK.com
mshebelskie@HuntonAK.com
martinj@HuntonAK.com
meckstein@HuntonAK.com
dfairbanks@HuntonAK.com

Glenn D. Pomerantz (pro hac vice)
Ted Dane (pro hac vice)
Kyle W. Mach (pro hac vice)
Kuruvilla J. Olasa (pro hac vice)
Emily C. Curran-Huberty (pro hac vice)
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
Telephone: (213) 683-9132
Facsimile: (213) 683-5161


Marvin G. Pipkin (pro hac vice)
Kortney Kloppe-Orton (pro hac vice)
PIPKIN LAW LLP
10001 Reunion Place, Suite 6400
San Antonio, TX 78216
Telephone: (210) 731-6495
Facsimile: (210) 293-2139

*Attorneys for Steves and Sons, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... iii

I.    PRELIMINARY STATEMENT ..................................................................... 1

II.   ARGUMENT .................................................................................................. 2

    A.   Steves Is Entitled To Recover Its Reasonable Attorneys' Fees .............. 2

        1.   The Clayton Act's Fee Shifting Provisions .................................. 3

        2.   The Long-Term Supply Agreement's Fee Shifting Provision .................... 3

    B.   The Method For Determining The Reasonableness Of A Fee Request .................. 4

        1.   The Method Under The Clayton Act ............................................ 4

        2.   The Method Under The Agreement ............................................. 6

    C.   Steves' Requested Attorneys' Fees Are Reasonable ............................... 7

        1.   Steves' Request Reflects a Reasonable Number of Hours ......... 8

            (a)   Steves' Request Is Less Than What Steves Paid ............ 8

            (b)   Antitrust Cases Are Inherently Expensive To Try .......... 9

            (c)   A Lot Of Work Was Necessary ...................................... 9

            (d)   JELD-WEN Aggressively Litigated This Case ............ 11

            (e)   Steves' Attempts To Settle This Case Were Rebuffed ................. 13

            (f)   The Issues At Stake Were Enormous .............................. 14

            (g)   The Questions Presented Were Novel And Difficult .................... 14

        2.   Steves' Request Reflects Reasonable Rates ............................... 15

            (a)   The Requested Rates Were Actually Paid By Steves And Other
Clients .......................................................................... 16

            (b)   The Requested Rates Comport With Rates Charged In Other
Highly-Complex Commercial Litigation ...................... 17

            (c)   Munger's Rates Are Reasonable Even If Viewed As Out-Of-
Jurisdiction Rates ......................................................... 19

i

|  |  | (d) | The Johnson/Rule 1.5 Factors Support The Requested Rates | 20 |

| | 3. | No Downward Adjustment Is Appropriate | 22 |

| D. | Steves' Attorneys' Fees Related To JELD-WEN's Unclean Hands Defense | 22 |

| E. | Reasonable Expenses Incurred By Steves' Counsel | 25 |

| | 1. | Paralegal expenses | 27 |

| | 2. | Cognicion expenses | 27 |

| | 3. | Transperfect expenses | 28 |

| | 4. | RLM expenses | 28 |

| | 5. | IT technology expenses | 29 |

| | 6. | Travel expenses | 29 |

| | 7. | Messengers/Mail/Federal Express | 29 |

| | 8. | Overtime | 30 |

| | 9. | Consulting Law Firms | 30 |

| F. | Fees To Prepare Fee Application | 30 |

| III. | CONCLUSION | 30 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AFH Holding & Advisory, LLC v. Emmaus Life Sciences, Inc.*,
No. N12C09-045, 2014 Del. Super. LEXIS 228 (Del. Super. Apr. 16, 2014) .........................4

*All Pro Maid, Inc. v. Layton*,
Civil Action No. 058-N, 2004 Del. Ch. LEXIS 192 (Del. Ch. Dec. 20, 2004) ......................6

*Arbitrium Handels AG v. Johnston*,
C.A. No. 13506, 1998 Del. Ch. LEXIS 41 (Del. Ch. March 23, 1998).....................................7

*In re Auto. Refinishing Paint Antitrust Litig.*,
MDL Docket No. 1426, 2008 WL 63269 (E.D. Pa. Jan. 3, 2008)............................................9

*Aveta, Inc. v. Bengoa*, C.A. No. 3598-VCL, 2010 Del. Ch. LEXIS 175
(Del. Ch. Aug. 13, 2010)...........................................................................................................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................................................9

*Blank Rome, LLP v. Vendel*,
C.A. No. 19355, 2003 Del. Ch. LEXIS 84 (Del. Ch. Aug. 5, 2003) ........................................7

*Blum v. Stenson*,
465 U.S. 886 (1984).................................................................................................................15

*Buffington v. Balt. Cnty., Md.*,
913 F.2d 113 (4th Cir. 1990) ..................................................................................................18

*California v. American Stores Co.*,
495 U.S. 271 (1990).................................................................................................................14

*Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*,
434 U.S. 412 (1978)...................................................................................................................3

*Comrie v. Enterasys Networks, Inc.*,
C.A. No. 19254, 2004 Del. Ch. LEXIS 53 (Del. Ch. Apr. 27, 2004) ........................................4

*Matter of Cont'l Illinois Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ..................................................................................................15

*Costco Wholesale Corp. v. Hoen*,
538 F.3d 1128 (9th Cir. 2008) ..................................................................................................3

*Coward v. Robinson*,
No. 1:10cv147, 2017 U.S. Dist. LEXIS 186414 (E.D. Va. Nov. 9, 2017) .......................13–14

*Daly v. Hill*,
790 F.2d 1071 (4th Cir. 1986) ............................................................................................30

*Danenberg v. Fitracks, Inc.*,
58 A.3d 991 (Del. Ch. 2012)..................................................................................................7

*Depaoli v. Vacation Sales Assocs., L.L.C.*,
489 F.3d 615 (4th Cir. 2007) .............................................................................................16

*Dreher v. Experian Info. Solutions, Inc.*,
No. 3:11cv624, 2016 U.S. Dist. LEXIS 97640 (E.D. Va. July 26, 2016) .............................11

*E. Associated Coal Corp. v. Dir., Office of Workers' Comp. Programs*,
724 F.3d 561 (4th Cir. 2013) ........................................................................................5, 17

*E.I. DuPont de Nemours & Co. v. Kolon Indus.*,
Case No. 3:09cv58, 2014 U.S. Dist. LEXIS 23901 (E.D. Va. Feb. 25, 2014) ..............1, 13, 26

*E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*,
911 F. Supp. 2d 340 (E.D. Va. 2012) ....................................................................................6

*E.I. DuPont de Nemours & Co. v. Kolon Indus.*,
No. 3:09cv058, 2013 U.S. Dist. LEXIS 16295 (E.D. Va. Feb. 6, 2013)................................28

*Emplrs Council on Flexible Comp. v. Feltman*,
No. 1:08cv371, 2010 U.S. Dist. LEXIS 2744.......................................................................30

*HeiTech Servs. v. Front Rowe, Inc.*,
No. 1:14cv739, 2015 U.S. Dist. LEXIS 83588 (E.D. Va. June 25, 2015)...............................6

*Hensley v. Eckerhart*,
461 U.S. 424 (1983).................................................................................................................4

*Johnson v. Georgia Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) ..........................................................................................5 n.1

*Jones v. Southpeak Interactive Corp. of Del.*,
No. 3:12-cv-443, 2014 U.S. Dist. LEXIS 91177 (E.D. Va. July 2, 2014)................................5

*JP v. County Sch. Bd*,
641 F. Supp. 2d 499 (E.D. Va. 2009) ..................................................................................15

*Kahle v. Leonard*,
CIV 04-5024, 2008 WL 2776494 (D.S.D. July 14, 2008), *vacated in part on
other grounds*, 563 F.3d 736 (8th Cir. 2009)..................................................................22–23

*Mahani v. EDIX Media Group, Inc.*,
    935 A.2d 242 (Del. 2007) .............................................................6, 11

*Mathis v. Spears*,
    857 F.2d 749 (Fed. Cir. 1988).................................................................6

*Mattel, Inc. v. MGA Entm't, Inc.*,
    Case No. 04-9049, 2011 WL 3420603 (C.D. Cal. Aug. 4, 2011).............................1

*McAfee v. Boczar*,
    738 F.3d 81 (4th Cir. 2013), *as amended* (Jan. 23, 2014) .......................5, 5 n.1, 22

*McAfee v. Boczar*,
    906 F. Supp. 2d 484 (E.D. Va. 2012), *vacated in other part*,
    738 F.3d 81 (4th Cir. 2013) ................................................................5

*Nat'l Wildlife Fed'n v. Hanson*,
    859 F.2d 313 (4th Cir. 1988) ...............................................................19

*Newport News Shipbuilding and Dry Dock Co. v. Holiday*,
    591 F.3d 219 (4th Cir. 2009) ...............................................................19

