**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

STEVES AND SONS, INC.,

     Plaintiff,

v.                                              Civil Action No. 3:16-cv-545

JELD-WEN, INC.,

     Defendant.

### MEMORANDUM OPINION

This matter is before the Court on COUNTERCLAIM DEFENDANTS EDWARD AND SAM STEVES' MOTION TO ENJOIN JELD-WEN FROM RELITIGATING CLAIMS (ECF No. 1890) and COUNTERCLAIM DEFENDANTS [sic] JOHN PIERCE'S MOTION TO ENJOIN JELD-WEN FROM RELITIGATING CLAIMS (ECF No. 1892) (collectively, the "Injunction Motions"). For the following reasons, the Injunction Motions will be granted.

### BACKGROUND

The facts and the previous proceedings related to the counterclaims have been explained in detail in two previous opinions. See First Summary Judgment Opinion (ECF No. 1424); Second Summary Judgment Opinion (ECF No. 1581). Those opinions are incorporated by reference here. However, it is necessary to provide some of that background here as it is relevant to the Injunction Motions.

1

## A. The Virginia Action

Steves and Sons, LLC ("Steves") is an independent manufacturer of interior molded doors, and it relies primarily on JELD-WEN, Inc. ("JELD-WEN") to supply it with the doorskins needed to make the doors that Steves sells to retail stores. To that end, the parties entered into a long-term doorskin supply agreement in 2012 (the "Supply Agreement"). First Summary Judgment Opinion (ECF No. 1424) at 2.

In 2016, Steves filed an action against JELD-WEN in this Court (the "Virginia Action"), alleging a federal antitrust claim and breach of contract claims, among others. During the discovery phase of the Virginia Action, JELD-WEN sought leave to amend its answer and to add counterclaims against Steves based on documents that JELD-WEN had received from Steves during discovery. The documents suggested that Steves may have used JELD-WEN's confidential information and trade secrets—obtained by John Pierce ("Pierce") and John Ambruz ("Ambruz")—in furtherance of building an independent doorskin manufacturing plant (the "MDS Project") and to assist in resolving a dispute under the Supply Agreement.

In the counterclaims that it filed in this Court, JELD-WEN alleged, *inter alia*, that Steves had violated the Defend Trade Secrets Act (the "DTSA"), 18 U.S.C. § 1831 *et seq.*, and the Texas Uniform Trade Secrets Act (the "TUTSA"), Tex. Civ. Prac. & Rem. Code Ann. §§ 134A.001-134A.008, and that Steves had tortiously

2

interfered with Pierce's contract under Texas common law. JELD-WEN's Counterclaim Complaint (ECF No. 252) ¶¶ 41-63.[1] Steves was the only defendant named in JELD-WEN's counterclaims. However, Edward Steves and Sam Steves II (the "Steves Brothers") and Pierce were permitted to intervene as defendants to the counterclaims. At that time, the Steves Brothers and Pierce became full parties to the case even though the counterclaim complaint was never amended to specifically name them as defendants. Memorandum Opinion (ECF No. 1779) at 19 (citing Schneider v. Dumbarton

---

[1] In full, JELD-WEN's asserted proposed counterclaims were: FIRST COUNTERCLAIM FOR RELIEF, Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836; SECOND COUNTERCLAIM FOR RELIEF, Conspiracy to Violate Defend Trade Secrets Act, 18 U.S.C. § 1832(a)(5); THIRD COUNTERCLAIM FOR RELIEF, Violation of the Texas Uniform Trade Secret Act, Texas Civil Practice & Remedies Code Annotated §§ 134A.001-134A.008; FOURTH COUNTERCLAIM FOR RELIEF, Tortious Interference with Contract Under Texas Common Law, relating to Pierce's employment contract with JELD-WEN; FIFTH COUNTERCLAIM FOR RELIEF, Tortious Interference with Contract Under Texas Common Law, relating to Ambruz's employment contract with JELD-WEN; SIXTH COUNTERCLAIM FOR RELIEF, Breach of the Implied Covenant of Good Faith and Fair Dealing Under Delaware Law; and SEVENTH COUNTERCLAIM FOR RELIEF, Breach of Contract. Proposed Counterclaims (ECF No. 106) ¶¶ 41-78. On May 17, 2017, the Court granted JELD-WEN's request, and JELD-WEN filed the counterclaims. Counterclaim Complaint (ECF No. 252).

On September 13, 2017, the Court dismissed the Second, Sixth, and Seventh Counterclaims for failure to state a claim. Memorandum Opinion (ECF No. 353). The Court also dismissed the Fourth and Fifth Counterclaims in the First Summary Judgment Opinion, holding that those counterclaims were displaced by the Third Counterclaim under TUTSA's preemption provision, Tex. Civ. Prac. & Rem. Code § 134A.007(a). See First Summary Judgment Opinion (ECF No. 1424) at 33-44; see also Tex. Civ. Prac. & Rem. Code § 134A.007(a) (stating that the TUTSA generally "displaces conflicting tort, restitutionary, and other law of [Texas] providing civil remedies for misappropriation of a trade secret").

3

Developers, Inc., 767 F.2d 1007, 1017 (D.C. Cir. 1985); Ctr. for Envtl. Sci. Accuracy & Reliability v. Nat'l Park Serv., No. 114-cv-02063, 2016 WL 4524758, at *9 (E.D. Cal. Aug. 29, 2016)). The Steves Brothers and Pierce, as defendants, participated fully in the trial of JEL-WEN's counterclaims which were tried separately from, and after, the trial of Steves' antitrust and breach of contract claims against JELD-WEN.

The factual predicate for JELD-WEN's counterclaims was that Steves, through the Steves Brothers, had retained Pierce, a former JELD-WEN employee, as a consultant to provide Steves with certain information that would allow it to build its own doorskin manufacturing plant. That was an issue because JELD-WEN had informed Steves that the Supply Agreement would be terminated on September 10, 2021.[2] Pierce also was called upon to help Steves verify the accuracy of JELD-WEN's key input costs for doorskins that it manufactured and sold to Steves. Those input costs were the basis for the prices that JELD-WEN charged Steves for doorskins under the Supply Agreement, and JELD-WEN was required to provide the costs to Steves on an annual basis. Because JELD-WEN did not provide the details of the input costs as Steves thought JELD-WEN

_____

[2] JELD-WEN at one time took the view that the Supply Agreement would terminate on December 31, 2019, but it has since given up that argument to say that the Supply Agreement will terminate on September 10, 2021. See Memorandum Opinion (ECF No. 976) at 38-39.

