**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

|  |  |  |
|---|---|---|
| STEVES AND SONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:16-cv-545-REP |
| | ) | |
| v. | ) | **REDACTED VERSION** |
| | ) | |
| JELD-WEN, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**JELD-WEN'S MEMORANDUM IN SUPPORT OF ITS**
**MOTION TO MODIFY THE AMENDED FINAL JUDGMENT**
**UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(b)(5)**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

BACKGROUND .................................................................................................... 4

    A.    This Court Orders JELD-WEN To Divest Towanda, In Part Because Steves Could Not Build Its Own Doorskins Plant. ................................................. 4

    B.    Steves Builds Its Own Doorskins Plant. ................................................. 7

    █    ████████████████████████████████████

LEGAL STANDARD ............................................................................................ 13

ARGUMENT ........................................................................................................ 14

    █    ████████████████████████████████████

    █    ████████████████████████████████████

        █    ████████████████████████████████████

        █    ████████████████████████████████████

    █    ████████████████████████████████████

CONCLUSION ...................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agostini v. Felton*,
  521 U.S. 203 (1997)............................................................................................14

*Atl. Richfield Co. v. USA Petroleum Co.*,
  495 U.S. 328 (1990)............................................................................................24

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977)........................................................................................24, 25

*Cargill, Inc. v. Monfort of Colorado, Inc.*,
  479 U.S. 104 (1986)............................................................................................24

*eBay Inc. v. MercExchange, LLC*,
  547 U.S. 388 (2006)........................................................................................15, 22

*First W. Cap. Mgmt. Co. v. Malamed*,
  874 F.3d 1136 (10th Cir. 2017) ...........................................................................22

*Ford Motor Co. v. United States*,
  405 U.S. 562 (1972)............................................................................................15

*Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr. of Durango*,
  582 F.3d 1216 (10th Cir. 2009) ...........................................................................25

*Horne v. Flores*,
  557 U.S. 433 (2009)............................................................................................17

*Madsen v. Women's Health Ctr., Inc.*,
  512 U.S. 753 (1994)............................................................................................25

*In re Microsoft Corp. Antitrust Litig*,
  333 F.3d 517 (4th Cir. 2003) ...............................................................................22

*Nat'l Collegiate Athletic Ass'n v. Alston*,
  141 S. Ct. 2141 (2021)........................................................................................15

*Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*,
  669 F.2d 490 (7th Cir. 1982) ...............................................................................16

*Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*,
  113 F.3d 405 (3d Cir. 1997)................................................................................25

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
988 F.3d 690 (4th Cir. 2021) ................................................................ *passim*

*Thompson v. U.S. Dep't of Hous. & Urban Dev.*,
404 F.3d 821 (4th Cir. 2005) ................................................... 14, 15, 22, 29

*Transportation, Inc. v. Mayflower Servs., Inc.*,
769 F.2d 952 (4th Cir. 1985) (per curiam) ............................................. 14

*United States v. Aetna Inc.*,
240 F. Supp. 3d 1 (D.D.C. 2017) ...................................................... 19, 20

*United States v. Eastman Kodak Co.*,
63 F.3d 95 (2d Cir. 1995) ................................................................. 15, 22

*United States v. W. Elec. Co.*,
46 F.3d 1198 (D.C. Cir. 1995) ......................................................... 13, 29

*Valero Terrestrial Corp. v. Paige*,
211 F.3d 112 (4th Cir. 2000) ........................................................... 14, 15

**Statutes**

15 U.S.C. § 18 ................................................................................................. 4

15 U.S.C. § 26 ................................................................................................ 24

3A Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 303e3 (4th ed. 2016) ............................................................................................................. 16

**Rules**

Federal Rule of Civil Procedure 60(b)(5) .............................................. 13, 14

**INTRODUCTION**

Five years ago, this Court granted Steves and Sons, Inc. ("Steves") the extraordinary remedy of divestiture, ordering JELD-WEN, Inc. ("JELD-WEN") to divest its Towanda doorskins plant.  JELD-WEN has complied with that order, ███████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████. ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████ By Steves'

own account, the new plant will ███████████████████████████ "eliminate" the

existing "duopoly" between JELD-WEN and Masonite Corporation ("Masonite"), ██████████

████████████████████████████████████████████████████████████████

███████████ ; Ex. 2, Richard Webner, *At 157 years old, San Antonio-based door manufacturer*

*Steves & Sons marks another turning point*, San Antonio Express News (June 18, 2023) ("Webner

Article") (quoting Edward Steves); Steves' Supply Agreement Br. at 3, Dkt.2308.

