# EXHIBIT 4

1                 IN THE UNITED STATES DISTRICT COURT

2                FOR THE EASTERN DISTRICT OF VIRGINIA

3                          RICHMOND DIVISION

4        ------------------------------
                                       :
5        STEVES AND SONS, INC.,        :    Civil Action No.
                                       :    3:16cv545
6        vs.                           :
                                       :    January 29, 2018
7        JELD-WEN, INC.                :
                                       :
8        ------------------------------

9

10            COMPLETE TRANSCRIPT OF TRIAL PROCEEDINGS

11            BEFORE THE HONORABLE ROBERT E. PAYNE

12               UNITED STATES DISTRICT JUDGE

13    APPEARANCES:

14    Lewis F. Powell, III, Esquire
      John S. Martin, Esquire
15    Maya M. Eckstein, Esquire
      Hunton & Williams
16    Riverfront Plaza, East Tower
      951 East Byrd Street
17    Richmond, Virginia 23219

18    Glenn Pomerantz, Esquire
      Ted Dane, Esquire
19    Munger Tolles & Olson, LLP
      355 South Grand Avenue
20    35th Floor                              VOLUME II
      Los Angeles, California 90071

21

22

23

24

25

```
 1   APPEARANCES: (cont'g)

 2   Kyle Mach, Esquire
     Munger Tolles & Olson, LLP
 3   560 Mission Street
     27th Floor
 4   San Francisco, California 94105
     Counsel for the plaintiff
 5
     Margaret M. Zwisler, Esquire
 6   Allyson M. Maltas, Esquire
     Latham & Watkins, LLP
 7   555 11th Street NW
     Suite 1000
 8   Washington, D.C. 20004

 9   Alfred C. Pfeiffer, Esquire
     Latham & Watkins, LLP
10   505 Montgomery Street
     Suite 2000
11   San Francisco, California 94111

12   Lawrence E. Buterman, Esquire
     Latham & Watkins, LLP
13   885 Third Avenue
     25th Floor
14   New York, New York 10022

15   Michael W. Smith, Esquire
     Craig T. Merritt, Esquire
16   Christian & Barton
     909 East Main Street
17   Suite 1200
     Richmond, Virginia 23219
18   Counsel for the defendant

19

20

21

22

23

24

25
```

| | | |
|---|---|---|
| 11:57:54AM | 1 | So whether the economy is good or whether the economy |
| 11:57:57AM | 2 | is bad, these are still the two questions to keep your eye on: |
| 11:58:02AM | 3 | Does Jeld-Wen's acquisition of CMI substantially lessen |
| 11:58:07AM | 4 | competition, or does it tend to create a monopoly. |
| 11:58:12AM | 5 | They also tell you that Steves has options for buying |
| 11:58:17AM | 6 | door skins.  They may tell you that Jeld-Wen itself is willing |
| 11:58:20AM | 7 | to enter into a new supply agreement with Steves, and if |
| 11:58:26AM | 8 | Jeld-Wen does say that to you during the course of this trial, |
| 11:58:29AM | 9 | remember this document by Hachigian, and remember this one. |
| 11:58:38AM | 10 | And Jeld-Wen may say to you that Masonite is still an |
| 11:58:44AM | 11 | option for Steves even though Masonite has made these public |
| 11:58:48AM | 12 | announcements that it's not going to sell.  And if they say |
| 11:58:52AM | 13 | that to you, I want you to remember the testimony that you're |
| 11:58:56AM | 14 | going to hear from the CEO of Masonite, Fred Lynch. |
| 11:59:02AM | 15 | We took his deposition, and that's another deposition |
| 11:59:04AM | 16 | that's going to be played, and you're going to see his |
| 11:59:07AM | 17 | testimony.  And what Mr. Lynch is going to say under oath is |
| 11:59:12AM | 18 | this:  He's going to say under oath that we're not interested |
| 11:59:17AM | 19 | in a long-term agreement with Steves.  Under oath, that's his |
| 11:59:22AM | 20 | position.  We're still not interested in a long-term agreement |
| 11:59:24AM | 21 | with Steves. |
| 11:59:26AM | 22 | And then he's also going to say to you that if any |
| 11:59:31AM | 23 | third-party were to ask us to sell them door skins, they |
| 11:59:36AM | 24 | submitted a purchase order, we might fill it, we might not |
| 11:59:40AM | 25 | depending on our capacity.  Well, Edward and Sam are going to |