*Norton v. City of Springfield*,
    281 F. Supp. 3d 743 (C.D. Ill. 2017) ......................................................18

*Oracle Corp. v. Rimini Street, Inc.*,
    2:10-cv-00106, ECF No. 1165 (D. Nev. Aug. 14, 2018).......................................1

*Oracle Corp. v. SAP AG*,
    4:07-cv-01658, ECF No. 1251 (N.D. Cal. Nov. 14, 2014).....................................1

*Padgett v. Loventhal*, 706 F.3d 1205, 1209 (9th Cir. 2013) ........................................23

*Page v. Va. State Bd. of Elections*, No. 3:13-CV-678, 2015 U.S. Dist. LEXIS
    180310 (E.D. Va. Mar. 11, 2015) .......................................5, 16, 18, 29

*In re Patriot Coal Corp.*,
    Case No. 15-32450, ECF Doc. 2032 (E.D. Va. Bankr. Dec. 28, 2015)...................18

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1986)........................................................................4

*Perdue v. Kenny A. ex rel. Winn*,
    559 U.S. 542 (2010)....................................................................4, 15

*Rambus, Inc. v. Infineon Techs. AG*,
    155 F. Supp. 2d 668 (E.D. Va. 2001) ..............................1, 6, 11, 26, 30

*Reiter v. Metro. Transp. Auth. of New York,*
 Case No. 01 Civ. 2762, 2004 WL 2072369 (S.D.N.Y. Sept. 10, 2004) ..................................16

*Robinson v. Equifax Information Services, LLC,*
 560 F.3d 235 (4th Cir. 2009) ...........................................................................................6, 15

*Rum Creek Coal Sales, Inc. v. Caperton,*
 31 F.3d 169 (4th Cir. 1994) ............................................................................................16, 19

*Saleh v. Moore,*
 95 F. Supp. 2d 555 (E.D. Va. 2000) ................................................................................11, 29

*Sheppard v. Riverview Nursing Ctr., Inc.,*
 88 F.3d 1332 (4th Cir. 1996) ................................................................................................13

*Spell v. McDaniel,*
 824 F.2d 1380 (4th Cir. 1987) .........................................................................................15, 16

*SunTrust Mortg. v. AIG United Guar. Corp.,*
 933 F. Supp. 2d 762 (E.D. Va. 2013) ...................................................................................17

*Superior Form Builders v. Dan Chase Taxidermy Supply Co.,*
 881 F. Supp. 1021 (E.D. Va. 1994) .....................................................................6, 26, 27, 30

*Taylor v. Republic Servs.,*
 No. 1:12cv00523, 2014 U.S. Dist. LEXIS 11086 (E.D. Va. Jan. 29, 2014).....................17, 29

*Toshiba Am. Info. Sys., Inc. v. New England Tech., Inc.,*
 No. SACV 05-00955-CJC, 2007 WL 8089815 (C.D. Cal. Nov. 14, 2007) ...........................23

*In re Toys "R" US, Inc.,*
 Case No. 17-34665, ECF Doc. 6068 (E.D. Va. Bankr. Dec. 27, 2018)..................................17

*Trans World Airlines, Inc. v. Hughes,*
 312 F. Supp. 478 (S.D.N.Y. 1970).........................................................................................22

*Trimper v. City of Norfolk,*
 58 F.3d 68 (4th Cir. 1995) .....................................................................................................29

*Two Men & A Truck/Int'l Inc. v. A Mover, Inc.,*
 128 F. Supp. 3d 919 (E.D. Va. 2015) ....................................................................................17

*Ustrak v. Fairman,*
 851 F.2d 983 (7th Cir.1988) ..................................................................................................23

*Vienna Metro LLC v. Pulte Home Corp.,*
 1:10cv00502, 2011 U.S. Dist. LEXIS 158648 (E.D. Va. Aug. 24, 2011)..............................17

*United States ex rel. Vuyyuru v. Jadhav*,
   2007 U.S. Dist. LEXIS 63014 (E.D. Va. Aug. 27, 2007) ........................................18

*Welton v. Osborn*,
   124 F. Supp. 2d 1114 (S.D. Ohio 2000) ................................................................23

*Wis. Inv. Bd. v. Bartlett*,
   Case No. Civ.A. 17727, 2002 WL 568417 (Del. Ch. Apr. 9, 2002),
   *aff'd,* 808 A.2d 1205 (Del. 2002) ...........................................................................6

*World-Win Marketing, Inc. v. Ganley Management Co.*,
   No. 3509-CC, 2009 Del. Ch. LEXIS 151 (Del. Ch. Aug. 18, 2009) .......................4

*Xu v. Yamanaka*,
   Case No. 13CV3240, 2014 WL 3840105 (N.D. Cal. Aug. 1, 2014) ......................18

## Statutes

15 U.S.C. § 15 ..............................................................................................................3

15 U.S.C. § 26 ..............................................................................................................3

## Other Authorities

Del. Lawyers' Rule of Prof'l Conduct R. 1.5(a) ..........................................................6

Moore's Federal Practice § 124.07[3][b] .....................................................................6

## I.     PRELIMINARY STATEMENT

Complex lawsuits can generate substantial attorneys' fees.  That is especially true when the losing party aggressively litigates every aspect of the case.  For example, this Court awarded $18.3 million in fees in the *DuPont* trade secrets case and $7.1 million in the *Rambus* patent infringement case.  *E.I. DuPont de Nemours & Co. v. Kolon Indus.*, Case No. 3:09cv58, 2014 U.S. Dist. LEXIS 23901 (E.D. Va. Feb. 25, 2014); *Rambus, Inc. v. Infineon Techs. AG*, 155 F. Supp. 2d 668 (E.D. Va. 2001). Examples from other courts abound.  *E.g.*, *Oracle Corp. v. SAP AG*, 4:07-cv-01658, ECF No. 1251 (N.D. Cal. Nov. 14, 2014) ($120 million fee award); *Mattel, Inc. v. MGA Entm't, Inc.*, Case No. 04-9049, 2011 WL 3420603, at *10 (C.D. Cal. Aug. 4, 2011) ($105 million fee award); *Oracle Corp. v. Rimini Street, Inc.*, 2:10-cv-00106, ECF No. 1165 (D. Nev. Aug. 14, 2018) ($28.5 million fee award).

This is one of those cases.  Steves' lawsuit against JELD-WEN presented procedural, legal and factual issues that were every bit as complex, and every bit as hotly contested, as those in *DuPont*, *Rambus*, and other cases that resulted in notable fee awards.  After nearly three years of litigation—including hard-fought discovery, multiple dispositive motions, numerous motions in limine, a jury trial on liability and damages, a bench trial on divestiture, extensive post-trial briefing on divestiture, disputes regarding the form and content of the judgment and the appointment and duties of the Special Master, and yet another round of post-judgment motions—Steves prevailed.  After trebling Steves obtained $36 million in past damages for the antitrust violation and, if its preferred remedy of divestiture is not achieved, will receive an additional $139 million for future lost profits.  As importantly, Steves obtained an order of divestiture to restore competition for Steves and the public.  In addition, Steves defeated JELD-WEN's dogged insistence that Steves' allegedly "unclean hands" should shield JELD-WEN from any antitrust liability and then, after that was established by the jury, from the equitable remedy of divestiture.

Steves' signal success rested on a mountain of work. Now, as the prevailing party, Steves is entitled to an award that substantially reimburses it for the tens of millions of dollars it expended in this litigation. In summary, Steves asks the Court to award it (1) $19,835,386.51 in attorneys' fees for prevailing on its antitrust and breach of contract claims, (2) $5,441,845.75 in attorneys' fees for defeating JELD-WEN's unclean hands affirmative defense, and (3) $3,124,074.59 in expenses. Steves also requests an award of its fees to prepare this application.

Below, Steves describes why its request is reasonable given the circumstances of this case and is supported by the facts, including contemporaneous time records, the declarations of Steves' counsel, and the declaration of Hill Wellford, an experienced antitrust litigator familiar with the cost of complex antitrust litigation. Although Steves anticipates that JELD-WEN will aggressively litigate the reasonableness of Steves' fee request—just as it has litigated everything else in this case—two simple facts confirm that Steves' request is reasonable. First, Steves' fee request consists only of fees actually charged by Steves' counsel and paid by Steves. Although Steves certainly hoped to prevail in this litigation, there was no guarantee of success. So the fact that Steves willingly elected to pay these fees speaks to their reasonableness. Second, JELD-WEN's recent audited financial reports disclose that it has reserved $39.9 million for Steves' attorneys' fees. That Steves' request is significantly less than the amount JELD-WEN apparently views as a reasonable fee award demonstrates the reasonableness of Steves' request.