4

was contractually obligated to do, Pierce also was retained to consult on the details of the input costs.

When Pierce worked at JELD-WEN, he entered into employment contracts with JELD-WEN reciting that Pierce would be exposed to certain information that JELD-WEN considered confidential and/or trade secrets. Under those contracts, Pierce could not disclose the confidential information or trade secrets to any third parties except as required by law even after he retired from JELD-WEN. When Steves later hired Pierce, he notified the Steves Brothers that the confidentiality agreement with JELD-WEN prevented him from disclosing JELD-WEN's trade secrets or confidential information.

Thereafter, Pierce disclosed to the Steves Brothers information that he had learned while employed at JELD-WEN that JELD-WEN alleged to be trade secrets. Pierce also spoke with various JELD-WEN employees, to secure information about current input costs and manufacturing procedures, processes, and details. He conveyed some or all of that information to Steves and the Steves Brothers. And, JELD-WEN alleged that the trade secrets disclosed by Pierce also were used by Ambruz when Steves was assessing the feasibility of building an independent doorskin manufacturing plant.

Seven months after filing the counterclaims in the Virginia Action, JELD-WEN filed an action in Texas state court (the "Texas

5

Action"), alleging several trade secrets claims and related claims against the Steves Brothers and Pierce based on the same underlying facts as those that comprised the basis of JELD-WEN's counterclaims in the Virginia Action. After receiving several adverse rulings in the Virginia Action (in the antitrust case and in the severed trade secrets case), and around a month after filing the Texas Action, JELD-WEN moved to voluntarily dismiss the counterclaims in the Virginia Action. Upon objection from Steves, the Court denied the motion, concluding that the trade secrets litigation had advanced so far that dismissal would prejudice the parties and that JELD-WEN had insufficiently explained the need for dismissal. ORDER (ECF No. 579); Memorandum Opinion (ECF No. 734). Afterward, the Texas court stayed that action pending the trial in the Virginia Action.

Steves' antitrust and contract claims were tried to a jury in January 2018. JELD-WEN's trade secret counterclaims were tried to a jury in May 2018.

The specific counterclaims tried to the jury were: (1) the First Counterclaim for Relief for a violation of the DTSA; and (2) the Third Counterclaim for Relief for a violation of the TUTSA. To prove a violation of the DTSA, JELD-WEN had to show by a preponderance of the evidence that: (1) JELD-WEN owned certain information that constitutes a trade secret; (2) Steves misappropriated the trade secret; (3) the trade secret was

6

misappropriated (in that it was acquired, disclosed, or used in the manner described in Jury Instruction No. 32[3]) on or after May 11, 2016; and (4) the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce. Trade Secret Jury Instrs. (ECF No. 1614) at Instr. Nos. 24, 32. To prove a violation of the TUTSA, JELD-WEN had to show by a preponderance of the evidence the same elements as required under the DTSA except that: (1) trade secrets under the Texas act need not be related to a product or service used in, or intended

---

[3] Jury Instruction No. 32 said,
JELD-WEN HAS THE BURDEN OF PROVING, BY A PREPONDERANCE OF THE EVIDENCE, THAT STEVES MISAPPROPRIATED THE TRADE SECRETS AT ISSUE IN THIS CASE. MISAPPROPRIATION MEANS:
> (A) ACQUISITION OF A TRADE SECRET OF ANOTHER BY A PERSON WHO KNOWS OR HAS REASON TO KNOW THAT THE TRADE SECRET WAS ACQUIRED BY IMPROPER MEANS; OR
> (B) DISCLOSURE OR USE OF A TRADE SECRET OF ANOTHER WITHOUT EXPRESS OR IMPLIED CONSENT—
>> (i) BY A PERSON WHO USED IMPROPER MEANS TO ACQUIRE KNOWLEDGE OF THE TRADE SECRET;
>> (ii) BY A PERSON WHO, AT THE TIME OF DISCLOSURE OR USE, KNEW OR HAD REASON TO KNOW THAT THE KNOWLEDGE OF THE TRADE SECRET WAS—
>>> (I) DERIVED FROM OR THROUGH A PERSON WHO HAD USED IMPROPER MEANS TO ACQUIRE THE TRADE SECRET;
>>> (II) ACQUIRED UNDER CIRCUMSTANCES GIVING RISE TO A DUTY TO MAINTAIN THE SECRECY OF THE TRADE SECRET OR LIMIT THE USE OF THE TRADE SECRET; OR
>>> (III) DERIVED FROM OR THROUGH A PERSON WHO OWED A DUTY TO THE PERSON SEEKING RELIEF TO MAINTAIN THE SECRECY OF THE TRADE SECRET OR LIMIT THE USE OF THE TRADE SECRET; OR
>> (iii) BY A PERSON WHO, BEFORE A MATERIAL CHANGE OF THE POSITION OF THE PERSON, KNEW OR HAD REASON TO KNOW THAT—
>>> (I) THE TRADE SECRET WAS A TRADE SECRET; AND
>>> (II) KNOWLEDGE OF THE TRADE SECRET HAD BEEN ACQUIRED BY ACCIDENT OR MISTAKE.

for use in, interstate or foreign commerce; and (2) the date of the alleged misappropriation (by acquisition, disclosure, or use) is not an element of the Texas claim, so JELD-WEN need not prove that the alleged misappropriation occurred on or after May 11, 2016. Id. at Instr. No. 40.

It is fair to say that the allegations in JELD-WEN's counterclaims and in the evidence presented at trial by JELD-WEN on the DTSA and TUTSA counterclaims in the Virginia Action focused almost entirely on the conduct of the Steves Brothers and Pierce. JELD-WEN's opening and closing arguments were largely focused on their conduct, as well. Indeed, without the evidence of the conduct of the Steves Brothers and Pierce, JELD-WEN's trade secrets counterclaims would not have been submitted to the jury in the Virginia Action.