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████s.

    Taking stock of all that has transpired since the Court first ordered divestiture ██████

█████████████████████████████████████  ██████████████████████████████

█████████████████████████████████████████ as both this Court and the

Fourth Circuit acknowledged it might.  This Court ordered divestiture because the public interest

favored divestiture; Steves suffered an antitrust injury and faced irreparable harm because it would

go out of business in the absence of divestiture; no other relief could remedy that harm; and the

balance of hardships favored Steves. ██████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

2

3

███████████████████████████████████████

██████

In 2018, it may have been a "tough[] question" whether divestiture was appropriate or necessary. *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 720 (4th Cir. 2021). That is no longer true. In light of the above changed circumstances, JELD-WEN respectfully asks this Court to modify the Amended Final Judgment to vacate the divestiture requirement ██████████

███████████████████████████████████████

████

## BACKGROUND

### A.   This Court Orders JELD-WEN To Divest Towanda, In Part Because Steves Could Not Build Its Own Doorskins Plant.

Before 2012, JELD-WEN was one of three vertically integrated U.S. doorskins manufacturers: JELD-WEN, Masonite, and CraftMaster Manufacturing Inc. ("CMI"). That changed in 2012, when JELD-WEN acquired CMI and its Towanda plant, which manufactures doorskins and exterior "MiraTEC" trim and "Extira" panel products. Four years later, in 2016, Steves sued JELD-WEN, alleging (among other things) that JELD-WEN had violated federal antitrust law because the acquisition left only two doorskins manufacturers in the United States: JELD-WEN and Masonite. *See Steves & Sons*, 988 F.3d at 702-03;[1] Divestiture Op. at 1-2. In 2018, a jury found that the acquisition substantially lessened competition in the doorskins market and thus violated the Clayton Act. Divestiture Op. at 1-2, Dkt.1784; *see also* 15 U.S.C. § 18. To remedy the past harm from that antitrust violation, the jury awarded Steves about $12.1 million, which came to $36.4 million when trebled as required by statute. *Steves & Sons*, 988 F.3d at 705.

---

[1]   All emphases added, alterations adopted, citations omitted, and quotations omitted unless otherwise noted.

JELD-WEN has paid that amount in full—as well as an additional $30 million in fees and interest as part of the parties' October 7, 2021 settlement agreement.

As to future harm, Steves sought and obtained the extraordinary remedy of divestiture—a remedy that had never before been granted in a private antitrust case. *Id.* at 703. This Court specifically ordered JELD-WEN to divest the Towanda plant. Divestiture Op. at 148. The Court reasoned that Steves had suffered an antitrust injury and that each of the four factors for equitable relief—threat of irreparable harm, no adequate remedy at law, the balance of hardships, and the public interest—favored divestiture. *Id.* at 75-105. The Court ruled that the public interest favored divestiture and no alternative equitable remedy was available because divestiture was necessary to "restore competition in the industry as a whole" by "plac[ing] three domestic doorskin suppliers in the doorskin market." *Id.* at 111-12; *see also* Am. Final J. at 2, Dkt.1852 ("Without the equitable remedies of divestiture, … it is not possible to restore the substantially lessened competition in the market for interior molded doorskins.").

The Court's analysis of Steves' antitrust injury and the remaining equitable considerations relied on its conclusion that Steves would go out of business absent divestiture. Divestiture Op. at 75 ("The Court . . . finds that Steves has proved that, absent equitable relief, it will be forced out of business when the Supply Agreement terminates in 2021."); *id.* at 80 ("Steves' irreparable injury is the loss of its business."); *see also Steves & Sons*, 988 F.3d at 718 ("Absent the threat to its survival …, Steves couldn't have shown any of the first three [equitable] factors—a threatened irreparable injury, inadequacy of legal remedies, and that the balance of hardships tipped in its favor."). To establish antitrust injury, irreparable harm, and the absence of any other remedy, Steves argued that it could not build its own doorskins plant and that it had no means other than JELD-WEN to obtain a supply of about ███████████, which was necessary for its doors

business to survive.  Divestiture Op. at 72-74; *see also* Ex. 4, Trial Tr. at 197-99 (arguing that Steves cannot build its own doorskins plant); *id.* at 2632 (same); ████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████  And this Court agreed, finding that "Steves simply cannot afford to build its own doorskin plant."  Divestiture Op. at 79 n.17.