| | | |
|---|---|---|
| 11:59:45AM | 1 | tell you that they need a reliable source of door skins in |
| 11:59:48AM | 2 | order to stay in business.  They need someone who will sell |
| 11:59:51AM | 3 | them door skins so that they can make doors and sell them to |
| 11:59:55AM | 4 | Home Depot and the homebuilders.  They need a reliable source. |
| 12:00:01PM | 5 | And Jeld-Wen may tell you there's another option for |
| 12:00:05PM | 6 | Sam and Edward to go get door skins.  They're going to say, you |
| 12:00:09PM | 7 | can go get door skins from companies that make door skins who |
| 12:00:13PM | 8 | are outside the United States, and there are companies that are |
| 12:00:15PM | 9 | outside the United States that make door skins.  They're in |
| 12:00:18PM | 10 | Turkey, and they're in Romania, and Edward and Sam have looked |
| 12:00:23PM | 11 | into that option. |
| 12:00:25PM | 12 | They had to look into that option because Jeld-Wen |
| 12:00:28PM | 13 | said they were terminating the long-term supply agreement, and |
| 12:00:31PM | 14 | they spent a lot of time looking at it.  Ultimately, they |
| 12:00:35PM | 15 | concluded the option was not viable, and here are a couple of |
| 12:00:40PM | 16 | things that Edward and Sam learned.  Remember I told you that |
| 12:00:44PM | 17 | they make 477 different styles and sizes of door skins?  And |
| 12:00:49PM | 18 | the reason why they make so many is because that's what their |
| 12:00:52PM | 19 | customers want. |
| 12:00:53PM | 20 | Home Depot wants to offer homeowners a wide array of |
| 12:00:57PM | 21 | doors so that they can choose what they want.  Choice.  It's a |
| 12:01:01PM | 22 | case about choice.  And the same thing with the homebuilders. |
| 12:01:04PM | 23 | They have different styles of homes and different things that |
| 12:01:07PM | 24 | different homeowners want, so they want a wide range of doors |
| 12:01:11PM | 25 | to put in homes. |

| | | |
|---|---|---|
| 12:01:12PM | 1 | So Steves sells 477 different styles and sizes. |
| 12:01:19PM | 2 | Well, after Edward and Sam traveled around the world a couple |
| 12:01:23PM | 3 | times, they found out that if you looked at all of the door |
| 12:01:27PM | 4 | skin suppliers that were outside the United States, they could |
| 12:01:31PM | 5 | only make 20 different styles and sizes of door skins.  Only 20 |
| 12:01:37PM | 6 | were available altogether, just 20.  That's not a viable option |
| 12:01:42PM | 7 | for Steves. |
| 12:01:44PM | 8 | And there was another problem:  Quality.  Many of the |
| 12:01:50PM | 9 | door skins that Edward and Sam tested that came from these |
| 12:01:54PM | 10 | suppliers outside the United States, and you'll hear names like |
| 12:01:57PM | 11 | Teverpan and Yildiz and Kastamonu, when they tested those door |
| 12:02:03PM | 12 | skins, sometimes they were okay, and sometimes they failed. |
| 12:02:06PM | 13 | You see, here in the United States, homeowners expect |
| 12:02:10PM | 14 | high quality doors, and, therefore, you need high quality door |
| 12:02:15PM | 15 | skins.  And Steves needs to be able to provide high quality |
| 12:02:21PM | 16 | doors all the time.  Not some of the time, all of the time. |
| 12:02:27PM | 17 | And Jeld-Wen may tell you that Steves has one more |
| 12:02:30PM | 18 | option.  They may say, Steves can just go build its own door |
| 12:02:36PM | 19 | skin plant.  Jeld-Wen has door skins plants, Masonite has door |
| 12:02:40PM | 20 | skin plants, Steves can build its own door skin plant. |
| 12:02:44PM | 21 | Well, Edward and Sam also looked at that option. |
| 12:02:46PM | 22 | They did.  They looked at it, and when they looked at that |
| 12:02:49PM | 23 | option, they spent a lot of time, and then they figured out |
| 12:02:54PM | 24 | what Jeld-Wen already knew, and you know that Jeld-Wen already |
| 12:02:58PM | 25 | knew it because it's in their documents. |