## II.    ARGUMENT

### A.    Steves Is Entitled To Recover Its Reasonable Attorneys' Fees

Steves is entitled to recover its reasonable attorneys' fees under two sources—the fee shifting provisions of the Clayton Act and that of the long-term doorskin supply agreement (the "Agreement") between Steves and JELD-WEN.

### 1.      The Clayton Act's Fee Shifting Provisions

Steves prevailed on its antitrust claims for damages under Clayton Act § 4 and for equitable

relief under Clayton Act § 16.  Both statutes provide that a prevailing plaintiff "shall" be awarded

its "cost of suit, including a reasonable attorney's fee."  15 U.S.C. §§ 15, 26.  This statutory

language makes "fee awards mandatory for prevailing plaintiffs." *Christiansburg Garment Co. v.*

*Equal Employment Opportunity Comm'n*, 434 U.S. 412, 415 & n.5 (1978) (describing Clayton Act

§ 4, 15 U.S.C. § 15); *accord Costco Wholesale Corp. v. Hoen*, 538 F.3d 1128, 1136 (9th Cir. 2008)

(describing Clayton Act § 16, 15 U.S.C. § 26).

With respect to claims for injunctive relief in particular, such as Steves' successful claim

for divestiture, a fee award furthers Congress' objective "to encourage private parties to bring and

maintain meritorious antitrust injunction cases." *Costco*, 538 F.3d at 1136-37.  "Mandatory awards

were seen as necessary to protect the injunction-seeking plaintiff's financial incentive to file suit

because antitrust cases are normally very expensive to bring and maintain and claims for injunctive

relief by nature provide no prospect of money damages." *Id.* (citation omitted).

### 2.      The Long-Term Supply Agreement's Fee Shifting Provision

Paragraph 13 of the Agreement mandates an award of attorneys' fees to the prevailing party

in litigation arising out the Agreement.  That provision reads:

> In the event of any action or proceeding arising out of this Agreement or any
> provision of this Agreement, including, but not limited to, any breach of this
> Agreement, the prevailing party in any such action or proceeding shall be entitled
> to recover its reasonable costs and reasonable attorney's fees, including fees on
> appeal, if any, in addition to any other relief awarded.

Ex. PTX-50, p. 3.

Steves is the prevailing party within the meaning of this provision and thus is entitled to

fees under this provision as well.  Under Delaware law, which governs the Agreement, the

"prevailing party" under a contract fee-shifting provision "'is the party that predominates in the

litigation.'" *AFH Holding & Advisory, LLC v. Emmaus Life Sciences, Inc.*, No. N12C09-045, 2014 Del. Super. LEXIS 228 at *7 (Del. Super. Apr. 16, 2014) (quoting *World-Win Marketing, Inc. v. Ganley Management Co.*, No. 3509-CC, 2009 Del. Ch. LEXIS 151 at *8 (Del. Ch. Aug. 18, 2009)).  That test does not require a party to have won every claim, or to have recovered all the damages it sought, to be the prevailing party.  "The traditional analysis 'is an all-or-nothing approach involving an inquiry into which party predominated in the litigation." *Id*. at *9 (quoting *Comrie v. Enterasys Networks, Inc.*, C.A. No. 19254, 2004 Del. Ch. LEXIS 53 (Del. Ch. Apr. 27, 2004)).  Steves is the prevailing party under the Agreement under Delaware's "all-or-nothing" approach.

**B.    The Method For Determining The Reasonableness Of A Fee Request**

**1.    The Method Under The Clayton Act**

Federal courts use the "lodestar method" to determine the reasonableness of an attorneys' fees request under a fee-shifting statute. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010).  That approach multiplies "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  There is a "strong presumption" the resulting number "represents a reasonable [attorneys'] fee," *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986), which may be overcome only "in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue*, 559 U.S. at 553-54.

4

The Fourth Circuit relies on the twelve *Johnson* factors to guide the determination of a reasonable fee. *McAfee v. Boczar*, 738 F.3d 81, 89 (4th Cir. 2013), *as amended* (Jan. 23, 2014).[1] In *Perdue*, the Supreme Court criticized the *Johnson* factors as providing "very little actual guidance to district courts." 599 U.S. at 551.  Nevertheless, the Fourth Circuit has suggested that district courts should continue to "consider these factors in conjunction with the lodestar methodology." *E. Associated Coal Corp. v. Dir., Office of Workers' Comp. Programs*, 724 F.3d 561, 570 (4th Cir. 2013).  But, as the court of appeals has noted, "to the extent that any of these factors already has been incorporated into the lodestar analysis," it should not be considered "a second time." *Id.*

Factor 1 (the time and labor expended), factor 2 (the novelty and difficulty of the questions raised), factor 7 (time limitations imposed by the client or the circumstances), and factor 8 (the amount involved and the results obtained) bear on and are incorporated into the inquiry regarding the number of hours reasonably expended.  The remaining factors bear on the reasonableness of the hourly rate.  *Page v. Va. State Bd. of Elections*, No. 3:13-CV-678, 2015 U.S. Dist. LEXIS 180310 at *10 (E.D. Va. Mar. 11, 2015); *Jones v. Southpeak Interactive Corp. of Del.*, No. 3:12-cv-443, 2014 U.S. Dist. LEXIS 91177 at *3 (E.D. Va. July 2, 2014); *McAfee v. Boczar*, 906 F. Supp. 2d 484, 492 (E.D. Va. 2012), *vacated in other part*, 738 F.3d 81 (4th Cir. 2013), as amended

---

[1] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *McAfee*, 738 F.3d at 89 (*citing Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).

(2014); *Superior Form Builders v. Dan Chase Taxidermy Supply Co.*, 881 F. Supp. 1021, 1025 (E.D. Va. 1994).

After determining the lodestar figure, the Court must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Robinson v. Equifax Information Services, LLC*, 560 F.3d 235, 244 (4th Cir. 2009). "Where the prevailing party 'has obtained excellent results, his attorney should recover a fully compensatory fee.'" *Rambus*, 155 F. Supp. 2d at 685 (quoting *Mathis v. Spears*, 857 F.2d 749, 757 (Fed. Cir. 1988)).

## 2.     The Method Under The Agreement

For fees under a contract governed by state law, "state law governs not only the right to fees, but also the method of calculating the fees. The method of calculating a fee is an inherent part of the substantive right to the fee itself and reflects substantive state policy." *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 911 F. Supp. 2d 340, 358 (E.D. Va. 2012) (quoting Moore's Federal Practice § 124.07[3][b]). *Accord HeiTech Servs. v. Front Rowe, Inc.*, No. 1:14cv739, 2015 U.S. Dist. LEXIS 83588 at *2 (E.D. Va. June 25, 2015).

Under Delaware law, the reasonableness of a fee under a contract fee-shifting provision is governed by consideration of the factors set forth in Rule 1.5 of the Delaware Lawyers' Rules of Professional Conduct which are akin to the *Johnson* factors. *Mahani v. EDIX Media Group, Inc.*, 935 A.2d 242, 245–46 (Del. 2007). A court "also should consider whether the number of hours devoted to litigation was 'excessive, redundant, duplicative or otherwise unnecessary.'" *Mahani*, 935 A.2d at 247–48 (quoting *All Pro Maid, Inc. v. Layton*, Civil Action No. 058-N, 2004 Del. Ch. LEXIS 192 (Del. Ch. Dec. 20, 2004)).

In making that assessment, the fee that the prevailing party paid "can provide an initial 'rough cut' of a commercially reasonable fee." *Wis. Inv. Bd. v. Bartlett,* Case No. Civ.A. 17727, 2002 WL 568417, at *6 (Del. Ch. Apr. 9, 2002), *aff'd,* 808 A.2d 1205 (Del. 2002). Further, the

determination of a reasonable fee "'does not require that this Court examine individually each time entry and disbursement.'"  *Danenberg v. Fitracks, Inc.,* 58 A.3d 991, 997 (Del. Ch. 2012) (quoting *Aveta, Inc. v. Bengoa*, C.A. No. 3598-VCL, 2010 Del. Ch. LEXIS 175 at *16 (Del. Ch. Aug. 13, 2010)).  *Accord Blank Rome, LLP v. Vendel*, C.A. No. 19355, 2003 Del. Ch. LEXIS 84 at *8–9 (Del. Ch. Aug. 5, 2003) (rejecting requirement of line-item review).  Nor does it require the Court to assess independently whether counsel appropriately pursued and charged for a particular motion, line of argument, area of discovery, or other litigation tactic.   "For a court to second-guess, on a hindsight basis, an attorney's judgment . . . is hazardous and should whenever possible be avoided." *Arbitrium Handels AG v. Johnston,* C.A. No. 13506, 1998 Del. Ch. LEXIS 41at *4 (Del. Ch. March 23, 1998).