Of the sixty-seven (67) pieces of information that JELD-WEN alleged were trade secrets, the jury found that only eight (8) were trade secrets, and it found that seven (7) of those trade secrets were misappropriated. See generally Jury Verdict (ECF No. 1609). The jury found that none of the trade secrets were misappropriated in a "willful and malicious" manner. Id. The jury awarded JELD-WEN $1.2 million as a reasonable royalty in compensatory damages. Id. The jury did not award any punitive damages, because of its finding that no misappropriation was willful and malicious. Id.

8

JELD-WEN then moved to enjoin Steves, the Steves Brothers, and Pierce—as well as other Steves' employees, officers, directors, and current or former agents—"from possessing, publishing, disclosing, or using in any form or for any purpose" the seven (7) trade secrets found by the jury to have been misappropriated and for other injunctive relief. [Proposed] Permanent Injunction Order (ECF No. 1632-1). However, the Court declined to grant the injunction, finding, *inter alia*, that JELD-WEN's own expert witness, John Jarosz, quite clearly established in the mind of a reasonable jury that an award of a reasonable royalty would allow Steves to use any information found to have been a misappropriated trade secret without restraint as to either time or circumstance. Memorandum Opinion (ECF No. 1811) at 17-18.[4]

The Court later issued an Amended Final Judgment in favor of the Steves Brothers and Pierce on JELD-WEN's trade secret counterclaims. Amended Final Judgment Order (ECF No. 1852) at 13. Thereby, the Steves Brothers and Pierce prevailed on the DTSA and TUTSA counterclaims in the Virginia Action.

---

[4] In sum, the decision was that because JELD-WEN "secured a reasonable royalty award based on what Jarosz told the jury, JELD-WEN cannot now be heard to argue that Steves should be enjoined permanently from using" those trade secrets. Id. at 20.

## B. The Texas Action

In September 2017, JELD-WEN filed, in Texas court, a similar case relating to the same factual matter as its counterclaims in the Virginia Action. In the Texas Action, JELD-WEN sued the Steves Brothers and Pierce. On June 25, 2018, the Texas court issued a stay in that action until final judgment was entered in the Virginia Action. But, the Texas Action is now proceeding toward trial. The Texas court set a trial date on the claims in the Third Amended Petition for February 3, 2020. Texas Action Order (ECF No. 1891-5). The Third Amended Petition (ECF No. 1901-8), which is now the operative complaint in the Texas Action, includes almost all of the same facts that were alleged and tried to a jury in the Virginia Action.

In the Texas Action, JELD-WEN alleges that the Steves Brothers hired Pierce to use (and continue using) trade secrets and confidential information stolen from JELD-WEN to the commercial advantage of Steves and to continue to exploit all available avenues for illegally obtaining those and additional trade secrets and confidential information. Third Amended Petition (ECF No. 1901-8) ¶ 3. JELD-WEN alleges that the Steves Brothers hoped that Steves could use the stolen trade secrets and confidential information to gain advantages in its potential construction and operation of its own doorskins factory. Id. ¶ 4. JELD-WEN alleges that Pierce breached his fiduciary duties owed to JELD-WEN by

10

selling trade secrets that he obtained through friendships with then-current JELD-WEN employees who owed fiduciary and contractual duties to JELD-WEN and who were obligated to keep that information confidential. Id. ¶ 6. In the Texas Action, the information that was allegedly misappropriated trade secret information included: (1) JELD-WEN's manufacturing processes, methods, and techniques for placing and installing dies; (2) JELD-WEN's manufacturing processes, formulas, methods, and techniques for applying resin and primer to doorskins; (3) JELD-WEN's strategy and plans for improving its doorskins plants; (4) JELD-WEN's research and development plans and strategies relating to its manufacturing process for door adhesive; (5) JELD-WEN's strategy and plans for product improvements; and (6) JELD-WEN's financial data, including data regarding input suppliers and costs for the manufacture of doorskins. Id. ¶ 8. Indeed, it appears that the trade secrets alleged in the Texas Action are the same as those that were decided upon by the jury in the Virginia Action. Compare id. ¶ 8 (stating that the allegedly misappropriated trade secret information included: (1) JELD-WEN's manufacturing processes, methods, and techniques for placing and installing dies; (2) JELD-WEN's manufacturing processes, formulas, methods, and techniques for applying resin and primer to doorskins; (3) JELD-WEN's strategy and plans for improving its doorskins plants; (4) JELD-WEN's research and development plans and strategies relating to its

11

manufacturing process for door adhesive; (5) JELD-WEN's strategy and plans for product improvements; and (6) JELD-WEN's financial data, including data regarding input suppliers and costs for the manufacture of doorskins); with JELD-WEN's Counterclaim Complaint (ECF No. 252) ¶ 14 (same). JELD-WEN alleges that Pierce engaged in that conduct in violation of his continuing obligations to JELD-WEN, based on agreements that he had signed, and that his actions harmed JELD-WEN. Third Amended Petition (ECF No. 1901-8) ¶ 10. JELD-WEN alleges that the Steves Brothers "misappropriated trade secrets and confidential information by intentionally viewing, without legal right and at times copying, JELD-WEN produced documents bearing the 'Highly Confidential' designation." Id. ¶ 18.

The remainder of the Third Amended Petition discusses the methods JELD-WEN uses to guard its trade secrets and confidential information, the details of the contract requiring Pierce to keep all trade secrets confidential, and the Steves Brothers' and Pierce's methods of obtaining JELD-WEN's allegedly confidential trade secret information and their steps to cover their tracks after the fact. See generally id. Virtually all of that information was offered to the jury in the Virginia Action.

In the Texas Action, JELD-WEN originally asserted claims against the Steves Brothers for violating the TUTSA, tortious interference with contract, and aiding and abetting Pierce's

12

alleged breach of fiduciary duty to JELD-WEN. JELD-WEN's Original
Petition (ECF No. 403-1) ¶¶ 15-18. In the Third Amended Petition,
JELD-WEN voluntarily dismissed all the claims against the Steves
Brothers except the aiding-and-abetting claim. Count 4, which
asserts that the Steves' Brothers aided and abetted Pierce's breach
of fiduciary duty, states:

> The Steves Brothers acted at all times with actual
> knowledge of the fiduciary duties owed by Pierce to JELD-
> WEN, especially with respect to trade secrets and
> confidential information that he learned while employed
> by JELD-WEN. By purchasing the illicit services of
> Pierce, the Steves Brothers knowingly and intentionally
> aided and abetted Pierce's breaches of his fiduciary
> duties, resulting in actual damages to JELD-WEN in an
> amount to be determined at trial.