As to the balance of hardships, the Court determined that "all of [JELD-WEN's] claimed hardships can be ameliorated by allowing time for an orderly divestiture, by imposing terms to assure JELD-WEN a reliable source of doorskin supply …, [and] by assuring that divestiture occurs in an environment and under circumstances that will produce a reasonable purchase price." *Id.* at 96.  By contrast, Steves faced "a more certain and far more serious harm: permanently going out of business."  *Id.*  The Court therefore concluded that divestiture was appropriate if conducted in a manner that would "assure, to the extent reasonably possible, that JELD-WEN receives a fair price for Towanda, and … assure that divestiture produces a competitive entity that is likely to restore competition."  *Id.* at 148-49.

At the same time, the Court recognized that divestiture may ultimately prove unworkable or otherwise inequitable.  For example, it explained that "if divestiture is ordered and affirmed, and no buyer expresses interest in Towanda, then divestiture will simply not occur."  *Id.* at 104. And "[i]f it turns out that the divestiture process yields a buyer that lacks the incentive or the means to operate Towanda competitively, the Court can decline to divest the plant to that buyer."  *Id.*

This Court also ordered a series of conduct remedies.  Relevant here, it required the new buyer to agree to supply Steves with doorskins.  *Id.* at 116.  And to account for the time until divestiture, it ordered JELD-WEN to continue to supply Steves with doorskins for a year following

any appeal of the divestiture order.  Am. Final J. at 13-14.  In 2020, the parties amended their existing supply agreement as part of a settlement of separate claims.  The parties also stipulated that "absent further order of the Court," the supply agreement "shall be extended until divestiture is complete pursuant to order of the Court and [a] new supply agreement … between Steves and the company that acquires Towanda, is in effect."  4/5/21 Order at 2, Dkt.2111; *see also* 4/5/21 Stipulation at 2, Dkt.2110.

The Fourth Circuit affirmed this Court's divestiture decision.  Like this Court, it was concerned that the merger had reduced the number of U.S. doorskins suppliers from three (JELD-WEN, CMI, and Masonite) to two (JELD-WEN and Masonite).  Because the merger had caused a "duopoly," it was "reasonable to expect that a third supplier—even one that's vertically integrated—will promote competition as CMI did before the 2012 merger."  *Steves & Sons*, 988 F.3d at 724.  Like this Court, however, the Fourth Circuit recognized that future events could render the divestiture inequitable.  It wrote that "the divestiture process is far from over[;] If the special master can't locate a satisfactory buyer, the district court may have to revisit its ruling." *Id.*

## B.     Steves Builds Its Own Doorskins Plant.

Since these decisions, Steves' business has prospered, and its ability to build a plant is no longer implausible—in fact, Steves has built one. ██████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████

The plant will, according to Steves, restore competition to the market.  Edward Steves explained that it will "eliminate" the previous "duopoly" and "give more choice to [Steves'] customers."  Webner Article.  ██████████████████████████████████████

████████████████████████████████████████████████████████████████

Steves' Supply Agreement Br. at 3.

██  ██████████████████████████████████████.

This Court appointed the former Chief Judge of the Eastern District of Pennsylvania, Lawrence Stengel, as Special Master to oversee the divestiture, and it ordered JELD-WEN to pay his and his advisors' expenses.  Special Master Order at 2, 8, Dkt.1863.  The Court instructed Judge Stengel to "proceed with the process of divesting the Divestiture Assets to an Acquirer that demonstrates the ability to competitively manufacture and sell molded interior doorskins in the United States with a view to restoring competition in the doorskins market and securing a reasonable price for the Divestiture Assets."  *Id.* at 4.

████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

To improve the chances of a successful divestiture, JELD-WEN moved to modify the Amended Final Judgment and the Special Master Order to try to address some of the problems that contributed to the difficulties encountered in the first bidding round. Dkt.2235. The Court granted that motion in May 2022. Dkt.2282. Among other things, the Court required JELD-WEN and Steves to negotiate a new supply agreement that would be assigned to the eventual purchaser of Towanda. *Id.* at 9-10.

9

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████ .

███████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████



**LEGAL STANDARD**

Federal Rule of Civil Procedure 60(b)(5) permits the Court to "relieve a party … from a

final judgment" if "applying [a judgment] prospectively is no longer equitable." *See also United*

*States v. W. Elec. Co.*, 46 F.3d 1198, 1202 (D.C. Cir. 1995) (Rule 60(b)(5) is "little more than a codification of the universally recognized principle that a court has continuing power to modify or vacate a final decree").  "District courts have inherent equitable power to modify their injunctions to ensure that any injunctive relief granted fully vindicates the rights accorded by the underlying judgment." *Transportation, Inc. v. Mayflower Servs., Inc.*, 769 F.2d 952, 954 (4th Cir. 1985) (per curiam); *see also Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 404 F.3d 821, 825 (4th Cir. 2005) ("It has long been recognized that courts are vested with the inherent power to modify injunctions they have issued.").