| | | |
|---|---|---|
| 12:03:01PM | 1 | This is another document that came from inside |
| 12:03:04PM | 2 | Jeld-Wen, and it has in the upper right-hand corner barriers to |
| 12:03:08PM | 3 | entry, and what that refers to are things that would stop |
| 12:03:12PM | 4 | anyone from building a door skin plant, barriers to entry, and |
| 12:03:16PM | 5 | you see the very first bullet on the page.  It's going to cost |
| 12:03:21PM | 6 | over $100 million to build a door skin plant, over |
| 12:03:27PM | 7 | $100 million. |
| 12:03:27PM | 8 | Well, Steves doesn't have a hundred million dollars |
| 12:03:30PM | 9 | to build a door skin plant, and so far no one has raised their |
| 12:03:34PM | 10 | hand and said, we'll partner with you and we'll pay that |
| 12:03:38PM | 11 | amount.  That has not happened.  Then you'll see six other |
| 12:03:41PM | 12 | bullets listing six other barriers to entry; die |
| 12:03:45PM | 13 | infrastructure, technically challenging equipment, steep |
| 12:03:49PM | 14 | learning curve. |
| 12:03:51PM | 15 | Those are all barriers to entry, and there's another |
| 12:03:55PM | 16 | barrier to entry that's not on this page:  Patents.  Patents. |
| 12:03:59PM | 17 | You see, Jeld-Wen and Masonite claim to own a lot of patents |
| 12:04:05PM | 18 | relating to door skins, relating to the processes for |
| 12:04:09PM | 19 | manufacturing door skins and for the designs of door skins, and |
| 12:04:13PM | 20 | Steves can't use any process or design that's subject to a |
| 12:04:18PM | 21 | valid patent of Jeld-Wen or Masonite unless Jeld-Wen or |
| 12:04:25PM | 22 | Masonite give them permission to do so. |
| 12:04:28PM | 23 | This is an email that Hachigian sent on July 8th, |
| 12:04:33PM | 24 | 2015, to Onex.  Ross and Munk work for Onex.  You see in the |
| 12:04:38PM | 25 | subject line it says, "EGS letter to KH."  EGS is Edward G. |

| | |
|---|---|
| 12:04:46PM | 1 |
| 12:04:49PM | 2 |
| 12:04:54PM | 3 |
| 12:04:57PM | 4 |
| 12:05:00PM | 5 |

Steves.  KH is Kirk Hachigian.  And you see, Edward sent a letter to Kirk Hachigian in July of 2015.  He was being upfront.  He said, hey, we're going to look into building our own door skin plant.  You said you're going to terminate the supply agreement, we're going to look into that option.

And Hachigian writes to Onex, "We will protect our IP, of course."  IP.  Intellectual property.  That's what that stands for.  Patents are intellectual property.  What Hachigian is saying to Onex after Edward told him they're going to look into building a door skin plant is, we're going to protect our IP.  We're going to protect our patents.

One more document about building a door skin plant. Hachigian says in May of 2014 to Onex, "I'm seriously considering terminating all the agreements."  That's the supply agreements with Steves and the other small door manufacturers. So in five years, they all need to lay out $100 million in capital.  That's how much it costs to build a door skin plant, and Ross writes back, Onex writes back, "Assuming your logic that none of the independents will ever build a skin plant from scratch, we can talk through the logic of why I think that's a good assumption."  Remember this email when someone from Jeld-Wen comes in and takes the stand and says that Steves can build its own door skin plant.

One other thing you might hear from Jeld-Wen during the course of this trial, they may point you to the second

12:06:27PM 1   sentence of the termination provision of the supply agreement,

12:06:31PM 2   and that provision says that Jeld-Wen may terminate this

12:06:35PM 3   agreement for any reason, or no reason at all, upon seven

12:06:38PM 4   years' written notice to Steves with no liability.  Jeld-Wen

12:06:43PM 5   may say that's all they did.

12:06:46PM 6           In September of 2014, they sent a notice and gave

12:06:50PM 7   Steves seven years' notice.  Jeld-Wen comes in here and says

12:06:55PM 8   that's all they did, look at the second sentence.  What the

12:06:59PM 9   second sentence says is that if Jeld-Wen gives notice, Steves

12:07:04PM 10  can terminate immediately.  Steves would be free, right now, to

12:07:10PM 11  go enter into a deal with someone else, but in order to enter

12:07:14PM 12  into a deal with someone else, there has to be someone else,

12:07:19PM 13  and Jeld-Wen has acquired CMI.  And Masonite has said it's not

12:07:25PM 14  going to sell to the small door manufacturers.