**C.     Steves' Requested Attorneys' Fees Are Reasonable**

Steves requests $19,835,386.51 in attorneys' fees for prevailing on its antitrust and breach of contract claims (exclusive of attorneys' fees related to JELD-WEN's unclean hands affirmative defense, which are discussed separately below in section II.D).  This figure represents fees actually charged by and paid to Steves' counsel: Hunton Andrews Kurth LLP; Munger Tolles & Olson LLP; and Pipkin Law LLP.  The attorneys from each firm whose fees make up the requested amount, their law school graduation years, their hourly rates (including the period the rates were in effect), and the number of hours each attorney worked, are provided in Exhibits A, B and C hereto.  The numbers of hours are compiled from detailed contemporaneous time entries that are

included with the accompanying declarations of Lewis F. Powell III (Exhibit D), Glenn D. Pomerantz (Exhibit E), and Marvin G. Pipkin (Exhibit F).[2]

As described below, the requested fees are reasonable given the complex, contentious and high-stakes nature of this lawsuit.  JELD-WEN understands this.  JELD-WEN appears to have reserved $40 million for Steves' fee award.  *See* JELD-WEN Holding, Inc. Form 10-K (March 1, 2019) at 36 (Exhibit G).[3]  That Steves' request (even after adding the fees Steves incurred defeating JELD-WEN's affirmative defense) is significantly less than the $40 million JELD-WEN considers reasonable is a powerful testament to the reasonableness of that request.

### 1.      Steves' Request Reflects a Reasonable Number of Hours

Steves' request is based on a total of 29,665 hours of attorney time.  That equates to an average of only 1,236 hours for each of the "core" attorneys who worked on this case.  That is reasonable in light of the following considerations, whether considered under the Clayton Act or the Agreement.

### (a)      Steves' Request Is Less Than What Steves Paid

To be conservative and avoid unnecessary litigation over its fee application, Steves voluntarily excluded various fees from its request.

---

[2] These fees are for work thru January 31, 2019 for Hunton and Pipkin Law and February 28, 2019 for Munger.  The firms have not yet billed Steves for work after those dates.  Steves reserves the right to supplement its petition with additional fees incurred after those dates.

[3] JELD-WEN's 10-K says JELD-WEN recorded a charge of $76.5 million associated with this case, which reflects the anticipated judgment of $12.2 million of past damages, trebled, and "estimated legal fees."  The difference between the $76.5 million and the $12.2 million trebled is $39.9 million.  The estimate in JELD-WEN's financial statement, which was filed with the SEC, must satisfy GAAP's requirement to be reasonable.  *See* Financial Accounting Standard Board (FASB) Accounting Standards Codification (ASC) 450-20-55-10 (estimating litigation-related loss contingencies).

*First*, Steves omitted time associated with certain matters such as the pre-lawsuit mediation efforts required under the Agreement, Steves' substantial communications with the Department of Justice in the fall of 2015 and spring of 2016 and Steves' inadvertent violation of the protective order.  Powell Dec. ¶¶ 9–11; Pomerantz Dec. ¶¶ 11–12; Pipkin Dec. ¶¶ 9–10.  These matters relate to Steves' antitrust and contract claims and could have been included in this petition, but Steves omitted them to be conservative.

*Second*, Steves omitted time actually recorded and billed by several attorneys who worked fewer than 100 hours on the case.  That limits Steves' request to "core" attorneys.  Powell Dec. ¶ 12; Pomerantz Dec. ¶ 13.

### (b)   Antitrust Cases Are Inherently Expensive To Try

As explained in the declaration of Hill Wellford, an expert antirust litigator, Clayton Act claims are expensive to try.  They require tens of thousands of hours of work to bring to trial.  They require staffing—both in terms of total attorneys and the ratio of senior and junior attorneys— consistent with Steves' request.  Declaration of Hill B. Wellford ("Wellford Dec.") ¶ 21 (Exhibit H).  Indeed, federal courts have universally recognized the unique expense of antitrust litigation. *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL Docket No. 1426, 2008 WL 63269, at *5 (E.D. Pa. Jan. 3, 2008) ("This litigation, like most antitrust cases, has been exceedingly complex, expensive, and lengthy.").  Steves' fees are in line with what such cases cost to try.  Wellford Dec. ¶¶ 20–29.

### (c)   A Lot Of Work Was Necessary

The number of docket entries alone in this case—1,870 as of the filing of this motion— attests to the extensive time and labor required of Steves' counsel.  Indeed, Steves filed just shy of 100 substantive briefs related to the antitrust and contract claims (exclusive of motions to seal). Both sides filed numerous motions in limine; both sides moved for partial summary judgment;

both sides filed motions for judgment as a matter of law; and, JELD-WEN filed two briefs to set aside the judgment.  There also was extensive briefing on Steves' request for divestiture and on the form of the Court's final judgment and the duties of the Special Master.

The quantity of filings was matched by their complexity.  Many of these briefs addressed important and often novel issues of antitrust law, including issues of causation, antitrust injury, the failing firm and the weakened competitor defenses, the "efficiencies" defense, the measurement of anticompetitive effects in a consummated merger case, appropriate jury instructions in a merger case, the availability of and standards applicable to an order for divestiture, and the mechanics of divestiture in a private action.

Nor was this a case litigated solely on the papers:  on just Steves' claims, there were 15 hearings; a week-long final pretrial conference; a two week jury trial that required marshalling, organizing, and presenting several hundred exhibits and complex expert testimony in a manner that was cogent to a jury; a three-day equitable relief evidentiary proceeding; and an additional two-day hearing on divestiture.

There was also extensive discovery.  Not considering for the moment discovery concerning solely JELD-WEN's affirmative defense of unclean hands, 25 fact and expert witnesses were deposed, some multiple times on multiple days.  Over 500,000 documents, consisting of more than 1.4 million pages, were produced by the parties.  This was on top of interrogatories, third-party subpoenas, and related motions.

Simply put, prosecuting Steves' claims required a massive investment of time and effort. Indeed, there is ample reason to believe JELD-WEN's counsel spent a comparable number of hours.  Based on the number of attorneys JELD-WEN had at hearings and at trial, JELD-WEN's team appears to have staffed the case with a comparable number of attorneys who undoubtedly

worked every bit as hard as Steves' counsel.  *Rambus*, 155 F. Supp. 2d at 687–88 (relying on fact that the amount of plaintiff's fees and expenses are comparable to defendant's as evidence of reasonableness of plaintiff's fee application); *Dreher v. Experian Info. Solutions, Inc.*, No. 3:11cv624, 2016 U.S. Dist. LEXIS 97640 at * 6–7 (E.D. Va. July 26, 2016) ("One way to judge the legitimacy of the plaintiff's fees is to look at the defendant's fees.  By viewing the work done by both parties, the Court can better judge … how much time the lawyers should have devoted to particular assignments, and how many particular undertakings the parties had to do.  In addition, the billings will show what level of competence (reflected in higher fees by more senior attorneys) is appropriate for the various tasks in the case.").

### (d)  JELD-WEN Aggressively Litigated This Case

JELD-WEN's insistence on fully litigating every aspect of this case greatly magnified the time and effort required by Steves' counsel.  Although JELD-WEN undoubtedly had that prerogative, it cannot now complain that Steves "spent too much" on the case.  As this Court observed in *Saleh v. Moore*, 95 F. Supp. 2d 555, 574 (E.D. Va. 2000):  "The Defendants, of course, were entitled to mount a full scale defense if they were so advised, but where, as here, a defense of that ilk is unsuccessful, the Defendants must pay for the fees reasonably incurred by their adversaries in meeting the defense."

Like the defendant in *Rambus*, JELD-WEN litigated "to the extreme virtually every issue in the case—thereby demonstrating the significance of the case to [JELD-WEN] and, at the same time, making the litigation of the case particularly expensive to [Steves]." *Rambus*, 155 F. Supp. 2d at 688.  *Accord*, *Mahani*, 935 A.2d at 248 (holding that in determining reasonable fee, trial court may consider that defendant's litigation strategy was responsible for "inflating [the prevailing plaintiff's] fees and other expenses").

JELD-WEN filed motion after motion:    In the year between March 2017 and February 2018, JELD-WEN filed on average more than 2 motions per month.   And JELD-WEN often overreached, requiring even more briefing to address its many unwarranted positions.  *See, e.g.,* Dec. 18, 2017 Hr'g Tr. at 33:16–17 ("[T]his is an instance when the motion overreaches substantially….").

JELD-WEN's litigation strategy encompassed legal and factual disputes both small and large that inevitably multiplied the proceedings and enlarged Steves' fees.  To give just four ways in which JELD-WEN's litigiousness drove up Steves' fees:

- JELD-WEN's witnesses were often evasive in depositions, which protracted the depositions and required Steves to incur additional fees to prove matters the witnesses should have admitted.  The evasive deposition testimony of JELD-WEN's former CEO Kirk Hachigian, who was the architect of JELD-WEN's anticompetitive scheme, is a prime example.