Third Amended Petition (ECF No. 1901-8) ¶ 65.[5]

Against Pierce, JELD-WEN asserts three causes of action in
the Texas Action. First, JELD-WEN alleges that Pierce breached
his employment contract by failing "to protect and maintain the
secrecy of trade secrets and confidential information he obtained
during the court [sic] of his employment with JELD-WEN." Third
Amended Petition (ECF No. 1901-8) ¶¶ 58-59. Second, JELD-WEN
alleges that Pierce "tortious[ly] interfere[d] with the fiduciary

---

[5] Count 5—which alleges that the Steves Brothers aided and
abetted breaches of fiduciary duty by Richard Parker and O'Melveny
and Myers, id. at 66—is not relevant here, as the Steves Brothers
agree that the Court has not adjudicated this issue. COUNTERCLAIM
DEFENDANTS EDWARD STEVES AND SAM STEVES' REPLY IN SUPPORT OF MOTION
TO ENJOIN JELD-WEN FROM RELITIGATING CLAIMS (ECF No. 1904) at 10-
11.

and contractual duties" he owed JELD-WEN by seeking and obtaining JELD-WEN trade secrets and confidential information.  Id. ¶ 61. Third, JELD-WEN alleges that "Pierce continued to owe fiduciary duties to JELD-WEN, especially with respect to trade secrets and confidential information that he learned while employed by JELD-WEN" and that "[b]y selling his illicit services to the Steves Brothers, as described above, he breached his fiduciary duties, resulting in actual damages to JELD-WEN in an amount to be determined at trial."  Id. ¶ 63.

## C.  Procedural Background Of This Motion

After the Final Judgment Order was entered in the Virginia Action, the Texas court scheduled the Texas Action for trial in February 2020.  Texas Action Order (ECF No. 1891-5).

JELD-WEN has appealed the final judgment entered on the counterclaims to the United States Court of Appeals for the Fourth Circuit.  Notice of Appeal (ECF No. 1876). That appeal includes the Memorandum Opinion and Order (ECF Nos. 1779 & 1780) entering judgment in favor of the Steves Brothers and Pierce.  Having once tried the trade secrets case here and defending JELD-WEN's appeal of the judgment in their favor, the Steves Brothers and Pierce filed the Injunction Motions, arguing that the Court should issue an injunction under the "relitigation exception" to the Anti-Injunction Act because enjoining the Texas Action is necessary "to

14

protect or effectuate [the Court's] judgment[]" in the Virginia
Action.  28 U.S.C. § 2283.

## DISCUSSION

## A.   The All Writs Act And The Anti-Injunction Act

Under the All Writs Act, 28 U.S.C. § 1651, the Court "may
issue all writs necessary or appropriate in aid of [its] []
jurisdiction[] and agreeable to the usages and principles of law."
Id. § 1651(a).  But, use of the All Writs Act "is constrained by
the Anti-Injunction Act."  Bryan v. BellSouth Comms., Inc., 492
F.3d 231, 236 (4th Cir. 2007).  The Anti-Injunction Act provides
that a court "may not grant an injunction to stay proceedings in
a State court except as expressly authorized by Act of Congress,
or where necessary in aid of its jurisdiction, or to protect or
effectuate its judgments."  28 U.S.C. § 2283.  Thus, an injunction
preventing a state court proceeding is improper unless it falls
within one of the three exceptions.  There is no contention that
an act of Congress authorizes the injunction, nor do the parties
say that an injunction is necessary to aid the Court's
jurisdiction.  Thus, the only issue presented here is whether an
injunction is necessary to "protect or effectuate" the Court's
judgments, which is commonly known as the "relitigation exception"
to the Anti-Injunction Act.  See Bryan, 492 F.3d at 236.  The
relitigation exception means that to protect or effectuate its
judgments, a federal court may enter orders enjoining the

15

continuation of lawsuits in state courts that would adversely affect the Court's judgments.

"The relitigation exception was designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court. It is founded in the well-recognized concepts of res judicata and collateral estoppel." Id. (quoting Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 147 (1988). The exception allows courts "to enjoin state court proceedings in order to protect the *res judicata* effects of federal judgments." Nationwide Mut. Ins. Co. v. Burke, 897 F.2d 734, 737 (4th Cir. 1990). But, an injunction can issue under this exception "only if the claims or issues subject to the injunction have actually been decided by the federal court; the exception is inapplicable where an injunction is sought to prevent the litigation of claims or issues that could have been decided in the original action but were not." Bryan, 492 F.3d at 236-37 (emphasis added); see also Chick Kam Choo, 486 U.S. at 148 ("[A]n essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court. . . . [T]his prerequisite is strict and narrow.").[6]

---

[6] Unless a requested injunction involves a question that was actually decided, the Court lacks the power to enjoin the state action, even if those proceedings unmistakably interfere with a protected federal right or invade an area preempted by federal

There are two requirements to satisfy the relitigation exception to the Anti-Injunction Act: (1) "the issue the federal court decided must be the same as the one presented in the state tribunal"; and (2) the party against whom the injunction is sought "must have been a party to the federal suit, or else must fall within one of a few discrete exceptions to the general rule against binding nonparties." See Smith v. Bayer Corp., 564 U.S. 299, 307-08 (2011). A party to a litigation is "'[o]ne by or against whom a lawsuit is brought'" or "one who 'become[s] a party by intervention, substitution, or third-party practice.'" Id. at 313 (alterations in original) (quoting United States ex rel. Eisenstein v. City of New York, 556 U.S. 928, 933 (2009); Karcher v. May, 484 U.S. 72, 77 (1987)). If there is any doubt that the moving party fails to show that both requirements are satisfied, then the action in the state court should be allowed to proceed. Atl. Coast Line, 398 U.S. at 297.

**B.    The Steves Brothers' Motion**

In the Texas Action, JELD-WEN claims that the Steves Brothers knew about Pierce's fiduciary duties to JELD-WEN, "especially with respect to trade secrets and confidential information that he learned while employed by JELD-WEN," and it claims that the Steves

---

law, because "a federal court does not have inherent power to ignore the limitations of § 2283." Chick Kam Choo, 486 U.S. at 149 (quoting Atl. Coast Line R. Co. v. Bhd. of Locomotive Engineers, 398 U.S. 281, 294 (1970)).