Modifying a judgment is appropriate if a "significant change in the factual conditions" renders "compliance with the decree substantially more onerous, if the decree proves to be unworkable because of unforeseen obstacles, or if enforcement of the decree without the modification would be detrimental to the public interest."  *Thompson*, 404 F.3d at 827; *see also Agostini v. Felton*, 521 U.S. 203, 215 (1997) ("A court errs when it refuses to modify an injunction or consent decree in light of such changes."); *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 122 (4th Cir. 2000) ("[M]odification or vacatur of an injunction under Rule 60(b)(5) … is required where there has been a significant change either in factual conditions or in law.").

## ARGUMENT

In granting and then affirming the divestiture of Towanda, both this Court and the Fourth Circuit recognized that changed circumstances could render divestiture inequitable, and both made clear that it may ultimately be necessary to "decline to divest" Towanda.  Divestiture Op. at 104 (acknowledging that "the Court can decline to divest the plant" based on future events); *see also Steves & Sons*, 988 F.3d at 724 ("If the special master can't locate a satisfactory buyer, the district court may have to revisit its ruling."); *id.* at 707.  Indeed, an equitable decree, including an equitable antitrust decree, should be modified when its purpose has been "substantially

14

effectuated" because of significant changes in the factual or legal basis for the order, or when the decree is no longer "adapted to accomplish its purposes"—*e.g.*, when the antitrust injury underlying the decree has been relieved. *See United States v. Eastman Kodak Co.*, 63 F.3d 95, 102 (2d Cir. 1995). In antitrust law in particular, if "market realities change, so may the legal analysis." *Nat'l Collegiate Athletic Ass'n v. Alston,* 141 S. Ct. 2141, 2158 (2021).

Modification of this Court's Amended Final Judgment and vacatur of the divestiture requirement is now "required" in light of "significant change[s] … in factual conditions." *Valero Terrestrial Corp.*, 211 F.3d at 122; *see also Thompson*, 404 F.3d at 827. In 2018, this Court found that all four equitable factors weighed in favor of divestiture: (i) the public interest favored divestiture; (ii) Steves suffered an antitrust injury and faced irreparable harm because it would go out of business absent divestiture; (iii) monetary damages were inadequate to compensate for that injury; and (iv) the balance of hardships weighed in favor of Steves. *See* Divestiture Op. at 70-105; *Steves & Sons*, 988 F.3d at 724. The Court therefore believed that divestiture was capable of "produc[ing] a competitive entity that is likely to restore competition" and ensuring that "JELD-WEN receives a fair price for Towanda." Divestiture Op. at 148. More than five years later, the

**I.**

Divestiture is only appropriate if "the public interest would not be disserved." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). As this Court recognized in 2018, Congress has determined through the enactment of Section 7 of the Clayton Act that restoring lost competition serves the public interest. Divestiture Op. at 97 (collecting citations). If, however, divestiture is not aimed at restoring competition, then the public interest is not served and divestiture is

inappropriate.  *See Ford Motor Co. v. United States*, 405 U.S. 562, 573 (1972) ("The relief in an antitrust case must be 'effective to redress the violations' and 'to restore competition.'"); *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc*., 669 F.2d 490, 496 (7th Cir. 1982) ("divestiture would be inadvisable" where it would not "restore competition"); 3A Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 303e3 (4th ed. 2016) (a "judge may decline to restructure a firm where there are serious doubts as to feasibility or a likelihood that other remedies are likely to be sufficient to restore effective competition").  Here, the public interest is no longer served by divestiture.

In 2018, this Court ordered JELD-WEN to divest Towanda to "restore competition" in the doorskins market.  Divestiture Op. at 112.  The court stated that, without divestiture, "only one domestic supplier" would be "willing to sell to the Independents other than on a spot basis" and thus "there would be no structure in place to foster competition."  *Id.*  It then concluded that divestiture would serve the public interest by "once again restor[ing] three competitors who make and sell doorskins."  *Id.* at 110; *see also id.* at 111 ("Divestiture would once again place three domestic doorskin suppliers in the doorskin market.  Nothing in the record points to how that could be accomplished short of divestiture.").



Ex. 2, Webner Article at 3.

Thus, with or without divestiture, there will be at least three U.S. competitors—Masonite, JELD-WEN, and

Steves—just as there were prior to JELD-WEN's acquisition of CMI.