12:07:28PM 15          Does Jeld-Wen's acquisition of CMI substantially

12:07:32PM 16  lessen competition, or does it tend to create a monopoly?

12:07:38PM 17          Now, when I sit down, Jeld-Wen's lawyers can have a

12:07:41PM 18  chance to come up here and talk to you, and she's going to tell

12:07:44PM 19  you what this case is about from Jeld-Wen's perspective, and

12:07:47PM 20  she may say some things that I have not addressed, and I don't

12:07:51PM 21  get a chance to come up and talk to you again until the very

12:07:54PM 22  end of the trial, and that's called closing argument.

12:07:58PM 23          So after she sits down, we start putting on our

12:08:02PM 24  witnesses, and you start looking at exhibits and hearing from

12:08:05PM 25  the witnesses.  So I ask you to keep your mind open.  I

| | | |
|---|---|---|
| 12:08:08PM | 1 | promise, I commit to you that Mr. Powell and I will come back |
| 12:08:12PM | 2 | to you at the end of this trial, and we will respond to |
| 12:08:14PM | 3 | everything that they say during the trial. |
| 12:08:20PM | 4 | If Steves fails, if Steves goes out of business |
| 12:08:30PM | 5 | because someone figures out how to build -- |
| 12:08:34PM | 6 | MS. ZWISLER:  Your Honor, may I approach? |
| 12:08:36PM | 7 | MR. POMERANTZ:  I'm sorry, I'll take that back. |
| 12:08:36PM | 8 | MS. ZWISLER:  May I approach, Your Honor? |
| 12:08:36PM | 9 | |
| 12:08:36PM | 10 | (Discussion at sidebar as follows:) |
| 12:08:45PM | 11 | |
| 12:08:45PM | 12 | MS. ZWISLER:  He just said if Steves goes out of |
| 12:08:48PM | 13 | business, and he was about to say -- |
| 12:08:50PM | 14 | THE COURT:  You're going to retract that, aren't you? |
| 12:08:52PM | 15 | MR. POMERANTZ:  I will. |
| 12:08:54PM | 16 | THE COURT:  Okay. |
| 12:08:54PM | 17 | |
| 12:08:54PM | 18 | (End of sidebar discussion.) |
| 12:08:56PM | 19 | |
| 12:08:56PM | 20 | THE COURT:  You are quicker than I was, Ms. Zwisler. |
| 12:09:01PM | 21 | MR. POMERANTZ:  I'm going to start that one over |
| 12:09:03PM | 22 | again, and I retract what I just said. |
| 12:09:05PM | 23 | THE COURT:  Just disregard what he said about going |
| 12:09:08PM | 24 | out of business. |
| 12:09:09PM | 25 | MR. POMERANTZ:  Please.  If someone figures out how |

```
 1              IN THE UNITED STATES DISTRICT COURT

 2             FOR THE EASTERN DISTRICT OF VIRGINIA

 3                      RICHMOND DIVISION

 4    ------------------------------
                                    :
 5    STEVES AND SONS, INC.,        :   Civil Action No.
                                    :   3:16cv545
 6    vs.                           :
                                    :   February 14, 2018
 7    JELD-WEN, INC.                :
                                    :
 8    ------------------------------

 9

10          COMPLETE TRANSCRIPT OF TRIAL PROCEEDINGS

11           BEFORE THE HONORABLE ROBERT E. PAYNE

12               UNITED STATES DISTRICT JUDGE

13    APPEARANCES:

14    Lewis F. Powell, III, Esquire
      John S. Martin, Esquire
15    Maya M. Eckstein, Esquire
      Hunton & Williams
16    Riverfront Plaza, East Tower
      951 East Byrd Street
17    Richmond, Virginia 23219

18    Glenn Pomerantz, Esquire
      Ted Dane, Esquire
19    Munger Tolles & Olson, LLP
      355 South Grand Avenue
20    35th Floor                          VOLUME XII
      Los Angeles, California 90071

21

22

23

24

25
```

```
 1   APPEARANCES: (cont'g)

 2   Kyle Mach, Esquire
     Munger Tolles & Olson, LLP
 3   560 Mission Street
     27th Floor
 4   San Francisco, California 94105
     Counsel for the plaintiff
 5
     Margaret M. Zwisler, Esquire
 6   Allyson M. Maltas, Esquire
     Latham & Watkins, LLP
 7   555 11th Street NW
     Suite 1000
 8   Washington, D.C. 20004

 9   Alfred C. Pfeiffer, Esquire
     Latham & Watkins, LLP
10   505 Montgomery Street
     Suite 2000
11   San Francisco, California 94111

12   Lawrence E. Buterman, Esquire
     Latham & Watkins, LLP
13   885 Third Avenue
     25th Floor
14   New York, New York 10022

15   Michael W. Smith, Esquire
     Craig T. Merritt, Esquire
16   Christian & Barton
     909 East Main Street
17   Suite 1200
     Richmond, Virginia 23219
18   Counsel for the defendant

19

20

21

22

23

24

25
```