- JELD-WEN pursued pointless discovery.  The Court will recall in this regard the deposition of Timothy Pack of Kronospan.  JELD-WEN took this deposition and insisted on presenting his testimony at trial over Steves' objections, only for the Court to instruct the jury to disregard the testimony as pointless.

- JELD-WEN took inconsistent positions.  At trial, JELD-WEN maintained Steves could obtain an adequate supply of door skins overseas, forcing Steves to incur considerable fees marshalling evidence against that flimsy claim.  But later, in connection with the divestiture proceedings when the question became the sufficiency of JELD-WEN's access to doorskins in a post-divestiture market, JELD-WEN reversed course and contended that the poor quality of foreign-made door skins makes them unacceptable.  Considerable fees could have been avoided litigating this issue if JELD-WEN had chosen one story and stuck to it.

12

- JELD-WEN raised defenses, such as its efficiencies defense, that the Court held JELD-WEN was just throwing up against the wall without adequate evidentiary support.

Indeed, the breadth of JELD-WEN's litigiousness on every issue no matter how tangential bespeaks a deliberate strategy to inflate Steves' legal spend, in furtherance of JELD-WEN's deliberate business strategy of putting Steves out of business.

The hours underlying Steves' request—both the total hours and their distribution among senior and junior lawyers—are thus in large measure a consequence of JELD-WEN's litigation strategy. As your Honor wrote in *Dupont*: "the aggressive and contentious tactics adopted by [defendant] in defending this case made it fully appropriate, if not necessary, that [plaintiff] rely on experienced lawyers in the discovery phase, in the motions practice, in the pretrial phase, and at trial. That is because seasoned lawyers have more experience dealing with difficult problems and contentious adversaries, and generally are better equipped to adequately represent the client's interest in such circumstances." *Dupont*, 2014 U.S. Dist. LEXIS 23901 at *18.

### (e)     Steves' Attempts To Settle This Case Were Rebuffed

Steves made every effort to resolve this lawsuit and avoid fees. Starting in February 2017, just as discovery in the case was ramping up, and continuing into November 2018, even after Steves had won the jury verdict and the Court ordered divestiture, the parties had multiple mediation conferences (telephonic or in-person) supervised by Magistrate Judge David Novak, plus two additional days in direct negotiations, to no avail.

JELD-WEN did not have to settle and was within its rights to insist on Steves' proving its case. But having elected that course of action and lost, JELD-WEN cannot complain about the amount of work Steves' counsel had to do. *Sheppard v. Riverview Nursing Ctr., Inc.*, 88 F.3d 1332, 1337 (4th Cir. 1996) (holding that a court properly may consider a party's "rejection of a settlement offer as one factor affecting" reasonableness of fee request); *Coward v. Robinson*, No.

1:10cv147, 2017 U.S. Dist. LEXIS 186414 at *8–9 (E.D. Va. Nov. 9, 2017) (considering defendants' rejection of multiple settlement offers as justification for number of hours plaintiff's counsel expended on case, stating: "Defendants' choice to repeatedly rebuff settlement offers necessarily increased the time spent litigating these issues.").

### (f)      The Issues At Stake Were Enormous

The stakes in this case necessitated a full out effort by Steves.  Nothing short of Steves' very survival was on the line. Losing the antitrust claim would have sounded the death knell for this 150-year-old business that employs over a thousand people. The Court's divestiture order previously recognized these high stakes in concluding that Steves faced irreparable harm as a result of JELD-WEN's anticompetitive acquisition of CMI. Steves also sought significant damages to compensate it for the harms flowing from JELD-WEN's anticompetitive acquisition and from JELD-WEN's breaches of its long-term supply agreement with Steves.  Those stakes necessitated a full out effort by Steves.

Turning to the results obtained, Steves achieved complete success. Steves was awarded millions in damages.  Even more importantly, Steves won an order of divestiture designed to restore competition in the market for interior molded doorskins, not only for the benefit of Steves, but also for other interior molded door companies and the public at large.  Steves' total victory would not have been possible without an all-out effort.

### (g)      The Questions Presented Were Novel And Difficult

This case is one of only a handful of cases ever filed in which a private party challenged a consummated merger under the Clayton Act, and it is one of the only cases of this kind, so far as counsel are aware, to go to trial and be resolved by a jury.  JELD-WEN itself repeatedly described the final result as "unprecedented."  Hr'g Tr. at 106:12 (Aug. 2, 2019); Hr'g Tr. at 249:12, 326:15 (Aug. 3, 2019).  In 1990, in *California v. American Stores Co.*, 495 U.S. 271 (1990), the Supreme

Court held that divestiture was available as a remedy to a private plaintiff.  In the nearly three decades since *American Stores*, Steves is the first private plaintiff to actually win that remedy.

Achieving that result required counsel and the Court to grapple with numerous novel questions, including the standard for divestiture in a private action, the effect of laches on a request for divestiture, and how to structure a divestiture.  The parties, the Court, and the jury were also required to address difficult legal and economic questions about the effect on competition of the JELD-WEN/CMI merger; the effect of the merger on JELD-WEN's pricing; the effect of the merger on the incentives and conduct of Masonite, JELD-WEN's sole remaining competitor in the doorskins market; barriers to entry in a technical manufacturing process; the availability of foreign suppliers; the purported efficiencies created by the merger; and many, many other issues.

### 2.      Steves' Request Reflects Reasonable Rates

Just as the hours underlying Steves' request are reasonable, the requested rates are reasonable, too.  An attorney's rates are "reasonable" if they comport with the "prevailing market rates in the relevant community for the type of work" performed.  *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).  Market rates are "what attorneys earn from paying clients for similar services in similar circumstances." *Robinson*, 560 F.3d at 244 244; *JP v. County Sch. Bd*, 641 F. Supp. 2d 499, 512-13 (E.D. Va. 2009).

In making that determination, "it is not the function of judges in fee litigation to determine the equivalent of the medieval just price.  It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992).  As the Supreme Court has decreed, the prevailing party should be "compensated at the rate that the attorney would receive in cases not governed by the federal fee-shifting statutes." *Perdue*, 559 U.S. at 554-55.  In other words, the

fee award must "measure the attorney's true market value." *Page v. Virginia State Bd. of Elections,* No. 3:13-CV-678, 2015 U.S. Dist. LEXIS 180310, at *14 (E.D. Va. Mar. 11, 2015).

The rates underlying Steves' request meet that standard. They comport with prevailing market rates for antitrust and other complex commercial litigation involving tens or hundreds of millions of dollars, as the following considerations demonstrate.

### (a)   The Requested Rates Were Actually Paid By Steves And Other Clients

The declarations of Messrs. Powell, Pomerantz, and Pipkin attest that the rates for which Steves seeks recovery are the actual rates billed to, and paid by, Steves. Powell Dec. ¶ 27; Pomerantz Dec. ¶ 29; Pipkin Dec. ¶ 15. These rates also are rates Hunton, Munger, and Pipkin Law actually bill and collect from other clients in complex, high stakes cases. Powell Dec. ¶ 28; Pomerantz Dec. ¶ 30; Pipkin Dec. ¶ 15.

The fact that Steves actually paid Hunton's, Pipkin Law's, and Munger's rates—and that other clients also pay these rates—is compelling evidence that these rates are the market rates for similar litigation in similar circumstances. As the Fourth Circuit has held, "market rates may be proved by the rate which clients normally and willingly pay the petitioning attorneys." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994). "[S]pecific evidence of counsel's actual billing practice or other evidence of the actual rates which counsel can command in the market," the Fourth Circuit explains, may be used to establish the "prevailing market rate." *Spell*, 824 F.2d at 1402. This evidence "may include evidence of what the plaintiff's attorney actually charged his client." *Depaoli v. Vacation Sales Assocs., L.L.C.*, 489 F.3d 615, 622 (4th Cir. 2007). *See also Reiter v. Metro. Transp. Auth. of New York*, Case No. 01 Civ. 2762, 2004 WL 2072369, at *5 (S.D.N.Y. Sept. 10, 2004) ("[A]s a logical matter, the amount actually paid to counsel by paying clients is compelling evidence of a reasonable market rate.").

### (b)     The Requested Rates Comport With Rates Charged In Other Highly-Complex Commercial Litigation

The rates charged by Steves' counsel are in line with rates charged by attorneys in other complex commercial lawsuits in this Court, as evidenced by fee applications the Court has approved in those cases. *E. Associated Coal Corp. v. Dir., Office of Workers' Comp. Programs*, 724 F.3d 561, 572 (4th Cir. 2013) (holding that prior fee awards in "comparable" or "similar" cases constitute another source of prevailing market rates).