Brothers "intentionally aided and abetted Pierce's breaches of his fiduciary duties, resulting in actual damages to JELD-WEN in an amount to be determined at trial." Third Amended Petition (ECF No. 1901-8) ¶ 65. The Steves Brothers ask the Court to enjoin the Texas Action against them for two reasons. First, they argue that the "transactional approach" of *res judicata*—which is applicable under Virginia, Texas, and federal law[7]—precludes all possible claims by JELD-WEN as long as there was a final judgment on the merits with the same parties that arose out of the same conduct, transaction, or occurrence as the earlier lawsuit. Second, they argue that collateral estoppel, also known as issue preclusion, bars further litigation on issues actually decided in the prior case, arguing that the aiding-and-abetting claim against them was already decided. Each issue will be addressed in turn.

### 1. *Res Judicata* And The Relitigation Exception To The Anti-Injunction Act

The Steves Brothers' argument that the Court should enjoin the entirety of the Texas Action under the theory that it all pertains to the same transaction and is thus barred by *res judicata* must fail. That is so because, as explained above, the relitigation exception to the Anti-Injunction Act is "strict and

---

[7] See Providence Hall Assocs. Ltd. P'ship v. Wells Fargo Bank, N.A., 816 F.3d 273, 282 (4th Cir. 2016); Barr v. Resolution Tr. Corp. ex rel. Sunbelt Fed. Sav., 837 S.W. 2d 627, 631 (Tex. 1992); Funny Guy, LLC v. Lecego, LLC, 293 Va. 135, 150 (Va. 2017).

narrow." Chick Kam Choo, 486 U.S. at 148. As instructed by the Supreme Court in Chick Kam Choo, "an essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court." Id. (emphasis added).

The Steves Brothers' argument suggesting otherwise rests on the Fourth Circuit's decision in In re MI Windows and Doors, Inc., 860 F.3d 218 (4th Cir. 2017). There, in a class action in which the parties had negotiated a settlement agreement, the Court applied res judicata under the relitigation exception, holding that a subsequent action in a state court had the same claims as those covered by the final judgment. Id. at 224-25. However, the crucial distinction between MI Windows and this case is that the settlement agreement in MI Windows stated that all class members who did not request exclusion from the class would be "the sole and exclusive remedy for any and all claims" of class members against the defendants. Id. at 221. Thus, "the claims or issues which the federal injunction insulate[d] from litigation in state proceedings" were "actually . . . decided by the federal court." See Chick Kam Choo, 486 U.S. at 148. All claims in MI Windows were precluded under the settlement agreement. There is no similar agreement at issue here.

19

Although the Steves Brothers can assert an affirmative defense in the Texas Action that the aiding-and-abetting claim could have been brought in the Virginia Action and thus should be barred based on *res judicata*, the Court here has no power under the relitigation exception to do as the Steves Brothers ask.

## 2. Collateral Estoppel And The Relitigation Exception To The Anti-Injunction Act

That finding, however, does not end the inquiry. Nor is it dispositive of the Injunction Motions. That is so because JELD-WEN can be enjoined from proceeding in the Texas court on any issues where (1) "the issue the federal court decided [is] the same as the one presented in the state tribunal"; and (2) the party against whom the injunction is sought was "a party to the federal suit." See Smith, 564 U.S. at 302. Here, both requirements are satisfied.

### a. The Issues In The Virginia And Texas Actions Are The Same

First, the issue presented by the claim that the Steves Brothers aided and abetted Pierce's breach of a fiduciary duty (Count 4 in the Texas Action) is the same as the DTSA and TUTSA counterclaims fully litigated in the Virginia Action, and on which judgment has been entered by this Court, and which are on appeal to the Fourth Circuit.

To establish a claim for breach of fiduciary duty in Texas, the plaintiff must show that there is: "(1) a fiduciary

20

relationship between the plaintiff and defendant, (2) a breach by the defendant of his fiduciary duty to the plaintiff, and (3) an injury to the plaintiff or benefit to the defendant as a result of the defendant's breach." Skelton v. Gray, 547 S.W. 3d 272, 279 (Tex. App.—San Antonio 2018, pet. filed); see also First U. Pentecostal Church of Beaumont v. Parker, 514 S.W. 3d 214, 220 (Tex. 2017) ("Generally, the elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages."). And, if there is no underlying breach of fiduciary duty claim, then Texas courts have also found that there is similarly no aiding and abetting claim. See Marshall v. Ribosome L.P., No. 01-18-00108-CV, 2019 WL 2041062, at *7 (Tex. App.—Houston May 9, 2019); Kastner v. Jenkens & Gilchrist, P.C., 231 S.W. 3d 571, 580 (Tex. App.—Dallas 2007). Thus, to succeed on a claim for aiding and abetting a breach of fiduciary duty under Texas law, the plaintiff must prove that: (1) a fiduciary relationship between the plaintiff and a third party; (2) a breach by the third party of his fiduciary duty to the plaintiff; (3) an injury to the plaintiff or benefit to the third party as a result of the third party's breach; and (4) the defendant assisted, facilitated, or promoted its accomplishment. See Skelton, 547 S.W. 3d at 279; First U.

Pentecostal Church, 514 S.W. 3d at 220, 224-25; Aid And Abet, Black's Law Dictionary (11th ed. 2019).[8]

To prove liability for the alleged DTSA and TUTSA violation in the Virginia Action, JELD-WEN had to prove that "(1) it own[ed] a trade secret; (2) the trade secret was misappropriated; and (3) the trade secret implicates interstate or foreign commerce" as well as damages. First Summary Judgment Opinion (ECF No. 1424) at 18 (quoting Space Sys./Loral, LLC v. Orbital ATK, Inc., No. 417-cv-25, 2018 WL 701280, at *5 (E.D. Va. Feb. 2, 2018)). And, JELD-WEN had to prove misappropriation, which is defined as "acquisition," "disclosure[,] or use" of a trade secret under certain circumstances. 18 U.S.C. § 1839(5). TUTSA provides the same cause of action except that it does not require any trade secrets that implicate interstate or foreign commerce. First Summary Judgment Opinion (ECF No. 1424) at 19; see Tex. Civ. Prac. & Rem. Code Ann. §§ 134A.001-134A.008.[9]

---

[8] "The Texas Supreme Court has not expressly recognized aiding and abetting another's tortious conduct as a cause of action." Marshall, 2019 WL 2041062, at *7 (citing First U. Pentecostal Church, 514 S.W. 3d at 224). But, the Texas Supreme Court stated that if it were to recognize a cause of action for aiding and abetting tortious conduct, then "courts should look to the nature of the wrongful act, kind and amount of assistance, relation to the actor, defendant's presence while the wrongful act was committed, and defendant's state of mind." First U. Pentecostal Church, 514 S.W. 3d at 225.