███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████

In sum, because of changed factual circumstances, ████████████████████████████████████████

███████████████████████████████████████ JELD-WEN respectfully submits that

the divestiture requirement should not become "through changing circumstances … an instrument

of wrong." *Thompson*, 404 F.3d at 826; *see also Eastman Kodak Co.*, 63 F.3d at 102 (vacating

antitrust decrees because the defendant no longer possessed monopoly power and vacating the

decrees would benefit consumers).

█ ██████████████████████████████████████████████████████
██████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████

█  ████████████████████████████████████████████
████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████ .

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████     In 2018, this Court concluded that "Steves ha[d] shown that the likely, if not certain, loss

of its business is an irreparable injury that cannot be adequately remedied by future lost profits

damages."  Divestiture Op. at 84.  Specifically, the Court reasoned that Steves had no "viable

alternative" supply of doorskins in the "quantity and quality required" ███████████████████

████████████████████████████████████████████ and thus, absent divestiture, Steves

would be "forced out of business when the Supply Agreement [with JELD-WEN] terminates,"

Divestiture Op. at 75, 78.  In so concluding, this Court specifically rejected the idea that Steves

could build its own plant: "[T]he Court finds that building a doorskin plant of its own is not a

viable alternative way to supply Steves' doorskin needs."  *Id.* at 79; *see also id.* at 79 n.17 ("[T]he

record shows that Steves simply cannot afford to build its own doorskin plant."); *Steves & Sons*,

988 F.3d at 719.

The facts on the ground have changed. ███████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

23

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████

████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████

**B.**   █████████████████████

████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████



██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████

Meanwhile, on the other side of the ledger, the harm to JELD-WEN from this divestiture process is substantial.  When it ordered divestiture, this Court acknowledged that JELD-WEN would face some hardship, including the loss of the MiraTEC and Extira businesses that are housed in Towanda and that "never posed any antitrust concerns."  Divestiture Op. at 94.  ████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████

26



███████████████████████████████████████████

███████████████████████████████████████████

██████

████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████

\*       \*       \*

████████████████████████████████████████████

████   In 2018, it may have been a "tough[] question" whether divestiture was appropriate or necessary.  *Steves & Sons*, 988 F.3d at 720.  ██████████████████████████████████

███████████████   Even without divestiture, at least three U.S. manufacturers will operate doorskins plants (Masonite, JELD-WEN, and Steves); ██████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████.  Consent decrees and injunctions "are frequently modified when the change of circumstance was not brought about by the fault of a party to the agreement."  *Thompson*, 404 F.3d at 829; *see also id.* at 826 (same law applies to consent decrees and injunctions).  Regardless of fault, the reality is that

29

████████████████████████████ of "assur[ing], to the extent possible,

that JELD-WEN receives a fair price for Towanda" and "that divestiture produces a competitive

entity that is likely to restore competition." Divestiture Op. at 148.

## CONCLUSION

For these reasons, the Court should terminate the divestiture proceedings and order that the

supply agreement intended for the purchaser of Towanda shall immediately apply to JELD-WEN

and Steves.

 May 1, 2024                    Respectfully submitted:

                               JELD-WEN, Inc.

                               By counsel

                               */s/  Brian Riopelle*

                               Brian Riopelle (VSB #36454)          James H. Mutchnik (*pro hac vice*)
                               MCGUIREWOODS LLP                     KIRKLAND & ELLIS LLP
                               800 East Canal Street                333 West Wolf Point Plaza
                               Richmond, VA 23219                   Chicago, IL 60654
                               Telephone: (804) 775-1084            Telephone: (312) 862-2000
                               Facsimile: (804) 698-2150            Facsimile: (312) 862-2200
                               briopelle@mcguirewoods.com           jmutchnik@kirkland.com

                               Craig S. Primis, P.C. (*pro hac vice*)
                               Matthew S. Owen, P.C. (*pro hac vice*)
                               Megan McGlynn (*pro hac vice*
                               pending*)
                               Soowan Julia Choi (*pro hac vice*)
                               KIRKLAND & ELLIS LLP
                               1301 Pennsylvania Avenue N.W.
                               Washington, DC 20004
                               Telephone: (202) 389-5000
                               Facsimile: (202) 389-5200
                               cprimis@kirkland.com
                               matt.owen@kirkland.com
                               megan.mcglynn@kirkland.com
                               julia.choi@kirkland.com

                               *Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 1, 2024, I electronically filed a copy of the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the registered participants as identified on the NEF to receive electronic service.

*/s/  Brian Riopelle*
Brian Riopelle (VSB #36454)