11:51:59  1    And then you have to fill in the damages that were
11:52:01  2 sustained because of the reduction in competition, because
11:52:03  3 of the lack of choice.  And the first one is -- and this
11:52:06  4 is antitrust injuries already sustained as a result of the
11:52:10  5 conduct.  And this is Jeld-Wen's overcharging Steves for
11:52:13  6 door skins other than Madison/Monroe.  So that's basically
11:52:17  7 the paragraph 6 price adjustment that they should have
11:52:20  8 gone down instead of saying that they could only go up.
11:52:24  9 That's $8,630,567.
11:52:31 10    As to the second one, "Jeld-Wen's overcharging for
11:52:36 11 Madison/Monroe, $1,303,035.  For the defective door skins,
11:52:45 12 $441,458.  And for refusing to reimburse Steves for doors,
11:52:50 13 $1,776,813.
11:52:54 14    And then as to Count One, we, the jury, find, by a
11:52:58 15 preponderance of the evidence, that the plaintiff is
11:52:58 16 entitled to damages in the amount of $46,480,581 for
11:52:59 17 future lost profits.  That's what we ask you here.  We
11:53:07 18 think it's fully supported by the evidence.  That's the
11:53:09 19 antitrust claim.
11:53:10 20    Then you're going to go to the contract claim.  And
11:53:12 21 we would ask you to find yes as to each of the breaches
11:53:15 22 that we allege.  The first one is Madison/Monroe -- I'm
11:53:20 23 sorry.  The first one is the overcharges for Section 6
11:53:23 24 other than Madison and Monroe.  There you say yes.  And
11:53:26 25 it's the same, 8,630,567.  And, again, we're asking for it

11:53:33 1  twice here not because we want a double recovery.  The

11:53:36 2  judge will take care of that.  We're asking that because

11:53:39 3  the same damage flows from the antitrust violation as from

11:53:41 4  the breach of contract.  That's what we're asking you for.

11:53:44 5  It's the same damage.  One is because we lost choice.  We

11:53:47 6  lost competition.  We would have gone someplace else.

11:53:51 7  That's the antitrust claim.  And the contract is they just

11:53:54 8  breached it.  They just said the prices could only go up

11:53:57 9  when the prices could go down.

11:53:58 10     The second one is Madison and Monroe, and that's for

11:54:05 11  1,303,035.  That was also a breach.  The third was for the

11:54:12 12  defective door skins where they didn't reimburse us,

11:54:15 13  441,458.  Question 10 is talking about the cost of doors

11:54:20 14  that we got from customers and they wouldn't credit us.

11:54:23 15  That's yes, and it's 1.776,813.  That's what we ask you to

11:54:28 16  do.  We think it's fully supported by the evidence.

11:54:35 17     All right.  About to wrap up.  I've been spending the

11:54:39 18  last long bit of time, two hours, talking to you about

11:54:42 19  come competition and economics.  And all of that is

11:54:47 20  necessary because we're dealing with an antitrust claim.

11:54:50 21  And it's based on economics and competition.  But I'm

11:54:54 22  worried that you just see this as an economic story.  And

11:54:58 23  it's not just an economic story.  It's a human story.

11:55:04 24     Sam Steves has sat there every single minute of this

11:55:08 25  trial.  He has sat there because this trial means the

11:55:12 1   world to him.  And I know that Edward wished he could have

11:55:16 2   sat there every day as well because he wanted to.  But the

11:55:21 3   rules of the court only allow us to have one of them sit

11:55:24 4   here, and that's why Edward wasn't here.  Now, you

11:55:27 5   remember on day one, Mark Beck, the CEO of Jeld-Wen came,

11:55:32 6   he came, and they said, Here's Mark Beck.  But you've

11:55:36 7   never seen Mark Beck here again.  He never came back to

11:55:39 8   this courtroom to participate in this trial, to listen and

11:55:42 9   to see, and that's because to Jeld-Wen, this is just

11:55:47 10  business.  But to Steves, it's personal.