The rates for attorneys at Hunton and Pipkin Law range between $475 and $750 for partners with 25 to 40 years of experience. The range for non-partners is between $270 and $650, depending on their years of experience. That is in line with rates this Court has approved for other complex commercial cases. Six years ago, this Court approved a $695 rate for partners and a $310 average rate for associates in complex commercial litigation. *SunTrust Mortg. v. AIG United Guar. Corp.*, 933 F. Supp. 2d 762 (E.D. Va. 2013). Four years ago, this District approved in an intellectual property case hourly rates of $600 for a partner, $400 for an associate, and $250 for a paralegal. *Two Men & A Truck/Int'l Inc. v. A Mover, Inc.*, 128 F. Supp. 3d 919, 927 (E.D. Va. 2015); *see also Taylor v. Republic Servs.*, No. 1:12cv00523, 2014 U.S. Dist. LEXIS 11086 (E.D. Va. Jan. 29, 2014) ($600/hour—29 years experience); *Vienna Metro LLC v. Pulte Home Corp.*, 1:10cv00502, 2011 U.S. Dist. LEXIS 158648 (E.D. Va. Aug. 24, 2011) (finding in 2011 that reasonable rates include $520 to $770/hour for lawyers with 11 to 19 years of experience).

Munger's rates are higher than Hunton's and Pipkin Law's rates. But its rates are nonetheless market rates for an extraordinarily complex case of this kind. In addition to the fact Steves agreed to pay those rates, comparable rates have been charged, and approved, in complex bankruptcy proceedings in this District. Munger's rates in particular have been billed and approved in those proceedings. *E.g, In re Toys "R" US, Inc.*, Case No. 17-34665, ECF Doc. 6068

(E.D. Va. Bankr. Dec. 27, 2018) (Fourth Interim Fee Application of Munger Tolles & Olson LLP) (partner rates between $900 and $1,300; associate rate of $635); *id.*, ECF Doc. 6316 (Jan. 29, 2019) (Agreed Order Authorizing Payment on Interim Basis of Certain Professional Fees); *In re Patriot Coal Corp.*, Case No. 15-32450, ECF Doc. 2032 (E.D. Va. Bankr. Dec. 28, 2015) (Second Interim and Final Fee Application of Kirkland & Ellis LLP) (partner rates between $895 and $1,325; associate rates between $480 and $845); *id.*, ECF Doc. 2126 (Jan. 29, 2916) (Order Granting Second Interim and Final Fee Application of Kirkland & Ellis LLP). *See also United States ex rel. Vuyyuru v. Jadhav*, 2007 U.S. Dist. LEXIS 63014 at *6–7 (E.D. Va. Aug. 27, 2007) (citing fees approved in bankruptcy proceeding before this Court as evidence of prevailing rates).

So although Munger's rates are higher than Hunton's and Pipkin Law's, they are in line with prevailing rates in this District, including Richmond, for highly complex commercial cases involving significant sums and high stakes. As the Court has recognized: "High-end rates may be justified for counsel experienced in the type of litigation at issue because 'their experience and skill ... result[s] in economies of time [due to] their lack of need for extensive background legal research.'" *Page*, 2015 U.S. Dist. LEXIS 180310 at * 13 (quoting *Buffington v. Balt. Cnty., Md.*, 913 F.2d 113, 130 (4th Cir. 1990)).

Indeed, Munger's rates would appear to be in line with those of JELD-WEN's counsel, Latham & Watkins. Latham's rates are generally comparable to Munger's based on fees applications Latham has filed in other cases. *E.g, Norton v. City of Springfield*, 281 F. Supp. 3d 743, 747–48 (C.D. Ill. 2017) (in case pending from 2014 to 2016, Latham partner billed at rates between $975 and $1,075; associates billed at rates between $495 and $905); *Xu v. Yamanaka*, Case No. 13CV3240, 2014 WL 3840105, at *4 (N.D. Cal. Aug. 1, 2014) (in case pending from 2013 to 2014, Latham partners billed at rates between $895 and $1,110; associates billed at rates

18

between $465 and $725).  The fees JELD-WEN sought in connection with just one motion—

Steves' inadvertent breach of the protective order, for which JELD-WEN sought $232,357—

suggests Latham has been charging comparable rates here as well.  *See* Exhibit 9 to JELD-WEN,

INC.'s Memorandum in Support of Its Motion for Sanctions for Steves and Sons, Inc.'s Violation

of the Protective Order (ECF 315–9).

### (c)   Munger's Rates Are Reasonable Even If Viewed As Out-Of-Jurisdiction Rates

To the extent the Court determines that Munger's rates are above the prevailing market

rates in this District, those rates are nonetheless reasonable in the context of this specific case.  As

the Fourth Circuit has noted "[t]he community in which [the] court [sits] is the appropriate *starting*

*point* for selecting the proper rate."  *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4th Cir.

1988) (emphasis added).  So while "[t]he relevant market for determining the prevailing rate is

*ordinarily* the community in which the court where the action is prosecuted sits," *Rum Creek Coal*

*Sales, Inc v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (emphasis added), a court is not limited

to that focus.  It may consider rates in other communities "where it is *reasonable* to retain attorneys

from other communities . . . ."  *Id*. (emphasis added).

The Fourth Circuit has "identified a two-step test for tribunals to utilize" in determining

whether to award out-of-jurisdiction rates.  "First, tribunals should ask if extrajurisdictional

counsel rendered services that were truly available in the visited market."  *Newport News*

*Shipbuilding and Dry Dock Co. v. Holiday*, 591 F.3d 219, 229 (4th Cir. 2009).  "Second, tribunals

should ask if the party that hired [an] extrajurisdictional attorney chose reasonably, or whether

they chose an unnecessarily expensive attorney."  *Id.*

As described above and as the Court knows first-hand, this case involved particularly

difficult and unprecedented antitrust and economic issues, many of which had to be distilled for a

jury.  The case also involved a very well-heeled opponent that could—and did—bring staggering and impressive firepower to bear on this case.  Hunton has only one antitrust litigator in Richmond.  To provide the "first chair" experience and bench strength to handle and take the lead trying the core antitrust issues in case, therefore, Steves' lead counsel concluded in his professional judgment that additional lawyers with substantial antitrust experience were necessary.  Steves' selection of Glenn Pomerantz and Munger was reasonable, given Mr. Pomerantz's and his firm's extensive experience in this space.  Powell Dec. ¶ 26; Wellford Dec. ¶¶ 11–19; Powell Dec. ¶¶ 17–19.

JELD-WEN's own litigation decisions confirm the reasonableness of Steves' decision to retain Munger. Soon after this case was filed, and before Steves retained Munger, JELD-WEN retained Latham & Watkins.  More recently, JELD-WEN has retained Kirkland & Ellis to defend it in a class action antitrust lawsuit in this District that accuses JELD-WEN of conspiring with Masonite to fix prices in the downstream market for doors.  JELD-WEN cannot credibly argue that Steves could and should have staffed this case exclusively with local antitrust counsel when JELD-WEN itself has done exactly what Steves has done.

### (d)     The *Johnson*/Rule 1.5 Factors Support The Requested Rates

The pertinent *Johnson* and Delaware Rule 1.5 factors further buttress the reasonableness of Steves' requested rates.

- Skill required to perform the legal service properly.  This case demanded lawyers with extensive antitrust and trial experience in complex commercial cases.  That type of experience is generally found in firms comparable to Hunton and Munger.  A party litigating such a claim should expect to pay rates comparable to those charged by these firms.

- **Preclusion of employment by the attorney due to the acceptance of the case**. The amount of work required in the case often precluded the core attorneys from agreeing to work on other matters. This counsels in favor of compensating Steves' counsel for their full rates.

- **Customary fee**. As discussed, the rates used to compute Steves' lodestar are rates comparable to what each firm customarily charges for complex litigation. This supports the reasonableness of using those rates.

- **Whether the fee is fixed or contingent**. Steves retained its firms to bill on an hourly basis without a fixed fee or cap. This accordingly supports using the hourly rates Steves paid.

- **Experience, reputation, and ability of the attorneys**. The partners in charge of this litigation for Steves are experienced, accomplished attorneys with substantial trial experience. Attorneys of their stature command rates in-line with those they charge.

- **Undesirability of the case**. This lawsuit is not "undesirable." This factor does not bear one way or the other on the reasonableness of the requested rates.

- **Nature and length of the professional relationship with the client**. Pipkin Law has a longstanding relationship with Steves, having represented Steves for many years and serving as the company's *de facto* general outside counsel. Pipkin Dec. ¶¶ 2, 16. Hunton has also represented Steves in various matters for a number of years. This supports the reasonableness of those firms' rates.