[9] The Court dismissed claims that the Steves Brothers tortiously interfered with Pierce's contract (which were found in the Fourth and Fifth Counterclaims) in a prior Memorandum Opinion because those counterclaims were displaced by the Third

22

The elements of the "aiding and abetting a breach of a fiduciary duty" claim are the same as those under the DTSA and TUTSA. First, there must be a fiduciary duty, or the plaintiff must own a trade secret. Here, the aiding and abetting a breach of a fiduciary relationship claim and the trade secrets claims relate to the same conduct: Pierce's misappropriation of JELD-WEN's trade secrets and the involvement of the Steves Brothers in that conduct was in breach of Pierce's fiduciary duty. Second, there must be a breach by the defendant of his fiduciary duty to the plaintiff or a misappropriation of a trade secret. Here, the alleged misappropriation was Pierce telling others about trade secrets, which is the same conduct as his alleged breach of a fiduciary relationship in the Texas Action. Third, there must be an injury to the plaintiff because of the breach or damages as a result of the misappropriation of a trade secret. In both the Texas and Virginia Actions, the alleged injury is the loss of the trade secret that harms JELD-WEN's ability to sell on the market. Thus, the "aiding and abetting a breach of a fiduciary duty" claim contains the same elements as the DTSA and TUTSA counterclaims, and the relitigation exception applies, because "the claims or issues which the federal injunction insulates from litigation in

---

Counterclaim under TUTSA's preemption provision, Tex. Civ. Prac. & Rem. Code § 134A.007(a). See First Summary Judgment Opinion (ECF No. 1424) at 33-44.

state proceedings actually have been decided." See Chick Kam Choo, 486 U.S. at 148.

That conclusion is further supported by comparing the allegations of the counterclaims in the Virginia Action and the breach of fiduciary duty claims in the Texas Action.

| Allegation | Virginia Action Counterclaim | Texas Action Claim |
|---|---|---|
| Pierce is a former Senior Executive Vice President of JELD-WEN. | ¶ 4 | ¶ 5 |
| During his employment, Pierce signed agreements requiring him to protect JELD-WEN's confidential and trade secret information and continued to owe JELD-WEN a duty to protect that information after his employment ended. | ¶¶ 5-7, 9 | ¶¶ 5, 38-39 |
| By signing the Management Employment Contract in 2006, Pierce acknowledged that "the unauthorized disclosure or release of such [confidential] information in any form would irreparably harm JELD-WEN." | ¶ 6 | ¶ 58 |
| In early 2015, Steves or Edward and Sam Steves, with knowledge of Pierce's duty to JELD-WEN, purportedly paid Pierce to provide them with JELD-WEN's supposed confidential and trade secret information that Pierce already had or would acquire through improper means, including visiting JELD-WEN's facilities for payment of $800 per day plus travel expenses. | ¶¶ 10-12, 19 | ¶¶ 6-7 |
| Pierce travelled to JELD-WEN facilities to obtain confidential and trade secret information from then-current JELD-WEN employees. | ¶¶ 12-13 | ¶ 7 |
| Pierce obtained and provided to Steves, through Edward and Sam Steves or "Steves' senior management," JELD-WEN's supposed confidential and trade secret information. | ¶¶ 13-15 | ¶¶ 8, 43-44 |

| | | |
|---|---|---|
| Pierce made clear to the Steves Brothers that he was providing them JELD-WEN's trade secrets. | ¶ 21 | ¶¶ 9-10 |
| Steves purportedly wanted JELD-WEN's confidential and trade secret information as part of its plan to build its own doorskin plant. | ¶ 39 | ¶ 42 |
| Edward and Sam Steves' actions purportedly caused Pierce to breach his duties to JELD-WEN. | ¶ 62 | ¶ 65 |

And, any doubt about whether the identical issues were decided in the Virginia Action is confirmed by the fact that, in its efforts to prove its DTSA and TUTSA counterclaims in the Virginia Action, JELD-WEN presented, and relied on, extensive evidence of Pierce's alleged breach of the obligations that lie at the heart of the allegations of the breach of fiduciary claim in the Texas Action. And, in pursuit of its DTSA and TUTSA counterclaims in this Court, JELD-WEN presented, and relied on, extensive evidence that the Steves Brothers engaged in the same conduct that is the alleged aiding and abetting conduct in the Texas Action. Indeed, considering the elements of the claims at issue, the allegations of the operative counterclaim complaint, and the proof offered in the Virginia Action, it is difficult to envision any material difference between what was decided in the Virginia Action and what must be tried in the Texas Action. Certainly, JELD-WEN has pointed to no such differences in its briefing.

JELD-WEN's efforts to explain why the claims against the Steves Brothers are different in the Texas case is unconvincing.

25

JELD-WEN summarily advances a conclusory, but otherwise unsupported argument, that whether the Steves Brothers aided and abetted Pierce's breach of fiduciary duty "is a distinct issue to be decided under a different legal standard for the reasons pertaining to the fiduciary duty claim against Pierce" and that "aiding and abetting a breach of fiduciary duty under Texas common law is not decided by the same legal standards that were applied to the misappropriation of trade secrets claims." JELD-WEN'S JOINT OPPOSITION TO SAM STEVES, EDWARD STEVES, AND JOHN G. PIERCE'S MOTION TO ENJOIN JELD-WEN (ECF No. 1901) at 19. It is not at all clear what JELD-WEN means by this "different legal standard" argument. In any event, that argument does not address the key issue presented: whether the "aiding and abetting a breach of a fiduciary duty" claim is the same as the DTSA and TUTSA counterclaims that were decided in the Virginia Action. And, for the reasons set out above, the Court finds that the issues presented as to the Steves Brothers in Count 4 of the Texas Action are the same as those actually decided in the Virginia Action.[10]

---

[10] Although JELD-WEN claims in its Third Amended Petition that it is "not pursuing in this case, and harbors no intention to pursue in this case, any claims or causes of action that were previously litigated in the Virginia case," Third Amended Petition ¶ 2, that is neither determinative, nor materially probative, of the issue on which the relitigation issue must be decided: whether the previous claim was actually litigated in a prior action.