11:55:53 11      This is about their family.  This is about six

11:55:55 12  generations that preceded them and the generations to

11:55:57 13  come.  I'm sure you probably all remember when Sam came

11:56:00 14  and took the stand a second time.  It was when we had a

11:56:04 15  chance to ask Sam about Steves and Sons going out of

11:56:11 16  business in 2021 because it wouldn't have door skins.  And

11:56:14 17  he got kind of excited.  He responded from the heart.  He

11:56:17 18  responded emotionally.  In fact, so emotionally that I

11:56:20 19  think I recall Judge Payne saying, Settle down, big boy.

11:56:25 20      Well, you know, if it was possible for Sam and Edward

11:56:28 21  to go get the door skins from Teverpan, they'd do it in a

11:56:31 22  heartbeat.  Or build a plant.  They'd do it in a

11:56:35 23  heartbeat.  But that's just not a likely option.  So they

11:56:39 24  need your help.  You see, they can't do any more than they

11:56:44 25  have done.  They need you to send a message to Jeld-Wen.

11:56:49  1    That's your job.  There is a right way and a wrong way for

11:56:54  2    companies to compete.  A verdict in favor of Steves on the

11:56:59  3    antitrust claim and the contract claim will tell Jeld-Wen,

11:57:03  4    and other companies just like Jeld-Wen, that the people in

11:57:07  5    our community -- you, you represent the people in our

11:57:11  6    community -- we demand that you compete the right way.  We

11:57:16  7    demand that.  That's what the Clayton Act is for.  We

11:57:19  8    demand that Jeld-Wen compete the right way.  Your verdict

11:57:23  9    will send that message, and we encourage you to deliver

11:57:26 10    the right verdict in this case.

11:57:28 11        Thank you.  Thank you so much for listening to me

11:57:31 12    today.

11:57:33 13            THE COURT:  I think maybe you could stand a

11:57:35 14    break?  We'll take 20 minutes.

11:57:43 15        Please be seated while the jury is being excused.

11:57:46 16    Twenty minutes.

11:57:47 17            (The jury exited the courtroom.)

11:58:07 18            THE COURT:  Anything?

11:58:13 19            MS. SWISLER:  If we're only taking a 20-minute

11:58:16 20    break, we're going to have to interrupt my closing.  And I

11:58:19 21    think -- couldn't we take lunch now.

11:58:21 22            THE COURT:  We don't have lunch.  We don't have

11:58:24 23    lunch for the jury now, I don't think.  Do we have it?

11:58:29 24            THE CLERK:  I'll check, Judge.

11:58:30 25            THE COURT:  I don't think we have lunch.  If I

11:58:34  1    had lunch, I would consider it, but we don't.  We didn't

11:58:37  2    plan for this way.

11:58:39  3              MS. SWISLER:  So couldn't they be excused to go

11:58:41  4    out and have lunch?

11:58:42  5              THE COURT:  We've already ordered their lunch.

11:58:45  6              MR. POWELL:  Your Honor, the jury can have our

11:58:48  7    lunch, if that would be --

11:58:50  8              MS. SWISLER:  We have lunch, too.  They can have

11:58:52  9    that.  I'd rather do that than have to stop.  And I don't

11:58:55 10    think they'll pay attention to me if they don't eat.  And

11:58:58 11    I may not get through it if I don't eat.  So --

11:59:01 12              THE COURT:  Okay.  Give up your lunch.  I

11:59:03 13    hope -- do you have anything as good as Padows?

11:59:11 14              MS. SWISLER:  I think --

11:59:12 15              MR. POWELL:  I'm not vouching for the quality,

11:59:13 16    Your Honor.

11:59:15 17              THE COURT:  If you're selling it -- if you're

11:59:17 18    flogging it to the jury --

11:59:18 19              MR. POWELL:  There's adequate quantity.  I can

11:59:20 20    promise you that.

11:59:20 21              THE COURT:  You do have enough to give them?

11:59:21 22              MS. SWISLER:  Yes, we do.

11:59:22 23              THE COURT:  Do each of you want to contribute so

11:59:24 24    that they'll be equal?

11:59:26 25              MR. POWELL:  I think that's a good idea, Your