- **Awards in similar cases**. As discussed, the hourly rates requested by Steves are in-line with rates awarded in other complex commercial cases. While those rates are higher than the Court has awarded in different, less complex and labor intensive cases, the Court has recognized there is no single market rate for all litigation. The reasonableness of rates is based on prevailing rates in

"comparable" cases, and it is inappropriate to rely on rates from cases that are not comparable to the one in which the Court must make a fee award.

### 3. No Downward Adjustment Is Appropriate

No downward adjustment to Steves' lodestar is appropriate for any reason. Certainly no downward adjustment for lack of success is warranted. Steves' victory was total. The jury awarded it several tens of millions of dollars, even before trebling. Then Steves secured a divestiture order that not only will save the company but will also restore competition to the doorskins market. Steves "achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *McAfee*, 738 F.3d at 92.

### D. Steves' Attorneys' Fees Related To JELD-WEN's Unclean Hands Defense

In addition to the fees already identified, Steves is entitled to recover $5,441,845.75 in attorneys' fees incurred to overcome JELD-WEN's affirmative defense of unclean hands, which was based on Steves' alleged misappropriation of JELD-WEN's trade secrets. These fees are delineated separately in the declarations of Messrs. Powell, Pomerantz, and Pipkin. Nearly all the fees ($5,002,591.25) were incurred by Hunton, with lesser amounts ($69,344.50 and $369,910) by Munger and Pipkin Law, respectively. Powell Dec. ¶ 15 & Ex. D-2; Pomerantz Dec. ¶ 14 & Ex. E-2; Pipkin Dec.¶ 11 & Ex. F-2.

As noted above, a prevailing plaintiff is entitled to a mandatory award of reasonable attorneys' fees under the Clayton Act and that award is based on the "number of hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 433. Properly included in that number are the hours expended to overcome the defendant's affirmative defenses. As has long been recognized, an "affirmative defense [must] be overcome for plaintiff to succeed on its claim . . . and thus should be considered in making the fee award." *Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478, 483 (S.D.N.Y. 1970) (awarding fees in a Clayton Act case). *See also Kahle v. Leonard*, CIV 04-

5024, 2008 WL 2776494, at *3 (D.S.D. July 14, 2008), *vacated in part on other grounds*, 563 F.3d

736 (8th Cir. 2009) (hours related to affirmative defense were directly and reasonably incurred in

proving the plaintiff's claims).

Admittedly, the fees incurred to defend against JELD-WEN's affirmative defense also

benefitted Steves in its defense of JELD-WEN's counterclaims.  The "dual" usefulness of that

work, however, does not diminish Steves' entitlement to recoup fees for that work.  Courts have

articulated a simple rule:  "[Plaintiff] would be entitled to attorneys' fees for activities that were

necessary to *both* defend against [Defendant's] counterclaim and to litigate [Plaintiff's] complaint.

However, [Plaintiff] is not entitled to fees for those activities that were only undertaken to defend

against the counterclaim." *Toshiba Am. Info. Sys., Inc. v. New England Tech., Inc*., No. SACV 05-

00955-CJC, 2007 WL 8089815, at *5 (C.D. Cal. Nov. 14, 2007); *cf. Welton v. Osborn*, 124 F.

Supp. 2d 1114, 1120-21 (S.D. Ohio 2000) (addressing "whether the Court may award full

attorney's fees herein for work that jointly benefitted [plaintiff] in the present case and [a third

party] in [the third party's] own lawsuit against the Defendants," the court allowed recovery to

[plaintiff] without division, "even if his counsel's work jointly benefitted … [the third party] in

another lawsuit.").

That rule is consistent with the broader principle that fees incurred by a prevailing party

are recoverable if they relate to a successful claim, period—regardless of whether the fees also

relate to an unsuccessful claim.  No segregation of fees is required unless the work related solely

to the unsuccessful claims.  "In other words, the district court must award fees for the work that

contributed to a successful result as if the successful claims were the only ones litigated." *Padgett*

*v. Loventhal*, 706 F.3d 1205, 1209 (9th Cir. 2013) (citation omitted); *see, e.g., Ustrak v. Fairman*,

851 F.2d 983, 988 (7th Cir. 1988) (counsel's time spent preparing for trial and trying plaintiff's

case was necessary to the one successful claim as well as to the five unsuccessful ones; therefore the fees attributable to those hours were recoverable).

To be sure, Steves maintained throughout the proceedings, and still does, that the affirmative defense of unclean hands is irrelevant to JELD-WEN's liability, Steves' antitrust remedy, and Steves' contract claims. However, JELD-WEN insisted time and time again that it was a defense, first to liability and then divestiture.[4] Indeed, as late as June 21, 2018, JELD-WEN filed a substantive brief arguing that "Steves comes to this Court with unclean hands that should bar any request for equitable relief, and particularly the extraordinary and unprecedented equitable relief of divestiture." JW Reply at 1, ECF No. 1674. It was not until August 30, 2018—after the divestiture hearing and after the parties had filed findings of fact and conclusions of law—that the Court issued an opinion rejecting JELD-WEN's argument that unclean hands precluded divestiture. Mem. Op. at 1-2, 12, ECF No. 1759.

After raising a defense of unclean hands and doggedly pursuing that defense, JELD-WEN cannot now complain that Steves prepared to meet that defense on its legal and factual merits. That preparation required Steves, among other tasks, to establish what information JELD-WEN claimed were the misappropriated trade secrets, to conduct discovery regarding whether that

_____

[4] *See, e.g.,* ECF No. 128 at 2 (JELD-WEN arguing against severance of its trade secrets counterclaims because "unclean hands can be a proper defense in a case like this one"); ECF No. 248 at 28 (JELD-WEN, in its answer, asserts unclean hands as an affirmative defense to Steves' claims); ECF No. 776 at 1-2 (prior to antitrust liability trial, Court excludes evidence on "how the information used by [Steves] was obtained…."); ECF No. 1286 at 34 (JELD-WEN argues, in advance of the trade secret trial, that Steves' theft of JELD-WEN's trade secrets rendered Steves "ineligible for divestiture.") The question of unclean hands was not resolved until August 2018, when the Court determined that "unclean hands" were irrelevant to Steves' request for the equitable remedy of divestiture. ECF No. 1759 at 1–12.

information qualified as protected trade secrets, and to develop expert testimony to rebut that of JELD-WEN's expert.

Indeed, Steves ultimately overcame JELD-WEN's defense on both the law and the facts. On the law, after provisionally receiving JELD-WEN's purported evidence of unclean hands, the Court held that that such evidence was irrelevant. Mem. Op. at 1-2, 12, ECF No. 1759. On the facts, the Court held that "the evidence presented at the Remedies Hearing and the trade secrets trial does not show a connection between the misappropriated trade secrets and any actual efforts to build a doorskin plant." *Id.* at 12. Steves is entitled to reimbursement of its fees for that work because it is entitled to its fees to overcome JELD-WEN's affirmative defense.

Steves has nonetheless segregated these fees in anticipation that JELD-WEN will object to Steve's entitlement to this portion of its fees, contending the work represented by those fees also was relevant to JELD-WEN's trade secrets counterclaims and that Steves is not entitled to fees under those counterclaims. But as explained above, the happenstance that JELD-WEN filed counterclaims does not exempt JELD-WEN from operation of normal fee-shifting principles, which allow Steves to recover fees it reasonably incurred in responding to JELD-WEN's affirmative defense. Regardless of whether JELD-WEN had elected to pursue counterclaims, Steves would have had to meet the affirmative defense. It would create perverse incentives to hold that a defendant's decision to initiate more litigation—here, JELD-WEN's choice to bring counterclaims—absolves it of responsibility for fees the plaintiff incurs in successfully prosecuting its case.

### E. Reasonable Expenses Incurred By Steves' Counsel

In addition to the fees discussed above, Steves incurred considerable expenses. That includes over $4 million in expert fees on antitrust issues to establish JELD-WEN's violations of

the Clayton Act. Steves understands the law does not allow it to recover those expert expenses.

However, the Court can partially compensate Steves by awarding the following expenses:[5]

| Expense | Amount |
|---|---|
| Paralegal | $2,067,789.95 |
| Cognicion | $215,292.50 |
| Transperfect | $26,311.93 |
| RLM | $198,345.32 |
| IT Technology | $119,487.50 |
| Travel | $57,594.98 |
| Messengers/Mail/FedEx | $25,162.99 |
| Overtime | $45,614.25 |
| Consulting Law Firms | $368,475.17 |

Those expenses are compensable. Reasonable expenses that counsel incurs to perform legal services are compensable under a fee-shifting statute and contract. Those expenses are compensable as part of the fee award even if they are not taxable costs. *E.g.*, *Rambus*, 155 F. Supp. 2d at 689 n. 14 (holding the following types of expenses as "appropriately requested" as part of fee application: "travel and lodging expenses, overtime secretarial support, law clerk and legal assistant time, facsimile expenses, computer database legal research charges, long distance telephone charges, Fed Express charges, messenger [services], trial supply expenses and postage"); *Superior Form*, 881 F. Supp, at 1029 ("In determining an award of attorney's fees, 'litigation expenses such as supplemental secretarial costs, copying, telephone costs and necessary travel are integrally related to the work of an attorney ….'" and thus are compensable).