### b. The Parties In The Virginia And Texas Actions Are The Same

The second requirement of the relitigation exception is the party against whom the injunction is sought "must have been a party to the federal suit." See Smith, 564 U.S. at 302. There is no question that JELD-WEN is a party in both the Texas and Virginia Actions because it brought the claims in Texas and the counterclaims in Virginia. The Steves Brothers were full parties to the Virginia Action even though the counterclaim complaint was never amended to specifically name them as defendants. Memorandum Opinion (ECF No. 1779) at 14-22. Thus, the second requirement of the relitigation exception is satisfied.

### C. Pierce's Motion

In COUNTERCLAIM DEFENDANTS [sic] JOHN PIERCE'S MOTION TO ENJOIN JELD-WEN FROM RELITIGATING CLAIMS (ECF No. 1892), Pierce argues that the claims against him in the Texas Action should be enjoined for substantially the same reasons advanced by the Steves Brothers request. First, Pierce argues that res judicata bars the Texas Action against Pierce. See id. at 2-6. Second, he argues that collateral estoppel bars the Texas Action against Pierce. See id. at 7.

### 1. *Res Judicata* And The Relitigation Exception To The Anti-Injunction Act

The Court will not apply the doctrine of *res judicata* to bar JELD-WEN's claims against Pierce for the same reasons stated for not applying the doctrine to the claim against the Steves Brothers.

### 2. Collateral Estoppel And The Relitigation Exception To The Anti-Injunction Act

The question of collateral estoppel and whether the Court actually decided the claims against Pierce is distinct from whether the claim against the Steves Brothers was actually decided. Thus, the Court will examine the elements of those claims as well.

#### a. The Issues In The Virginia And Texas Actions Are The Same

As stated above, in the Texas Action, JELD-WEN has asserted three claims against Pierce. First, JELD-WEN claims that Pierce breached his contract by failing "to protect and maintain the secrecy of trade secrets and confidential information he obtained during the court [sic] of his employment with JELD-WEN." Third Amended Petition (ECF No. 1901-8) ¶¶ 58-59. Second, JELD-WEN claims that Pierce "tortious[ly] interfere[d] with the fiduciary and contractual duties" he owed JELD-WEN by seeking and obtaining JELD-WEN trade secrets and confidential information. Id. ¶ 61. Third, JELD-WEN claims that Pierce breached his fiduciary duties by failing to fulfill the fiduciary duties he "continued to owe fiduciary duties to JELD-WEN, especially with respect to trade

secrets and confidential information that he learned while employed by JELD-WEN" and by "selling his illicit services to the Steves Brothers." Id. ¶ 63.

Under Texas law, a breach of contract "a breach of contract action requires proof of four elements: (1) formation of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) 'the plaintiff sustained damages as a result of the breach.'" S & S Emergency Training Sols., Inc. v. Elliott, 564 S.W.3d 843, 847 (Tex. 2018) (citing and quoting USAA Tex. Lloyds Co. v. Menchaca, 545 S.W.3d 479, 501 n.21 (Tex. 2018)). This claim was already decided in the Virginia Action.

The claimed breach by Pierce is that he relayed trade secrets and other confidential information to Steves and the Steves Brothers. So, the claim in the Texas Action is that: (1) Pierce had a contract with JELD-WEN; (2) JELD-WEN performed its duties under the contract; (3) Pierce breached the contract by relaying trade secrets and other confidential information to Steves and the Steves Brothers; and (4) JELD-WEN sustained damages as a result. This is the exact same claim that JELD-WEN brought under the DTSA and TUTSA counterclaims in the Virginia Action. As was true in analyzing the Steves Brothers' motion for an injunction, considering the elements of the claims at issue, the allegations of the operative counterclaim complaint, and the proof offered in the Virginia Action, it must be concluded that the alleged breach

29

of contract issue in the Texas Action was actually decided in the Virginia Action.

Second, the tortious interference claim in the Texas Action was decided in the Virginia Action. In the First Summary Judgment opinion, the Court held that the same tortious interference claims, which were brought in this action in the Fourth and Fifth Counterclaims, were preempted under TUTSA because all of JELD-WEN's tortious interference allegations were based on "Steves' inducement of Pierce and Ambruz to acquire confidential information from JELD-WEN employees and give it to Steves for use in the MDS Project." First Summary Judgment Opinion (ECF No. 1424) at 42. The Court discussed Texas law extensively as to why those claims were preempted, finding that TUTSA's preemption provision covered the conduct that JELD-WEN alleged made a claim of tortious interference. See id. at 33-44. Thus, those claims were actually decided in the Virginia Action.

Third, the claim for breach of fiduciary duty was actually decided in the Virginia Action as well. As explained above in discussing the aiding and abetting a breach of fiduciary duty against the Steves Brothers, the elements of a breach of a fiduciary duty claim are the same as those under the DTSA and TUTSA. First, there must be a fiduciary duty or the plaintiff must own a trade secret. Here, a breach of a fiduciary relationship claim in the Texas Action and the trade secrets claims

in the Virginia Action are predicated on the same conduct by Pierce that was fully litigated in the Virginia Action to judgment: Pierce's alleged misappropriation of JELD-WEN's trade secrets and providing them to Steves and the Steves Brothers. Second, there must be a breach by the defendant of his fiduciary duty to the plaintiff or a misappropriation of a trade secret. The alleged misappropriation in the Virginia Action was Pierce telling others about a trade secret, which is the same conduct as Pierce's alleged breach of a fiduciary relationship in the Texas Action. Third, there must be an injury to the plaintiff because of the breach or damages as a result of the misappropriation of a trade secret. The alleged injury to JELD-WEN is the loss of the trade secrets Pierce is said to have misappropriated. That was decided in the Virginia Action.