---

[5] Steves filed a bill of costs seeking an additional $1,747,188 in costs. To the extent any of those costs are disallowed as non-taxable, Steves seeks to recover them as part of this application.

### 1.      Paralegal expenses

Paralegal expenses are compensable as part of an attorney's fee award. *E.g., DuPont,* 2014 U.S. Dist. LEXIS at *14–16 (awarding $2,250,223 for paralegal costs); *Superior Form*, 881 F. Supp. at 1025–26 (E.D. Va. 1994) ("As long as it is the practice of the attorney and the community to bill the client for the hourly work of employees such as law clerks and paralegals, then reasonable hourly charges to the client for those persons are properly included as part of the attorney's fees award.").

The amount of paralegal expenses that Steves seeks is reasonable.  Steves seeks compensation for a total of 7,496.50 paralegal hours.  Exhibits A & B.  Those hours are itemized in the paralegals' contemporaneous time entries provided with the declarations of Lewis Powell and Glenn Pomerantz.  As they explain, the work those paralegals did was invaluable, and the number of their hours is reasonable.  The paralegals assisted in nearly every aspect of the case, including without limitation organizing the documents, coordinating witness appearances at trial, and preparing deposition and trial evidence notebooks, to name only a few.  Their work before and during trial was a model of organization and efficiency and contributed significantly to the effective and efficient handling of documents and depositions at trial.  Powell Dec. ¶¶ 33–35; Pomerantz Dec.¶¶ 35–37.

The rates charged for the paralegals are reasonable.  These are standard rates charged to clients, and in-line with paralegal rates approved in other fee applications.  Powell Dec. ¶ 36; Pomerantz Dec. ¶¶ 38–39.

### 2.      Cognicion expenses

Cognicion is Hunton's affiliated document management company.  Cognicion supplied personnel who, with oversight by Hunton lawyers, reviewed Steves' documents for relevance, confidentiality, and privilege to respond to JELD-WEN's discovery requests, and to identify

documents from both Steves' and JELD-WEN's documents to support depositions and motions. The Cognicion reviewers were either licensed attorneys or law school graduates who were not yet licensed. Cognicion charged and was paid $215,292.50 for these services. Powell Dec. ¶ 39.

The fees for Cognicion's work are reasonable. It is common now in cases involving substantial document productions for law firms to use contractors like Cognicion to review documents, in lieu of having associates review the documents. This practice saves the client money, because review by such contractors generally costs clients substantially less than a review conducted wholly by associates. That was the case here. Powell Dec. ¶ 40. *See E.I. DuPont de Nemours & Co. v. Kolon Indus.*, No. 3:09cv058, 2013 U.S. Dist. LEXIS 16295 at * 20-21 (E.D. Va. Feb. 6, 2013) (awarding as part of expenses fees paid to company that provided contract attorneys to review and analyze document produced to and from prevailing party).

### 3. Transperfect expenses

Transperfect performed forensic collections, data processing, hosting, and production of documents in response to discovery requests. They also ran searches for Steves' counsel for various reporting, and assisted with maintenance and ad hoc requests pertaining to the document database. They also hosted the data from JW's productions and the productions of third parties. The hosting fees alone for non-Steves documents was $26,311.93. Powell Dec. ¶ 41.

### 4. RLM expenses

RLM was a contractor who helped prepare graphics and other demonstrative exhibits used at trial. It charged $198,345.32. These expenses are reasonable and compensable. Powell Dec. ¶ 42.

### 5. IT technology expenses

Ken Sapp was the Hunton "hot seat" operator at trial, the technologist who operated the audiovisual equipment that presented exhibits and videotape deposition excerpts at trial. He charged $119,487.50 for his services.  Powell Dec. ¶ 43.

### 6. Travel expenses

Steves' counsel incurred necessary travel expenses (air fare, lodging, meals) to attend the depositions taken in this case outside of Virginia.  Travel expenses of this kind are compensable. *E.g., Trimper v. City of Norfolk*, 58 F.3d 68, 75 (4th Cir. 1995); *Page*, 2015 U.S. Dist. LEXIS 180310 at *48; *Saleh*, 95 F. Supp. 2d at 584.

The amount of travel expenses that Steves seeks to recover—$57,594.98—is reasonable. The depositions were reasonably necessary.  The deponents had knowledge relevant to the antitrust and contract claims, and JELD-WEN, in fact, noticed many of them.  The depositions were in outside of Virginia, necessitating air travel and overnight stays by Steves' counsel.  With only a handful of exceptions for key fact witnesses and experts, only one Steves attorney attended each deposition, which kept down travel expenses.  No Steves paralegal attended any of the depositions. Powell Dec. ¶ 45; Pomerantz Dec. ¶ 42.

### 7. Messengers/Mail/Federal Express

Steves incurred expenses in the amount of $25,162.99 for mail, messengers and overnight delivery services in connection with this lawsuit.  Pomerantz Dec. ¶ 43.  These expenses are reasonable and compensable.  *Page*, 2015 U.S. Dist. LEXIS 180310 at *48 ("This Court has recently allowed compensation for Federal Express and messenger service.") (*citing Taylor v. Republic Servs., Inc.*, No. 1:12cv00523, 2014 U.S. Dist. LEXIS 11086 (E.D. Va. Jan. 29, 2014)).

### 8. Overtime

Steves incurred overtime expenses in the amount of $45,614.25. These expenses were for overtime paid to Hunton and Munger secretarial staff. Steves was billed for and paid these expenses. Powell Dec. ¶ 46; Pomerantz Dec. ¶ 44. Those expenses are compensable as part of the fee award even if they are not taxable costs. *Rambus*, 155 F. Supp. 2d at 689 n.14 (recognizing "overtime secretarial support" as recoverable expense); *Superior Form*, 881 F. Supp. at 1029 (holding "supplemental secretarial costs" as a recoverable expense in fee award).

### 9. Consulting Law Firms

Steves' counsel consulted on a discrete basis with other counsel regarding certain issues in the cases. Those fees total $368,475.17, as set forth in Exhibit D-8 hereto. These additional attorneys' fees are recoverable. *Emplrs Council on Flexible Comp. v. Feltman*, No. 1:08cv371, 2010 U.S. Dist. LEXIS 2744 at *9-11 (E.D. Va. Jan. 13, 2010) (awarding litigation consulting fees paid as part of fee award), *rev'd in part on other grounds*, 424 Fed. App'x 228 (4th Cir. 2011).

## F. Fees To Prepare Fee Application

A prevailing party is entitled to recover fees incurred to prepare a fee application. *Daly v. Hill*, 790 F.2d 1071, 1080 (4th Cir. 1986). The Court accordingly should award Steves its fees incurred in connection with this application. Because those fees will not be known until the briefing on the application is complete, Steves moves for leave to submit those fees upon the Court's decision whether to award fees.

## III. CONCLUSION

In those rare instances when a private party plaintiff successfully enforces our antitrust laws, especially in the face of fierce opposition, that party should recover its reasonable attorneys' fees and litigation expenses. This is such a case. Accordingly, and for the reasons set forth above, Steves respectfully prays that the Court grant its request.

Respectfully submitted,

**STEVES AND SONS, INC.**

By:  ___/s/Lewis F. Powell III_____
Lewis F. Powell III (VSB No. 18266)
Michael R. Shebelskie (VSB No. 27459)
John S. Martin (VSB No. 34618)
Maya M. Eckstein (VSB No. 41413)
R. Dennis Fairbanks (VSB No. 90435)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone:  (804) 788-8200
Facsimile:  (804) 788-8218
lpowell@HuntonAK.com
mshebelskie@HuntonAK.com
martinj@HuntonAK.com
meckstein@HuntonAK.com
dfairbanks@HuntonAK.com

Glenn D. Pomerantz (pro hac vice)
Ted Dane (pro hac vice)
Kyle W. Mach (pro hac vice)
Kuruvilla J. Olasa (pro hac vice)
Emily C. Curran-Huberty (pro hac vice)
MUNGER, TOLLES & OLSON LLP
350 S. Grand Avenue, 50th Floor
Los Angeles, CA 90071
Telephone:  (213) 683-9132
Facsimile:  (213) 683-5161

Marvin G. Pipkin (pro hac vice)
Kortney Kloppe-Orton (pro hac vice)
PIPKIN LAW LLP
10001 Reunion Place, Suite 6400
San Antonio, TX 78216
Telephone:  (210) 731-6495
Facsimile:  (210) 293-2139

*Attorneys for Steves and Sons, Inc.*