Thus, here too the breach of a fiduciary duty claim against Pierce contains the same elements as the DTSA and TUTSA counterclaims, and the relitigation exception applies, because "the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided." See Chick Kam Choo, 486 U.S. at 148. That conclusion is borne out as to Pierce, just as it was to the Steves Brothers, by comparing the pleadings in the Virginia and Texas Actions. It is further supported by comparing the evidence presented by JELD-WEN in the

Virginia Action with the allegations in the Third Amended Petition in the Texas Action.

### b. The Parties In The Virginia And Texas Actions Are The Same

Further, as with the claim against the Steves Brothers, the second requirement of the relitigation exception is satisfied here. The party against whom the injunction is sought "must have been a party to the federal suit." See Smith, 564 U.S. at 302. There is no question that JELD-WEN is a party in both the Texas and Virginia Actions because it brought the claims in Texas and the counterclaims in Virginia that were against the Steves Brothers and Pierce. Pierce was a full party to the Virginia Action even though the counterclaim complaint was never amended to specifically name him as a defendant. Memorandum Opinion (ECF No. 1779) at 14-22. Thus, the second requirement of the relitigation exception is satisfied.

## D. Whether The Court Should Grant a Permanent Injunction

It is not clear from the briefing whether the Court must use the traditional four-factor test for determining whether a permanent injunction is appropriate when issuing an injunction under the relitigation exception.[11] But, that test will be used

---

[11] JELD-WEN argues that this four-factor test for a permanent injunction applies in any type of case in which a permanent injunction is sought. JELD-WEN'S JOINT OPPOSITION TO SAM STEVES, EDWARD STEVES, AND JOHN G. PIERCE'S MOTION TO ENJOIN JELD-WEN (ECF No. 1901) at 8. The Steves Brothers argue that the four-factor

here because doing so is consistent with the instruction of the
Supreme Court that "a plaintiff seeking a permanent injunction
must satisfy [the well-settled] four-factor test before a court
may grant such relief." eBay Inc. v. MercExchange, LLC, 547 U.S.
388, 391 (2006). In eBay, the Supreme Court also reminded courts
that it "has long recognized [that] 'a major departure from the
long tradition of equity practice should not be lightly implied.'"
Id. (quoting Weinberger v. Romero-Barcelo, 456 U.S. 305, 320
(1982)). And, in holding that the traditional test applied in
cases under the Patent Act, the Supreme Court held that:

>    [T]he decision whether to grant or deny injunctive
>    relief rests within the equitable discretion of the
>    district courts, and that such discretion must be
>    exercised consistent with traditional principles of
>    equity, in patent disputes no less than in other cases
>    governed by such standards.

Id. at 394. Considering the foregoing teaching from the Supreme
Court, the plaintiffs must supply a good reason for the Court to
depart from the traditional equitable test for the exercise of its
injunctive power. That has not been done.

And, the All Writs Act says a court "may issue all writs
necessary or appropriate in aid of [its] [] jurisdiction[] and

---

test does not apply, stating that the Fourth Circuit has not
applied it when issuing an anti-suit injunction under the
relitigation exception. COUNTERCLAIM DEFENDANTS EDWARD STEVES AND
SAM STEVES' REPLY IN SUPPORT OF MOTION TO ENJOIN JELD-WEN FROM
RELITIGATING CLAIMS (ECF No. 1904) at 11 (citing MI Windows, 860
F.3d at 224; Bryan, 492 F.3d at 231).

agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (emphasis added). Likewise, the Anti-Injunction Act provides that a court "may not grant an injunction to stay proceedings in a State court" unless an exception applied. 28 U.S.C. § 2283 (emphasis added). Those statutes reinforce the concept that the issuance of an injunction is not a matter of course and that the exercise of that power is discretionary, depending on the facts of the case. The exercise of that discretion, barring circumstances not shown here, must be guided by the traditional four-factor test.

Here, that standard is satisfied. First, the Steves Brothers and Pierce will suffer an irreparable injury by having to relitigate claims that have already been decided in the Virginia Action. It is certainly an irreparable injury to have to defend one's conduct in one case and to prevail and then to have to defend a second case involving the same conduct. And, the risk of inconsistent judgments inherent in such a situation is also an irreparable injury. Second, damages are unavailable, and no other remedy will prevent the Steves Brothers and Pierce from having to defend against a relitigation of JELD-WEN's claims. Third, the balance of hardships favors the Steves Brothers and Pierce because JELD-WEN already had an opportunity to litigate its claims in the Virginia Action, and it merely wants a second bite at the apple. The Steves Brothers and Pierce face real hardship by having to

incur expenses in, and by having to run the inherent risks of trying, a second litigation in the Texas Action of the same claims while defending, on appeal, the judgment in their favor in the Virginia Action. JELD-WEN suffers no material hardship from an injunction because it has had, in the Virginia Action, a trial on the merits of the claims that it is asserting in the Texas Action, and JELD-WEN can fully litigate its position in the pending appeal of the Virginia Action. Fourth, the public interest is served by a permanent injunction because all the relevant facts and claims in the Texas Action have already been litigated in the Virginia Action, and it disserves the public interest to have the same claims tried twice in two different courts. Also, the public interest is disserved by the risk of inconsistent judgments, not to mention how those risks would affect the validity and enforceability of the first judgment. In sum, the injunction is necessary to protect and effectuate the Court's judgment in favor of the Steves Brothers and Pierce in the Virginia Action. And that is so under the eBay analysis as well as under the relitigation exception's "protect or effectuate" test.

## CONCLUSION

Because both requirements of the relitigation exception are satisfied here as to the claims against the Steves Brothers and Pierce, the Court will grant the Injunction Motions. JELD-WEN cannot continue to prosecute a claim against the Steves Brothers

alleging that they aided and abetted a breach of Pierce's fiduciary duty to JELD-WEN or claims against Pierce based on a theory that he breached his contract for failing to maintain the secrecy of trade secrets and confidential information; that he tortiously interfered with the fiduciary and contractual duties he owed JELD-WEN by seeking and obtaining JELD-WEN trade secrets and confidential information; or that he breached his fiduciary duty to JELD-WEN. Thus, JELD-WEN cannot continue to prosecute Counts 1, 2, 3, and 4 of its Third Amended Petition. See Third Amended Petition (ECF No. 1901-8) ¶¶ 57-65.

/s/         REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: August 16, 2019

36